# Exhibit 1

**KAPLAN FOX & KILSHEIMER LLP**
Laurence D. King (SBN 206423)
Matthew B. George (SBN 239322)
1999 Harrison Street, Suite 1560
Oakland, CA 94612
Telephone: 415-772-4700
Facsimile: 415-772-4707
*lking@kaplanfox.com*
*mgeorge@kaplanfox.com*

*Counsel for Plaintiff*

[Additional Counsel Appear on Signature Page]

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL BECKMAN, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>ROBINHOOD FINANCIAL, LLC, ROBINHOOD SECURITIES, LLC, and ROBINHOOD MARKETS, INC.,<br><br>Defendants. | Case No. 5:20-cv-01626<br><br>**CLASS ACTION**<br><br>**COMPLAINT FOR VIOLATIONS OF:**<br><br>**(1) Breach of Contract**<br><br>**(2) Breach of the Implied Covenant of Good Faith and Fair Dealing**<br><br>**(3) Breach of Fiduciary Duty**<br><br>**(4) Negligence**<br><br>**(5) Gross Negligence**<br><br>**(6) California's Consumer Legal Remedies Act, Civ. Code §§ 1750, et seq.;**<br><br>**(7) California's Unfair Competition Law, Bus. & Prof. Code §§ 17200, et seq.;**<br><br>**(8) Unjust Enrichment; and**<br><br>**(9) Declaratory Relief**<br><br>**DEMAND FOR JURY TRIAL** |

## **INTRODUCTION**

1.      Plaintiff Daniel Beckman ("Plaintiff"), individually and on behalf of all others similarly situated, brings this putative class action against Defendants Robinhood Financial, LLC ("Robinhood Financial"), Robinhood Securities, LLC ("Robinhood Securities"), and Robinhood Markets, Inc. ("Robinhood Markets") (collectively, "Robinhood"), demanding a trial by jury. Plaintiff makes the following allegations pursuant to the investigation of counsel and based upon information and belief, except as to the allegations specifically pertaining to himself, which are based on personal knowledge.  Accordingly, Plaintiff alleges as follows:

2.      Robinhood is an online brokerage firm founded in 2013 that touts itself as "a pioneer in commission-free investing."  Robinhood's customers place securities trades through the firm's website, by using a web-based application (or "app")[1], or by calling the firm's help center. Unfortunately for Robinhood's customers, including Plaintiff, Robinhood's trading systems completely crashed on Monday, March 2, 2020, and experienced a total outage of its operating systems (the "Outage").  Throughout the *entire* trading day, Robinhood's customers were prevented from making any securities trades through the firm's website, app, or call center.

3.      As a result of the Outage, Plaintiff brings this class action on behalf of Robinhood customers who were denied access to their Robinhood trading accounts during the Outage and for the many, including himself, who suffered losses in their trading Robinhood accounts specifically as a result of their inability to place any securities trades during the Outage.  Plaintiff asserts putative class action claims generally including breach of contract, negligence, breach of fiduciary duty, and violations of California consumer protection laws, on behalf of himself and all other Robinhood customers who are similarly situated.  He seeks damages, restitution, and injunctive relief.

## **PARTIES**

4.      Plaintiff Beckman is a citizen of Florida and is over the age of 18.

5.      Defendant Robinhood Financial is a Delaware corporation with its principal place of business at 85 Willow Road, Menlo Park, California 94025.  It is a wholly-owned subsidiary of

---

[1]  In exchange for using the app, Robinhood collects personal data about its users (including financial information), and sells this data to third parties.

Case No. 5:20-cv-01626

Robinhood Markets. Robinhood Financial is registered as a broker-dealer with the U.S. Securities & Exchange Commission ("SEC"). Defendant Robinhood Financial acts as an introducing broker and has a clearing arrangement with its affiliate Defendant Robinhood Securities.

6. Defendant Robinhood Securities is a Delaware corporation with its principal place of business at 500 Colonial Center Parkway, Suite 100, Lake Mary, Florida 32746. It is a wholly-owned subsidiary of Defendant Robinhood Markets. Defendant Robinhood Securities is registered as a broker-dealer with the SEC. Defendant Robinhood Financial acts as a clearing broker and clears trades introduced by its affiliate Defendant Robinhood Financial.

7. Defendant Robinhood Markets is a Delaware corporation with its principal place of business at 85 Willow Road, Menlo Park, California 94025. Defendant Robinhood Markets is the corporate parent of Defendants Robinhood Financial and Robinhood Securities.

## JURISDICTION AND VENUE

8. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2). The aggregate claims of all members of the proposed class and subclasses are in excess of $5 million, exclusive of interest and costs, and there are more than 100 putative class members. Plaintiff, as well as many members of the proposed class, are citizens of a state different from Defendant.

9. Pursuant to 28 U.S.C. § 1391, this Court is the proper venue for this action because a substantial part of the events, omissions, and acts giving rise to the claims herein occurred in this District where Robinhood is headquartered and where it developed, distributed, marketed, advertised, and sold the financial services which are the subject of the present complaint. Finally, venue is appropriate in this District pursuant to 28 USC § 1391(b)(2) because Robinhood is headquartered in Menlo Park and a substantial part of the acts and omissions that gave rise to this Complaint occurred or emanated from this District. Additionally, Robinhood's Terms of Service select courts in Santa Clara County as a venue for legal disputes.

10. This Court has personal jurisdiction over Robinhood because it is headquartered in and authorized to do business and does conduct business in California, and because it has

specifically marketed, advertised, and made substantial sales in California, and has sufficient minimum contacts with this state and/or sufficiently avails itself of the markets of this state through its promotion, sales, and marketing within this state to render the exercise of jurisdiction by this Court permissible.

## INTRADISTRICT ASSIGNMENT

11.     Pursuant to Civil Local Rule 3-2(c), an intradistrict assignment to the San Jose Division is appropriate because a substantial part of the events or omissions which give rise to the claims asserted herein occurred in this Division, including that Defendants reside in this division and Robinhood's Terms of Service require claims be brought in Santa Clara County.

## FACTUAL ALLEGATIONS

12.     Robinhood has experienced significant growth as a startup.     In 2019, Robinhood raised $323 million in funding at a $7.6 billion valuation.   The firm markets itself primarily to younger investors and claims over 10 million users of its trading app.

13.     Robinhood's systems woes continued into the following day.  On Tuesday, March 3, 2020, a Robinhood spokesperson admitted that the cause of the Outage was "instability in a part of our infrastructure that allows our systems to communicate with each other."[2]  At some point later that day, Robinhood's systems were restored.

14.     Later, in a blog post on Robinhood's website dated March 3, 2020, Robinhood's founders stated:

> Our team has spent the last two days evaluating and addressing this issue. We worked as quickly as possible to restore service, but it took us a while. Too long. We now understand the cause of the outage was stress on our infrastructure—which struggled with unprecedented load. That in turn led to a "thundering herd" effect—triggering a failure of our DNS system.
>
> Multiple factors contributed to the unprecedented load that ultimately led to the outages. The factors included, among others, highly volatile and historic market conditions; record volume; and record account sign-ups.

---

[2] "Robinhood Trading App is Back Up After a Second Crash," *Barron's* (Mar. 3, 2020 (available at: https://www.barrons.com/articles/robinhood-trading-app-returns-only-to-crash-again-on-tuesday-51583249601) (last accessed Mar. 5, 2020).

> Our team is continuing to work to improve the resilience of our infrastructure to meet the heightened load we have been experiencing. We're simultaneously working to reduce the interdependencies in our overall infrastructure. We're also investing in additional redundancies in our infrastructure.

*See*: https://blog.robinhood.com/ (last accessed Mar. 5, 2020).

15.  Under federal and state securities laws, securities industry rules, and industry best practices, brokerage firms that offer online trading services to their customers are required to, among other things, ensure that customers receive best execution of trades and that the firm has adequate operational capability to handle customer trading volume.

16.  More specifically, the Financial Industry Regulatory Authority ("FINRA"), which governs brokers like Robinhood, espouses rule 5310 regarding "Best Execution and Interpositioning."  Rule 5310.01 requires that Robinhood "must make every effort to execute a marketable customer order that it receives promptly and fully."  By failing to respond at all to customers' placing timely trades, and in fact preventing them from doing so altogether, Robinhood has breached these obligations and caused its customers substantial losses due solely to its own negligence and failure to maintain adequate infrastructure.

17.  Moreover, Robinhood has a history of flouting these obligations.  Just a few months before the outage, on December 19, 2019, FINRA announced it fined Defendant Robinhood Financial $1.25 million for best execution violations related to its customers' equity orders and related supervisory failures that spanned from October 2016 to November 2017.[3]  As part of the settlement, Robinhood also agreed to retain an independent consultant to conduct a comprehensive review of the firm's systems and procedures related to best execution.  *Id.*

## PLAINTIFF'S EXPERIENCE

18.  Plaintiff is a customer of Robinhood and entered into a Customer Agreement, as discussed further below, in order to use Robinhood's online trading systems. In addition, Plaintiff subscribes to Robinhood's Gold service that provides him with premium features including research reports and market information.

---

[3]  See  https://www.finra.org/media-center/newsreleases/2019/finra-fines-robinhood-financial-llc-125-million-best-execution (last accessed March, 4, 2020).

19.     On Friday, February 28, 2020, Plaintiff purchased certain SPY options in his Robinhood trading account.  SPY is an exchange traded fund ("ETF") that tracks the performance of the S&P 500.  SPY options are American-style options that may be exercised at any time after the trader buys them before they expire.

20.     More specifically, Plaintiff established a position known as a "SPY put debit spread," which is a "bearish" option position that is established by an investor who is anticipating a decline in the S&P 500.  To establish this position, an investor purchases a specific number of SPY puts at a higher strike price and sells the same number of SPY puts with the same expiration at a lower strike price.

21.     The specific SPY options that Plaintiff utilized as part of his debit spread had expiration dates of Monday, March 3, 2020.

22.     Throughout the entire day of Monday, March 3, 2020, Plaintiff repeatedly attempted to access his Robinhood account through the Robinhood app, via the website, and by calling the help center.  However, because of the Outage, Plaintiff was denied any access to his account and thus was unable to close out the option position in his account, while the S&P 500 rose in value throughout the day.  Moreover, because the options that Plaintiff used in his spread expired on that day, the contracts expired at zero value.

23.     As a result of the Outage, Plaintiff was unable to mitigate losses in his Robinhood account and suffered losses of approximately $15,000.

**CLASS ACTION ALLEGATIONS**

24.     Plaintiff brings claims pursuant to Federal Rule of Civil Procedure 23 on behalf of the following Class, as defined below:

> All Robinhood customers within the United States.[4]

25.     Additionally, or in the alternative, Plaintiff brings claims pursuant to Federal Rule of Civil Procedure 23 on behalf of the following Subclass, as defined below:

---

[4] The "Class Period" for each claim is provisionally intended to be the respective statute of limitations for each claim, with Plaintiff reserving the right to invoke the equitable tolling doctrine based on the discovery rule or other bases as discovery and the case progresses.

All Robinhood customers within the United States who were not able to execute trades on options that expired during the Outage.

26.     Excluded from the Class[5] are the Robinhood entities and their current employees, counsel for either party, as well as the Court and its personnel presiding over this action.

27.     This action has been brought and may properly be maintained as a class action against Robinhood pursuant to the provisions of Federal Rule of Civil Procedure 23.

28.     **Numerosity**: The precise number of members of the proposed Class is unknown to Plaintiff at this time, but, based on information and belief, Class members are so numerous that their individual joinder herein is impracticable.  Based on information and belief and publicly available reports, Class members number in the hundreds of thousands and up to ten million.  Subclass members are likely in the thousands.  All Class and Subclass members may be notified of the pendency of this action by reference to Robinhood's records, or by other alternative means.

29.     **Commonality**: Numerous questions of law or fact are common to the claims of Plaintiff and members of the proposed Class.  These common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members.  These common legal and factual questions include, but are not limited to the following:

        a.     Whether Robinhood's technology was inadequate to provide the financial services that were needed to handle reasonable consumer demand;

        b.     Whether Robinhood failed to provide contingencies to customers to execute timely trades in the event of an Outage;

        c.     Whether Robinhood violated FINRA Rule 5310;

        d.     Whether Robinhood violated state consumer protection laws in failing to disclose that its technology-based financial services were inadequate and unable to perform for substantial periods of time;

        e.     Whether Robinhood was in breach of its legal, regulatory, and licensing requirements by failing to provide adequate access to financial services in a timely manner;

---

[5] The term "Class" as used throughout includes both the Class and Subclass unless otherwise specified.

f.      Whether Robinhood was in breach of its contracts and/or the implied covenant of good faith and fair dealing in connection with its failure to provide financial services in a timely manner;

g.      Whether Robinhood was negligent or grossly negligent by failing to provide financial services in a timely manner due to its substandard and inadequate technology platform and lack of timely response to customers requesting to place trades;

h.      Whether Robinhood breached its fiduciary duties to customers by failing to provide adequate access to financial services in a timely manner;

i.      Whether Robinhood was unjustly enriched by its conduct;

j.      Whether Plaintiff and the other Class members were injured by Robinhood's conduct, and if so, the appropriate class-wide measure of damages, restitution, and other appropriate relief, including injunctive relief.

k.      Whether Plaintiff and the other Class members are entitled to injunctive and declaratory relief.

30.     **Typicality**: The claims of the named Plaintiff are typical of the claims of the proposed Class in that the named Plaintiff was a customer during the class period and was unable to access his accounts and place time-sensitive trades and sustained damages as a result of Robinhood's wrongful conduct.

31.     **Adequate Representation**: Plaintiff will fairly and adequately represent the interests of the Class in that he has no conflicts with any other Class members.  Plaintiff has retained competent counsel experienced in prosecuting complex class actions, including those involving financial services, and they will vigorously litigate this class action.

32.     **Predominance and Superiority**: There is no plain, speedy, or adequate remedy other than by maintenance of this class action.  A class action is superior to other available means, if any, for the fair and efficient adjudication of this controversy.  Prosecution of separate actions by individual Class members would create the risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for the Defendant.  Additionally, given the relatively modest damages sustained by most individual Class members, few, if any, proposed Class

members could or would sustain the economic burden of pursuing individual remedies for Robinhood's wrongful conduct. Treatment as a class action will achieve substantial economies of time, effort, and expense, and provide comprehensive and uniform supervision by a single court. This class action presents no material difficulties in management.

33. Class action certification is warranted under Fed. R. Civ P. 23(b)(1)(A) because the prosecution of separate actions by individual members of the proposed Class would create a risk of inconsistent or varying adjudications with respect to individual Class members, which may produce incompatible standards of conduct for Defendants.

34. Class action certification is warranted under Fed. R. Civ P. 23(b)(1)(B) because the prosecution of separate actions by individual members of the proposed Class would create a risk of adjudications with respect to individual Class members which may, as a practical matter, be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

35. The prerequisites to maintaining a class action for injunctive or equitable relief pursuant to Fed. R. Civ. P. 23(b)(2) are met as Robinhood has acted or refused to act on grounds generally applicable to the Class, thereby making final injunctive, declaratory, or equitable relief appropriate with respect to the Class as a whole.

36. Class action certification is also warranted under Fed. R. Civ P. 23(b)(3) because questions of law or fact common to the Class members predominate over any questions affecting only individual members, and a Class action is superior to other available remedies for the fair and efficient adjudication of this controversy. The amount of damages available to the individual Plaintiff is insufficient to make litigation addressing Robinhood's conduct economically feasible for most in the absence of the class action procedure. Individualized litigation also presents a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system presented by the legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economy of scale, and comprehensive supervision by a single court.

37.     Class action certification is also warranted under Fed. R. Civ P. 23(c)(4) because questions of law or fact common to the Class members may be certified and decided by this Court on a classwide basis.

## CLAIMS FOR RELIEF

## <u>COUNT I</u>

### Breach of Contract
### (Alleged solely against Defendants Robinhood Financial and Robinhood Securities)

38.     Plaintiff hereby incorporates by reference the factual allegations contained herein.

39.     In order to use the Robinhood trading platform, a potential customer must enter into the Customer Agreement with Robinhood, which is attached as **Exhibit A**.[6]

40.     Robinhood breached its Customer Agreement by, among other things, failing to disclose that its platform was inadequately built and maintained to handle consumer demand; that Robinhood failed to provide adequate technological systems necessary to perform under the contract; that Robinhood failed to provide services when an Outage occurred due to a lack of infrastructure and alternate means for customers to place timely trades; that Robinhood failed to provide access to its financial services in a timely manner; that Robinhood's platform was subject to and did experience substantial Outage(s) that prohibited the Parties from performing in a timely manner (or at all) under the contract; that Robinhood failed to comply with all applicable legal, regulatory, and licensing requirements; and that Robinhood failed to exercise trades and actions requested by customers in a complete and timely manner (also required by FINRA Rule 5310).

41.     As such, Robinhood breached its Customer Agreement with Plaintiff and Class members.

42.     Robinhood's failure to perform and its breaches of the Customer Agreement resulted in damages and losses to Plaintiff and Class members and continues to expose them to harm because Robinhood continues to fail to perform under the Customer Agreement.  These losses reflect

---

[6] Robinhood's Customer Agreement selects California law to apply and its Terms of Service requires claims be filed in courts within Santa Clara County. Ex. A at 37.

damages to Plaintiff and Class members in an amount to be determined at trial or separate proceedings as necessary.

## COUNT II

**Breach of the Implied Covenant of Good Faith and Fair Dealing**
**(Alleged solely against Robinhood Financial and Robinhood Securities)**

43. Plaintiff hereby incorporates by reference the factual allegations contained herein.

44. Plaintiff and Class members entered into the contract identified as the Customer Agreement with Robinhood. Ex. A.

45. Plaintiff and Class members fulfilled their obligations under the Customer Agreement by adhering to its terms and using Robinhood's services for the provision of financial services.

46. Robinhood was obligated under the Customer Agreement to timely provide the financial services required under the Customer Agreement at all times, including but not limited to when Plaintiff and Class members attempted to use the service during the Outage.

47. Robinhood unfairly interfered with Plaintiff's and Class members' rights to receive the benefits of the Customer Agreement by, among other things, failing to disclose that its platform was inadequately built and maintained to handle consumer demand; that Robinhood failed to provide adequate technological systems necessary to perform under the contract; that Robinhood failed to provide services when an Outage occurred due to a lack of infrastructure and alternate means for customers to place timely trades; that Robinhood failed to provide access to its financial services in a timely manner; that Robinhood's platform was subject to and did experience substantial Outage(s) that prohibited the Parties from performing in a timely manner (or at all) under the contract; that Robinhood failed to comply with all applicable legal, regulatory, and licensing requirements; and that Robinhood failed to exercise trades and actions requested by customers in a complete and timely manner (also required by FINRA Rule 5310).

48. Robinhood's conduct has caused Plaintiff and Class members' harm, losses, and damages and continues to expose them to harm because Robinhood continues to fail to perform

under the Customer Agreement. These losses reflect damages to Plaintiff and Class members in an amount to be determined at trial or separate proceedings as necessary.

### COUNT III

#### Breach of Fiduciary Duty

49. Plaintiff hereby incorporates by reference the factual allegations contained herein.

50. As a licensed provider of financial services, Robinhood at all times relevant herein was a fiduciary to Plaintiff and Class members and owed them the highest good faith and integrity in performing its financial services on their behalf. Robinhood also acted as a fiduciary to each and every customer who agreed to the Customer Agreement.

51. Robinhood breached its fiduciary duties to Plaintiff and Class members by, among other things, failing to disclose that its platform was inadequately built and maintained to handle consumer demand; that Robinhood failed to provide adequate technological systems necessary to perform under the contract; that Robinhood failed to provide services when an Outage occurred due to a lack of infrastructure and alternate means for customers to place timely trades; that Robinhood failed to provide access to its financial services in a timely manner; that Robinhood's platform was subject to and did experience substantial Outage(s) that prohibited the Parties from performing in a timely manner (or at all) under the contract; that Robinhood failed to comply with all applicable legal, regulatory, and licensing requirements; and that Robinhood failed to exercise trades and actions requested by customers in a complete and timely manner (also required by FINRA Rule 5310).

52. Robinhood's conduct has caused Plaintiff and Class members' harm, losses, and damages and continues to expose them to harm because Robinhood continues to breach its fiduciary duties. These losses reflect damages to Plaintiff and Class members in an amount to be determined at trial or separate proceedings as necessary.

### COUNT IV

#### Negligence

53. Plaintiff hereby incorporates by reference the factual allegations contained herein.

54. Robinhood had a duty to exercise reasonable care in conducting and facilitating transactions for its customers.

55. Robinhood unlawfully breached its duties by, among other things, failing to disclose that its platform was inadequately built and maintained to handle consumer demand; that Robinhood failed to provide adequate technological systems necessary to perform under the contract; that Robinhood failed to provide services when an Outage occurred due to a lack of infrastructure and alternate means for customers to place timely trades; that Robinhood failed to provide access to its financial services in a timely manner; that Robinhood's platform was subject to and did experience substantial Outage(s) that prohibited the Parties from performing in a timely manner (or at all) under the contract; that Robinhood failed to comply with all applicable legal, regulatory, and licensing requirements; and that Robinhood failed to exercise trades and actions requested by customers in a complete and timely manner (also required by FINRA Rule 5310).

56. Robinhood's negligent and wrongful breaches of its duties owed to Plaintiff and Class members proximately caused losses and damages that would not have occurred but for Robinhood's breach of its duty of due care. These losses reflect damages to Plaintiff and Class members in an amount to be determined at trial or separate proceedings as necessary.

## COUNT V

### Gross Negligence

57. Plaintiff hereby incorporates by reference the factual allegations contained herein.

58. Robinhood had a duty to exercise reasonable care in conducting and facilitating transactions for its customers.

59. Robinhood unlawfully breached its duties by, among other things, failing to disclose that its platform was inadequately built and maintained to handle consumer demand; that Robinhood failed to provide adequate technological systems necessary to perform under the contract; that Robinhood failed to provide services when an Outage occurred due to a lack of infrastructure and alternate means for customers to place timely trades; that Robinhood failed to provide access to its financial services in a timely manner; that Robinhood's platform was subject to and did experience substantial Outage(s) that prohibited the Parties from performing in a timely

manner (or at all) under the contract; that Robinhood failed to comply with all applicable legal, regulatory, and licensing requirements; and that Robinhood failed to exercise trades and actions requested by customers in a complete and timely manner (also required by FINRA Rule 5310).

60.    Robinhood's conduct as set forth in this Complaint was want of even scant care and its acts and omissions were and continue to be an extreme departure from the ordinary standard of conduct.  Indeed, Robinhood essentially abandoned its customers altogether during the Outage, a standard of care so far below what is required for business engaging in time sensitive financial services that it amounts to a complete abandonment of its duties.  Essentially no other conduct than that committed by Robinhood could be more grossly negligent than abandoning its customers altogether for substantial periods of times during which they incurred substantial losses and were unable to contact anyone at Robinhood.

61.    Robinhood's grossly negligent and wrongful breaches of its duties owed to Plaintiff and Class members proximately caused losses and damages that would not have occurred but for Robinhood's gross breach of its duty of due care.  These losses reflect damages to Plaintiff and Class members in an amount to be determined at trial or separate proceedings as necessary.

## COUNT VI

**Violations of California's Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq*.**

62.    Plaintiff hereby incorporates by reference the factual allegations contained herein.

63.    The California Consumer Legal Remedies Act ("CLRA"), Civil Code section 1750, *et seq.*, was designed and enacted to protect consumers from unfair and deceptive business practices.  To this end, the CLRA sets forth a list of unfair and deceptive acts and practices in Civil Code section 1770.

64.    The CLRA applies to Robinhood's actions and conduct described herein because it extends to the transactions involving the sale of goods or services for personal, family, or household use within the meaning of Civil Code section 1761.

65.    At all relevant times, Plaintiff and members of the Class were "consumers" as that term is defined in Civil Code section 1761(d).

66. Robinhood practices in connection with the marketing and sale of its financial services violate the CLRA in at least (but not limited to) the following respects:

    a. In violation of section 1770(a)(5), Robinhood knowingly misrepresented services;

    b. In violation of section 1770(a)(7), Robinhood represented its financial services to be of a particular standard, quality, or grade, but were not; and

    c. In violation of section 1770(a)(9), Robinhood's knowingly advertised its financial services with the intent not to sell and perform the services as advertised.

67. As set forth above, Robinhood's services are deceptive and misleading to reasonable consumers in violation of the CLRA because it failed to disclose that its platform was inadequately built and maintained to handle consumer demand; because Robinhood failed to provide adequate technological systems necessary to perform under the contract; because Robinhood failed to provide services when an Outage occurred due to a lack of infrastructure and alternate means for customers to place timely trades; because Robinhood failed to provide access to its financial services in a timely manner; because Robinhood's platform was subject to and did experience substantial Outage(s) that prohibited the Parties from performing in a timely manner (or at all) under the contract; because Robinhood failed to comply with all applicable legal, regulatory, and licensing requirements; and because Robinhood failed to exercise trades and actions requested by customers in a complete and timely manner (also required by FINRA Rule 5310).

68. Robinhood's conduct described herein was undertaken in transactions intended to result in, and which did result in, the purchase of its financial services by consumers, which caused harm to Plaintiff and Class members who would not have used Robinhood's services had they known the truth. Plaintiff was in fact injured by losses incurred because of Robinhood's deceptive conduct.

69. The CLRA is, by its express terms, a cumulative remedy, such that remedies under its provisions can be awarded in addition to those provided under separate statutory schemes and/or

common law remedies, such as those alleged in the other Counts of this Complaint. *See* Cal. Civ. Code § 1752.

70.     In accordance with Civil Code section 1780, Plaintiff and Class members seek injunctive and equitable relief for Robinhood's violations of the CLRA necessary to bring it in compliance with the CLRA by, among other things, disclosing that its services are substandard and unable to fulfill reasonable consumer demand, by correcting its services so that its platform can perform as necessary to comply with its legal, regulatory and contractual obligations, and making customers whole for their losses.

71.     In accordance with Civil Code section 1780, the Plaintiff served a notice pursuant to Civil Code section 1782, via a certified letter, return receipt requested, requesting appropriate relief on or about March 6, 2020.  Should Robinhood fail to respond to Plaintiff' CLRA demand in a satisfactory manner, Plaintiff will amend this Complaint to seek damages after the expiration of the notice period.

## <u>COUNT VII</u>

**Violation of California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.***

72.     Plaintiff hereby incorporates by reference the factual allegations contained herein.

73.     Robinhood has engaged in unfair competition within the meaning of California Business & Professions Code section 17200, *et seq.*, because Robinhood's conduct is unlawful, unfair, and fraudulent as herein alleged.

74.     Plaintiff, the members of the Class, and Robinhood are a "person" or "persons," within the meaning of Section 17201 of the California Unfair Competition Law ("UCL").

75.     The UCL prohibits any unlawful, unfair, or fraudulent business practices or acts. Robinhood's conduct, as alleged herein, constitutes an unlawful, unfair and fraudulent business practice that occurred in connection with the marketing, advertisement and sale of its services.

76.     Robinhood's misleading and deceptive misrepresentations and omissions, concealment and suppression of material fact, as described within, violated the UCL's unlawful, unfair, and fraudulent prongs.

77.     **Unlawful prong:**  Robinhood's conduct, as described within, violated the UCL's unlawful prong because: (1) it violates the CLRA in connection with the sale of goods and services; (2) constitutes a breach of contract and/or a breach of the implied covenant of good faith and fair dealing, (3) constitutes a breach of fiduciary duty; (4) constitutes negligence and/or gross negligence; (5) it violates FINRA Rule 5310 which requires best execution of orders fully and promptly; and (6) has unlawfully and unjustly enriched Robinhood.

78.     **Unfair prong:**  Robinhood's conduct, as described within, violated the UCL's unfair prong because its conduct violates established public policy intended to regulate the fair and ethical sale of goods and services to consumers as set forth in the CLRA and by FINRA, and because it is immoral, unethical, oppressive, or unscrupulous and has caused injuries to the Plaintiff and the Class that outweigh any purported benefit.  At all times relevant herein, Robinhood's conduct of misrepresenting and concealing material facts regarding its faulty infrastructure and refusal to timely perform from the Plaintiff and consumers caused them injury by inducing them to use Robinhood's services they would not have otherwise, causing losses to them.  The utility of Robinhood's conduct in misrepresenting and concealing material facts from the Plaintiff and the Class is far outweighed by the gravity of harm to consumers who have now incurred losses they would not have otherwise.

79.     **Fraudulent prong:**  Robinhood's conduct, as described within, violated the UCL's fraudulent prong by misrepresenting and concealing material information that caused, or would likely cause, Plaintiff and the Class to be deceived into using Robinhood's services they would not have otherwise.   At all times Robinhood has had exclusive knowledge of its substandard infrastructure that led to the Outage.  Plaintiff and the Class have been harmed and sustained injury as a result of Robinhood's fraudulent conduct in violation of the UCL as explained herein.

80.     Plaintiff has standing to pursue this claim because he has been injured by virtue of suffering a loss of money and/or property as a result of the wrongful conduct alleged herein. Plaintiff would not have used Robinhood's services and/or placed trades and made financial transactions through those services had he known the truth, though he has an interest in continuing to use the service in the future should Robinhood fix the problems set forth in this Complaint.  As

Case No. 5:20-cv-01626

a direct result of Robinhood's actions and omissions of material facts, Plaintiff and Class members were unlawfully, unfairly, and fraudulently induced to make purchases and financial transactions that they otherwise would not have made; and lost their ability to make informed and reasoned purchasing decisions.

81.     The UCL is, by its express terms, a cumulative remedy, such that remedies under its provisions can be awarded in addition to those provided under separate statutory schemes and/or common law remedies, such as those alleged in the other Counts of this Complaint. *See* Cal. Bus. & Prof. Code § 17205.

82.     As a direct and proximate cause of Robinhood's conduct, which constitutes unlawful, unfair, and fraudulent business practices, as herein alleged, Plaintiff and Class members have been damaged and suffered ascertainable losses, thereby entitling them to recover restitution and equitable relief, including disgorgement or ill-gotten gains, refunds of moneys, interest, reasonable attorneys' fees, filing fees, and the costs of prosecuting this class action, as well as any and all other relief that may be available at law or equity.

## COUNT VIII

### Unjust Enrichment

83.     Plaintiff hereby incorporates by reference the factual allegations contained herein.

84.     By its wrongful acts and omissions described herein, Robinhood has obtained a benefit by unduly taking advantage of Plaintiff and Class members.

85.     Robinhood, prior to and at the time Plaintiff and the members of the Class decided to use Robinhood's services and make financial transactions, knew and had knowledge and information that it could not withstand reasonable consumer demand and would be unable to execute trades in a complete and timely manner.

86.     Robinhood was aware or should have been aware that reasonable consumers would have wanted to know the facts pertaining to its financial services before deciding whether or not to use them.

87.     Robinhood was unjustly enriched at the expense of Plaintiff and Class members. Robinhood received profits, benefits, and compensation, in part, at the expense of Plaintiff and Class members.

88.     Since Robinhood's profits, benefits, and other compensation were obtained by improper means, Robinhood is not legally or equitably entitled to retain any of the benefits, compensation or profits it realized.

89.     Plaintiff and Class members seek an order of this Court requiring Defendants to refund, disgorge, and pay as restitution any profits, benefits, and other compensation obtained by Robinhood from its wrongful conduct and/or the establishment of a constructive trust from which Plaintiff and Class members may seek restitution.

## COUNT IX

### Declaratory Relief

90.     Plaintiff hereby incorporates by reference the factual allegations contained herein.

91.     Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 *et seq.*, this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and grant further necessary relief.  Furthermore, the Court has broad authority to restrain acts, such as here, which are tortious and which violate the terms of the federal and state statutes described in this Complaint.

92.     An actual controversy has arisen.  Plaintiff allege that Robinhood is not complying with its obligations under the Customer Agreement, FINRA Rule 5310, and does not maintain sufficient infrastructure to provide the financial services it must do so in a complete and timely manner.

93.     Pursuant to its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

        a.     Robinhood owed and continues to owe a legal duty to comply with its agreements as well as regulatory requirements to maintain adequate infrastructure to handle consumer demand and execute trades in a complete and timely manner;

b.   Robinhood continues to breach this legal duty by failing to employ reasonable measures to prevent Outages and provide alternative means for customers to make timely financial transactions.

94.   The Court also should issue corresponding injunctive relief requiring Robinhood to employ adequate quality control consistent with industry standards and the parties' contracts.

## PRAYER FOR RELIEF

**THEREFORE,** Plaintiff seeks judgment against Robinhood, as follows:

A.   Certifying the Class and naming Plaintiff as representative of the Class and Plaintiff's attorneys as Class Counsel to represent the Class members;

B.   Declaring the Robinhood's conduct violates the statutes referenced herein;

C.   Finding in favor of Plaintiff and the Class on all counts asserted herein;

D.   Granting damages, restitution, or disgorgement to Plaintiff and the Class;

E.   Granting declaratory and injunctive relief to enjoin Robinhood from engaging in the unlawful practices described in this Complaint;

F.   Granting compensatory damages, the amount of which is to be determined at trial;

G.   Granting punitive damages;

H.   Granting pre- and post-judgment interest on all amounts awarded;

I.   Granting restitution and all other forms of equitable monetary relief;

J.   Granting injunctive relief as pleaded or as the Court may deem proper;

K.   Awarding Plaintiff and the Class reasonable attorneys' fees and expenses and costs of suit; and

L.   Granting further relief as this Court may deem proper.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

## JURY TRIAL DEMAND

Plaintiff demand a trial by jury on all issues so triable.

Respectfully submitted,

DATED: March 5, 2020      **KAPLAN FOX & KILSHEIMER LLP**

By: /s/ *Matthew B. George*
         Matthew B. George

Laurence D. King (SBN 206423)
Matthew B. George (SBN 239322)
1999 Harrison Street, Suite 1560
Oakland, CA 94612
Telephone: 415-772-4700
Facsimile: 415-772-4707
*lking@kaplanfox.com*
*mgeorge@kaplanfox.com*

**MEYER WILSON CO., LPA**
David P. Meyer (to be admitted *pro hac vice*)
Matthew R. Wilson (SBN 290473)
Chad Kohler (to be admitted *pro hac vice*)
Michael J. Boyle, Jr. (SBN 258560)
1320 Dublin Road, Suite 100
Columbus, Ohio 43215
Telephone: (614) 224-6000
Facsimile: (614) 224-6066
*dmeyer@meyerwilson.com*
*mwilson@meyerwilson.com*
*ckohler@meyerwilson.com*
*mboyle@meyerwilson.com*

**EREZ LAW**
Jeffrey Erez (to be admitted *pro hac vice*)
SunTrust International Center
1 SE 3rd Ave., Suite 1670
Miami FL 33131
Telephone: (305) 728-3320
Facsimile: (786) 842-7549

*Counsel for Plaintiff and the Proposed Class and Subclass*

# Exhibit 2

1    THE RESTIS LAW FIRM, P.C.
     William R. Restis, Esq. (SBN 246823)
2    william@restislaw.com
     402 W. Broadway, Suite 1520
3    San Diego, California 92101
     Telephone: +1.619.270.8383
4

5    *Counsel for Plaintiff and the Putative Class*

6    [Additional Counsel Listed On Signature Page]

7

8

9

10

11                  **UNITED STATES DISTRICT COURT**

12          **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

13                      **SAN JOSE DIVISION**

14

15    ALEXANDER ADAME, individually and on    Case No:
     behalf of all others similarly situated,

16           Plaintiff,                **CLASS ACTION COMPLAINT**

17           v.

18    ROBINHOOD FINANCIAL, LLC, a Delaware    **DEMAND FOR JURY TRIAL**

19    limited liability company, ROBINHOOD
     SECURITIES, LLC, a Delaware limited liability
20    company, and ROBINHOOD MARKETS, INC.,
     a Delaware corporation,
21

22

23           Defendants.

24

25

26

27

28

   CLASS ACTION COMPLAINT

1    Plaintiff Alexander Adame ("Plaintiff"), individually and on behalf of all others similarly

2    situated, brings this putative class action against Defendants Robinhood Financial, LLC

3    ("Robinhood Financial"), Robinhood Securities, LLC ("Robinhood Securities"), and Robinhood

4    Markets, Inc. ("Robinhood Markets") (collectively, "Robinhood"), demanding a trial by jury.

5    Plaintiff makes the following allegations pursuant to the investigation of counsel and based upon

6    information and belief, except as to the allegations specifically pertaining to himself, which are

7    based on personal knowledge. Accordingly, Plaintiff alleges as follows:

8    **NATURE OF THE ACTION**

9    1.    Robinhood is an online brokerage firm. Its customers place securities trades through

10    the firm's website, by using a web-based application or "app," or by calling the firm's help center.

11    Robinhood permits customers, when its trading platform is operational, to establish long and short

12    positions in securities, and also to write and trade option contracts.

13    2.    On Monday, March 2, 2020, Robinhood's systems crashed resulting in an outage of

14    its trading platform through the morning of Tuesday, March 3, 2020 (the "Outage"). As a result of

15    the Outage, Robinhood's customers were unable to buy or sell securities or to exercise option

16    contracts through Robinhood's website, app, or call center.

17    3.    This loss of access to Robinhood's trading platform caused concrete, particularized,

18    and actual damages for Plaintiff and certain other members of class proposed below.

19    4.    Robinhood customers who held options contracts expiring during the Outage, which

20    occurred on the first trading day of the month when monthly contracts typically expire, were unable

21    to exercise those contracts or trade them to capitalize on gains or to mitigate losses. Most of those

22    contracts—*if not all of them*—expired worthless as a result of Robinhood customers being unable to

23    access Robinhood trading services.

24    5.    Similarly, Robinhood customers who held short positions during the Outage were

25    unable to mitigate their losses as socks surged. Specifically, on March 2, 2020, "U.S. stocks surged

26    the most in fourteen months as investors gained confidence that stewards of the world's largest

27    economies would act in concert to offset any impact from the spreading coronavirus." Bloomberg,

28    - 1 -

CLASS ACTION COMPLAINT

Provided by CourtAlert                                                                                    www.CourtAlert.com

*Stocks Surge on Bets Central Banks to Take Action: Markets Wrap*, https://www.bloomberg.com/news/articles/2020-03-01/yuan-drops-with-aussie-on-virus-fear-economy-woes-markets-wrap (last visited March 11, 2020) (reporting that, as of the end of the trading day on March 2, 2020, the S&P 500 had risen 4.6%, the Dow Jones Industrial Average gained 5.1%, and the Nasdaq 100 Index advanced 4.9%).

6.      Robinhood has accepted fault for the Outage and attributed it to unprecedented stress on its infrastructure, but "[s]oftware mishaps have rocked Robinhood before," including in 2018, for example, when its "options trading service had an outage that locked consumers out of their accounts and stopped them from closing positions[.]" Bloomberg, *Robinhood Maxed Out a Credit Line Last Month as Markets Fell*, https://www.bloomberg.com/news/articles/2020-03-10/robinhood-maxed-out-credit-line-last-month-amid-market-tumult (last visited March 11, 2020).

7.      In offering trading services, Robinhood assumed a duty to ensure that its systems were sufficiently equipped to reliably deliver such services under reasonably foreseeable customer demands and market conditions, such as those that occurred on March 2, 2020. Plaintiff and members of the proposed class understood and reasonably believed that Robinhood had or would take such steps, but it did not as evidenced by the Outage. Robinhood failed to adequately or properly equip itself technologically and systemically to maintain Plaintiff and class members' access to trading services, and thereby breached its obligations and caused its customers substantial losses due solely to its own negligence and failure to maintain adequate infrastructure.

8.      Plaintiff thus brings this class action on behalf of himself and all other Robinhood customers within the United States who held short positions or option contracts expiring during the Outage, and who thereby suffered losses in their Robinhood accounts. Plaintiff asserts claims for breach of contract, breach of the implied covenant of good faith and fair dealing, negligence, gross negligence, and declaratory judgment, and seeks damages, restitution, and injunctive relief.

## **PARTIES**

9.      Plaintiff Alexander Adame is a citizen and resident of the state of New York.

CLASS ACTION COMPLAINT

10.     Defendant Robinhood Financial is a Delaware corporation with its principal place of business at 85 Willow Road, Menlo Park, California 94025. It is a wholly-owned subsidiary of Robinhood Markets. Defendant Robinhood Financial acts as an introducing broker and has a clearing arrangement with its affiliate Defendant Robinhood Securities. It is a party to the Customer Agreement and Robinhood Terms & Conditions. Exhibits A–B.

11.     Defendant Robinhood Securities is a Delaware corporation with its principal place of business at 500 Colonial Center Parkway, Suite 100, Lake Mary, Florida 32746. It is a wholly owned subsidiary of Defendant Robinhood Markets. Defendant Robinhood Financial acts as a clearing broker and clears trades introduced by its affiliate Defendant Robinhood Financial. It is a party to the Customer Agreement. Exhibit A.

12.     Defendant Robinhood Markets is a Delaware corporation with its principal place of business at 85 Willow Road, Menlo Park, California 94025. Defendant Robinhood Markets is the corporate parent of Defendants Robinhood Financial and Robinhood Securities. It is a party to the Robinhood Terms & Conditions. Exhibit B.

13.     Defendants are referred to herein collectively as "Robinhood."

## JURISDICTION AND VENUE

14.     This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2). The aggregate claims of all members of the proposed class and subclasses are in excess of $5 million, exclusive of interest and costs, and there are more than 100 putative class members. Plaintiff, as well as many members of the proposed class, are citizens of a state different from Defendant.

15.     Pursuant to 28 U.S.C. § 1391, this Court is the proper venue for this action because a substantial part of the events, omissions, and acts giving rise to the claims herein occurred in this District where Robinhood is headquartered and where it developed, distributed, marketed, advertised, and sold the trading services which are the subject of the present complaint. Finally, venue is appropriate in this District pursuant to 28 USC § 1391(b)(2) because Robinhood is headquartered in Menlo Park and a substantial part of the acts and omissions that gave rise to this

- 3 -

1   Complaint occurred or emanated from this District. Additionally, Robinhood's Terms of Service

2   select courts in Santa Clara County as a venue for legal disputes. Exhibit B.

3       16.    This Court has personal jurisdiction over Robinhood because it is headquartered in

4   and authorized to do business and does conduct business in California, and because it has

5   specifically marketed, advertised, and made substantial sales in California, and has sufficient

6   minimum contacts with this state and/or sufficiently avails itself of the markets of this state through

7   its promotion, sales, and marketing within this state to render the exercise of jurisdiction by this

8   Court permissible.

9   **INTRADISTRICT ASSIGNMENT**

10       17.    Pursuant to Civil Local Rule 3-2(c), an intradistrict assignment to the San Jose

11   Division is appropriate because a substantial part of the events or omissions which give rise to the

12   claims asserted herein occurred in this Division, including that Defendants reside in this division and

13   Robinhood's Terms of Service require claims be brought in Santa Clara County.

14   **FACTUAL ALLEGATIONS**

15       18.    Robinhood is an online brokerage firm founded in 2013 that touts itself as "a pioneer

16   in commission-free investing." Robinhood, https://robinhood.com/us/en/ (last visited March 6,

17   2020). It is one of several young companies that aim to compete with traditional financial institutions

18   by offering cheaper and more user-friendly digital services. The firm markets itself primarily to

19   younger investors and claims over 10 million users of its trading app. In 2019, Robinhood raised

20   $323 million in funding at a $7.6 billion valuation.

21       19.    At 9:33 am[1] the morning of March 2, 2020, a Monday and the first day of the month

22   for trading traditional securities, Robinhood's trading platform completely stopped functioning. As a

23   result, at that moment, the platform stopped processing orders entered by customers prior to the

24   Outage and customers were unable to enter new orders. Robinhood was unable to restore full

25   functionality until Tuesday, March 3, 2020 at 11:54 am. In total, Robinhood's systems were

26   nonfunctional and inaccessible to customers for 26 hours and 21 minutes.

27       [1] All times are Eastern Standard Time, unless otherwise indicated.

28   - 4 -

20.     At 11:02 am the morning of March 2, Robinhood publicly acknowledged the "downtime" and impact on "all functionalities" of the platform in on Twitter:



Twitter, https://twitter.com/AskRobinhood/status/1234509495084240898 (last visited March 6, 2020). The Robinhood Help account (@AskRobinhood) is owned or controlled by Robinhood. The blue verified badge means that the account is of public interest and Twitter has verified its authenticity.

21.     Around 4:00 pm on the afternoon of March 2, Robinhood emailed its customers directly to repeat the substance of the message posted to Twitter earlier that morning, which was that Robinhood was "experiencing downtime across [its] platform," that the outage was "affecting functionality on Robinhood," and that the outage was affecting customers' "ability to trade":

Update on Robinhood System Status

This morning, starting at 9:33 AM ET, we started experiencing downtime across our platform. These issues are affecting functionality on Robinhood, including your ability to trade.

All of us at Robinhood are working as hard as we can to resume service, and we'll update you as soon as the issue is resolved. We understand the impact this is having and we apologize for any trouble this has caused.

CLASS ACTION COMPLAINT

Please check our status page at status.robinhood.com. Thank you for being a Robinhood customer.

Sincerely,
The Robinhood Team
robinhood.com

22.    At 4:07 pm on March 2, immediately after emailing its customers, Robinhood posted another message to Twitter publicly confirming that that its platform was "still experiencing system-wide issues" and that it had yet to "resume service":



Twitter,   https://twitter.com/AskRobinhood/status/1234586094395523074   (last  visited  March  6, 2020).

23.    Early on March 3, 2020, at 2:19 am, Robinhood posted two messages to its Twitter account reporting that its systems were "currently back up and running," that customers might still "observe some downtime" as Robinhood prepared for the day, and acknowledging that "issues like this are not acceptable":

CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11



12  Twitter, https://twitter.com/AskRobinhood/status/1234740273877405697 (last visited March 6,

13  2020).

14      24.    At about 2:45 am the morning of March 3, Robinhood sent another email to

15  customers saying directly to them what it had just said publicly, which was that its systems were

16  "currently back up and running," that the outage was "not acceptable," and that Robinhood realized

17  that it had "let [customers] down":

18                          Robinhood is currently back online

19              We're reaching out to let you know that Robinhood is currently back
                up and running.
20
                We want to assure you that your funds are safe and personal
21              information was not affected.

22
                When it comes to your money, issues like this are not acceptable. We
23              realize we let you down, and our team is committed to improving your
                experience.
24

25      25.    At 10:11 am on March 3, Robinhood reported, again through its public-facing Twitter

26  account, that its "systems are currently experiencing downtime" and that "full functionality" of the

27  Robinhood platform remained unavailable to customers:

28                                           - 7 -

1

2

3

4

5

6

7

8



9   Twitter,  https://twitter.com/AskRobinhood/status/1234859068763844613  (last accessed March 6,

10  2020).

11          26.    At 11:35 am, later the morning of March 3, Robinhood stated on its Twitter account

12  that its service had "been partially restored" and that it was "working toward restoring and

13  maintaining full functionality":

14

15

16

17



18

19

20

21

22  Twitter, https://twitter.com/AskRobinhood/status/1234880124463435776 (last visited March 6,

23  2020).

24          27.    At 11:54 am on March 3, Robinhood reported that its systems had been "now fully

25  restored":

26

27

28
                                        - 8 -



Twitter, https://twitter.com/AskRobinhood/status/1234884989189124096 (last visited March 6, 2020).

28.    On March 3, 3030, the co-founds and co-CEOs of Robinhood released a statement on Robinhood's blog, entitled "Under the Hood" and subtitled "The Official Robinhood Blog," explaining that the "outage" was caused by "stress on our infrastructure" and that, while it knows customers "depend on Robinhood for [their] investments," it took "too long" to restore services:

An Update from Robinhood's Founders

When it comes to your money, we know how important it is for you to have answers. The outages you have experienced over the last two days are not acceptable and we want to share an update on the current situation.

Our team has spent the last two days evaluating and addressing this issue. We worked as quickly as possible to restore service, but it took us a while. Too long. We now understand the cause of the outage was stress on our infrastructure—which struggled with unprecedented load. That in turn led to a "thundering herd" effect—triggering a failure of our DNS system.

Multiple factors contributed to the unprecedented load that ultimately led to the outages. The factors included, among others, highly volatile and historic market conditions; record volume; and record account sign-ups.

Our team is continuing to work to improve the resilience of our infrastructure to meet the heightened load we have been experiencing. We're simultaneously working to reduce the interdependencies in our overall infrastructure. We're also investing in additional redundancies in our infrastructure.

CLASS ACTION COMPLAINT

After a brief outage this morning, our trading platform was stable for the remainder of the day. As our engineering team works to upgrade our infrastructure, we may experience additional brief outages, but we're now better positioned to more quickly resolve them.

We take our responsibility to you and your money seriously. We recognize that many of you have questions, and we're working to respond to them as quickly as possible.

Many of you depend on Robinhood for your investments, and we're personally committed to doing all we can to operate a stable service that's available when you need it the most.

—Baiju and Vlad, Co-Founders and Co-CEOs

Robinhood,   https://blog.robinhood.com/news/2020/3/3/an-update-from-robinhoods-founders   (last visited March 6, 2020).

29.    Notwithstanding Robinhood's explanation and apologies, its trading platform crashed again in the week after trading services had been restored.

**PLAINTIFF'S EXPERIENCE**

30.    Plaintiff Alexander Adame is a customer of Robinhood and entered into a Customer Agreement, as discussed further below, in order to use Robinhood's online trading systems.

31.    On Thursday, February 27, 2020, using his Robinhood trading account, Plaintiff purchased five SPY put options with a strike price of $304.00. The next day, on February 28, 2020, Plaintiff purchased three more SPY put options with a strike price of $288.00. All eight puts were monthly contracts expiring on Monday, March 2, 2020, the day of the Outage.

32.    SPY is an exchange traded fund ("ETF") that tracks the performance of the S&P 500. Generally, investing in put options is profitable if the price of the underlying security falls; if the price of the underlying security rises, the investment generally results in a loss. The potential profits and losses are generally proportional to change in value of the underlying security.

33.    On the morning of the Outage, Plaintiff saw that the SPY index was generally increasing in value, meaning his investment was generating a loss. In order to limit or mitigate his losses, Plaintiff attempted to sell his option contracts by accessing the Robinhood platform and

- 10 -

1    entering a sell order. However, Plaintiff was unable to do so due to the Outage. Plaintiff's put

2    options expired worthless later that day.

3        34.    Plaintiff attempted to contact Robinhood multiple times through the Outage to,

4    among other things, notify Robinhood that he was unable to exercise his option agreements or

5    otherwise execute any trades in his account, and to seek assistance in mitigating his losses. Plaintiff

6    received no such support and was unable to mitigate his losses of approximately $6,000.

7    **CLASS ACTION ALLEGATIONS**

8        35.    Plaintiff brings claims pursuant to Federal Rule of Civil Procedure 23 on behalf of the

9    following class, as defined below:

10    *All persons within the United States who, on March 2, 2020, held a covered short*

11    *position or an option contract expiring on that date in a Robinhood trading account.*

12    Excluded from the class are the Robinhood entities and their current employees, counsel for either

13    party, as well as the Court and its personnel presiding over this action.

14        36.    This action has been brought and may properly be maintained as a class action against

15    Robinhood pursuant to the provisions of Federal Rule of Civil Procedure 23.

16        37.    Numerosity: The precise number of members of the proposed class is unknown to

17    Plaintiff at this time, but, based on information and belief, class members are so numerous that their

18    individual joinder herein is impracticable. Based on information and belief and publicly available

19    reports, class members number in the thousands. All class members may be notified of the pendency

20    of this action by reference to Robinhood's records, or by other alternative means.

21        38.    Commonality: Numerous questions of law or fact are common to the claims of

22    Plaintiff and members of the proposed class. These common questions of law and fact exist as to all

23    class members and predominate over questions affecting only individual class members. These

24    common legal and factual questions include, but are not limited to the following:

25            a.    Whether Robinhood's technology was inadequate to provide the trading

26            services that were needed to handle reasonable consumer demand.

27

28                        - 11 -

1     b. Whether Robinhood failed to provide contingencies to customers to execute

2 timely trades in the event of an Outage.

3     c. Whether Robinhood was in breach of its contracts or the implied covenant of

4 good faith and fair dealing in connection with its failure to provide trading services in a

5 timely manner.

6     d. Whether Robinhood was negligent or grossly negligent by failing to provide

7 trading services in a timely manner due to its substandard and inadequate technology

8 platform and lack of timely response to customers requesting to place trades.

9     e. Whether Plaintiff and the other class members were injured by Robinhood's

10 conduct, and if so, the appropriate classwide measure of damages, restitution, and other

11 appropriate relief, including injunctive relief.

12     f. Whether Plaintiff and the other class members are entitled to injunctive and

13 declaratory relief.

14   39. Typicality: The claims of the named Plaintiff are typical of the claims of the proposed

15 class in that the named Plaintiff was a customer during the class period and was unable to access his

16 accounts and place time-sensitive trades and sustained damages as a result of Robinhood's wrongful

17 conduct.

18   40. Adequate Representation: Plaintiff will fairly and adequately represent the interests of

19 the class in that he has no conflicts with any other class members. Plaintiff has retained competent

20 counsel experienced in prosecuting complex class actions and they will vigorously litigate this class

21 action.

22   41. Predominance and Superiority: There is no plain, speedy, or adequate remedy other

23 than by maintenance of this class action. A class action is superior to other available means, if any,

24 for the fair and efficient adjudication of this controversy. Prosecution of separate actions by

25 individual class members would create the risk of inconsistent or varying adjudications, establishing

26 incompatible standards of conduct for the Defendant. Additionally, given the relatively modest

27 damages sustained by most individual class members, few, if any, proposed class members could or

28                 - 12 -

1   would sustain the economic burden of pursuing individual remedies for Robinhood's wrongful

2   conduct. Treatment as a class action will achieve substantial economies of time, effort, and expense,

3   and provide comprehensive and uniform supervision by a single court. This class action presents no

4   material difficulties in management.

5        42.   Class action certification is warranted under Fed. R. Civ P. 23(b)(1)(A) because the

6   prosecution of separate actions by individual members of the proposed class would create a risk of

7   inconsistent or varying adjudications with respect to individual class members, which may produce

8   incompatible standards of conduct for Defendants.

9        43.   Class action certification is warranted under Fed. R. Civ P. 23(b)(1)(B) because the

10   prosecution of separate actions by individual members of the proposed class would create a risk of

11   adjudications with respect to individual class members which may, as a practical matter, be

12   dispositive of the interests of the other members not parties to the adjudications or substantially

13   impair or impede their ability to protect their interests.

14       44.   The prerequisites to maintaining a class action for injunctive or equitable relief

15   pursuant to Fed. R. Civ. P. 23(b)(2) are met as Robinhood has acted or refused to act on grounds

16   generally applicable to the class, thereby making final injunctive, declaratory, or equitable relief

17   appropriate with respect to the class as a whole.

18       45.   Class action certification is also warranted under Fed. R. Civ P. 23(b)(3) because

19   questions of law or fact common to the class members predominate over any questions affecting

20   only individual members, and a class action is superior to other available remedies for the fair and

21   efficient adjudication of this controversy. The amount of damages available to the individual

22   Plaintiff is insufficient to make litigation addressing Robinhood's conduct economically feasible for

23   most in the absence of the class action procedure. Individualized litigation also presents a potential

24   for inconsistent or contradictory judgments, and increases the delay and expense to all parties and

25   the court system presented by the legal and factual issues of the case. By contrast, the class action

26   device presents far fewer management difficulties and provides the benefits of a single adjudication,

27   economy of scale, and comprehensive supervision by a single court.

28

CLASS ACTION COMPLAINT

1    46.    Class action certification is also warranted under Fed. R. Civ P. 23(c)(4) because

2    questions of law or fact common to the class members may be certified and decided by this Court on

3    a classwide basis.

4                                    **CLAIMS FOR RELIEF**

5                                          **COUNT I**

6                                    **Breach of Contract**

7    47.    Plaintiff hereby incorporates by reference the factual allegations contained herein.

8    48.    Customers must enter into the Customer Agreement with Defendants Robinhood

9    Financial and Robinhood Securities to open a Robinhood trading account "for the purchase, sale or

10   carrying of securities or contracts relating thereto . . . which transactions are cleared through

11   Robinhood Securities[.]" Ex. A at 1. The Customer Agreement provides further that "the terms and

12   conditions of this agreement govern all aspects of [the customer's] relationship with Robinhood

13   regarding [the customer's] accounts." *Id*. Finally, the Customer Agreement also states that California

14   law governs "[t]his Agreement and all transactions made in [the customer's] account[.]" *Id.* at 37.

15   49.    Use of Robinhood's website and app is governed by the Robinhood Terms and

16   Conditions, which "are in addition to any other agreements between [customers] and Robinhood

17   Financial and Robinhood Markets . . . including any customer or account agreements[.]" The Terms

18   and Conditions provide, in relevant part, as follows:

19
20           The Robinhood website and mobile application (collectively, the "Service") may
             include or make available certain content (the "Content"). Content includes, without
21           limitation: (1) account positions, balances, transactions, confirmations, and order
             history; (2) general news and information, commentary, research reports, educational
22           material and information and data concerning the financial markets, securities and
             other subjects; (3) market data such as quotations for securities transactions and/or
23           last sale information for completed securities transactions reported in accordance with
             federal securities regulations; (4) financial and investment interactive tools, such as
24           alerts or calculators; (5) tax preparation, bill payment and account management tools;
             (6) company names, logos, product and service names, trade names, trademarks and
25           services marks. . . ; and (7) any other information, content, services, or software.

26

27

28                                          - 14 -
     CLASS ACTION COMPLAINT

1    Ex. B at 1. The Terms and Conditions also state that disputes are governed by California law and

2    must be brought in Santa Clara County, California. *Id.* at 5.

3        50.    Robinhood breached its Customer Agreement and Terms and Conditions by, among

4    other things, failing to provide adequate technological systems necessary to perform under the

5    contract; failing to provide trading services when an Outage occurred due to a lack of infrastructure

6    and alternate means for customers to place timely trades; failing to provide access to its trading

7    services in a timely manner; and otherwise permitting the Outage prohibiting the parties from

8    performing in a timely manner (or at all) under the contracts.

9        51.    Robinhood's failure to perform and its breaches of the Customer Agreement and

10   Terms and Conditions resulted in damages and losses to Plaintiff and class members, and continues

11   to expose them to harm because Robinhood continues to fail to perform under the contracts. These

12   losses reflect damages to Plaintiff and class members in an amount to be determined at trial or

13   separate proceedings as necessary.

14                                **COUNT II**

15            **Breach of the Implied Covenant of Good Faith and Fair Dealing**

16       52.    Plaintiff hereby incorporates by reference the factual allegations contained herein.

17       53.    Plaintiff and class members entered into the Customer Agreement with Defendants

18   Robinhood Financial and Robinhood Securities to open a Robinhood trading account. Ex. A. They

19   agreed to Defendant Robinhood Financial and Robinhood Markets's Terms and Conditions by using

20   Robinhood's website and app.

21       54.    Plaintiff and class members fulfilled their obligations under these contracts by

22   adhering to their terms and using Robinhood's trading services through its website and app.

23       55.    Robinhood was obligated under the Customer Agreement and Robinhood Terms and

24   Conditions to timely provide the trading services required under those contracts at all times,

25   including but not limited to when Plaintiff and class members attempted to use the service during the

26   Outage.

27

28                                - 15 -

CLASS ACTION COMPLAINT

56.    Robinhood unfairly interfered with Plaintiff's and class members' rights to receive the benefits of the Customer Agreement by, among other things, failing to provide adequate technological systems necessary to perform under the contract; failing to provide trading services when an Outage occurred due to a lack of infrastructure and alternate means for customers to place timely trades; failing to provide access to its trading services in a timely manner; and otherwise permitting the Outage prohibiting the parties from performing in a timely manner (or at all) under the contracts.

57.    Robinhood's conduct has caused Plaintiff and class members' harm, losses, and damages and continues to expose them to harm because Robinhood continues to fail to perform under the Customer Agreement and Robinhood Terms and Conditions. These losses reflect damages to Plaintiff and class members in an amount to be determined at trial or separate proceedings as necessary.

## COUNT III

### Negligence

58.    Plaintiff hereby incorporates by reference the factual allegations contained herein.

59.    Robinhood had a duty to exercise reasonable care in conducting and facilitating transactions for its customers.

60.    Robinhood unlawfully breached its duties by, among other things, failing to provide adequate technological systems necessary to perform under the contract; failing to provide trading services when an Outage occurred due to a lack of infrastructure and alternate means for customers to place timely trades; failing to provide access to its trading services in a timely manner; and otherwise permitting the Outage prohibiting the parties from performing in a timely manner (or at all) under the contracts.

61.    Robinhood's negligent and wrongful breaches of its duties owed to Plaintiff and class members proximately caused losses and damages that would not have occurred but for Robinhood's breach of its duty of due care. These losses reflect damages to Plaintiff and class members in an amount to be determined at trial or separate proceedings as necessary.

- 16 -

**COUNT IV**

**Gross Negligence**

62.     Plaintiff hereby incorporates by reference the factual allegations contained herein.

63.     Robinhood had a duty to exercise reasonable care in conducting and facilitating transactions for its customers.

64.     Robinhood unlawfully breached its duties by, among other things, failing to provide adequate technological systems necessary to perform under the contract; failing to provide trading services when an Outage occurred due to a lack of infrastructure and alternate means for customers to place timely trades; failing to provide access to its trading services in a timely manner; and otherwise permitting the Outage prohibiting the parties from performing in a timely manner (or at all) under the contracts.

65.     Robinhood's conduct as set forth in this Complaint was want of even scant care and its acts and omissions were and continue to be an extreme departure from the ordinary standard of conduct. Indeed, Robinhood essentially abandoned its customers altogether during the Outage, a standard of care so far below what is required for business engaging in time sensitive trading services that it amounts to a complete abandonment of its duties. Essentially no other conduct than that committed by Robinhood could be more grossly negligent than abandoning its customers altogether for substantial periods of times during which they incurred substantial losses and were unable to contact anyone at Robinhood.

66.     Robinhood's grossly negligent and wrongful breaches of its duties owed to Plaintiff and class members proximately caused losses and damages that would not have occurred but for Robinhood's gross breach of its duty of due care. These losses reflect damages to Plaintiff and class members in an amount to be determined at trial or separate proceedings as necessary.

**COUNT V**

**Declaratory Relief**

67.     Plaintiff hereby incorporates by reference the factual allegations contained herein.

- 17 -

1    68.    Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 et seq., this Court is

2    authorized to enter a judgment declaring the rights and legal relations of the parties and grant further

3    necessary relief. Furthermore, the Court has broad authority to restrain acts, such as here, which are

4    tortious and which violate the terms of the federal and state statutes described in this Complaint.

5    69.    An actual controversy has arisen. Plaintiff allege that Robinhood is not complying

6    with its obligations under the Customer Agreement and Robinhood Terms and Conditions, and does

7    not maintain sufficient infrastructure to provide the trading services it must do so in a complete and

8    timely manner.

9    70.    Pursuant to its authority under the Declaratory Judgment Act, this Court should enter

10    a judgment declaring, among other things, the following:

11    a.    Robinhood owed and continues to owe a legal duty to comply with its

12    agreements to maintain adequate infrastructure to handle consumer demand and execute

13    trades in a complete and timely manner.

14    b.    Robinhood continues to breach this legal duty by failing to employ reasonable

15    measures to prevent Outages and provide alternative means for customers to make timely

16    trades on its platform.

17    71.    The Court also should issue corresponding injunctive relief requiring Robinhood to

18    employ adequate quality control consistent with industry standards and the parties' contracts.

19    **PRAYER FOR RELIEF**

20    WHEREFORE, Plaintiff requests that this Court enter a judgment against Defendants and in

21    favor of Plaintiff and the class and award the following relief:

22    A.    Certifying the class and naming Plaintiff as representative of the class and Plaintiff's

23    attorneys as Class Counsel to represent the class members;

24    B.    Declaring the Robinhood's conduct violates the statutes referenced herein;

25    C.    Finding in favor of Plaintiff and the class on all counts asserted herein;

26    D.    Granting damages or restitution to Plaintiff and the class;

27

28

- 18 -

CLASS ACTION COMPLAINT

1    E.    Granting declaratory and injunctive relief to enjoin Robinhood from engaging in the

2    unlawful practices described in this Complaint;

3    F.    Granting compensatory damages, the amount of which is to be determined at trial;

4    G.    Granting punitive damages;

5    H.    Granting pre- and post-judgment interest on all amounts awarded;

6    I.    Granting restitution and all other forms of equitable monetary relief;

7    J.    Granting injunctive relief as pleaded or as the Court may deem proper;

8    K.    Awarding Plaintiff and the class reasonable attorneys' fees and expenses and costs of

9    suit; and

10    L.    Granting further relief as this Court may deem proper.

11    **JURY DEMAND**

12    Pursuant to Fed. R. Civ. P. 38(b), Plaintiff, individually and on behalf of the class, demands

13    a trial by jury for all issues so triable.

14                                    **THE RESTIS LAW FIRM, P.C.**

15    Dated: March 11, 2020              /s/ William R. Restis

16                                        William R. Restis, Esq.
                                          william@restislaw.com

17                                        550 West C Street, Suite 1520
                                          San Diego, CA 92101

18                                        Tel: (619) 270-8383
                                          Fax: (619) 752-1552

19

20                                        **LITE DEPALMA GREENBERG, LLC**
                                          Joseph J. DePalma*

21                                        jdepalma@litedepalma.com
                                          Steven J. Greenfogel*

22                                        sgreenfogel@litedepalma.com
                                          Jeremy Nash*

23                                        jnash@litedepalma.com
                                          570 Broad Street, Suite 1201

24                                        Newark, NJ 07102

25                                        Tel: (973) 623-3000
                                          Fax: (973) 623-0858

26

27                                        *Attorneys for Plaintiff and the Putative Class*

28                                        - 19 -

CLASS ACTION COMPLAINT

Provided by CourtAlert                                                 www.CourtAlert.com

1

2          * Applications for these attorneys to appear
           before this Court *pro hac vice* are
           forthcoming and shall be filed at an
           appropriate time.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                                    - 20 -

EXHIBIT A

Revised February 5, 2020

**Robinhood Financial LLC & Robinhood Securities, LLC**
**Customer Agreement**

In consideration of Robinhood Financial LLC, Robinhood Securities, LLC, and their agents and assigns (collectively, "Robinhood") opening one or more accounts on my behalf ("My Account(s)" or the "Account(s)") for the purchase, sale or carrying of securities or contracts relating thereto and/or the borrowing of funds, which transactions are cleared through Robinhood Securities, I represent and agree with respect to all Accounts, whether margin or cash, to the terms set forth below (the "Agreement"). When used in this Agreement, the words "I", "Me", "My", "We", or "Us" mean the owner(s) of the Account. For purposes of this Agreement, Business Days are Monday through Friday, excluding federal holidays. Any references to "days" found in this Agreement are calendar days unless indicated otherwise.

**I UNDERSTAND THAT THE TERMS AND CONDITIONS OF THIS AGREEMENT GOVERN ALL ASPECTS OF MY RELATIONSHIP WITH ROBINHOOD REGARDING MY ACCOUNTS. I WILL CAREFULLY READ, UNDERSTAND AND ACCEPT THE TERMS AND CONDITIONS OF THIS AGREEMENT BEFORE I CLICK "SUBMIT APPLICATION" OR OTHER SIMILARLY WORDED BUTTON. IF I HAVE ANY QUESTIONS ABOUT ANY OF THE PROVISIONS IN THIS AGREEMENT, I WILL EMAIL HELP@ROBINHOOD.COM. I UNDERSTAND THAT CLICKING "SUBMIT APPLICATION" IS THE LEGAL EQUIVALENT OF MY MANUALLY SIGNING THIS AGREEMENT AND I WILL BE LEGALLY BOUND BY ITS TERMS AND CONDITIONS. BY ENTERING INTO THIS AGREEMENT, I ACKNOWLEDGE RECEIPT OF THE ROBINHOOD PRIVACY POLICY AND PRIVACY AND SECURITY STATEMENT. I UNDERSTAND THAT THIS AGREEMENT MAY BE AMENDED FROM TIME TO TIME BY ROBINHOOD, WITH REVISED TERMS POSTED ON THE ROBINHOOD WEBSITE. I AGREE TO CHECK FOR UPDATES TO THIS AGREEMENT. I UNDERSTAND THAT BY CONTINUING TO MAINTAIN MY SECURITIES BROKERAGE ACCOUNT WITHOUT OBJECTING TO ANY REVISED TERMS OF THIS AGREEMENT, I AM ACCEPTING THE TERMS OF THE REVISED AGREEMENT AND I WILL BE LEGALLY BOUND BY ITS TERMS AND CONDITIONS. IF I REQUEST OTHER SERVICES PROVIDED BY ROBINHOOD THAT REQUIRE ME TO AGREE TO SPECIFIC TERMS AND CONDITIONS ELECTRONICALLY (THROUGH CLICKS OR OTHER ACTIONS) OR OTHERWISE, SUCH TERMS AND CONDITIONS WILL BE DEEMED AN AMENDMENT AND WILL BE INCORPORATED INTO AND MADE PART OF THIS AGREEMENT. I ALSO UNDERSTAND THAT BY CLICKING "SUBMIT APPLICATION" I HAVE ACKNOWLEDGED THAT THIS AGREEMENT CONTAINS A PREDISPUTE ARBITRATION CLAUSE IN SECTION 37 HEREIN.**

1.      **Capacity and Status.** If an individual, I am of legal age under the laws of the state where I reside and authorized to enter into this Agreement. If an entity, I am duly formed, validly existing and in good standing in My state of organization, have full power and authority to enter and perform this Agreement, and the persons signing the account application are fully authorized to act on My behalf. No person, except Myself, has any interest in the Account

Provided by CourtAlert www.CourtAlert.com

opened pursuant to this Agreement. I acknowledge that unless Robinhood receives written objection from Me, Robinhood may provide My name, address, and securities positions to requesting companies in which I hold securities. Except as otherwise disclosed to Robinhood in writing, neither I nor any member of My immediate family is an employee of any exchange, any corporation of which any exchange owns a majority of the capital stock, a member of any exchange or self-regulatory organization, a member of any firm or member corporation registered on any exchange, a bank, trust company, insurance company or any corporation, firm or individual engaged in the business of dealing either as a broker-dealer or as principal in securities. I understand and agree that I am obligated to promptly notify Robinhood in writing if I or a member of My immediate family becomes registered or employed in any of the above-described capacities. Except as otherwise disclosed to Robinhood in writing, I am not a Professional (as defined below). I further agree to promptly notify Robinhood in writing if I am now or if I become a Professional or an officer, director or 10% stockholder of any publicly traded company.

2. **Market Data.** Robinhood may choose to make certain market data available to Me pursuant to the terms and conditions set forth in this Agreement. By executing this Agreement, I agree to comply with those terms and conditions.

   A. Definitions.

      1) "Market Data" means (a) last sale information and quotation information relating to securities that are admitted to dealings on the New York Stock Exchange ("NYSE"), (b) such bond and other equity last sale and quotation information, and such index and other market information, as United States-registered national securities exchanges and national securities associations (each, an "Authorizing SRO") may make available and as the NYSE may from time to time designate as "Market Data"; and (c) all information that derives from any such information.

      2) "Nonprofessional" means any natural person who receives market data solely for his/her personal, non- business use and who is not a "Professional." A "Professional" includes an individual who, if working in the United States, is: (i) registered or qualified with the Securities and Exchange Commission (the "SEC"), the Commodity Futures Trading Commission (the "CFTC"), any state securities agency, any securities exchange or association, or any commodities or futures contract market or association; (ii) engaged as an "investment advisor" as that term is defined in Section 202 (a) (11) of the Investment Advisers Act of 1940 (whether or not registered or qualified under that Act), or (iii) employed by a bank or other organization exempt from registration under federal and/or state securities laws to perform functions that would require him or her to be so registered or qualified if he or she were to perform such functions for an organization not so exempt. A person who works outside of the United States will be considered a "Professional" if he or she performs the same functions as someone who would be considered a "Professional" in the United States.

Provided by CourtAlert                                                    www.CourtAlert.com

B.   Provisions Applicable to All Users.

1)   Proprietary Nature of Data.  I understand and acknowledge that each Authorizing SRO and Other Data Disseminator (as defined below) has a proprietary interest in the Market Data that originates on or derives from it or its market(s).  I agree not to reproduce, distribute, sell or commercially exploit the Market Data in any manner.

2)   Enforcement.  I understand and acknowledge that (a) the Authorizing SROs are third-party beneficiaries under this Agreement and (b) the Authorizing SROs or their authorized representative(s) may enforce this Agreement, by legal proceedings or otherwise, against Me or any person that obtains Market Data that is made available pursuant to this Agreement other than as this Agreement contemplates.

3)   Data Not Guaranteed.  I understand that neither Robinhood nor any Authorizing SRO, other entity whose information is made available over the Authorizing SROs' facilities (an "Other Data Disseminator"), or information processor that assists any Authorizing SRO or Other Data Disseminator in making Market Data available (collectively, the "Disseminating Parties") guarantees the timeliness, sequence, accuracy, completeness, reliability, or content of Market Data or of other market information or messages disseminated to or by any Disseminating Party.  I understand that neither Robinhood Financial nor any Disseminating Party guarantees the timeliness, sequence, accuracy, completeness, reliability or content of market information, or messages disseminated to or by any party. I understand that neither Robinhood Financial nor any Disseminating Party warrants that the service provided by any such entity will be uninterrupted or error-free.  I further understand that Market Data by Xignite provides market data to Robinhood Financial customers.  NEITHER ROBINHOOD FINANCIAL, ANY OF ITS AFFILIATES, THEIR RESPECTIVE OFFICERS OR EMPLOYEES, NOR ANY DISSEMINATING PARTY SHALL BE LIABLE IN ANY WAY FOR (A) ANY INACCURACY, ERROR OR DELAY IN, OR OMISSION OF, (I) ANY MARKET DATA, INFORMATION OR MESSAGE, OR (II) THE TRANSMISSION OR DELIVERY OF ANY SUCH DATA, INFORMATION OR MESSAGE; OR (B) ANY LOSS (AS DEFINED IN THIS AGREEMENT) OR DAMAGE ARISING FROM OR OCCASIONED BY (I) ANY SUCH INACCURACY, ERROR, DELAY OR OMISSION, (II) NON-PERFORMANCE OR III) INTERRUPTION IN ANY SUCH MARKET DATA, INFORMATION, OR MESSAGE, WHETHER DUE TO ANY ACT OR OMISSION BY ROBINHOOD FINANCIAL, ANY OF ITS AFFILIATES, THEIR RESPECTIVE OFFICERS OR EMPLOYEES, OR ANY DISSEMINATING PARTY, OR TO ANY "FORCE MAJEURE" (E.G., FLOOD, EXTRAORDINARY WEATHER CONDITIONS, EARTHQUAKE OR OTHER ACT OF GOD, FIRE, WAR, INSURRECTION, RIOT, LABOR DISPUTE, ACCIDENT, ACTION OF

Provided by CourtAlert

GOVERNMENT, OR COMMUNICATIONS OR POWER FAILURE, EQUIPMENT OR SOFTWARE MALFUNCTION) OR ANY OTHER CAUSE BEYOND THE REASONABLE CONTROL OF ROBINHOOD FINANCIAL, ITS AFFILIATES, THEIR RESPECTIVE OFFICERS AND EMPLOYEES, OR ANY DISSEMINATING PARTY.

4)      <u>Permitted Use</u>.  I shall not furnish Market Data to any other person or entity. If I receive Market Data other than as a Nonprofessional, I shall use Market Data only for My individual use.

5)      <u>Dissemination, Discontinuance, or Modification</u>.  I understand and acknowledge that, at any time, the Authorizing SROs may discontinue disseminating any category of Market Data, may change or eliminate any transmission method and may change transmission speeds or other signal characteristics.  The Authorizing SROs shall not be liable for any resulting liability, loss or damages that may arise therefrom.

6)      <u>Duration; Survival</u>.  This Section 2 of this Agreement remains in effect for so long as I have the ability to receive Market Data as contemplated by this Section 2.  In addition, Sections 2(B)(1)-(3) and the first two sentences of Section 2(B)(7), survive any termination of this Agreement.

7)      <u>Miscellaneous</u>.  The laws of the State of New York shall govern this Section 2 and it shall be interpreted in accordance with those laws.  This Subsection is subject to the Securities Exchange Act of 1934, the rules promulgated under that act, and the joint-industry plans entered into pursuant to that act.

C.      <u>Provisions Applicable to Nonprofessionals</u>.

1)      <u>Permitted Receipt</u>.  I understand that I may not receive Market Data from Robinhood as a Nonprofessional, and Robinhood may not provide Market Data to Me as a Nonprofessional, unless Robinhood first properly determines that I qualify as a Nonprofessional as defined above and I in fact qualify as a Nonprofessional.  I agree that, as a prerequisite to Robinhood Financial qualifying Me as a Nonprofessional, I will provide to Robinhood truthful and accurate information about Me, such as: my occupation, employer, employment position and functions; my use of Market Data; my registration status with any securities agency, exchange, association, or regulatory body, or any commodities or future contract market, association, or regulatory body, whether in the United States or elsewhere; and any compensation of any kind I may receive from any individual or entity for my trading activities, asset management, or investment advice.  Except as otherwise declared to Robinhood in writing, by executing this Agreement, I certify that I meet the definition of Nonprofessional as set forth in this Agreement.

2)    <u>Permitted Use</u>.  If I am a Nonprofessional, I agree to receive Market Data solely for my personal, non-business use.

3)    <u>Notification</u>.  I shall notify Robinhood promptly in writing of any change in my circumstances that may cause Me to cease to qualify as a Nonprofessional.

## 3. NASDAQ OMX Information.

A.    <u>Definitions</u>.

1)    "Information" means certain market data and other data disseminated that has been collected, validated, processed, and recorded by any system NASDAQ OMX has developed for the creation or dissemination of Information or other sources made available for transmission to and receipt from either a distributor such as RHF or from NASDAQ OMX relating to: a) eligible securities or other financial instruments, markets, products, vehicles, indicators, or devices; b) activities of a NASDAQ OMX company; c) other information and data from a NASDAQ OMX company. "Information" also includes any element of Information as used or processed in such a way that the Information can be identified, recalculated or re-engineered from the processed Information or that the processed Information can be used as a substitute for Information.

2)    "NASDAQ OMX" means The NASDAQ OMX Group, Inc., a Delaware limited liability company and its subsidiaries and Affiliates (collectively, "NASDAQ OMX").

B.    <u>Use of Data</u>.  I understand that I may use the Information only for personal use and not for any business purpose.  I may not sell, lease, furnish or otherwise permit or provide access to the Information to any other natural person or entity ("Person") or to any other office or place.  I will not engage in the operation of any illegal business use or permit anyone else to use the Information, or any part thereof, for any illegal purpose or violate any NASDAQ OMX or SEC Rule or any FSA rule or other applicable law, rule or regulation.  I may not present the Information rendered in any unfair, misleading or discriminatory format.  I shall take reasonable security precautions to prevent any Person other than Myself from gaining access to the Information.

C.    <u>Proprietary Data</u>.  I acknowledge and agree that NASDAQ OMX has proprietary rights to the Information that originates on or derives from markets regulated or operated by NASDAQ OMX, and compilation or other rights to Information gathered from other sources.  I further acknowledge and agree that NASDAQ OMX's third-party information providers have exclusive proprietary rights to their respective Information.  In the event of any misappropriation or misuse by Me or anyone who accesses the Information through Me, NASDAQ OMX or its third-

party information providers shall have the right to obtain injunctive relief for its respective materials.

D. <u>System</u>. I acknowledge that NASDAQ OMX, in its sole discretion, may from time-to-time make modifications to its system or the Information. Such modifications may require corresponding changes to be made in Robinhood Financial's service. Changes or the failure to make timely changes by Me may sever or affect My access to or use of the Information. I understand that neither NASDAQ OMX nor Robinhood shall be responsible for such effects.

E. <u>NASDAQ OMX Limitation of Liability</u>. Except as may otherwise be set forth herein, NASDAQ OMX shall not be liable to Me for indirect, special, punitive, consequential or incidental loss or damage (including, but not limited to, trading losses, lost profits, or other indirect loss or damage) of any nature arising from any cause whatsoever, even if NASDAQ OMX has been advised of the possibility of such damages. NASDAQ OMX shall not be liable to Me for any unavailability, interruption, delay, incompleteness or inaccuracy of the Information. This Section shall not relieve NASDAQ OMX or Me from liability for damages that result from their own gross negligence or willful tortious misconduct or from personal injury or wrongful death claims. I agree that the terms of this Section reflect a reasonable allocation of risk and limitation of liability.

F. <u>Disclaimers of Warranties</u>. NASDAQ OMX and its third-party information providers make no warranties of any kind with respect to the Information—express, implied or statutory (including without limitation, timeliness, truthfulness, sequence, completeness, accuracy, freedom from interruption), any implied warranties arising from trade usage, course of dealing, course of performance or the implied warranties of merchantability or fitness for a particular use or purpose or noninfringement.

G. <u>Termination by NASDAQ OMX</u>. I acknowledge that NASDAQ OMX, when required to do so in fulfillment of statutory obligations, may by notice to Robinhood unilaterally limit or terminate the right of any or all Persons to receive or use the Information and that Robinhood will comply with any such notice and will terminate or limit the furnishing of the Information.

4. **Authorization.** I understand that My Account is self-directed. Accordingly, I appoint Robinhood Financial as My agent for the purpose of carrying out My directions to Robinhood Financial in accordance with the terms and conditions of this Agreement and any attendant risks with respect to the purchase or sale of securities. Robinhood Financial is authorized to open or close My Account(s), place and withdraw orders and take such other steps as are reasonable to carry out My directions. All transactions will be effected only on My order or the order of My authorized delegate, except as described in Section 10. I understand Robinhood Financial provides trading and brokerage services through the Robinhood website (the "Website") and the Robinhood mobile application (the "App"). I agree to receive and transmit financial information through such electronic means. My use

or My grant of access to My Account to any third party to access information or place transactions in My Account is solely at My risk.

**5.      Customer Representations and Responsibilities.**

(A)      <u>Self-directed Account</u>.  I understand that My Account is self-directed, and so that I am solely responsible for any and all orders placed in My Account and that all orders entered by Me or on My behalf are unsolicited and based on My own investment decisions or the investment decision of My duly authorized representative or agent.  Accordingly, I agree that neither Robinhood nor any of its employees, agents, principals, or representatives:

1)      provide investment advice in connection with this Account;
2)      recommend any security, transaction or order;
3)      solicit orders;
4)      act as a market maker in any security;
5)      make discretionary trades; and
6)      produce or provide first-party research providing a specific investment strategies such as buy, sell or hold recommendations, first-party ratings and/or price targets.  To the extent research materials or similar information are available through the App or the Website or the websites of any entity controlled by, controlling, or under common control with Robinhood (such entity, an "Affiliate"), I understand that these materials are intended for informational and educational purposes only and they do not constitute a recommendation to enter into any securities transactions or to engage in any investment strategies.

(B)      <u>Information Accuracy</u>.  I:  (i) certify that the information contained in this Agreement, the account application, and any other document that I furnish to Robinhood Financial in connection with My Account(s) is complete, true and correct, and acknowledge that knowingly giving false information for the purpose of inducing Robinhood Financial to extend credit is a federal crime; (ii) authorize Robinhood Financial to contact any individual or firm noted herein or on the documents referred to in subsection (i) of this Section and any other normal sources of debit or credit information; (iii) authorize anyone so contacted to furnish such information to Robinhood Financial as Robinhood may request; and (iv) agree that this Agreement, the account application and any other document I furnish in connection with My Account is Robinhood's property, as the case may be.  I shall promptly advise Robinhood Financial of any changes to the information in such agreements and documents in writing within ten (10) calendar days.  I authorize Robinhood Financial to obtain reports and provide information to others concerning My creditworthiness and business conduct.  Upon My request, Robinhood agrees to provide Me a copy of any report so obtained.  Robinhood may retain this Agreement, the Account application, and all other such documents and their respective records at Its sole discretion, whether or not credit is extended.

Provided by CourtAlert www.CourtAlert.com

(C)    <u>Risks</u>. I understand that all investments involve risk, that losses may exceed the principal invested, and that the past performance of a security, industry, sector, market, or financial product does not guarantee future results or returns.

(D)    <u>Account Defaults</u>. I understand that My Account comes with many defaulted service instruction features and preferences. I further understand that I am not required to use these defaulted options or preferences and that once My Account is approved and opened I have the sole discretion to control and adjust such defaulted service preferences that relate to My account.

(E)    <u>Knowledge of Account</u>. I understand that I am solely responsible for knowing the rights and terms for all securities purchased, sold and maintained in My Account including mergers, reorganizations, stock splits, name changes or symbol changes, dividends, option symbols, and option deliverables. I further understand that certain securities may grant Me valuable rights that may expire unless I take specific action. These securities include bonds, convertible securities, warrants, stock rights and securities subject to exchange offers or tenders. I am responsible for knowing all expiration dates, redemption dates, and the circumstances under which rights associated with My securities may be called, cancelled, or modified. Robinhood may, but are not obligated to, notify Me of any upcoming expiration or redemption dates, or take any action on My behalf without My specific instructions except as required by law and the rules of regulatory authorities. I acknowledge that Robinhood may adjust My Account to correct any error. If My Account has an option position on the last trading day prior to expiration, which is one cent or more in the money, Robinhood Financial will generally exercise the option, on My behalf. However, Robinhood Financial reserves the right at Its discretion to close any option position prior to expiration date or any position resulting from the exercising/assignment after option expiration. I will be charged a commission for any such transaction. Robinhood Financial is not obligated to take any of these actions and Robinhood Financial is not liable for Losses should it not take them.

(F)    <u>Purchases</u>. All orders for the purchase of securities given for My Account will be authorized by Me and executed in reliance on My promise that an actual purchase is intended. It is My obligation to pay for purchases immediately or on Robinhood's demand. I understand Robinhood may at any time, in its sole discretion and without prior notice to Me, prohibit or restrict My ability to trade securities. I further agree not to allow any person to trade for My Account unless a trading authorization for that person has been received and approved by Robinhood. Robinhood reserve the right to require full payment in cleared funds prior to the acceptance of any order. In the event that I fail to provide sufficient funds, Robinhood may, at its option and without notice to Me, i) charge a reasonable rate of interest, ii) liquidate the Property subject of the buy order, or iii) sell other Property owned by Me and held in any of My Accounts. Robinhood may also charge any consequential Loss to My Account. For purposes of this Agreement, "Property" shall mean all monies, contracts, investments and options, whether for present or future delivery, and all related distributions, proceeds, products and accessions.

(G)    <u>Sales/Short Sales</u>.  I promise to deliver all securities sold in My Account and to provide collateral of a type and amount acceptable to Robinhood Financial for all short sales in My Account.  Robinhood Financial requires that a security be held in My Account prior to the acceptance of a sell order with respect to such security unless the order is specifically designated as a "short sale." If a security is not held in My Account and a sell order is processed, I must promptly deliver such security to Robinhood Financial for receipt in good deliverable form on or before the settlement date.  Any order accepted without negotiable certificates or positions in My Account will be subject, at Robinhood Financial's sole discretion, to cancellation or buy-in.  To ensure this will not occur, I agree to only place sell orders for securities owned by Me and held in My Account at the time My order is placed.

Proceeds of a sale will not be paid to Me or released into My Account until Robinhood Financial has received the security in good deliverable form, whether from a transfer agent or from Me and the settlement of the security is complete.  If the security is not received on or before settlement date, or as market conditions warrant, Robinhood Financial may in its sole discretion purchase the security on the open market for My Account and may liquidate and close out any and all securities in My Account in order to pay for such purchase.  In the event a security is bought in, I will be responsible for all resulting Losses incurred by Robinhood Financial.

I understand that I may execute short sales only in a margin Account and that such execution must comply with applicable short sales rules.

(H)    <u>Assistance by Robinhood</u>.  I understand that when I request assistance from Robinhood or its employees in using the investment tools available on the Website or the App, it will be limited to an explanation of the tool's functionality and, if requested by Me, to the entry by Robinhood or its employees of variables provided by Me, and that such assistance does not constitute investment advice, an opinion with respect to the suitability of any transaction, or solicitation of any orders.

(I)    <u>No Tax or Legal Advice</u>.  I understand that Robinhood does not provide tax or legal advice.

(J)    <u>Discontinuation of Services</u>.  I understand that Robinhood may discontinue My Account and any services related to My Account immediately by providing written notice to Me

(K)    <u>Electronic Access</u>.

1)    I am solely responsible for keeping My Account numbers and PINs confidential and will not share them with third parties.  "PINs" shall mean My username and password.

Provided by CourtAlert
www.CourtAlert.com

2)      I agree and accept full responsibility for monitoring and safeguarding My Accounts and access to My Accounts.

3)      I agree to immediately notify Robinhood in writing, delivered via e-mail and a recognized international delivery service, if I become aware of: (i) any loss, theft, or unauthorized use of My PINs or Account numbers; (ii) any failure by Me to receive any communication from Robinhood indicating that an order was received, executed or cancelled, as applicable; (iii) any failure by Me to receive an accurate written confirmation of an order, execution, or cancellation; (iv) any receipt by Me of confirmation of an order, execution or cancellation, which I did not place; (v) any inaccurate information in or relating to My orders, trades, margin status, Account balances, deposits, withdrawals, securities positions or transaction history; or (vi) any other unauthorized use or access of My Account.

4)      Each of the events described in subsections (K)(3)(i)-(vi) shall be deemed a "Potential Fraudulent Event".  The use and storage of any information including My Account numbers, PINs, portfolio information, transaction activity, account balances and any other information or orders available on My wireless, web-enabled cellular telephone or similar wireless communications device (collectively, "Mobile Device") or My personal computer is at My own risk and is My sole responsibility.  I represent that I am solely responsible for and have authorized any orders or instructions appearing in, originating from, or associated with My Account, My Account number, My username and password, or PINs.  I agree to notify Robinhood immediately after I discover any Potential Fraudulent Event, but in no event more than twenty-four (24) hours following discovery.  Upon request by Robinhood, I agree to report any Potential Fraudulent Event promptly to legal authorities and provide Robinhood a copy of any report prepared by such legal authorities.  I agree to cooperate fully with the legal authorities and Robinhood in any investigation of any Potential Fraudulent Event and I will complete any required affidavits promptly, accurately and thoroughly. I also agree to allow Robinhood access to My Mobile Device, My computer, and My network in connection with Robinhood's investigation of any Potential Fraudulent Event.  I understand that if I fail to do any of these things I may encounter delays in regaining access to the funds in My Account.  I agree to indemnify and hold Robinhood, its Affiliates, and Robinhood and its Affiliates' respective officers, directors, and employees harmless from and against any Losses arising out of or relating to any Potential Fraudulent Event.  I acknowledge that Robinhood does not know when a person entering orders with My username and password is Me.

5)      Trusted Contact Person.  I understand that, pursuant to FINRA regulations, Robinhood is authorized to contact the Trusted Contact Person (as defined by FINRA Rule 4512) designated for My Account and to disclose information about My account to address possible financial exploitation, to confirm the specifics of My current contact information, health status, or

the identity of any legal guardian, executor, trustee or holder of a power of attorney, or as otherwise permitted by Rule 2165.

6. **Clearance of Trades.** I understand that Robinhood Financial has entered into a clearing agreement with Robinhood Securities whereby Robinhood Financial will introduce My Account to Robinhood Securities, and Robinhood Securities will clear all transactions, on a fully-disclosed basis. I understand that Robinhood Securities carries My Account(s) and is responsible for the clearing and bookkeeping of transactions, but is not otherwise responsible for the conduct of Robinhood Financial.

Until receipt from Me of written notice to the contrary, Robinhood Securities may accept from Robinhood Financial, without inquiry or investigation, (i) orders for the purchase or sale of securities and other property on margin, if I have elected to have a margin account, or otherwise, and (ii) any other instructions concerning my Accounts. Robinhood Securities shall look solely to Robinhood Financial unless otherwise directed by Robinhood Financial, and not to Me, with respect to any such orders or instructions; except that I understand that Robinhood Securities will deliver confirmations, statements, and all written or other notices with respect to My Account directly to Me with copies to Robinhood Financial, and that Robinhood Securities will look directly to Me or Robinhood Financial for delivery of margin, payment, or securities. I agree to hold Robinhood Securities harmless from and against any Losses arising in connection with the delivery or receipt of any such communication(s), provided Robinhood Securities has acted in accordance with the above. The foregoing shall be effective as to My Account(s) until written notice to the contrary is received from Me by Robinhood Securities or Robinhood Financial.

7. **Review of Confirmations and Statements.** I agree that it is My responsibility to review order execution confirmations and statements of My Account(s) promptly upon receipt. I agree to receive all confirmations and account statements, as well as all tax related documents, in electronic format. I understand that account statements will evidence all activity in My Account for the stated period, including securities transactions, cash balances, credits to My Account and all fees paid from My Account. Notwithstanding Section 35.B, confirmations will be considered binding on Me unless I notify Robinhood of any objections within two (2) calendar days from the date confirmations are sent. Account statements will be considered binding on Me unless I notify you of any objections within ten (10) calendar days after My Account statements are posted online. Such objection may be oral or in writing, but any oral objection must be immediately confirmed in writing. In all cases, Robinhood reserves the right to determine the validity of My objection. If I object to a transaction for any reason, I understand and agree that I am obligated to take action to limit any losses that may result from such transaction or I will bear sole responsibility for any losses relating to the transaction, even if My objection to the transaction is ultimately determined to be valid. Nothing in this Section 7 shall limit My responsibilities as described in Section 5 of this Agreement.

8. **Important Information Needed to Open a New Account.** To help the government better detect the funding of terrorism and money laundering activities, federal law requires all financial institutions to obtain, verify, and record information that identifies each person

who opens an account.  Therefore, I understand that when I open My Account Robinhood will ask for My name, address, date of birth and other identifying information.  Robinhood may also ask copies of My driver's license, passport or other identifying documents.  I understand that Robinhood may take steps to verify the accuracy of the information I provide to Robinhood in My Account application or otherwise, and that Robinhood may restrict My access to My Account pending such verification.  I will provide prompt notification to Robinhood of any changes in the information including My name, address, e-mail address and telephone number.

I further understand that if I attempt to access My Account from a jurisdiction subject to certain U.S. sanctions or I am ordinarily resident in such a jurisdiction, or if you reasonably believe that I am attempting such access or have become a resident in such a jurisdiction, you may restrict My Account, and any pending orders may be cancelled. If this happens, I understand that I should contact help@robinhood.com, and that I may be asked to provide supplemental information as part of this process. I further understand that I must close My Account before establishing residency in any jurisdiction subject to U.S. sanctions.

9.    **Telephone Conversations and Electronic Communications.**  I understand and agree that Robinhood may record and monitor any telephone or electronic communications with Me.  Unless otherwise agreed in writing in advance, Robinhood does not consent to the recording of telephone conversations by any third party or Me.  I acknowledge and understand that not all telephone or electronic communications are recorded by Robinhood, and Robinhood does not guarantee that recordings of any particular telephone or electronic communications will be retained or capable of being retrieved.

10.    **Oral Authorization.**  I agree that Robinhood shall be entitled to act upon any oral instructions given by Me so long as Robinhood reasonably believes such instruction was actually given by Me or My authorized agent.

11.    **Applicable Laws and Regulations.**  All transactions in My Account will be subject to federal securities laws and regulations, the applicable laws and regulations of any state or jurisdiction in which Robinhood Financial is registered, the rules of any applicable self-regulatory organization of which Robinhood Financial is a member and the rules, regulations, customs and usages of the exchange or market, and its clearing house, if any, where the transactions are executed.  In no event will Robinhood Financial be obligated to effect any transaction it believes would violate any federal or state law, rule or regulation or the rules or regulations of any regulatory or self-regulatory organization.

12.    **Erroneous Distributions.**  I agree to promptly return to Robinhood any assets erroneously distributed to Me.  In the event that I sell a security prior to its ex-dividend/distribution date, and I receive the related cash/stock dividend or distribution in error, I direct Robinhood on My behalf to pay such dividend/distribution to the entitled purchaser of the securities I sold, and I guarantee to promptly reimburse Robinhood for, or deliver to Robinhood, said dividend or distribution.

13.    **Market Volatility; Market Orders; Limit Orders; and Queued Orders.**  I understand that, whether I place a market or limit order, I will receive the price at which My order is

executed in the marketplace, subject to any clarification stated below. Particularly during periods of high volume, illiquidity, fast movement or volatility in the marketplace, the execution price received may differ from the quote provided on entry of an order, and I may receive partial executions of an order at different prices. I understand that Robinhood Financial is not liable for any price fluctuations. I also understand that price quotes generally are for only a small number of shares as specified by the marketplace, and larger orders are relatively more likely to receive executions at prices that vary from the quotes or in multiple lots at different prices.

I understand that Robinhood Financial does not currently support sending traditional market buy orders and that Robinhood Financial collars all market buy orders by using limit orders priced up to 5% above the last trade price. This is not the case for market sell orders. I further understand that when I send a market buy order through Robinhood Financial's trading system, the trading system generates a limit order up to 5% above the last trade price, and then Robinhood Financial sends the order to an executing broker. I understand that Robinhood Financial's implementation of market buy orders may vary depending on prices of instruments, market conditions, and other factors. I further understand that Robinhood Financial uses the following rounding mechanics with respect to buy orders: the last trade price is (i) multiplied by 1.05; (ii) rounded down to two decimal places if the last trade price is over $1.00; otherwise, rounded down to four decimal places; and (iii) for securities included in the SEC's Tick Size Pilot Program, rounded down to the nearest $.05 increment. I understand that securities may open for trading at prices substantially higher or lower than the previous closing price or the anticipated price. If I place a market order (whether during normal market hours or when the market is closed), I agree to pay or receive the prevailing market price at the time My market order is executed, subject to the specific clarification above relating to buy orders. I understand that the price I pay may be significantly higher or lower than anticipated at the time I placed the order. To avoid buying a security at a higher price and possibly exceeding My purchasing power, I understand My option to enter a limit order. I also understand that limit orders may not be executed at any particular time, or at all, if there is not sufficient trading at or better than the limit price I specify, and are only good until the end of the trading day in which they are entered. The Website contains further information regarding order types and limitations, which I agree to read and understand before placing such orders.

As a customer of Robinhood Financial, I understand that after the market has closed for the day, I have the ability to place in a queue order requests to be executed the following day upon the opening of the market ("Queued Order"). I understand that My Queued Order request is prioritized based on the order in which it is received by Robinhood Financial, and that the Queued Order requests are sent out for execution shortly after the market opens on the next day of trading. I further understand that each Queued Order request is sent out per customer and per security as Robinhood Financial market orders (described above), and that they are not aggregated.

A limit order may be "good till cancelled" which means the order remains valid until (A) it is executed; (B) I cancel the order; (C) approximately 90 days from when the order is placed; or (D) the contract to which it relates is closed. I understand that Robinhood will

13

cancel a "good till cancelled" order at the end of every trading day (on the exchange on which the instrument to which the contract relates is traded) and place such order again at the start of the following trading day.  This process will be repeated every day for as long as the "good till cancelled" order remains valid.  I further agree that any "good till cancelled" orders I place should be treated as "do not reduce" orders.

14.     **Bulletin Board/Pink Sheet Stocks.**  Bulletin board, pink sheet and other thinly-traded securities (collectively "bulletin board stocks") present particular trading risks, in part because they are relatively less liquid and more volatile than actively traded securities listed on a major exchange.  I understand that bulletin board stocks may be subject to different trading rules and systems than other securities and that I may encounter significant delays in executions, reports of executions, and updating of quotations in trading bulletin board stocks.  Robinhood Financial in its sole discretion may require limit orders on certain bulletin board stock transactions.

15.     **Research and Internet Links.**  News, research, links to outside websites, and other information accessible through the App or Website ("Content") may be prepared by independent external providers not affiliated with Robinhood Financial, including Morningstar, Inc. (all such providers, the "Providers").  I agree not to distribute, reproduce, sell, or otherwise commercially use the Content in any manner.  I understand that Robinhood may terminate My access to the Content.  I understand that none of the Content is a recommendation by Robinhood to buy or sell any securities or to engage in any investment strategy.

16.     **Restrictions on Trading.**  I understand that Robinhood may, in its discretion, prohibit or restrict the trading of securities, or the substitution of securities, in any of My Accounts.  I understand that Robinhood may execute all orders by Me on any exchange or market, unless I specifically instruct Robinhood to the contrary.  In the event of a breach or default by Me under this Agreement, Robinhood shall have all rights and remedies available to a secured creditor under all applicable laws and in addition to the rights and remedies provided herein.  I understand that Robinhood may at any time, at its sole discretion and without prior notice to Me: (i) prohibit or restrict My access to the use of the App or the Website or related services and My ability to trade, (ii) refuse to accept any of My transactions, (iii) refuse to execute any of My transactions, or (iv) terminate My Account. The closing of My Account will not affect the rights or obligations of either party incurred prior to the date My Account is closed.

Further, Robinhood will not tolerate any foul or abusive language, physical violence, threatening behavior, or other inappropriate conduct directed toward Robinhood, its Affiliates' officers, employees, contractors or customers.  If I engage in any such behavior, as determined by Robinhood in its sole discretion, I agree that Robinhood is authorized to: (i) liquidate any securities, instruments or other property in My Account, (ii) send Me the proceeds, and (iii) close My account.  Robinhood will not be responsible for any Losses caused by the liquidation of securities, instruments or other property pursuant to this paragraph, including any tax liabilities.

14

Provided by CourtAlert
www.CourtAlert.com

17. **Waiver; Limitation of Liability; Indemnification.**  I agree that My use of the App or the Website or any other service provided by Robinhood Financial or its Affiliates is at My sole risk.  The Robinhood Financial service (including the App, the Website, the provision of Market Data, Information, Content, or any other information provided by Robinhood Financial, any of its Affiliates, or any third-party content provider or market data provider) is provided on an "as is," "as available" basis without warranties of any kind, either express or implied, statutory (including without limitation, timeliness, truthfulness, sequence, completeness, accuracy, freedom from interruption), implied warranties arising from trade usage, course of dealing, course of performance, or the implied warranties of merchantability or fitness for a particular purpose or application, other than those warranties which are implied by and incapable of exclusion, restriction or modification under the laws applicable to this Agreement.

Although considerable effort is expended to make the Website, App and other operational and communications channels available around the clock, Robinhood does not warrant that these channels will be available and error free every minute of the day.  I agree that Robinhood will not be responsible for temporary interruptions in service due to maintenance, Website or App changes, or failures, nor shall Robinhood be liable for extended interruptions due to failures beyond our control, including but not limited to the failure of interconnecting and operating systems, computer viruses, forces of nature, labor disputes and armed conflicts.

EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THIS AGREEMENT, I UNDERSTAND AND AGREE THAT ROBINHOOD, ITS AFFILIATES, THEIR RESPECTIVE OFFICERS, DIRECTORS, EMPLOYEES AND AGENTS, AND THE PROVIDERS (COLLECTIVELY THE "ROBINHOOD PARTIES") WILL NOT BE LIABLE TO ME OR TO THIRD PARTIES UNDER ANY CIRCUMSTANCES, OR HAVE ANY RESPONSIBILITY WHATSOEVER, FOR ANY SPECIAL, INDIRECT, INCIDENTAL, PUNITIVE OR CONSEQUENTIAL DAMAGES (INCLUDING TRADING LOSSES, DAMAGES, LOSS OF PROFITS, REVENUE, OR GOODWILL) THAT I MAY INCUR IN CONNECTION WITH MY USE OF THE SERVICE PROVIDED BY ROBINHOOD OR ANY OF ITS AFFILIATES UNDER THIS AGREEMENT (INCLUDING MY USE OF THE APP, THE WEBSITE, THE MARKET DATA, THE INFORMATION, OR THE CONTENT), BREACH OF THIS AGREEMENT, OR ANY TERMINATION OF THIS AGREEMENT, WHETHER SUCH LIABILITY IS ASSERTED ON THE BASIS OF CONTRACT, TORT (INCLUDING NEGLIGENCE), OR OTHERWISE, AND WHETHER OR NOT FORESEEABLE, EVEN IF ANY ROBINHOOD PARTY HAS BEEN ADVISED OR WAS AWARE OF THE POSSIBILITY OF SUCH LOSS OR DAMAGES.  THE ROBINHOOD PARTIES SHALL NOT BE LIABLE BY REASON OF DELAYS OR INTERRUPTIONS OF THE SERVICE OR TRANSMISSIONS, OR FAILURES OF PERFORMANCE OF THEIR RESPECTIVE SYSTEMS, REGARDLESS OF CAUSE, INCLUDING THOSE CAUSED BY GOVERNMENTAL OR REGULATORY ACTION, THE ACTION OF ANY EXCHANGE OR OTHER SELF REGULATORY ORGANIZATION, OR THOSE CAUSED BY SOFTWARE OR HARDWARE MALFUNCTIONS.

Except as otherwise provided by law, Robinhood or any of its affiliates or respective partners, officers, directors, employees or agents (collectively, "Indemnified Parties") shall not be liable for any expenses, losses, costs, damages, liabilities, demands, debts, obligations, penalties, charges, claims, causes of action, penalties, fines and taxes of any kind or nature (including legal expenses and attorneys' fees) (whether known or unknown, absolute or contingent, liquidated or unliquidated, direct or indirect, due or to become due, accrued or not accrued, asserted or unasserted, related or not related to a third party claim, or otherwise) (collectively, "Losses") by or with respect to any matters pertaining to My Account, except to the extent that such Losses are actual Losses and are determined by a court of competent jurisdiction or an arbitration panel in a final non-appealable judgment or order to have resulted solely from Robinhood's or any of its affiliates' gross negligence or intentional misconduct.  In addition, I agree that the Indemnified Parties shall have no liability for, and I agree to indemnify, defend and hold harmless the Indemnified Parties from all Losses that result from: (i) any noncompliance by Me with any of the terms and conditions of this Agreement; (ii) any third-party actions related to My receipt and use of any Information, Market Data, Content, market analysis, other third-party content, or other such information obtained on the App or Website, whether authorized or unauthorized under this Agreement; (iii) any third-party actions related to My use of the App or the Website; (iv) My or My agent's misrepresentation or alleged misrepresentation, or act or omission; (v) Indemnified Parties following My or My agent's directions or instructions, or failing to follow My or My agent's unlawful or unreasonable directions or instructions; (vi) any activities or services of the Indemnified Parties in connection with My Account (including any technology services, reporting, trading, research or capital introduction services); or (vii) the failure by any person not controlled by the Indemnified Parties and their affiliates to perform any obligations to Me.  Further, if I authorize or allow third parties to gain access to Robinhood's services, including My Accounts, I will indemnify, defend and hold harmless the Indemnified Parties against any Losses arising out of claims or suits by such third parties based upon or relating to such access and use.  Robinhood does not warrant against loss of use or any direct, indirect or consequential damages or Losses to Me caused by My assent, expressed or implied, to a third party accessing My Account or information, including access provided through any other third party systems or sites.

I consent to the use of automated systems or service bureaus by Robinhood and its respective affiliates in conjunction with My Account, including automated order entry and execution, record keeping, reporting and account reconciliation and risk management systems (collectively "Automated Systems").  I understand that the use of Automated Systems entails risks, such as interruption or delays of service, errors or omissions in the information provided, system failure and errors in the design or functioning of such Automated Systems (collectively, a "System Failure") that could cause substantial damage, expense, or liability to Me.  I understand and agree that Indemnified Parties will have no liability whatsoever for any of my Losses arising out of or relating to a System Failure.

I also agree that Indemnified Parties will have no responsibility or liability to Me in connection with the performance or non-performance by any exchange, clearing organization, market data provider, or other third party (including other broker-dealers and clearing firms, and banks) or any of their respective agents or affiliates, of its or their

16

obligations relative to any securities. I agree that Indemnified Parties will have no liability, to Me or to third parties, or responsibility whatsoever for: (i) any Losses resulting from a cause over which Indemnified Parties do not have direct control, including the failure of mechanical equipment, unauthorized access, theft, operator errors, government restrictions, force majeure (as defined in this Agreement), market data availability or quality, exchange rulings or suspension of trading; and (ii) any special, indirect, incidental, consequential, punitive or exemplary damages (including lost profits, trading losses and damages) that I may incur in connection with My use of the App, the Website, Robinhood's brokerage, and other services provided by Indemnified Parties under this Agreement.

18.     **Mutual Fund Transactions.**  In the event that I purchase or hold a mutual fund, I agree to read and understand the terms of its prospectus. I understand that certain mutual funds reserve the right to change their purchasing, switching or redemption procedures or suspend or postpone redemptions under certain market conditions. I further understand that any mutual fund order entered with Robinhood is placed by Robinhood on a best efforts basis as prescribed and recognized by the individual fund, and that Robinhood is not responsible for unexecuted orders due to the failure of any communication system. I agree to be fully responsible for the information contained within the mutual fund prospectus and to hold Robinhood, its Affiliates, and Robinhood and its Affiliates' respective officers and employees harmless for any deficiencies contained therein. I authorize Robinhood to act as My agent in the purchase and redemption of fund shares.

19.     **Exchange Traded Funds.**  I understand that I should consider the investment objectives and unique risk profile of Exchange Traded Funds ("ETFs") carefully before investing, and that ETFs are subject to risks similar to those of other diversified portfolios. I further understand that leveraged and inverse ETFs may not be suitable for all investors and may increase exposure to volatility through the use of leverage, short sales of securities, derivatives, and other complex investment strategies, and that although ETFs are designed to provide investment results that generally correspond to the performance of their respective underlying indices, they may not be able to exactly replicate the performance of the indices because of expenses and other factors. I further understand that ETFs are required to distribute portfolio gains to shareholders at year end, which may be generated by portfolio rebalancing or the need to meet diversification requirements, and that ETF trading will also generate tax consequences. I understand that I can obtain prospectuses from issuers or their third party agents who distribute and make prospectuses available for review. Additional regulatory guidance on ETFs can be found here.

20.     **Effect of Attachment or Sequestration of Accounts.**  Robinhood shall not be liable for refusing to obey any orders given by or for Me with respect to any of My Accounts that has or have been subject to an attachment or sequestration in any legal proceeding against Me, and Robinhood shall be under no obligation to contest the validity of any such attachment or sequestration.

21.     **Event of Death.**  It is agreed that in the event of My death, the representative of My estate or the survivor or survivors shall immediately give Robinhood written notice thereof, and Robinhood may, before or after receiving such notice, take such proceedings, require such papers and inheritance or estate tax waivers, retain such portion of, or restrict transactions

in the Account as Robinhood may deem advisable to protect Robinhood against any tax, liability, penalty or loss under any present or future laws or otherwise.  Notwithstanding the above, in the event of My death, all open orders shall be canceled, but Robinhood shall not be responsible for any action taken on such orders prior to the actual receipt of notice of death.  Further, Robinhood may in Its discretion close out any or all of the Accounts without awaiting the appointment of a personal representative for My estate and without demand upon or notice to any such personal representative.  The estate of any of the Account holders who have died shall be liable and each survivor shall continue to be liable, jointly and severally, to Robinhood for any net debit balance or loss in said account in any way resulting from the completion of transactions initiated prior to the receipt by Robinhood of the written notice of the death of the decedent or incurred in the liquidation of the Account or the adjustment of the interests of the respective parties, and for all other obligations pursuant to this Agreement.  Such notice shall not affect Robinhood's rights under this Agreement to take any action that Robinhood could have taken if I had not died.

22. **Tax Reporting; Tax Withholding.**  The proceeds of sale transactions and dividends paid will be reported to the Internal Revenue Service ("IRS") in accordance with applicable law.

A.    <u>U.S. Persons</u>.  This subsection is applicable if I am a U.S. person.  Under penalties of perjury, I certify that the taxpayer identification number that I have provided or will provide to Robinhood (including any taxpayer identification number on any Form W-9 that I have provided or will provide to Robinhood) is My correct taxpayer identification number.    I certify that I am not subject to backup withholding and I am a United States Person (including a U.S. resident alien) as such term is defined in section 7701(a)(30) of the Internal Revenue Code of 1986, as amended ("U.S. Person").  If a correct Taxpayer Identification Number is not provided Robinhood Financial, I understand I may be subject to backup withholding tax at the appropriate rate on all dividends, interest and gross proceeds paid to me.  Backup withholding taxes are sent to the IRS and cannot be refunded by Robinhood Financial.  I further understand that if I waive tax withholding and fail to pay sufficient estimated taxes to the IRS, I may be subject to tax penalties.

B.    <u>Non-U.S. Persons</u>.  This subsection is applicable if I am not a U.S. Person.  I certify that I fully understand all the information on any Form W-8BEN that I have submitted or will submit to Robinhood.  Under penalties of perjury, I declare that (i) I have examined all the information (including all the information in the English language) on any Form W-8BEN that I have submitted or will submit to Robinhood and (ii) to the best of My knowledge and belief all such information is true, correct, and complete.  I authorize Robinhood to provide any such Form W-8BEN to Robinhood Securities or any withholding agent that has control, receipt, or custody of the income of which I am the beneficial owner or any withholding agent that can disburse or make payments of the income of which I am the beneficial owner.  I agree that I will submit a new Form W-8BEN to Robinhood within 30 calendar days if any certification made on any previously submitted Form W-8BEN becomes incorrect.  I understand that the IRS does not require My consent to any provisions of such Form W-8BEN other than the certifications required to establish My status as a non-U.S. Person and, if applicable, obtain a reduced rate of withholding.

23. **Equity Orders and Payment For Order Flow.** SEC rules require all registered broker-dealers to disclose their policies regarding any "payment for order flow" arrangement in connection with the routing of customer orders. "Payment for order flow" includes, among other things, any monetary payment, service, property, or other benefit that results in remuneration, compensation, or consideration to a broker-dealer from any broker-dealer in return for directing orders. I understand that Robinhood transmits customer orders for execution to various exchanges or market centers based on a number of factors. These include: size of order, trading characteristics of the security, favorable execution prices (including the opportunity for price improvement), access to reliable market data, availability of efficient automated transaction processing and reduced execution costs through price concessions from the market centers. I further understand that certain of the exchanges or market centers may execute orders at prices superior to the publicly quoted market in accordance with their rules or practices and that while a customer may specify that an order be directed to a particular market center for execution, the order-routing policies, taking into consideration all of the factors listed above, are designed to result in favorable transaction processing for customers. The nature and source of any payments or credits received by Robinhood in connection with any specific transactions will be furnished upon written request.

24. **Free Credit Balances and Sweep Service.** If I enroll in Robinhood Financial Cash Management ("Cash Management"), I understand that I am electing to participate in the Insured Network Deposit ("IND") sweep service (the "Sweep Service"). Under the Sweep Service, free credit balances in My Account will be deposited into interest-bearing accounts at one or more banks ("Participating Depository Institutions"), in accordance with the Insured Network Deposit Sweep Program Disclosures ("IND Disclosures") available on the Website and in the App. By enrolling in Cash Management, I represent and warrant that I have reviewed the IND Disclosures and agree to the terms set forth in the IND Disclosures. If I am not enrolled in Cash Management, free credit balances in My Account will remain in My Account, will not earn interest and will not be eligible for FDIC insurance, but will be eligible for SIPC protection as described in the IND Disclosures.

25. **Fees and Charges.** I understand that Robinhood does not charge fees or commissions for executing buy and sell orders. However, I understand that other fees may apply. The current fees are included in the fee schedule available in the App and on the Website. I agree to pay any such fees at the then-prevailing rate. I acknowledge that the prevailing fees may change and that change may occur without notice. I agree to be bound by such changes once they are posted in the fee schedule available in the App and on the Website. I also agree to pay all applicable federal, state, local, and foreign taxes. I authorize Robinhood Financial to automatically debit My Account for any such fees and taxes. I also agree to pay such expenses incurred by Robinhood in connection with collection of any unpaid balance due on My Accounts including attorney's fees allowed by law.

26. **ACH Transactions.**

   A.    Debit Transactions.

Provided by CourtAlert
www.CourtAlert.com

Robinhood will initiate an ACH debit at My request to debit funds from an account that I own at another financial institution ("External Account") for deposit into My Account. I understand that in order for Robinhood to initiate an ACH debit, the financial institution holding my External Account must participate in the ACH system. I understand that for the ACH transfers to be established, at least one common name must match exactly between My Account and My External Account. I authorize Robinhood to take such steps as it deems appropriate to verify my ownership of External Account, including by telling the bank at which such External Account is held that I have authorized and consented to such bank disclosing to Robinhood any information that Robinhood may request about Me or My External Account. I also agree to cooperate with Robinhood's verification of my ownership of such External Account by promptly providing any identification and/or other documentation that Robinhood may request regarding such External Account. I represent and warrant that there are sufficient funds in My External Account to cover the amount of the deposit to My Account. Robinhood will initiate the ACH debit to My External Account on the Business Day or next Business Day after I request the transfer. A transfer request will be deemed to have been made on a Business Day if it is received by Robinhood by 7:00 p.m. (Eastern Time) on such Business Day; if received after that time, the transfer request will be deemed to have been made on the next Business Day.

Within 60 days of the date of My ACH deposit, My funds may only be withdrawn to the External Account from which such funds were deposited.

I understand that an ACH debit transfer may be reversed or rejected if: (A) there are insufficient funds in My External Account; (B) there is a duplicate transaction; (C) the transaction is denied by the bank holding My External Account; or (D) My External Account does not support ACH transfers. I acknowledge that in the event of an ACH reversal, I will incur a fee. Before initiating making an ACH debit transfer, I agree to check Robinhood Financial's most recent Commissions and Fees Schedule, available at https://brokerage-static.s3.amazonaws.com/assets/robinhood/legal/RHF%20Retail%20Commisions%2 0and%20Fees%20Schedule.pdf. I agree that I am solely liable and responsible for any ACH reversal fees that I incur.

B.  Credit Transactions.

Robinhood will initiate an ACH credit at My request to transfer funds from My Account to a recipient that I designate. I agree that I will have sufficient funds ("Available Funds") in My Account to cover the amount of any ACH credit that I ask Robinhood to initiate. Robinhood will debit the amount of such request from My Account on the Business Day or next Business Day after I request the transfer. A transfer request will be deemed to have been made on a Business Day if it is received by Robinhood by our cut-off time on such Business Day; if received after that time, the transfer request will be deemed to have been made on the next Business Day.

I agree that Robinhood may use any means which Robinhood, in its sole discretion, considers suitable to execute my ACH credit transfers.

**27.    Fractional Shares**

I acknowledge and understand that Robinhood rounds all holdings of fractional shares to the sixth decimal place, the value of fractional shares to the nearest cent, and any dividends paid on fractional shares to the nearest cent.   I further understand that Robinhood will not accept dollar-based purchases or sales of less than $1.00 and that I will receive proceeds from the sale of any whole or fractional shares rounded to the nearest cent.

I understand that a vendor employed by Robinhood will aggregate any proxy votes for fractional shares of Robinhood's customers with all votes reported to the issuer or issuer's designated vote tabulator and that, while Robinhood's vendor will report such proxy votes on fractional shares, the issuer or tabulator may not fully count such votes.

I understand that Robinhood will execute all orders that include fractional shares on a principal basis.  To the extent that Robinhood fulfills my order entirely out of its inventory and without purchasing or selling shares in the market, Robinhood will endeavor to price such shares or fractional shares at a price between the National Best Bid and Offer ("NBBO") at the time of the order for orders made during market hours, or, for such orders made during extended hours trading (9:00-9:30 a.m. and 4:00-6:00 p.m. Eastern), Robinhood will endeavor to price such orders between the best bid and offer at the time of the order, as reported by an external vendor.  Orders made outside market hours and extended hours trading are queued and fulfilled either at or near the beginning of extended hours trading (9:00 a.m. Eastern) or at or near market open (9:30 a.m. Eastern), according to my instructions.   To the extent that I trade fractional shares outside of market hours, these trades are subject to Robinhood's Extended Hours Trading                             Disclosure,                        available                        at:
https://cdn.robinhood.com/assets/robinhood/legal/ExtendedHoursTradingDisclosure.pdf

I understand Robinhood only accepts market orders for fractional shares at this time and does not permit limit orders for fractional shares.  I understand that fractional shares within My Account (i) are unrecognized, unmarketable, and illiquid outside the Robinhood platform, (ii) are not transferrable in-kind, and (iii) may only be liquidated and the proceeds transferred out via a wire transfer.  I acknowledge that, subject to applicable requirements, Robinhood may report holdings and transactions in My Account in terms of either U.S. Dollars, shares, or both.

**28.    Dividend Reinvestment Program**

Except as expressly stated otherwise, the provisions of this Section 28 will only apply if I am enrolled in Robinhood's Dividend Reinvestment Program ("DRIP").

Provided by CourtAlert                                                    www.CourtAlert.com

My enrollment in the DRIP will be activated within three business days after I notify Robinhood of my intention to enroll an eligible security through the App. "Eligible security" means all shares available for fractional investing through Robinhood. I understand that in order to be eligible for dividend reinvestment, the securities must be held in My Account.

I may specify individual securities or have all Eligible securities in My Account enrolled for dividend reinvestment. If I choose to reinvest dividends from all Eligible securities, I understand that individual securities could subsequently no longer be Eligible securities at Robinhood's discretion or under applicable law. In those cases, only those securities will be discontinued from the DRIP. If I specify individual securities, I may add additional Eligible securities to the DRIP at any time if I hold a position in those securities. Enrollment with respect to these additional Eligible securities will be effective within three business days after Robinhood receives notification from me through the App. If I maintain open orders for securities I do not already hold, I may not enroll those securities for dividend reinvestment until my open orders are executed. If my entire Account is set up for dividend reinvestment, any eligible securities I purchase in the future will automatically participate in the DRIP.

All eligible cash distributions will be reinvested on all securities I have selected in the DRIP, provided that I owned the securities on the record date for determining shareholders eligible to receive dividends, and continue to hold the securities through payable date. "Eligible cash distributions" means most cash distributions, including regular and optional dividends, cash-in-lieu payments, and capital gains distributions. Special dividends, late ex-date, liquidation, and miscellaneous payments may not be eligible distributions. Optional dividends will be processed in accordance with dividend reinvestment instructions. If I have a margin account, Robinhood is permitted to borrow a dividend paying stock in the normal course of business and, as a result, in such situations instead of a dividend payment I may receive a cash in lieu payment. If I receive a cash in lieu payment, I authorize Robinhood to treat such payment as if it was not "in lieu" and reinvest it accordingly.

Robinhood will credit My Account upon completion of the dividend reinvestment. Robinhood will reinvest dividends on the business day following receipt of funds. In the rare instance in which Robinhood is unable to reinvest all dividends on the business day following receipt, it will reinvest the remaining funds as soon as reasonably possible thereafter, which may take up to five business days. I will not have use of the funds prior to reinvestment.

I understand that my participation in the DRIP is voluntary and that Robinhood has not made any recommendation that I should participate. I further understand that Robinhood is not recommending or offering any advice regarding the purchase of any security included as an Eligible security in the DRIP. I further understand that dividend reinvestment does not assure profits on my investments, nor does it protect against losses in declining markets.

Provided by CourtAlert                                                                                                                        www.CourtAlert.com

I may terminate my participation in the DRIP, or the enrollment of individual securities in the DRIP, at any time by giving notice through the App. Termination will take effect prior to the next Eligible cash distribution provided my notice to terminate was received at least three business days prior to the record date of that distribution. I understand that my notice to terminate my participation in the DRIP will not affect any obligations that may result from transactions initiated prior to Robinhood's receipt and processing of my notice.

If I participate in the DRIP, I understand Robinhood will reinvest the dividends of a particular stock at or near the opening price on the trading day following receipt of the dividend. Robinhood will combine Eligible cash distributions from My Account with those from other Robinhood clients requesting dividend reinvestment in the same security and use these combined funds to purchase securities on my behalf and on behalf of these other clients. If the combined reinvested funds do not total the purchase price of at least one share, the distribution will be invested in fractional shares. On that same day, Robinhood will credit My Account with that number of shares, including fractional shares, equal to my Eligible cash distribution divided by the purchase price per share. Robinhood does not intend to charge a fee for transactions executed pursuant to the DRIP.

Dividend reinvestment may result in my owning interests in fractional shares of a security. I will be entitled to receive future dividend payments on my fractional shares, although other corporate actions may result in allocation of only whole shares and cash in lieu of fractions as determined by the issuer. In mandatory corporate reorganizations, my partial interest will be handled according to the specific terms of the reorganization. In voluntary corporate reorganizations, Robinhood will act on my instructions with respect only to my whole shares.

Because fractional share positions cannot be transferred, reorganized, or issued in certificate form, my partial interest will be liquidated, without commission charges to me, at prevailing market prices in the event My Account is transferred or closed, the stock is reorganized, or stock certificates are ordered out of My Account. The timing of such liquidations will be at the discretion of Robinhood.

Reinvestment of dividends may result in my owning a fractional share position in securities that are callable in part. In the event of a call, fractional shares to be called will be determined through a random selection process. The probability of my fractional share holdings being called will be proportional to the holdings of all Robinhood clients who own a fractional share position in that security. Prior to the publication date of such a call, I have the right to withdraw from My Account cash in lieu of my uncalled, fully paid partial holdings. Once a call is announced, however, all shares, whether registered or held in street name, participate in the random selection process. If my fractional shares are selected and I no longer hold the shares that I held on the publication date of the call, I will be responsible for covering those shares.

**29.    Cash Management Services.**

Except as expressly stated otherwise, the provisions of this Section 29 will only apply if I am enrolled in Cash Management.

A.    General.

    I understand and agree that by enrolling in Cash Management, I am applying for a Robinhood-branded debit card issued by the bank identified in My Robinhood Debit Card Agreement ("Card"). I further understand and agree that by using My Card or exercising My electronic fund transfer ("EFT") privileges offered in connection with My Account, I authorize Robinhood to debit My Account immediately whenever an electronic draft or Card transaction is presented for payment on My behalf, when an EFT transaction is effected, or when any fee or charge is due (collectively "Payments"). I further understand and agree that when I request a Payment or withdrawal or instruct Robinhood to make a purchase of securities from My Account, Robinhood is authorized to place a block on the amount of the transaction ("Blocked Amounts") prior to the settlement date of the Payment, withdrawal or trade, and that the Blocked Amounts will not be available for use for additional Payments or the purchase of securities. I agree to maintain Available Funds sufficient to pay for EFT transactions, Card transactions and withdrawals made by Me or any Authorized Card User (as defined below) and to pay for any securities trades and for interest on any margin loans and other transaction fees. For this purpose, "Available Funds" in My Account will fluctuate daily and means the sum of (i) free credit balances, (ii) deposits to Participating Depository Institutions through the Sweep Service, and (iii) available margin loan value if My Account has margin privileges, minus (x) uncleared funds, (y) Blocked Amounts, and (z) deposits subject to a hold. The loan value of eligible securities for the purpose of margin is subject to regulatory requirements and Robinhood credit policies then in effect.

B.    Payments and Withdrawals.

    I agree that any Payments that I make from My Account will be lawful. I agree that Payments will be deducted from the Available Funds in My Account in the following order: first, from free credit balances; second, by withdrawal of funds deposited to Participating Depository Institutions as part of the Sweep Service; and third, if My Account has margin privileges, from margin loans on the eligible securities in My margin Account. Robinhood will debit My Account only up to an amount equal to the Available Funds. I understand and agree that (i) if there are insufficient Available Funds in My Account to cover Payments when they become due, Robinhood has no obligation to make such Payments, and (ii) Robinhood has no obligation to make partial Payments. Robinhood will not charge a fee with respect to any declined Payment for which there were insufficient Available Funds. I acknowledge and agree, however, that Robinhood will not be responsible for any costs or losses that I may incur (including fees, costs, charges, attorneys' fees, investment losses, claims, demands, or liability resulting from any litigation or other actions) as a result of Robinhood's decision to decline any Payment or

Provided by CourtAlert                                                                                                                                www.CourtAlert.com

withdrawal or other transaction because My Account has insufficient Available Funds.

I understand that if a Payment is funded by a margin loan, I will incur interest until the margin loan is repaid.

I agree that if my Available Funds at any time falls below zero, Robinhood may suspend Card and EFT privileges and terminate My Card. If this occurs, I agree to immediately pay all amounts owed to Robinhood, including any purchases on My Card which will be immediately charged to My Account.

I acknowledge and agree that Robinhood reserves the right to decline any purchase or cancel My Card, and EFT privileges at any time for any reason with or without notice to Me. If Robinhood decides to take such action, I understand and agree that I am responsible for any pending debits, which will be processed and deducted from My Account.

I understand that transactions will post to My Account in any order determined by Robinhood and that Robinhood may change that order without prior notice to Me. Robinhood will comply with requirements of applicable law regarding the order of posting transactions.

C.      Limitation of Liability.

I agree that, subject to any limitations imposed by applicable law, and except as otherwise set forth in this Agreement or in the disclosures contained in the Robinhood Debit Card Agreement, which has been provided to Me or made available to me in connection with the opening of My Account, neither Robinhood, any processing bank, nor the Card issuer will be liable for any loss I incur in connection with My Account, Card transactions, EFT transactions, or other features of My Account unless Robinhood is grossly negligent in fulfilling this Agreement. In no event will Robinhood, any processing bank, or the Card issuer be liable for consequential, special or indirect damages or losses unless applicable law requires otherwise. I also agree that liability regarding online services or use of the App is further limited by the Robinhood Terms and Conditions, available at https://about.robinhood.com/legal/. To the extent I utilize online services or the App I acknowledge that I am bound by such Robinhood Terms and Conditions.

D.      Debit Cards.

I understand and agree that My use of the Card is subject to the terms, conditions and disclosures set forth in the Robinhood Debit Card Agreement, which has been provided to Me in connection with the opening of My Account and which I may access on the Website.

I understand and agree that I cannot request a Card for another person to use. I agree, however, that if I permit another person to have access to use My Card or

Provided by CourtAlert                                                        www.CourtAlert.com

Card number (an "Authorized Card User"), I am authorizing all Card transactions by such person and I agree that there are no limits to my authorization. I accept all liability with respect to the Card transactions effected by Me and any Authorized Card Users. I further agree that I may I may terminate the authority of an Authorized Card User only by contacting help@robinhood.com to cancel my Card. I agree that the cancellation of My Card is effective only after Robinhood has a reasonable period to act on My notice.

If My Card is cancelled, I agree to destroy, or if requested by Robinhood, return the Card to Robinhood. I acknowledge that I will be responsible for any Card transactions that are processed because of My failure to destroy or return the Card following cancellation.

If My Account includes margin privileges, I agree that transactions that exceed My free credit balances and deposits in the Sweep Service may result in margin credit being extended to My Account, for which I will be charged interest. I agree to review the Margin Disclosure Statement, which is available at https://about.robinhood.com/legal/.

E.      Deposits.

The provisions in this Section 29.E shall apply to My Account whether or not I am enrolled in Cash Management.

General; Holds. I understand that I may deposit funds to My Account by ACH, direct deposit or EFT (including deposits using the MoneySend service offered by Mastercard). I acknowledge and agree that funds that I deposit may be subject to one or more hold periods, which are described in the RHF Funds Availability schedule available at https://about.robinhood.com/legal/. I understand and agree that Robinhood reserves the right to modify the RHF Funds Availability schedule at any time by posting an updated schedule at https://about.robinhood.com/legal/, or otherwise providing notice to me. During the applicable hold period, My funds will not be available for ACH transfers, Card transactions, withdrawal, or the settling of securities transactions, in each case as described in the RHF Funds Availability schedule. I further understand and agree that Robinhood reserves the right to further delay making deposited funds available for periods longer than the hold periods specified in the RHF Funds Availability schedule to the extent Robinhood determines that additional time is needed to verify information about the item deposited or the sender or if Robinhood otherwise believes there is a risk of fraud or other unlawful activity with respect to My Account.

Mistaken Deposits. If funds are deposited or transferred into My Account by mistake or otherwise, I agree that Robinhood may correct the situation and deduct any interest paid by Participating Depository Institutions, if applicable, without prior notice to Me.

<u>Returned Items</u>.  I acknowledge and agree that I am responsible for returned transactions.  If I have funds transferred into My Account and that transfer is returned for any reason, Robinhood may charge the transfer and interest paid by Participating Depository Institutions, if applicable, against My Account, without prior notice to Me.  Robinhood may send the returned transfer back for collection a second time without notifying Me, and I waive notice of dishonor and protest.

F.    <u>Electronic Fund Transfers</u>.

The provisions in this Section 29.F relating to EFTs other than Card transactions shall apply to My Account whether or not I am enrolled in Cash Management.

I understand that My Account may be eligible for a variety of EFTs, which may be subject to separate agreements, terms and conditions.  These services may include use of the Card, and the "Move Money" functionality of the App.  I understand that I may be required to agree to separate terms and conditions governing the particular service I use to initiate EFTs.  In addition, I understand and agree that my use of EFT services are subject to the disclosures set forth in Appendix A (Electronic Fund Transfer Disclosures), and acknowledge that I have received and reviewed such disclosures.

G.    <u>Security</u>.

I agree to protect My Card, and My PINs, from access by anyone not authorized by Me to use them.  I acknowledge that I will be liable for all Card and online transactions conducted by anyone to whom I have given access or who has obtained access even if not authorized by Me, up to applicable legal limits.  I understand that I am responsible for reviewing My Account statement promptly to discover and report unauthorized activity, including use of My Card, Card number or PIN.  I agree to notify Robinhood as provided in Appendix A (Electronic Fund Transfer Disclosures) if I believe or have reason to believe that there has been unauthorized activity in My Account or that My Card, Card number or PIN has been lost, stolen or may be used by an unauthorized person.  Unless limited by law or as otherwise set forth in this Agreement or in the disclosures contained in Robinhood Debit Card Agreement, which is provided to Me as part of the Account opening process and is available on the Website, I agree that I will be responsible for losses that arise from My failure to (i) safeguard My Card and PINs, (ii) review My monthly statement for possible unauthorized activity and (iii) report any unauthorized activity to Robinhood as provided herein or in the Robinhood Debit Card Agreement.

H.    <u>Disclosure of Information</u>.

I agree and understand that all disclosures of My non-public personal information shall be made in accordance with the terms of this Agreement or the Robinhood Privacy Policy (available on the Website at https://about.robinhood.com/legal/), as applicable.  I agree that My consent to sharing non-public personal information will

Provided by CourtAlert                                                                    www.CourtAlert.com

remain in effect until I revoke such consent by updating My settings and visibility, which I may do at any time through the App.

In addition, I understand and agree that Robinhood may disclose information about My Account and My related activities to third parties under the following circumstances:

- As necessary to complete My Payment transactions;

- To investigate any complaint, disputed transaction, transaction inquiry or request I make or as necessary to investigate potential fraud or misuse related to My Account;

- To respond to requests from credit bureaus, creditors or other third parties for account-related information, to the extent such inquiries are necessary for processing My transactions or are usual and customary in the course of servicing similar products or accounts;

- As necessary to comply with any applicable law, government or court order or subpoena; or

- In accordance with My written permission or as otherwise permitted under the Robinhood Privacy Policy.

I.    Termination.

I understand that Robinhood may terminate my participation in Cash Management or in specific features of Cash Management for any reason, upon notice to me.

**30.    Consent to Redeem Shares.**

I understand and agree that whenever it is necessary for Robinhood's protection or to satisfy a margin call, deficiency, debit or other obligation owed to Robinhood, Robinhood may (but is not required to) sell, assign and deliver all or any part of the securities in My Account, or close any or all transactions in My Account.  I understand that Robinhood may, but is not obligated to, attempt to contact Me before taking any such action.  I understand and agree that Robinhood reserves the right to take any such action without prior notice or demand for additional collateral, and free of any right of redemption, and that any prior demand, call or notice will not be considered a waiver of our right to sell or buy without demand, call or notice.

I further understand that Robinhood may choose which securities to buy or sell, which transactions to close, and the sequence and timing of liquidation, and may take such actions on whatever exchange or market and in whatever manner (including public auction or private sale) that Robinhood chooses in the exercise of

its business judgment. I agree not to hold Robinhood liable for the choice of which securities to buy or sell or of which transactions to close or for the timing or manner of the liquidation. I also agree not to hold Robinhood liable for taking such action.

I understand and agree that Robinhood is entitled to exercise the rights described in this section in its sole discretion, including, but not limited to, whenever any of the following occurs:

- The equity level in My Account falls below required minimums;

- Sufficient funds or securities are not deposited to pay for transactions in My Account;

- I reverse any ACH debit transfer to My Account;

- A petition of bankruptcy or for the appointment of a receiver is filed by or against Me;

- An attachment is levied against My Account;

- I die or become incapacitated or incompetent; or

- My Account is closed.

31.     **Electronic Delivery of Trade and Account Information; Notice.** All communications, notices, legal disclosures, and other materials related to My Account or this Agreement, including account statements, trade confirmations, margin calls, notices, disclosures, regulatory communications and other information, documents, data and records regarding My Account (the "Communications"), or an alert that any such Communication has been posted to the secure section of the Website or the App, and is available for viewing, may be sent to Me at the mailing address for My Account or the e-mail address that I have given to Robinhood in My account application  or at such other address as I may hereafter give Robinhood in writing or by e-mail at least ten (10) calendar days prior to delivery, and all communications so sent, whether in writing or otherwise, shall be deemed given to Me personally, whether actually received or not.

32.     **API.**

A.      <u>Overview; Definitions</u>.  Robinhood may, in Robinhood's sole discretion, provide third parties with an application programming interface and other materials in accordance with any accompanying documentation (collectively, the "API Package") (such third parties, "API Licensees"), to make available certain features and functionality of Robinhood's mobile applications, websites, or technology platform via the API Licensees' products (such products, the "Licensee Products"). The API Package and the Licensee Products are collectively referred to as the "API Products".  "Personal Information" means My personally identifiable information

(including username, logon password, financial information, trade data, and other financial information) and all data exchanged between Robinhood and the API Products.

B.    <u>Access to My Personal Information</u>.  Through My use of any API Products, I may be providing API Licensees with access to My Account and Personal Information. By using any API Products, I acknowledge that such API Products may employ security, policies, procedures and systems of API Licensees which may or may not be less stringent and secure than Robinhood's policies, procedures and systems.  I agree that My use of any API Products shall be subject to the terms and conditions of this Agreement, in addition to any other agreements which I executed with respect to any such API Products.  I understand and agree that any end user agreement that I executed with any API Licensee is concluded between Me and such API Licensee only, and not with Robinhood; and such API Licensee, not Robinhood, is solely responsible for such Licensee Product and the content thereof. I understand and agree that the API Products may deliver Personal Information to Robinhood, and that Robinhood is authorized to receive and store such Personal Information consistent with Robinhood's then-in-effect policies and procedures. Further, I agree that the API Products may request Personal Information stored by Robinhood, and I consent to Robinhood's disclosure of such Personal Information to the API Products.

C.    <u>No Recommendations</u>.  To the extent the Licensee Products or API Licensees express opinions or make recommendations, I understand that such opinions and recommendations are expressed solely by API Licensees and are not the opinions or recommendations of Robinhood.  The existence of the API Products and Robinhood's consent to any connectivity between any Licensee Products and Robinhood's technology, the App, the Website, or trading platform(s) does not constitute (i) any recommendation by Robinhood to invest in any security or utilize any investment strategy; or (ii) any representation, warranty, or other guarantee by Robinhood as to the present or future value or suitability of any sale, trade, or other transaction involving any particular security or any other investments.  The existence of any and all information, tools and services provided by API Licensees or by the Licensee Products shall not constitute Robinhood's endorsement of API Licensees or the Licensee Products.

D.    <u>Data Provided by Robinhood to API</u>.  From time to time, and subject to then-in-effect agreements between Robinhood and API Licensees, Robinhood may, in its own discretion, make market data feeds received from third parties available via the API Products.  Robinhood does not make any guarantees in regard to such market data feeds.  Furthermore, API Licensees or Licensee Products may make available to Me market data feeds independent of Robinhood.  I am aware that from time to time that there may be discrepancy between the market data presented on the App or Website and information provided by any API Products due to a variety of reasons, including the time to update and transmit such data to a mobile application or website and latency caused by such API Product's or My local environment (such as computer set up, connection speed, etc.).  Robinhood is not

responsible for the accuracy of any market data displayed on any API Products or otherwise made available by API Licensees.

E.  <u>Risks; No Liability</u>.  I acknowledge that there may be latency between the time an order (or other Personal Information) is submitted from the API Products and the time such order or Personal Information is received by Robinhood.  Latency may also affect order modification and order cancellation requests.  The time an order or a request is actually received by Robinhood (including for execution) will be the official time, including for the purposes of routing the order to the market for execution.  In addition, all orders submitted to Robinhood are subject to order vetting by Robinhood.  Orders created and submitted through any API Products are not vetted until they are received by Robinhood.  It is possible that Robinhood may reject an order placed through any API Products.  Robinhood cannot guarantee that any order will be accepted when such order is routed to the market for execution, and Robinhood cannot guarantee that notifications and Personal Information provided to Me by Robinhood will be successfully delivered to or displayed by any API Products.

Without limiting the generality of any other terms in this Agreement, I agree that:

(i)      Robinhood or its Affiliates shall not be liable for any Losses as a result of any issues addressed in this Section 32 of this Agreement, nor shall Robinhood or its Affiliates be liable for any Losses realized for technical issues involving any API Products or API Licensee technology or product offerings (including system outages or downtime).

(ii)     Robinhood or its Affiliates shall not be responsible for any investment research provided by any API Licensee or any Licensee Products.

(iii)    Robinhood or its Affiliates makes no representations, warranties or other guarantees as to the accuracy, timeliness or efficacy of any market data, information, or other functionality made available by any API Licensee or any API Products.

F.  <u>Intellectual Property</u>.  My use of any API Products will not confer to Me any title, ownership interest or intellectual property rights that otherwise belongs to Robinhood or any of its affiliates.  The API Package, including content, is protected under U.S. patent, copyright laws, international treaties or conventions, and other laws and will remain Robinhood's exclusive property, as applicable.  Names, logos, and all related product and service names, design marks, and slogans displayed by or relating to Robinhood or any of its Affiliates or API Licensees in the context of the API Products shall remain the property of the respective owner, and use of such property by Robinhood or any API Licensee in marketing or provision of any API Products does not grant ownership of or entitle Me to use any such name or mark in any manner.

G.  <u>User's Representations and Warranties</u>.  I represent and warrant that:

(i)      By virtue of utilizing any API Products, I consent to and accept any risk associated with Robinhood's sharing of Personal Information with any API Licensee and shall not hold Robinhood, its Affiliates, or their respective officers, directors, or employees responsible for any Losses resulting from the sharing of such Personal Information.

(ii)      I agree that My use of any API Products or API Licensee's content, information, technology, or functionality is at My own risk.

(iii)      I agree that Robinhood may revoke any API Licensee or API Products' authorization at any time, for any reason, with or without cause and without prior notice to Me.

33. **Electronic Signatures; Modifications to the Agreement.**  I agree to transact business with Robinhood electronically.  By electronically signing an application for an Account, I acknowledge and agree that such electronic signature is valid evidence of My consent to be legally bound by this Agreement and such subsequent terms as may govern the use of Robinhood's services.  The use of an electronic version of any document fully satisfies any requirement that the document be provided to Me in writing.  I accept notice by electronic means as reasonable and proper notice, for the purpose of any and all laws, rules and regulations.  I acknowledge and agree that Robinhood Financial may modify this Agreement from time to time and I agree to consult the Website from time to time for the most up-to-date Agreement.  The electronically stored copy of this Agreement is considered to be the true, complete, valid, authentic and enforceable record of the Agreement, admissible in judicial or administrative proceedings to the same extent as if the documents and records were originally generated and maintained in printed form.  I agree to not contest the admissibility or enforceability of Robinhood Financial's electronically stored copy of the Agreement.

34. **Margin Accounts.**

A.      <u>Election</u>.  This numbered section applies to my account to the extent I elect and am approved for a Robinhood Gold margin account.

B.      <u>Margin Trading</u>.  I understand that margin trading involves interest charges and risks, including the potential to lose more than deposited or the need to deposit additional collateral in a falling market.  Before using margin, customers must determine whether this type of trading strategy is right for them given their specific investment objectives, experience, risk tolerance, and financial situation.  If I have elected to have a margin Account, I represent that I have read the Margin Disclosure Statement, Day Trading Risk Disclosure, and FINRA Investor Information.  These disclosures contain information on Robinhood's lending policies, interest charges, and the risks associated with margin accounts.

C.      <u>Hypothecation</u>.  Within the limitations imposed by applicable laws, rules and regulations, all securities now or hereafter held by Robinhood, or carried by Robinhood in any account for Me (either individually or jointly with others), or

deposited to secure same, may from time to time, without any notice, be carried in your general loans and may be pledged, repledged, hypothecated or re-hypothecated, separately or in common with other securities for the sum due to you thereon or for a greater sum and without retaining in your possession or control for delivery a like amount of similar securities. The IRS requires Broker Dealers to treat dividend payments on loaned securities positions as payments received in lieu of dividends for 1099 tax reporting purposes. Taxation of substitute dividend payments may be greater than ordinary on qualified dividends. It is understood, however, that you agree to deliver to Me upon My demand and upon payment of the full amount due thereon, all securities in such accounts, but without obligation to deliver the same certificates or securities deposited by Me originally. Any securities in My margin or short account may be borrowed by you, or lent to others.

D.    Interest.    Debit balances in My Accounts shall be charged with interest in accordance with your established custom, as disclosed to Me in the Customer Information Brochure pursuant to the provisions of the Securities Exchange Act.

E.    Margin.    I agree to maintain in all accounts with Robinhood such positions and margins as required by all applicable statutes, rules, regulations, procedures and custom, or as you deem necessary or advisable. I agree to promptly satisfy all margin and maintenance calls.

F.    Sales.    I agree to specifically designate any order to sell a security, which I do not own as a short sale, and understands that Robinhood will mark such order as a short sale. I agree that any order which is not specifically designated as a short sale is a sale of securities owned by me, and that I will deliver the securities on or before settlement date, if not already in the account. If I should fail to make such delivery in the time required, Robinhood is authorized to borrow such securities as necessary to make delivery for the sale, and I agree to be responsible for any loss you may thereby sustain, or which you may sustain as a result of your inability to borrow such securities.

**35.    Consent to Electronic Delivery of Documents.**

A.    Consent.    **By agreeing to electronic delivery, I am giving My informed consent to electronic delivery of all Account Documents, as defined below, other than those I have specifically requested to be delivered in paper form**. "Account Documents" include notices, disclosures, current and future account statements, regulatory communications (such as prospectuses, proxy solicitations, and privacy notices), trade confirmations, tax-related documents, and any other information, documents, data, and records regarding My Account, this Agreement (including amendments to this Agreement), and the agreements and disclosures governing the services delivered or provided to Me by Robinhood Financial, the issuers of the securities or other property in which I invest, and any other parties. I agree that I can access, view, download, save, and print any Account Documents I receive via electronic delivery for My records.

Provided by CourtAlert                                                                    www.CourtAlert.com

B.   Electronic Delivery System.  I acknowledge that Robinhood's primary methods of communication with Me include (A) posting information on the Website, (B) providing information via the App, (C) sending email(s) to My email address of record, and, to the extent required by law, (D) providing Me with notice(s) that will direct Me to the App or the Website where I can read and print such information. Unless otherwise required by law, Robinhood reserves the right to post Account Documents on the Website without providing notice to Me.  Further, Robinhood reserves the right to send Account Documents to My postal or email address of record, or via the App or Website.  I agree that all Account Documents provided to Me in any of the foregoing manner is considered delivered to Me personally when sent or posted by Robinhood, whether I receive it or not.

All e-mail notifications regarding Account Documents will be sent to My e-mail address of record.  I agree to maintain the e-mail address that I have provided Robinhood until I provide Robinhood with a new one.  I understand that e-mail messages may fail to transmit promptly or properly, including being delivered to SPAM folders.  I further understand that it is My sole responsibility to ensure that any emails from Robinhood or its Affiliates are not marked as SPAM.  Regardless of whether or not I receive an e-mail notification, I agree to check the Website regularly to avoid missing any information, including time-sensitive or otherwise important communication.  If I authorize someone else to access the e-mail account I have provided Robinhood, I agree to tell them to share the Account Documents with Me promptly, and I accept the risk that they will see My sensitive information. I understand that if I use a work e-mail address or computing or communications device, My employer or other employees may have access to the Account Documents.

Additionally, I acknowledge that the Internet is not a secure network and agree that I will not send any confidential information, including Account numbers or passwords, in any unencrypted e-mails.  I also understand that communications transmitted over the Internet may be accessed by unauthorized or unintended third parties and agree to hold Robinhood, its Affiliates, and Robinhood and its Affiliates' respective officers and employees harmless for any such access regardless of the cause.

I agree to promptly and carefully review all Account Documents when they are delivered and notify Robinhood Financial in writing within five (5) calendar days of delivery if I object to the information provided (or other such time specified herein).  If I fail to object in writing within such time, Robinhood Financial is entitled to treat such information as accurate and conclusive.  I will contact Robinhood to report any problems with accessing the Account Documents.

C.   Costs.  Potential costs associated with electronic delivery of Account Documents may include charges from Internet access providers and telephone companies, and I agree to bear these costs.  Robinhood Financial will not charge Me additional online access fees for receiving electronic delivery of Account Documents.

D.      <u>Archival</u>.  Upon My request, I may obtain copies of up to six (6) prior years of account statements, and three (3) prior years of trade confirmations.

E.      <u>Revocation of Consent</u>.  Subject to the terms of this Agreement, I may revoke or restrict My consent to electronic delivery of Account Documents at any time by notifying Robinhood Financial in writing of My intention to do so.  I also understand that I have the right to request paper delivery of any Account Document that the law requires Robinhood Financial to provide Me in paper form.  Robinhood Financial will not treat My request for paper copies as a withdrawal of My consent to electronic delivery of Account Documents.  I understand that if I revoke or restrict My consent to electronic delivery of Account Documents or request paper delivery of same, Robinhood Financial, in its sole discretion, may charge Me a reasonable service fee for the delivery of any Account Document that would otherwise be delivered to Me electronically, restrict or close My account, or terminate My access to Robinhood Financial's services.  I understand that neither My revocation or restriction of consent, My request for paper delivery, nor Robinhood Financial's delivery of paper copies of Account Documents will affect the legal effectiveness or validity of any electronic communication provided while My consent was in effect.

F.      <u>Duration of Consent</u>.  My consent to receive electronic delivery of Account Documents will be effective immediately and will remain in effect unless and until either I or Robinhood Financial revokes it.  I understand that it may take up to three (3) Business Days to process a revocation of consent to electronic delivery, and that I may receive electronic notifications until such consent is processed.

G.      <u>Hardware and Software Requirements</u>.  I understand that in order to receive electronic deliveries, I must have access to a computer or Mobile Device with Internet access, a valid e-mail address, and the ability to download such applications as Robinhood Financial may specify and to which I have access.  I also understand that if I wish to download, print, or save any information I wish to retain, I must have access to a printer or other device in order to do so.

H.      <u>Consent and Representations</u>.  I hereby agree that I have carefully read the above information regarding informed consent to electronic delivery and fully understand the implications thereof.  Additionally, I hereby agree to all conditions outlined above with respect to electronic delivery of any Account Document.  I will maintain a valid e-mail address and continue to have access to the Internet.  If My e-mail address changes, I agree to immediately notify Robinhood Financial of My new e-mail address in writing.

**36.**    **Miscellaneous Provisions.**  The following provisions shall also govern this Agreement:

A.      <u>Contact Information</u>.  Robinhood Customer Service may be contacted by visiting support.robinhood.com or by email at help@robinhood.com.

B.    <u>Interpretation</u>.  The heading of each provision hereof is for descriptive purposes only and shall not be (1) deemed to modify or qualify any of the rights or obligations set forth herein or (2) used to construe or interpret any of the provisions hereunder. When a reference is made in this Agreement to a Section, such reference shall be to a Section of this Agreement unless otherwise indicated.  Whenever the words "include," "includes" or "including" are used in this Agreement, they shall be deemed to be followed by the words "without limitation." The word "or," when used in this Agreement, has the inclusive meaning represented by the phrase "and/or." Unless the context of this Agreement otherwise requires: (i) words using the singular or plural number also include the plural or singular number, respectively; and (ii) the terms "hereof," "herein," "hereunder" and derivative or similar words refer to this entire Agreement.  References to any law shall be deemed to refer to such law as amended from time to time and to any rules or regulations promulgated thereunder.

C.    <u>Binding Effect; Assignment</u>.  This Agreement shall bind My heirs, assigns, executors, successors, conservators and administrators.  I may not assign this Agreement or any rights or obligations under this Agreement without first obtaining Robinhood's prior written consent.  Robinhood may assign, sell, or transfer My Account and this Agreement, or any portion thereof, at any time, without My prior consent.

D.    <u>Severability</u>.  If any provisions or conditions of this Agreement are or become inconsistent with any present or future law, rule, or regulation of any applicable government, regulatory or self-regulatory agency or body, or are deemed invalid or unenforceable by any court of competent jurisdiction, such provisions shall be deemed rescinded or modified, to the extent permitted by applicable law, to make this Agreement in compliance with such law, rule or regulation, or to be valid and enforceable, but in all other respects, this Agreement shall continue in full force and effect.

E.    <u>Website Postings</u>.  I agree and understand that Robinhood Financial may post other specific agreements, disclosures, policies, procedures, terms, and conditions that apply to My use of the App, the Website, or My Account on the Website ("Website Postings").  I understand that it is My continuing obligation to understand the terms of the Website Postings, and I agree to be bound by the Web Postings as are in effect at the time of My use.

F.    <u>Entirety of Agreement</u>.  This Agreement, any attachments hereto, other agreements and policies referred to in this Agreement (including the Website Postings), and the terms and conditions contained in My Account statements and confirmations, contain the entire agreement between Robinhood and Me and supersede all prior or contemporaneous communications and proposals, whether electronic, oral, or written, between Robinhood and Me, provided, however, that any and all other agreements between Robinhood and Me, not inconsistent with this Agreement, will remain in full force and effect.

Provided by CourtAlert                                                                    www.CourtAlert.com

G.  **Amendment.**  Robinhood may at any time amend this Agreement without prior notice to Me.  The current version of the Agreement will be posted on the Website and My continued Account activity after such amendment constitutes My agreement to be bound by all then-in-effect amendments to the Agreement, regardless of whether I have actually reviewed them.  Continued use of the App, the Website or any other Robinhood Financial services after such posting will constitute My acknowledgment and acceptance of such amendment.  I agree to regularly consult the Website for up-to-date information about Robinhood Financial services and any modifications to this Agreement.  Robinhood is not bound by any verbal statements that seek to amend the Agreement.

H.  **Termination.**  Robinhood may terminate this Agreement, or close, deactivate, or block access to My Account at any time in its sole discretion.  I will remain liable to Robinhood for all obligations incurred in My Account, pursuant to this Agreement, or otherwise, whether arising before or after termination.  I may terminate this Agreement after paying any obligations owed upon written notice.  This Agreement survives termination of My Account.

I.  **No Waiver; Cumulative Nature of Rights and Remedies.**  I understand that Robinhood's failure to insist at any time upon strict compliance with any term contained in this Agreement, or any delay or failure on Robinhood's part to exercise any power or right given to Robinhood in this Agreement, or a continued course of such conduct on Robinhood's part, shall at no time operate as a waiver of such power or right, nor shall any single or partial exercise preclude any other further exercise.  All rights and remedies given to Robinhood in this Agreement are cumulative and not exclusive of any other rights or remedies to which Robinhood is entitled.

J.  **International Customers.**  The products and services described on the Website are offered only in jurisdictions where they may be legally offered.  Neither the Website nor the App shall be considered a solicitation for or offering of any investment product or service to any person in any jurisdiction where such solicitation or offering would be illegal.  I understand that Robinhood, in its sole discretion, may accept unsolicited accounts from non-U.S. residents, depending on the country of residence and other factors.  I understand that Robinhood is based in the United States and that Robinhood accepts only U.S. currency in Robinhood's customer accounts.

K.  **Governing Law.**  This Agreement and all transactions made in My Account shall be governed by the laws of the State of California (regardless of the choice of law rules thereof), except to the extent governed by the federal securities laws, FINRA Rules, and the regulations, customs and usage of the exchanges or market (and its clearing house) on which transactions are executed.

37.    **Arbitration.**

> **A.      This Agreement contains a pre-dispute arbitration clause.  By signing an arbitration agreement, the parties agree as follows:**
>
> **(1)      All parties to this Agreement are giving up the right to sue each other in court, including the right to a trial by jury, except as provided by the rules of the arbitration forum in which a claim is filed.**
>
> **(2)      Arbitration awards are generally final and binding; a party's ability to have a court reverse or modify an arbitration award is very limited.**
>
> **(3)      The ability of the parties to obtain documents, witness statements and other discovery is generally more limited in arbitration than in court proceedings.**
>
> **(4)      The arbitrators do not have to explain the reason(s) for their award unless, in an eligible case, a joint request for an explained decision has been submitted by all parties to the panel at least 20 days prior to the first scheduled hearing date.**
>
> **(5)      The panel of arbitrators will typically include a minority of arbitrators who were or are affiliated with the securities industry.**
>
> **(6)      The rules of some arbitration forums may impose time limits for bringing a claim in arbitration.  In some cases, a claim that is ineligible for arbitration may be brought in court.**
>
> **(7)      The rules of the arbitration forum in which the claim is filed, and any amendments thereto, shall be incorporated into this Agreement.**
>
> **B.      Any controversy or claim arising out of or relating to this Agreement, any other agreement between Me and Robinhood, any Account(s) established hereunder, any transaction therein, shall be settled by arbitration in accordance with the rules of FINRA Dispute Resolution, Inc. ("FINRA DR").  I agree to arbitrate any controversy or claim before FINRA DR in the State of California.**
>
> **C.      This agreement to arbitrate constitutes a waiver of the right to seek a judicial forum unless such a waiver would be void under the federal securities laws. If I am a foreign national, non-resident alien, or if I do not reside in the United States, I agree to waive My right to file an action against Robinhood in any foreign venue.**
>
> **D.      No person shall bring a putative or certified class action to arbitration, nor seek to enforce any pre-dispute arbitration agreement against any person who has initiated in court a putative class action; or who is a member of a putative class who has not opted out of the class with respect to any claims encompassed by the putative class action until:**
>
> **(1)      the class certification is denied; or (2) the class is decertified; or (3) the customer is excluded from the class by the court.  Such forbearance to enforce an agreement to arbitrate shall not constitute a waiver of any rights under this Agreement except to the extent stated herein.**

ACCEPTED AND AGREED:  I acknowledge that I have read the preceding terms and conditions of this Agreement, that I understand them and that I hereby manifest my assent to, and my

agreement to comply with, those terms and conditions by accepting this agreement.  **I ALSO UNDERSTAND THAT BY ACCEPTING THIS AGREEMENT I HAVE ACKNOWLEDGED THAT THIS AGREEMENT CONTAINS A PREDISPUTE ARBITRATION CLAUSE IN SECTION 37 HEREIN.  I ALSO AGREE (1) THAT ANY OF MY MARGIN ACCOUNT SECURITIES MAY BE BORROWED BY ROBINHOOD OR LOANED TO OTHERS; (2) I HAVE RECEIVED OF A COPY OF THIS AGREEMENT AND (3) I HAVE REVIEWED A COPY OF THE MARGIN DISCLOSURE STATEMENT.**

**Appendix A**

**Electronic Fund Transfer Services Disclosures**

The following disclosures apply to the use of any EFT services offered by Robinhood, including the Card, ACH transactions and the Move Money functionality of the App.

Solely for purposes of these disclosures: (i) references to the Bank shall include any financial institution that issues the Card or provides services in connection with ACH, Move Money or other EFT transactions; (ii) "you" and "your" mean the owner of the Account; and (iii) "we" and "us" means Robinhood and the Bank collectively.

1.    Your Liability.

Contact Robinhood Customer Service AT ONCE if you believe your Card or PIN has been lost or stolen or if you believe that an electronic fund transfer has been made without your permission. Telephoning is the best way of keeping your losses down. You could lose all the Available Funds in your Account (plus your maximum overdraft line of credit). If you tell Robinhood within 2 business days after you learn of the loss or theft of your Card or PIN, you can lose no more than $50 if someone used your Card or PIN without your permission.

If you do NOT tell Robinhood within 2 business days after you learn of the loss or theft of your Card or PIN, and Robinhood can prove that it could have stopped someone from using your Card or PIN without your permission if you had told Robinhood, you could lose as much as $500.

Also, if your statement shows transfers that you did not make, including those made by Card or using your PIN, tell Robinhood at once. If you do not tell Robinhood within sixty (60) days after the statement was mailed to you, or otherwise made available to you, you may not get back any money you lost after the sixty (60) days if Robinhood can prove that Robinhood could have stopped someone from taking the money if you had told Robinhood in time. If a good reason (such as a long trip or a hospital stay) kept you from telling Robinhood, Robinhood will extend the time periods.

2.    Contact in event of unauthorized transfer.

If you believe your Card or PIN has been lost or stolen, contact Robinhood by emailing help@robinhood.com.

3.    Business Days.

Business Days are Monday through Friday, excluding federal holidays.

4.    Transfer Types and Limitations.

You may use your Card to make purchases at any merchant that accepts Mastercard debit cards or debit cards of other networks in which the Bank participates, and to make ATM withdrawals, in each case subject to the Available Funds in your Account, the transaction limits described below, and the other terms and conditions of this Agreement. You acknowledge and agree that the value

40

available to you for use with the Card is limited to the Available Funds in your Account. So long as you do not exceed the Available Funds in your Account, you may use the Card to purchase goods or services wherever the Card is honored, and to obtain cash by initiating cash withdrawal transactions through the Card from any financial institution or ATM that accepts the Card.  Each time you use the Card, you authorize Robinhood to reduce the Available Funds in your Account by the amount of the purchase or withdrawal and any applicable fees, costs, or holdings. Nevertheless, if you exceed the Available Funds in your Account you shall remain fully liable to Robinhood for the amount of the transactions and any applicable fees and charges.

You may also make ACH withdrawals from your Account, either originated through Robinhood or originated by a third party (a "non-originated" withdrawal), subject to the Available Funds in your Account, the transaction limits described below, and the other terms and conditions of this Agreement.  You also may make ACH deposits to your Account, either originated through Robinhood or originated by a third party (a "non-originated" deposit), subject to the transaction limits described below.

There are limits on the dollar amount of transactions you can make with your Card each day and each month, and limits on the amount of ACH withdrawals and deposits you can make each day. The following lists the limits for each type of transaction:

| Transaction Type | Daily Limit | Weekly Limit | Monthly Limit |
|---|---|---|---|
| Originated ACH Withdrawals | $50,000.00 | N/A | N/A |
| Originated ACH Deposits | $50,000.00 | N/A | N/A |
| Non-Originated ACH Withdrawals | $250,000.00 | N/A | N/A |
| Non-Originated ACH Deposits | $250,000.00 | N/A | N/A |
| Point of Sale Purchases with the Card | $5,000.00 | N/A | $15,000.00 |
| ATM Withdrawals | $510.00 | | $5,000.00 |
| MoneySend Deposits | N/A, subject to the Weekly Limit | $2,999 | N/A |

5.      Fees.

41

We will not charge you any fees for use of ATMs that are part of the AllPoint or MoneyPass ATM networks, or for point of sale transactions using the Card, or for initiating other EFTs on your behalf. If you withdraw funds from ATMs outside of the AllPoint or MoneyPass ATM networks, you may be separately assessed fees by those ATM owners or operators.

6.      Confidentiality.

We may disclose information to third parties about you, your Card, or the transactions you make using any of the EFT services we provide:

(1)     Where it is necessary or helpful for completing or correcting transactions and resolving claims regarding transactions;

(2)     In order to verify the existence and condition of your Card or your Account for a third party, such as a merchant;

(3)     In order to comply with a valid request by a government agency, a court order, or other legal or administrative reporting requirements;

(4)     If you consent by giving us your written permission;

(5)     To our employees, auditors, affiliates, service providers, or attorneys as needed;

(6)     In order to prevent, investigate or report possible illegal activity;

(7)     In order to issue authorizations for transactions on the Card;

(8)     As permitted by applicable law; or

(9)     Otherwise as necessary to fulfill our obligations under this Agreement and the terms applicable to the EFT service you are using.

Please see Robinhood's privacy policy, available at about.robinhood.com/legal, and the applicable Bank's privacy policy, available at https://www.suttonbank.com/_/kcms-doc/85/49033/WK-Privacy-Disclosure-1218.pdf, for further details. (The Robinhood privacy policy and the applicable Bank's privacy policy are referred to collectively as the "Privacy Policies"). You hereby agree to Robinhood's and the Bank's collection, use and sharing of information about you and the Card as provided in the Privacy Policies, which are made a part of this Agreement. The Privacy Policies also tell you how you can (i) limit the ways in which Bank and Robinhood share information about you, or (ii) request corrections to the information that Bank or Robinhood maintain about you. You agree that information you provide in connection with your Card or other EFT services you use is being provided directly to both Robinhood as the holder of the Account associated with the service and the Bank as the Card issuer or provider of the EFT service, as applicable.

Provided by CourtAlert

7.    <u>Documentation</u>.

*Terminal Transfers.*  You can get a receipt at the time you make any transfer to or from your Account using an ATM from the AllPoint or MoneyPass ATM networks or at the point of sale.

*Preauthorized Credits.*  If you have arranged to have direct deposits made to your Account at least once every 60 days from the same person or company, the person or company making the deposit will tell you every time they send us the money.  You can also check your Account online to see if a deposit has been received.

*Periodic Statements.*  You will get a monthly Account statement, unless there are no transfers in a particular month.  In any case you will get the statement at least quarterly.  You may obtain information about the Available Funds in your Account and a history of your Cash Management transactions on the App.

8.    <u>Preauthorized Payments/Stop Payment Procedure and Notice of Varying Amounts</u>.

You do not have the right to request that Robinhood in advance make regular payments out of your Account, although you may ask third parties to initiate regular payments out of your Account.

a. *Right to stop payment*: If you have automatic recurring payments taken out of your Account, you can stop any of these payments by contacting us at help@robinhood.com.  You must contact us in time for us to receive your request at least three business days before the payment is scheduled to be made.

b. *Notice of varying amounts*: If these regular payments vary in amount, the party you are going to pay will tell you, 10 days before each payment, when the payment will be made and how much it will be.  (The party you are going to pay may allow you to choose to get this notice only when the payment would differ by more than a certain amount from the previous payment, or when the amount would fall outside certain limits that you set.)

c. *Liability for failure to stop payment of preauthorized transfer*: If you order us to stop a payment at least three business days before the transfer is scheduled and we do not do so, we will be liable for your losses or damages.

9.    <u>Our Liability</u>.

If we do not complete a transaction to or from your Account on time or in the correct amount according to our Agreement with you, we will be liable for your losses or damages. However, there are some exceptions. We will not be liable, for instance:

(1)    If through no fault of Robinhood or the Bank, you do not have enough Available Funds in your Account to complete the transaction;

(2)    If a merchant refuses to accept your Card;

(3)    If an electronic terminal where you are making a transaction does not operate properly, and you knew about the problem when you initiated the transaction;

(4)     If access to your Card has been blocked after you reported your Card lost or stolen;

(5)     If there is a hold or your funds are subject to legal or administrative process or other encumbrance restricting their use;

(6)     If Robinhood or the Bank have reason to believe the requested transaction is unauthorized;

(7)     If circumstances beyond the control of Robinhood or the Bank (such as fire, flood, or computer or communication failure) prevent the completion of the transaction, despite reasonable precautions that Robinhood or the Bank have taken; or

(8)     For any other exception stated in this Agreement with you or by applicable law.

10.     Errors or Questions About Electronic Transfers.

In case of errors or questions about your electronic transfers, including your Card transactions, or if you think your statement or receipt is wrong or if you need more information about a transaction listed on the statement or receipt, contact Robinhood by emailing help@robinhood.com. Robinhood must hear from you no later than sixty (60) days after you were sent the FIRST statement on which the problem or error appeared.

(a) Tell Robinhood your name and account number.

(b) Describe the error or the transfer you are unsure about, and explain as clearly as you can why you believe it is an error or why you need more information.

(c) Tell Robinhood the dollar amount of the suspected error.

Robinhood will determine whether an error occurred within ten (10) business days after Robinhood hears from you and will correct any error promptly.  If Robinhood needs more time, however, it may take up to forty-five (45) days to investigate your complaint or question.  If Robinhood decides to do this, Robinhood will credit your Account within ten (10) business days for the amount you think is in error, so that you will have the use of the money during the time it takes Robinhood to complete our investigation.

For errors involving new accounts, point of sale, or foreign initiated transactions, Robinhood may take up to ninety (90) days to investigate your complaint or question.  For new accounts, Robinhood may take up to twenty (20) business days to credit your Account for the amount you think is in error.

Robinhood will tell you the results of our investigation within three (3) business days after completing the investigation. If Robinhood decides that there was no error, Robinhood will send you a written explanation. You may ask for copies of the documents that Robinhood used in our investigation.

Provided by CourtAlert
www.CourtAlert.com

# EXHIBIT B

# Robinhood
# Terms & Conditions

Robinhood Financial LLC ("Robinhood Financial"), a wholly-owned subsidiary of Robinhood Markets, Inc. ("Robinhood Markets"), is a registered broker-dealer and member of FINRA and SIPC that provides online and mobile application-based discount stock brokerage services to self-directed investors.

These Terms and Conditions are in addition to any other agreements between you and Robinhood Financial and Robinhood Markets (collectively, "Robinhood"), including any customer or account agreements and any other agreements that govern your use of software, products, goods, services, content, tools, and information provided by Robinhood.

## General

The Robinhood website and mobile application (collectively, the "Service") may include or make available certain content (the "Content"). Content includes, without limitation: (1) account positions, balances, transactions, confirmations, and order history; (2) general news and information, commentary, research reports, educational material and information and data concerning the financial markets, securities and other subjects; (3) market data[1] such as quotations for securities transactions and/or last sale information for completed securities transactions reported in accordance with federal securities regulations; (4) financial and investment interactive tools, such as alerts or calculators; (5) tax preparation, bill payment and account management tools; (6) company names, logos, product and service names, trade names, trademarks and services marks (collectively, "Marks") owned by Robinhood, and Marks owned by Third Party Providers (defined below); and (7) any other information, content, services, or software. Certain Content is furnished by third parties (each, a "Third-Party Provider" and collectively, the "Third-Party Providers"). Such Content ("Third Party Content") includes, without limitation, any information, content, service or software made available by or through social media websites, blogs, wikis, online conferences, telecasts, podcasts, and other forums (collectively, the "Forums"). Third Party Content may be available through framed areas or through hyperlinks to the Third-Party Providers' websites.

## Acceptance of Terms and Conditions

By using the Service and the Content, you agree to follow and be bound by these Terms and Conditions, including the policies referenced herein. Customers of Robinhood are granted additional levels of access to the website and their relationship with Robinhood is governed by additional agreements and terms of use, such as the Customer Agreement.

## Disclaimer and Limitations of Liability

**The Content and the Service are provided on an "as is" and "as available" basis. To the fullest extent permitted under applicable law, Robinhood and the Third Party Providers expressly disclaim all warranties of any kind with respect to the Content and the Service, whether express or implied, including, but not limited to, the implied warranties of merchantability, fitness for a particular purpose and non-infringement. Neither Robinhood nor Third Party Providers guarantee the accuracy, timeliness, completeness or usefulness of any Content. You agree to use the Content and the Service only at your own risk.**

**Neither Robinhood nor the Third Party Providers explicitly or implicitly endorse or approve any Third Party Content. Third Party Content is provided for informational purposes only.**

---

[1] Market Data by Xignite provides market data to Robinhood customers.

Rhfv1.420160108

Provided by CourtAlert                                                                    www.CourtAlert.com

**The Content is not intended to provide financial, legal, tax or investment advice or recommendations. You are solely responsible for determining whether any investment, investment strategy or related transaction is appropriate for you based on your personal investment objectives, financial circumstances and risk tolerance. You should consult your legal or tax professional regarding your specific situation.**

**ROBINHOOD AND THE THIRD PARTY PROVIDERS WILL NOT BE LIABLE FOR ANY DIRECT, INDIRECT, INCIDENTAL, SPECIAL, CONSEQUENTIAL OR EXEMPLARY DAMAGES, INCLUDING, BUT NOT LIMITED TO, DAMAGES FOR LOSS OF PROFITS, REVENUE, INCOME, GOODWILL, USE, DATA OR OTHER INTANGIBLE LOSSES (EVEN IF ROBINHOOD OR ANY THIRD PARTY PROVIDER HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES), RESULTING FROM: (1) THE USE OF OR THE INABILITY TO USE THE CONTENT OR THE SERVICE; (2) THE COST OF PROCUREMENT OF SUBSTITUTE GOODS AND SERVICES RESULTING FROM ANY GOODS, DATA, INFORMATION OR SERVICES PURCHASED OR OBTAINED OR MESSAGES RECEIVED OR TRANSACTIONS ENTERED INTO, THROUGH OR FROM THE SERVICE; (3) ACCESS TO OR ALTERATION OF YOUR ACCOUNT, TRANSMISSIONS OR DATA DUE TO YOUR CONDUCT, INACTION OR NEGLIGENCE; OR (4) ANY OTHER MATTER RELATING TO THE CONTENT OR THE SERVICE.**

<u>**No Recommendations or Investment Advice**</u>

Robinhood Financial provides self-directed investors with discount brokerage services, and does not make recommendations or offer investment advice of any kind. You are solely responsible for evaluating the merits and risks associated with the use of any Content provided through the Service before making any decisions based on such Content. You agree not to hold Robinhood or any Third-Party Provider liable for any possible claim for damages arising from any decision you make based on the Content or other information made available to you through the Service or any Third-Party Provider websites. Past performance data should not be construed as indicative of future results.

<u>**U.S. Residents Only**</u>

The Content and the Service are intended for United States residents only. They shall not be considered a solicitation to any person in any jurisdiction where such solicitation would be illegal.

<u>**Content**</u>

Content posted on the Service is published as of its stated date or, if no date is stated, the date of first posting. Neither Robinhood nor the Third-Party Providers have undertaken any duty to update any such information.

Robinhood does not prepare, edit, or endorse Third Party Content. Robinhood does not guarantee the accuracy, timeliness, completeness or usefulness of Third Party Content, and is not responsible or liable for any content, advertising, products, or other materials on or available from third party sites.

You will not hold Robinhood and/or any Third-Party Provider liable in any way for (a) any inaccuracy of, error or delay in, or omission of the Content; or (b) any loss or damage arising from or occasioned by i) any error or delay in the transmission of such Content; ii) interruption in any such Content due either to any negligent act or omission by any party to any "force majeure" (e.g., flood, extraordinary weather conditions, earthquake or other act of God, fire, war, insurrection, riot, labor dispute, accident, action of government, communications or power failure, equipment or software malfunction), or iii) to any other cause beyond the reasonable control of Robinhood and/or Third-Party Provider, or iv) non-performance.

Rhfv1.420160108

Provided by CourtAlert
www.CourtAlert.com

Any price quotes may be delayed 20 minutes or longer, according to the rules and regulations applicable to exchanges and Third Party Providers. Neither Robinhood nor the Third-Party Providers make any representations, warranties or other guarantees as to the accuracy or timeliness of any price quotes. Neither Robinhood nor the Third-Party Providers make any representations, warranties or other guarantees as to the present or future value or suitability of any sale, trade or other transaction involving any particular security or any other investment.

Content is provided exclusively for personal and noncommercial access and use. No part of the Service or Content may be copied, reproduced, republished, uploaded, posted, publicly displayed, encoded, translated, transmitted or distributed in any way (including "mirroring") to any other computer, server, web site or other medium for publication or distribution or for any commercial enterprise, without Robinhood's express prior written consent.

You acknowledge that Robinhood is the sole owner of Robinhood Marks and that other Marks are the property of their respective owners. You agree that you will not use any Marks for any purpose without the prior express written consent of the respective owners.

### Termination; Modification

You agree that, without notice, Robinhood may terminate these Terms and Conditions, or suspend your access to the Service or the Content, with or without cause at any time and effective immediately. These Terms and Conditions will terminate immediately without notice from Robinhood if you, in Robinhood's sole discretion, fail to comply with any provision of these Terms and Conditions. Robinhood shall not be liable to you or any third party for the termination or suspension of the Service or the Content, or any claims related to such termination or suspension.

Robinhood and/or the Third-Party Providers may discontinue or modify the Content, or any portion thereof, at any time. You release and agree to indemnify and hold harmless Robinhood, and the Third-Party Providers, for any loss or damages arising from or relating to such discontinuation or modification.

### Communications

By using the Service or the Content, you consent to any form of recording and retention of any communication, information and data exchanged between you and Robinhood or its representatives or agents.

All communications made at or through the Forums are public. Neither Robinhood nor the Third-Party Providers screen, review, approve or endorse any Third Party Content available on or through the Forums. Reliance on any Third Party Content available on or through the Forums is at your own risk. When discussing a particular company, stock or security in the Forums, you agree to reveal any ownership interest in such company, stock or security. Without limitation, you agree not to do any of the following:

   a) upload, post, transmit or otherwise make available any Content that is unlawful, harmful, threatening, abusive, harassing, tortuous, defamatory, vulgar, obscene, libelous, invasive of another's privacy (including, but not limited to, any address, email, phone number, or any other contact information without the written consent of the owner of such information), hateful, or racially, ethnically or otherwise objectionable;
   b) harm minors in any way;
   c) impersonate any person or entity, including, but not limited to, (i) a Robinhood or Third-Party Provider manager, employee, agent, or representative or (ii) forum leader, guide or host;
   d) falsely state or otherwise misrepresent your affiliation with any person or entity;
   e) forge headers or otherwise manipulate identifiers in order to disguise the origin of any material;
   f) upload, post or otherwise transmit any material that you do not have a right to transmit under any law or under contractual or fiduciary relationships (such as inside information, proprietary and

Rhfv1.420160108

Provided by CourtAlert
www.CourtAlert.com

confidential information learned or disclosed as part of employment relationships or under nondisclosure agreements);

g) upload, post or otherwise transmit any material that infringes any patent, trademark, trade secret, copyright, rights of privacy or publicity, or other proprietary rights of any party;

h) upload, post, or transmit unsolicited commercial email or "SPAM," including, but not limited to, unethical marketing, advertising, or any other practice that is in any way connected with SPAM, such as: (1) sending mass email to recipients who haven't requested email from you or with a fake return address; (2) promoting a site with inappropriate links, titles, or descriptions; or (3) promoting any site by posting multiple submissions in forums that are identical;

i) upload, post or otherwise transmit any material that contains software viruses or any other computer code, files or programs designed to interrupt, destroy or limit the functionality of any computer software or hardware or telecommunications equipment;

j) interfere with or disrupt the Service or servers or networks connected to the Service, or disobey any requirements, procedures, policies or regulations of networks connected to the Service;

k) intentionally or unintentionally violate any applicable local, state, national or international law, including, but not limited to, regulations promulgated by the U.S. Securities and Exchange Commission, any rules of any national or other securities exchange, and any regulations having the force of law;

l) "stalk" or otherwise harass another;

m) collect or store personal data about other users of the Service;

n) promote or provide instructional information about illegal activities, promote physical harm or injury against any group or individual, or promote any act of cruelty;

o) promote, offer for sale or sell any security or item, good or service that i) violates any applicable federal, state, or local law or regulation, ii) you do not have full power and authority under all relevant laws and regulations to offer and sell, including all necessary licenses and authorizations, or iii) Robinhood or the Third-Party Providers determine, in their sole discretion, is inappropriate for sale;

p) use the Forums as a forwarding service to another website; or

q) access or otherwise use the Forums in any unlawful manner, for any unlawful purpose or in violation of these Terms and Conditions.

## External Links

Robinhood and/or the Third-Party Providers may provide links to other websites or resources. Because neither Robinhood or the Third-Party Providers have any control over such sites and resources, you acknowledge and agree that neither Robinhood nor the Third Party Providers are responsible for the availability of such external sites or resources. Robinhood and the Third Party Providers do not endorse and are not liable for any content, advertising, products, or other materials on or available through such sites or resources. You further acknowledge and agree that neither Robinhood nor the Third Party Providers shall be responsible or liable, directly or indirectly, for any damage or loss caused or alleged to be caused by or in connection with use of or reliance on any such content, goods or services available on or through any such site or resource.

## Applicable Policies

In addition to these Terms and Conditions, your access to and use of the Content and the Service is subject to Robinhood's then-current policies relating to the Content and the Service, including, without limitation, the Robinhood Privacy Policy available on the Service. You agree to be bound by these policies and all other Robinhood policies applicable to the access and use of the Content and the Service.

By using the Service, you are consenting to have your personal data transferred to and processed by Robinhood and its affiliates. As part of providing you the Service, Robinhood may need to provide you with certain communications, such as service announcements and administrative messages. These communications are considered part of the Service, which you may not be able to opt-out from receiving.

Rhfv1.420160108

**Indemnification**

You will indemnify and hold harmless Robinhood and the Third Party Providers, and the officers, directors, agents, partners, employees, licensors, distributors, and representatives of Robinhood and the Third Party Providers, from and against any and all claims, demands, actions, causes of action, suits, proceedings, losses, damages, costs, and expenses, including reasonable attorneys' fees, arising from or relating to your access and/or use of, or interaction with the Content (including, without limitation, Third Party Content), or any act, error, or omission of your use of your account or any user of your account, in connection therewith, including, but not limited to, matters relating to incorrect, incomplete, or misleading information; libel; invasion of privacy; infringement of a copyright, trade name, trademark, service mark, or other intellectual property; any defective product or any injury or damage to person or property caused by any products sold or otherwise distributed through or in connection with the Service; or violation of any applicable law.

**Revisions**

Robinhood may at any time revise these Terms and Conditions by updating this document. You agree to be bound by subsequent revisions and agree to review these Terms and Conditions periodically for changes. The most updated version of this document will be available for your review under the "Robinhood Terms and Conditions" link that appears on the Robinhood website and mobile application.

**Applicable Law and Venue; Severability**

You agree that these Terms and Conditions shall be governed by and interpreted in accordance with the laws of the State of California, without giving effect to principles of conflicts of law. Any legal action or proceeding arising under these Terms and Conditions will be brought exclusively in courts located in Santa Clara County, California, and you hereby irrevocably consent to the personal jurisdiction and venue therein. If any provision of these Terms and Conditions is deemed unlawful, void or for any reason unenforceable, then that provision will be deemed severable from these Terms and Conditions and will not affect the validity and enforceability of the remaining provisions.

# Exhibit 3

RACHELE R. BYRD (190634)
byrd@whafh.com
BRITTANY N. DEJONG (258766)
dejong@whafh.com
**WOLF HALDENSTEIN ADLER
  FREEMAN & HERZ LLP**
750 B Street, Suite 1820
San Diego, CA 92101
Telephone: 619/239-4599
Facsimile: 619/234-4599

*Attorneys for Plaintiff*

[Additional Counsel Appear on Signature Page]

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL RIGGS, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>ROBINHOOD FINANCIAL, LLC, ROBINHOOD SECURITIES, LLC, and ROBINHOOD MARKETS, INC.,<br><br>Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT FOR:**<br><br>(1)  Breach of Contract;<br>(2)  Breach of the Implied Covenant of Good Faith and Fair Dealing;<br>(3)  Breach of Fiduciary Duty;<br>(4)  Negligence;<br>(5)  Gross Negligence;<br>(6)  California's Consumers Legal Remedies Act, Civ. Code §§ 1750, *et seq.*;<br>(7)  California's Unfair Competition Law, Bus. & Prof. Code §§ 17200, *et seq.*;<br>(8)  Unjust Enrichment; and<br>(9)  Declaratory Relief<br><br>**<u>DEMAND FOR JURY TRIAL</u>** |

CLASS ACTION COMPLAINT

1         Plaintiff Michael Riggs ("Plaintiff"), individually and on behalf of all other persons

2  similarly situated, by the undersigned attorneys, alleges the following based upon personal

3  knowledge as to himself and his own acts, and upon information and belief as to all other matters

4  based upon, *inter alia*, the investigation conducted by and through his attorneys, which included,

5  among other things, a review of the defendants' public documents, announcements made by

6  defendants, wire and press releases published by and regarding Robinhood Financial, LLC

7  ("Robinhood Financial"), Robinhood Securities, LLC ("Robinhood Securities"), and Robinhood

8  Markets, Inc. ("Robinhood Markets") (collectively, "Robinhood" or "Defendants").

## NATURE OF THE ACTION

1.     This is a class action on behalf of all persons or entities who were unable to access

and transact with their Robinhood accounts and incurred losses due to the inability to exercise or

hedge expiring options, short positions, or limit orders during the period of March 2, 2020

through March 9, 2020 (the "Class Period"), seeking to recover damages caused by Defendants'

actions.  Plaintiff asserts putative class action claims generally including breach of contract,

negligence, breach of fiduciary duty, and violations of California consumer protection laws, on

behalf of himself and all other Robinhood customers who are similarly situated.  He seeks

damages, restitution, and injunctive relief.

2.     Robinhood is an online brokerage firm founded in 2013 that touts itself as "a

pioneer in commission-free investing."  Robinhood's customers place securities trades through

the firm's website, by using a web-based application (or "app"),[1] or by calling the firm's help

center.  Unfortunately for Robinhood's customers, including Plaintiff, Robinhood's trading

systems completely crashed on Monday, March 2, 2020, and again on Monday, March 9, 2020,

whereby Robinhood experienced a total outage of its operating systems (the "Outages").

Throughout the entire trading day, Robinhood's customers were prevented from making any

securities trades through the firm's website, app, or call center.

---

[1]    In exchange for using the app, Robinhood collects personal data about its users (including financial information), and sells this data to third parties.

CLASS ACTION COMPLAINT
- 1 -

3.      As a result of the Outages, Plaintiff suffered financial losses due to being denied access to his Robinhood trading accounts and being unable to execute his transactions, and accordingly asserts these class action claims on behalf of himself and all others who suffered losses in their trading Robinhood accounts specifically as a result of their inability to place any securities trades during the Outages.

## **JURISDICTION & VENUE**

4.      This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2).  The aggregate claims of all members of the proposed class and subclasses are in excess of $5 million, exclusive of interest and costs, and there are more than 100 putative class members. Plaintiff, as well as many members of the proposed class, are citizens of a state different from Defendants.

5.      Pursuant to 28 U.S.C. § 1391, this Court is the proper venue for this action because a substantial part of the events, omissions, and acts giving rise to the claims herein occurred in this District where Robinhood is headquartered and where it developed, distributed, marketed, advertised, and sold the financial services which are the subject of the present complaint.

6.      Moreover, venue is appropriate in this District pursuant to 28 USC § 1391(b)(2) because Robinhood is headquartered in Menlo Park and a substantial part of the acts and omissions that gave rise to this Complaint occurred or emanated from this District.  Additionally, Robinhood's Terms of Service select courts in Santa Clara County as a venue for legal disputes.

7.      This Court has personal jurisdiction over Robinhood because it is headquartered in and authorized to do business and does conduct business in California, and because it has specifically marketed, advertised, and made substantial sales in California, and has sufficient minimum contacts with this state and/or sufficiently avails itself of the markets of this state through its promotion, sales, and marketing within this state to render the exercise of jurisdiction by this Court permissible.

CLASS ACTION COMPLAINT
- 2 -

Provided by CourtAlert
www.CourtAlert.com

**PARTIES**

8.    Plaintiff Michael Riggs is a citizen of Pennsylvania and is over the age of 18 and a user of Robinhood.

9.    Defendant Robinhood Financial is a Delaware corporation with its principal place of business at 85 Willow Road, Menlo Park, California 94025.  It is a wholly-owned subsidiary of Robinhood Markets.   Robinhood Financial is registered as a broker-dealer with the U.S. Securities & Exchange Commission ("SEC").   Defendant Robinhood Financial acts as an introducing broker and has a clearing arrangement with its affiliate, Defendant Robinhood Securities.

10.    Defendant Robinhood Securities is a Delaware corporation with its principal place of business at 500 Colonial Center Parkway, Suite 100, Lake Mary, Florida 32746.  It is a wholly owned subsidiary of Defendant Robinhood Markets. Defendant Robinhood Securities is registered as a broker-dealer with the SEC. Defendant Robinhood Financial acts as a clearing broker and clears trades introduced by its affiliate Defendant Robinhood Financial.

11.    Defendant Robinhood Markets is a Delaware corporation with its principal place of business at 85 Willow Road, Menlo Park, California 94025.  Defendant Robinhood Markets is the corporate parent of Defendants Robinhood Financial and Robinhood Securities.

**SUBSTANTIVE ALLEGATIONS**

**Background**

12.    Robinhood has experienced significant growth as a startup.  In 2019, Robinhood raised $323 million in funding at a $7.6 billion valuation. The firm markets itself primarily to younger investors and claims over 10 million users of its trading app.

**Defendants' Misconduct**

13.    On Monday, March 2, 2020, Plaintiff and others customers were unable to access their Robinhood accounts and unable to trade the securities in their accounts.  This outage lasted

CLASS ACTION COMPLAINT
- 3 -

Provided by CourtAlert                                                                        www.CourtAlert.com

from 6:30 a.m. to 11:00 p.m. California time.[2]

14.     Robinhood's systems woes continued into the following day. On Tuesday, March 3, 2020, a Robinhood spokesperson admitted that the cause of the March 2 Outage was "instability in a part of our infrastructure that allows our systems to communicate with each other."[3]  At some point later that day, Robinhood's systems were restored.

15.     Later, in a blog post on Robinhood's website dated March 3, 2020, Robinhood's founders stated:

> When it comes to your money, we know how important it is for you to have answers. The outages you have experienced over the last two days are not acceptable and we want to share an update on the current situation.

> Our team has spent the last two days evaluating and addressing this issue. We worked as quickly as possible to restore service, but it took us a while. Too long. We now understand the cause of the outage was stress on our infrastructure— which struggled with unprecedented load. That in turn led to a "thundering herd" effect—triggering a failure of our DNS system.

> Multiple factors contributed to the unprecedented load that ultimately led to the outages. The factors included, among others, highly volatile and historic market conditions; record volume; and record account sign-ups.[4]

16.     The following week, on March 9, 2020, Robinhood once again experienced outages with customers unable to access their accounts and transact on the public markets.[5]

---

[2]     Alan Mirabella, *Why So Many Users Are Furious After Popular Online Stock-Trading App Robinhood Crashed This Week*, TIME (Mar. 3, 2020), https://time.com/5794476/robinhood-outage-down/ (last visited Mar. 10, 2020).

[3]     Alan Salzman, *Robinhood Trading App is Back Up After a Second Crash*, BARRON'S (Mar. 3, 2020), https://www.barrons.com/articles/robinhood-trading-app-returns-only-to-crash-again-on-tuesday-51583249601 (last visited Mar. 10, 2020).

[4]     *An Update from Robinhood's Founders,* UNDER THE HOOD: THE OFFICIAL ROBINHOOD BLOG (Mar. 3, 2020), https://blog.robinhood.com/ (last visited Mar. 10, 2020).

[5]     Jonathan Shieber, *The Robinhood app went down again as stocks got routed on Wall St.*, TECHCRUNCH (Mar. 9, 2020), https://techcrunch.com/2020/03/09/the-robinhood-app-is-down-again-as-stocks-get-routed-on-wall-st/ (last visited Mar. 10, 2020).

17.     Under federal and state securities laws, securities industry rules, and industry best practices, brokerage firms that offer online trading services to their customers are required to, among other things, ensure that customers receive best execution of trades and that the firm has adequate operational capability to handle customer trading volume.

18.     More specifically, the Financial Industry Regulatory Authority ("FINRA"), which governs brokers like Robinhood, espouses rule 5310 regarding "Best Execution and Interpositioning." Rule 5310.01 requires that Robinhood "must make every effort to execute a marketable customer order that it receives fully and promptly." By failing to respond at all to customers' placing timely trades, and in fact preventing them from doing so altogether, Robinhood has breached these obligations and caused its customers substantial losses due solely to its own negligence and failure to maintain adequate infrastructure.

19.     Moreover, Robinhood has a history of flouting these obligations. Just a few months before the outages, on December 19, 2019, FINRA announced it fined Defendant Robinhood Financial $1.25 million for best execution violations related to its customers' equity orders and related supervisory failures that spanned from October 2016 to November 2017.[6] As part of the settlement, Robinhood also agreed to retain an independent consultant to conduct a comprehensive review of the firm's systems and procedures related to best execution. *Id*.

20.     Additionally, Robinhood has a history of failing to provide adequate service to its customers, particularly those engaged in options trading. For example, in December 2018, customers trading in options faced similar outages and incurred significant trading losses, similar to those affected during the Class Period.[7] After the December 2018 outage, Robinhood offered access to its premium service free for three months to affected customers.

[6]     Michelle Ong & Mike Rote, *FINRA Fines Robinhood Financial, LLC $1.25 Million for Best Execution Violations*, FIRNA (Dec. 19, 2019), https://www.finra.org/media-center/newsreleases/2019/finra-fines-robinhood-financial-llc-125-million-best-execution (last visited Mar. 11, 2020).

[7]     Dan DeFrancesco, *Robinhood's options trading stopped working, and customers are furious over the money they say they lost*, BUSINESS INSIDER (Dec. 13, 2019), https://www.businessinsider.com/robinhoods-options-trading-shutdown-and-customers-are-furious-2018-12 (last visited Mar. 11, 2020).

CLASS ACTION COMPLAINT
- 5 -

1    21.    Unfortunately, Robinhood failed to remedy the flaws in its systems.

2                        **Plaintiff's Experiences**

3    22.    Plaintiff Riggs is a customer of Robinhood and entered into a Customer

4    Agreement, as discussed further below, in order to use Robinhood's online trading systems.

5    23.    Plaintiff Riggs held VXX call options and had submitted in-the-money sell orders

6    at the open on March 9, 2020.  The transaction should have resulted in a net profit exceeding

7    $35,000 for Plaintiff.

8    24.    Instead, at the beginning of trading on March 9, 2020, the transaction failed to

9    execute.  Plaintiff attempted to execute the transaction at a lower price that was below the prices

10   indicated quoted by Robinhood as occurring in the market, thus indicating there were

11   counterparties for the transaction.  The lower price transaction was noted as accepted by

12   Robinhood but it also failed to execute, preventing Plaintiff from mitigating his losses.  No

13   proceeds of these transactions entered Plaintiff Riggs' account, and instead, he incurred a near

14   $1,000 loss.

15   25.    Plaintiff Riggs incurred similar losses on March 2, 2020, when he was unable to

16   access his Robinhood account, with a net loss of approximately $10,000.

17   26.    Plaintiff Riggs relied on Robinhood to perform pursuant to its Customer

18   Agreement and provide the contracted for financial services.

19   27.    As a result of the Outages, Plaintiff was unable to mitigate losses in his

20   Robinhood account and suffered significant losses.

21                      **CLASS ACTION ALLEGATIONS**

22   28.    Plaintiff brings claims pursuant to Federal Rule of Civil Procedure 23 on behalf of

23   the following Class, as defined below:

24       All Robinhood customers within the United States who were not able to execute
         trades on securities during the Outages or to change limit orders during the
25       Outages and incurred financial losses.

26   29.    Excluded from the Class are the Robinhood entities and their current employees,

27   counsel for the parties, as well as the Court and its personnel presiding over this action.

28

                                        CLASS ACTION COMPLAINT

Provided by CourtAlert                                                                                    www.CourtAlert.com

30. The members of the Class are so numerous that joinder of all members is impracticable, since Robinhood has millions of customers. The precise number of members of the proposed Class is unknown to Plaintiff at this time, but, based on information and belief, Class members are so numerous that their individual joinder herein is impracticable. Based on information and belief and publicly available reports, Class members are likely in the thousands. All Class members may be notified of the pendency of this action by reference to Robinhood's records, or by other alternative means.

31. There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class, which predominate over questions that may affect individual Class members, include, *inter alia*:

    (a) Whether Robinhood's technology was inadequate to provide the financial services that were needed to handle reasonable consumer demand;

    (b) Whether Robinhood failed to provide contingencies to customers to execute timely trades in the event of an Outage;

    (c) Whether Robinhood violated FINRA Rule 5310;

    (d) Whether Robinhood violated state consumer protection laws in failing to disclose that its technology-based financial services were inadequate and unable to perform for substantial periods of time;

    (e) Whether Robinhood was in breach of its legal, regulatory, and licensing requirements by failing to provide adequate access to financial services in a timely manner;

    (f) Whether Robinhood was in breach of its contracts and/or the implied covenant of good faith and fair dealing in connection with its failure to provide financial services in a timely manner;

    (g) Whether Robinhood was negligent or grossly negligent by failing to provide financial services in a timely manner due to its substandard and inadequate technology platform;

CLASS ACTION COMPLAINT

- 7 -

Provided by CourtAlert                                                                    www.CourtAlert.com

1    (h)    Whether Robinhood breached its fiduciary duties to customers by failing to

2           provide adequate access to financial services in a timely manner;

3    (i)    Whether Robinhood was unjustly enriched by its conduct;

4    (j)    Whether Plaintiff and the other Class members were injured by Robinhood's

5           conduct, and if so, the appropriate class-wide measure of damages, restitution,

6           and other appropriate relief, including injunctive relief.

7    (k)    Whether Plaintiff and the other Class members are entitled to injunctive and

8           declaratory relief.

9    32.    Plaintiff's claims are typical of those of the Class because Plaintiff and the Class

10   sustained damages from the Defendants' wrongful conduct in a substantially identical manner.

11   33.    Plaintiff will adequately protect the interests of the Class and has retained counsel

12   experienced in class action securities litigation.  Plaintiff has no interests that conflict with those

13   of the other members of the Class.

14   34.    A class action is superior to other available methods for the fair and efficient

15   adjudication of this controversy.

16                                    **CLAIMS FOR RELIEF**

17                                          **COUNT I**

18                                    **Breach of Contract**

19   **(Alleged solely against Defendants Robinhood Financial and Robinhood Securities)**

20   35.    Plaintiff repeats and realleges each and every allegation contained above as if

21   fully set forth herein.

22   36.    In order to use the Robinhood trading platform, a potential customer must enter

23   into the Customer Agreement with Robinhood, which is attached hereto as Exhibit A.

24   37.    Robinhood breached its Customer Agreement by, among other things, failing to

25   disclose that its platform was inadequately built and maintained to handle consumer demand;

26   that Robinhood failed to provide adequate technological systems necessary to perform under the

27   contract; that Robinhood failed to provide services when an Outage occurred due to a lack of

28   infrastructure and alternate means for customers to place timely trades; that Robinhood failed to

CLASS ACTION COMPLAINT

- 8 -

provide access to its financial services in a timely manner; that Robinhood's platform was subject to and did experience substantial Outage(s) that prohibited the Parties from performing in a timely manner (or at all) under the contract; that Robinhood failed to comply with all applicable legal, regulatory, and licensing requirements; and that Robinhood failed to exercise trades and actions requested by customers in a complete and timely manner (also required by FINRA Rule 5310).

38.     As such, Robinhood breached its Customer Agreement with Plaintiff and Class members.

39.     Robinhood's failure to perform and its breaches of the Customer Agreement resulted in damages and losses to Plaintiff and Class members and continues to expose them to harm because Robinhood continues to fail to perform under the Customer Agreement.

40.     These losses reflect damages to Plaintiff and Class members in an amount to be determined at trial or separate proceedings as necessary.

## <u>COUNT II</u>

### **Breach of the Implied Covenant of Good Faith and Fair Dealing**

### **<u>(Alleged solely against Robinhood Financial and Robinhood Securities)</u>**

41.     Plaintiff hereby incorporates by reference the factual allegations contained herein.

42.     Plaintiff and Class members entered into the contract identified as the Customer Agreement with Robinhood.  *See* Ex. A.

43.     Plaintiff and Class members fulfilled their obligations under the Customer Agreement by adhering to its terms and using Robinhood's services for the provision of financial services.

44.     Robinhood was obligated under the Customer Agreement to timely provide the financial services required under the Customer Agreement at all times, including but not limited to when Plaintiff and Class members attempted to use the service during the Outages.

45.     Robinhood unfairly interfered with Plaintiff's and Class members' rights to receive the benefits of the Customer Agreement by, among other things, failing to disclose:  that its platform was inadequately built and maintained to handle consumer demand; that Robinhood

CLASS ACTION COMPLAINT

failed to provide adequate technological systems necessary to perform under the contract; that Robinhood failed to provide services when an outage occurred due to a lack of infrastructure and alternate means for customers to place timely trades; that Robinhood failed to provide access to its financial services in a timely manner; that Robinhood's platform was subject to and did experience substantial Outage(s) that prohibited the Parties from performing in a timely manner (or at all) under the contract; that Robinhood failed to comply with all applicable legal, regulatory, and licensing requirements; and that Robinhood failed to exercise trades and actions requested by customers in a complete and timely manner (also required by FINRA Rule 5310).

46.     Robinhood's conduct has caused Plaintiff and Class members' harm, losses, and damages and continues to expose them to harm because Robinhood continues to fail to perform.

### COUNT III

### Breach of Fiduciary Duty

47.     Plaintiff hereby incorporates by reference the factual allegations contained herein.

48.     As a licensed provider of financial services, Robinhood at all times relevant herein was a fiduciary to Plaintiff and Class members and owed them the highest good faith and integrity in performing its financial services on their behalf. Robinhood also acted as a fiduciary to each and every customer who agreed to the Customer Agreement.

49.     Robinhood breached its fiduciary duties to Plaintiff and Class members by, among other things, failing to disclose that its platform was inadequately built and maintained to handle consumer demand; that Robinhood failed to provide adequate technological systems necessary to perform under the contract; that Robinhood failed to provide services when an outage occurred due to a lack of infrastructure and alternate means for customers to place timely trades; that Robinhood failed to provide access to its financial services in a timely manner; that Robinhood's platform was subject to and did experience substantial Outage(s) that prohibited the Parties from performing in a timely manner (or at all) under the contract; that Robinhood failed to comply with all applicable legal, regulatory, and licensing requirements; and that Robinhood failed to  exercise trades and actions requested by customers in a complete and timely manner (also required by FINRA Rule 5310).

Provided by CourtAlert                                                                                    www.CourtAlert.com

50.     Robinhood's conduct has caused Plaintiff and Class members harm, losses, and damages and continues to expose them to harm because Robinhood continues to breach its fiduciary duties. These losses reflect damages to Plaintiff and Class members in an amount to be determined at trial or separate proceedings as necessary.

## COUNT IV

### Negligence

51.     Plaintiff hereby incorporates by reference the factual allegations contained herein.

52.     Robinhood had a duty to exercise reasonable care in conducting and facilitating transactions for its customers.

53.     Robinhood unlawfully breached its duties by, among other things, failing to disclose that its platform was inadequately built and maintained to handle consumer demand; that Robinhood failed to provide adequate technological systems necessary to perform under the contract; that Robinhood failed to provide services when an outage occurred due to a lack of infrastructure and alternate means for customers to place timely trades; that Robinhood failed to provide access to its financial services in a timely manner; that Robinhood's platform was subject to and did experience substantial Outage(s) that prohibited the Parties from performing in a timely manner (or at all) under the contract; that Robinhood failed to comply with all applicable legal, regulatory, and licensing requirements; and that Robinhood failed to exercise trades and actions requested by customers in a complete and timely manner (also required by FINRA Rule 5310).

54.     Robinhood's negligent and wrongful breaches of its duties owed to Plaintiff and Class members proximately caused losses and damages that would not have occurred but for Robinhood's breach of its duty of due care. These losses reflect damages to Plaintiff and Class members in an amount to be determined at trial or separate proceedings as necessary.

## COUNT V

### Gross Negligence

55.     Plaintiff hereby incorporates by reference the factual allegations contained herein.

CLASS ACTION COMPLAINT

- 11 -

Provided by CourtAlert                                                        www.CourtAlert.com

56.     Robinhood had a duty to exercise reasonable care in conducting and facilitating transactions for its customers.

57.     Robinhood unlawfully breached its duties by, among other things, failing to disclose that its platform was inadequately built and maintained to handle consumer demand; that Robinhood failed to provide adequate technological systems necessary to perform under the contract; that Robinhood failed to provide services when an outage occurred due to a lack of infrastructure and alternate means for customers to place timely trades; that Robinhood failed to provide access to its financial services in a timely manner; that Robinhood's platform was subject to and did experience substantial Outage(s) that prohibited the Parties from performing in a timely manner (or at all) under the contract; that Robinhood failed to comply with all applicable legal, regulatory, and licensing requirements; and that Robinhood failed to exercise trades and actions requested by customers in a complete and timely manner (also required by FINRA Rule 5310).

58.     Robinhood's conduct as set forth in this Complaint was want of even scant care and its acts and omissions were and continue to be an extreme departure from the ordinary standard of conduct.  Indeed, Robinhood essentially abandoned its customers altogether during the Outages, a standard of care so far below what is required for business engaging in time sensitive financial services that it amounts to a complete abandonment of its duties. Essentially no other conduct than that committed by Robinhood could be more grossly negligent than abandoning its customers altogether for substantial periods of times during which they incurred substantial losses and were unable to contact anyone at Robinhood.

59.     Robinhood's grossly negligent and wrongful breaches of its duties owed to Plaintiff and Class members proximately caused losses and damages that would not have occurred but for Robinhood's gross breach of its duty of due care. These losses reflect damages to Plaintiff and Class members in an amount to be determined at trial or separate proceedings as necessary.

**COUNT VI**

**Violations of California's Consumers Legal Remedies Act,**

**Cal. Civ. Code §§ 1750, *et seq.***

60.     Plaintiff hereby incorporates by reference the factual allegations contained herein.

61.     The California Consumers Legal Remedies Act ("CLRA"), Civil Code section 1750, *et seq.*, was designed and enacted to protect consumers from unfair and deceptive business practices. To this end, the CLRA sets forth a list of unfair and deceptive acts and practices in Civil Code section 1770.

62.     The CLRA applies to Robinhood's actions and conduct described herein because it extends to the transactions involving the sale of goods or services for personal, family, or household use within the meaning of Civil Code section 1761.

63.     At all relevant times, Plaintiff and members of the Class were "consumers" as that term is defined in Civil Code section 1761(d).

64.     Robinhood's practices in connection with the marketing and sale of its financial services violate the CLRA in at least (but not limited to) the following respects:

    a.   In violation of section 1770(a)(5), Robinhood knowingly misrepresented its services;

    b.   In violation of section 1770(a)(7), Robinhood represented its financial services to be of a particular standard, quality, or grade, but they were not; and

    c.   In violation of section 1770(a)(9), Robinhood knowingly advertised its financial services with the intent not to sell and perform the services as advertised.

65.     As set forth above, Robinhood's services are deceptive and misleading to reasonable consumers in violation of the CLRA because Robinhood failed to disclose that its platform was inadequately built and maintained to handle consumer demand; because Robinhood failed to provide adequate technological systems necessary to perform under the contract; because Robinhood failed to provide services when an outage occurred due to a lack of infrastructure and alternate means for customers to place timely trades; because Robinhood failed to provide access to its financial services in a timely manner; because Robinhood's

Provided by CourtAlert                                                                                              www.CourtAlert.com

platform was subject to and did experience substantial Outage(s) that prohibited the Parties from performing in a timely manner (or at all) under the contract; because Robinhood failed to comply with all applicable legal, regulatory, and licensing requirements; and because Robinhood failed to exercise trades and actions requested by customers in a complete and timely manner (also required by FINRA Rule 5310).

66. Robinhood's conduct described herein was undertaken in transactions intended to result in, and which did result in, the purchase of its financial services by consumers, which caused harm to Plaintiff and Class members who would not have used Robinhood's services had they known the truth. Plaintiff was in fact injured by losses incurred because of Robinhood's deceptive conduct.

67. The CLRA is, by its express terms, a cumulative remedy, such that remedies under its provisions can be awarded in addition to those provided under separate statutory schemes and/or common law remedies, such as those alleged in the other Counts of this Complaint. *See* Cal. Civ. Code § 1752.

68. In accordance with Civil Code section 1780, Plaintiff and Class members seek injunctive and equitable relief for Robinhood's violations of the CLRA necessary to bring it in compliance with the CLRA by, among other things, disclosing that its services are substandard and unable to fulfill reasonable consumer demand, correcting its services so that its platform can perform as necessary to comply with its legal, regulatory and contractual obligations, and making customers whole for their losses.

69. In accordance with Civil Code section 1780, Plaintiff served a notice pursuant to Civil Code section 1782, via a certified letter, return receipt requested, requesting appropriate relief on or about March 12, 2020. Should Robinhood fail to respond to Plaintiff's CLRA demand in a satisfactory manner, Plaintiff will amend this Complaint to seek damages after the expiration of the notice period.

**COUNT VII**

**Violation of California Unfair Competition Law,**

**Cal. Bus. & Prof. Code §§ 17200, *et seq*.**

70.     Plaintiff hereby incorporates by reference the factual allegations contained herein.

71.     Robinhood has engaged in unfair competition within the meaning of California Business & Professions Code section 17200, *et seq.* ("UCL"), because Robinhood's conduct is unlawful, unfair, and fraudulent as herein alleged.

72.     Plaintiff, the members of the Class, and Robinhood are a "person" or "persons" within the meaning of Section 17201 of the UCL.

73.     The UCL prohibits any unlawful, unfair, or fraudulent business practices or acts. Robinhood's conduct, as alleged herein, constitutes an unlawful, unfair and fraudulent business practice that occurred in connection with the marketing, advertisement and sale of its services.

74.     Robinhood's misleading and deceptive misrepresentations and omissions, concealment and suppression of material fact, as described herein, violated the UCL's unlawful, unfair, and fraudulent prongs.

75.     **Unlawful prong:**  Robinhood's conduct, as described herein, violates the  UCL's unlawful prong because: (1) it violates the CLRA in connection with the sale of goods and services; (2) constitutes a breach of contract and/or a breach of the implied covenant of good faith and fair dealing, (3) constitutes a breach of fiduciary duty; (4) constitutes negligence and/or gross negligence; (5) violates FINRA Rule 5310, which requires best execution of orders fully and promptly; and (6) has unlawfully and unjustly enriched Robinhood.

76.     **Unfair prong:**  Robinhood's conduct, as described herein, violates the UCL's unfair prong because it violates established public policy intended to regulate the fair and ethical sale of goods and services to consumers as set forth in the CLRA and by FINRA, and because it is immoral, unethical, oppressive, or unscrupulous and has caused injuries to the Plaintiff and the Class that outweigh any purported benefit.

77.     At all times relevant herein, Robinhood's conduct of misrepresenting and concealing material facts from the Plaintiff and consumers regarding its faulty infrastructure and

1  refusal to timely perform caused them injury by inducing them to use Robinhood's services they

2  would not have otherwise used, causing them losses. The utility of Robinhood's conduct in

3  misrepresenting and concealing material facts from the Plaintiff and the Class is far outweighed

4  by the gravity of harm to consumers who have now incurred losses they would not have

5  otherwise incurred.

6      78.    **Fraudulent prong:**    Robinhood's conduct, as described herein, violated the

7  UCL's fraudulent prong by misrepresenting and concealing material information that caused, or

8  would likely cause, Plaintiff and the Class to be deceived into using Robinhood's services they

9  would not have otherwise used.

10      79.    At all times Robinhood has had exclusive knowledge of its substandard

11  infrastructure that led to the Outages. Plaintiff and the Class have been harmed and sustained

12  injury as a result of Robinhood's fraudulent conduct in violation of the UCL as explained herein.

13      80.    Plaintiff has standing to pursue this claim because he has been injured by virtue of

14  suffering a loss of money and/or property as a result of the wrongful conduct alleged herein.

15      81.    Plaintiff would not have used Robinhood's services and/or placed trades and made

16  financial transactions through those services had he known the truth, though he has an interest in

17  continuing to use the service in the future should Robinhood cure the problems set forth in this

18  Complaint.  As a direct result of Robinhood's actions and omissions of material facts, Plaintiff

19  and Class members were unlawfully, unfairly, and fraudulently induced to make purchases and

20  financial transactions that they otherwise would not have made, and lost their ability to make

21  informed and reasoned purchasing decisions.

22      82.    The UCL is, by its express terms, a cumulative remedy, such that remedies under

23  its provisions can be awarded in addition to those provided under separate statutory schemes

24  and/or common law remedies, such as those alleged in the other Counts of this Complaint. *See*

25  Cal. Bus. & Prof. Code § 17205.

26      83.    As a direct and proximate cause of Robinhood's conduct, which constitutes

27  unlawful, unfair, and fraudulent business practices, as herein alleged, Plaintiff and Class

28  members have been damaged and suffered ascertainable losses, thereby entitling them to recover

restitution and equitable relief, including disgorgement of ill-gotten gains, refunds of moneys, interest, reasonable attorneys' fees, filing fees, and the costs of prosecuting this class action, as well as any and all other relief that may be available at law or equity.

## COUNT VIII

### Unjust Enrichment

84.    Plaintiff hereby incorporates by reference the factual allegations contained herein.

85.    By its wrongful acts and omissions described herein, Robinhood has obtained a benefit by unduly taking advantage of Plaintiff and Class members.

86.    Robinhood, prior to and at the time Plaintiff and the members of the Class decided to use Robinhood's services and make financial transactions, knew and had knowledge and information that it could not withstand reasonable consumer demand and would be unable to execute trades in a complete and timely manner.

87.    Robinhood was aware or should have been aware that reasonable consumers would have wanted to know the facts pertaining to its financial services before deciding whether or not to use them.

88.    Robinhood was unjustly enriched at the expense of Plaintiff and Class members. Robinhood received profits, benefits, and compensation, in part, at the expense of Plaintiff and Class members.

89.    Since Robinhood's profits, benefits, and other compensation were obtained by improper means, Robinhood is not legally or equitably entitled to retain any of the benefits, compensation or profits it realized.

90.    Plaintiff and Class members seek an order of this Court requiring Defendants to refund, disgorge, and pay as restitution any profits, benefits, and other compensation obtained by Robinhood from its wrongful conduct and/or the establishment of a constructive trust from which Plaintiff and Class members may seek restitution.

CLASS ACTION COMPLAINT

## COUNT IX

### Breach of Fiduciary Duty

91.     Plaintiff hereby incorporates by reference the factual allegations contained herein.

92.     Under the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and grant further necessary relief.  Furthermore, the Court has broad authority to restrain acts, such as here, which are tortious and which violate the terms of the federal and state statutes described in this Complaint.

93.     An actual controversy has arisen.   Plaintiff alleges that Robinhood is not complying with its obligations under the Customer Agreement, FINRA Rule 5310, and does not maintain sufficient infrastructure to provide the financial services it must do so in a complete and timely manner.

94.     Pursuant to its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

   a.   Robinhood owed and continues to owe a legal duty to comply with its agreements as well as regulatory requirements to maintain adequate infrastructure to handle consumer demand and execute trades in a complete and timely manner;

   b.   Robinhood continues to breach this legal duty by failing to employ reasonable measures to prevent Outages and provide alternative means for customers to make timely financial transactions.

95.     The Court also should issue corresponding injunctive relief requiring Robinhood to employ adequate quality control consistent with industry standards and the parties' contracts.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment as follows:

(A)     Declaring this action to be a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, and designating Plaintiff as class representative and Plaintiff's counsel as Class Counsel;

Provided by CourtAlert                                                                www.CourtAlert.com

(B)     Awarding compensatory damages in favor of Plaintiff and the other members of the Class against all of the Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(C)     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in the prosecution of this action, including reasonable attorneys' fees and expert fees; and

(D)     Awarding such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

Dated: March 13, 2020

**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**

By:     */s/ Rachele R. Byrd*
          RACHELE R. BYRD

RACHELE R. BYRD
BRITTANY N. DEJONG
750 B Street, Suite 1820
San Diego, CA 92101
Telephone:  619/239-4599
Facsimile:  619/234-4599
byrd@whafh.com
dejong@whafh.com

**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**
MATTHEW M. GUINEY
KEVIN G. COOPER
270 Madison Avenue
New York, NY 10016
Telephone:  212/545-4600
Facsimile: 212/686-0114
guiney@whafh.com
kcooper@whafh.com

*Counsel for Plaintiff*

26318

CLASS ACTION COMPLAINT
- 19 -

# Exhibit 4

1

THE RESTIS LAW FIRM, P.C.
William R. Restis, Esq. (SBN 246823)

2

william@restislaw.com
402 W. Broadway, Suite 1520

3

San Diego, California 92101
Telephone: +1.619.270.8383

4

[Additional Counsel Listed On Signature Page]

5

*Counsel for Plaintiff and the Putative Class*

6

7

8

9

10

**UNITED STATES DISTRICT COURT**

11

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

12

13

**SAN JOSE DIVISION**

14

COLIN PRENDERGAST , individually and on
behalf of all others similarly situated,

15

16

Plaintiff,

17

v.

18

ROBINHOOD FINANCIAL, LLC, a Delaware
limited liability company, ROBINHOOD

19

SECURITIES, LLC, a Delaware limited liability
company, and ROBINHOOD MARKETS, INC.,

20

a Delaware corporation,

21

22

23

Defendants.

24

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

25

26

27

28

Plaintiff Colin Prendergast ("Plaintiff"), individually and on behalf of all others similarly situated, brings this putative class action against Defendants Robinhood Financial, LLC ("Robinhood Financial"), Robinhood Securities, LLC ("Robinhood Securities"), and Robinhood Markets, Inc. ("Robinhood Markets") (collectively, "Robinhood"), demanding a trial by jury. Plaintiff makes the following allegations pursuant to the investigation of counsel and based upon information and belief, except as to the allegations specifically pertaining to himself, which are based on personal knowledge. Accordingly, Plaintiff alleges as follows:

## NATURE OF THE ACTION

1.        Robinhood is an online brokerage firm. Its customers place securities trades through the firm's website, by using a web-based application or "app," or by calling the firm's help center. Robinhood permits customers, when its trading platform is operational, to purchase and sell certain securities, including option contracts.

2.        On Monday, March 2, 2020, Robinhood's systems crashed resulting in an outage of its trading platform through the morning of Tuesday, March 3, 2020 (the "Outage"). As a result of the Outage, Robinhood's customers were unable to buy or sell securities or to exercise option contracts through Robinhood's website, app, or call center. Customers were also unable during this time to obtain information or meaningful support from Robinhood customer service specific to their individual investment needs.

3.        This loss of access to Robinhood's trading platform and absence of customer service support caused concrete, particularized, and actual damages for Robinhood customers, like Plaintiff, who held options contracts expiring during the Outage. As a result of the Outage, Plaintiff and members of the class proposed below were unable to exercise their option contracts or trade them to capitalize on gains or to mitigate losses. Most of those contracts thus expired unexercised and worthless. Some of those contracts, such as the contracts held by Plaintiff, were exercised by Robinhood during the Outage without express authorization or approval of its customers.

4.        Robinhood accepts fault for the Outage, which it attributes to stress on its systems, but "[s]oftware mishaps have rocked Robinhood before," including in 2018, for example, when its

- 1 -

"options trading service had an outage that locked consumers out of their accounts and stopped them from closing positions[.]" Bloomberg, *Robinhood Maxed Out a Credit Line Last Month as Markets Fell*, https://www.bloomberg.com/news/articles/2020-03-10/robinhood-maxed-out-credit-line-last-month-amid-market-tumult (last visited March 17, 2020).

5.     In offering trading services, Robinhood assumed a duty to ensure that its systems were sufficiently equipped to reliably deliver such services under reasonably foreseeable customer demands and market conditions, such as those that occurred on March 2, 2020. Plaintiff and members of the proposed class understood and reasonably believed that Robinhood had or would take such steps, but it did not. Robinhood failed to adequately or properly equip itself technologically and systemically to maintain Plaintiff and class members' access to trading services. Due solely to its own negligence and failure to maintain adequate infrastructure, Robinhood breached obligations owed to Plaintiff and class members and caused them substantial losses. Its failures are all the more serious due to Robinhood's history of such failures, the magnitude of the Outage, the absence of alternative means for customers to protect their investments, and lack of communication and customer support.

6.     Plaintiff thus brings this class action on behalf of himself and all other Robinhood customers within the United States who held option contracts expiring during the Outage, and who thereby suffered losses in their Robinhood accounts. Plaintiff asserts claims for breach of contract, breach of the implied covenant of good faith and fair dealing, negligence, gross negligence, violation of California consumer protection laws, and declaratory judgment, and seeks damages, restitution, and injunctive relief.

## **PARTIES**

7.     Plaintiff Colin Prendergast is a citizen and resident of the State of California.

8.     Defendant Robinhood Financial is a Delaware corporation with its principal place of business at 85 Willow Road, Menlo Park, California 94025. It is a wholly-owned subsidiary of Robinhood Markets. Defendant Robinhood Financial acts as an introducing broker and has a clearing arrangement with its affiliate Defendant Robinhood Securities. It is a party to the Customer Agreement and Robinhood Terms & Conditions. Exhibits A–B.

CLASS ACTION COMPLAINT

9.      Defendant Robinhood Securities is a Delaware corporation with its principal place of business at 500 Colonial Center Parkway, Suite 100, Lake Mary, Florida 32746. It is a wholly owned subsidiary of Defendant Robinhood Markets. Defendant Robinhood Financial acts as a clearing broker and clears trades introduced by its affiliate Defendant Robinhood Financial. It is a party to the Customer Agreement. Exhibit A.

10.     Defendant Robinhood Markets is a Delaware corporation with its principal place of business at 85 Willow Road, Menlo Park, California 94025. Defendant Robinhood Markets is the corporate parent of Defendants Robinhood Financial and Robinhood Securities. It is a party to the Robinhood Terms & Conditions. Exhibit B.

11.     Defendants are referred to herein collectively as "Robinhood."

### JURISDICTION AND VENUE

12.     This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2). The aggregate claims of all members of the proposed class and subclasses are in excess of $5 million, exclusive of interest and costs, and there are more than 100 putative class members. Many members of the proposed class are citizens of a state different from Defendant.

13.     Pursuant to 28 U.S.C. § 1391, this Court is the proper venue for this action because a substantial part of the events, omissions, and acts giving rise to the claims herein occurred in this District where Robinhood is headquartered and where it developed, distributed, marketed, advertised, and sold the trading services which are the subject of the present complaint. Finally, venue is appropriate in this District pursuant to 28 USC § 1391(b)(2) because Robinhood is headquartered in Menlo Park and a substantial part of the acts and omissions that gave rise to this Complaint occurred or emanated from this District. Additionally, Robinhood's Terms of Service select courts in Santa Clara County as the venue for legal disputes. Exhibit B.

14.     This Court has personal jurisdiction over Robinhood because it is headquartered in and authorized to do business and does conduct business in California, and because it has specifically marketed, advertised, and made substantial sales in California, and has sufficient minimum contacts

CLASS ACTION COMPLAINT

with this state and/or sufficiently avails itself of the markets of this state through its promotion, sales, and marketing within this state to render the exercise of jurisdiction by this Court permissible.

## INTRADISTRICT ASSIGNMENT

15. Pursuant to Civil Local Rule 3-2(c), an intradistrict assignment to the San Jose Division is appropriate because a substantial part of the events or omissions which give rise to the claims asserted herein occurred in this Division, including that Defendants reside in this division and Robinhood's Terms of Service require claims be brought in Santa Clara County.

## FACTUAL ALLEGATIONS

16. Robinhood is an online brokerage firm founded in 2013 that touts itself as "a pioneer in commission-free investing." Robinhood, https://robinhood.com/us/en/ (last visited March 17, 2020). It is one of several young companies that aim to compete with traditional financial institutions by offering cheaper and more user-friendly digital services. The firm markets itself primarily to younger investors and claims over 10 million users of its trading app. In 2019, Robinhood raised $323 million in funding at a $7.6 billion valuation.

17. At 9:33 am[1] the morning of March 2, 2020, a Monday and the first day of the month for trading traditional securities, Robinhood's trading platform completely stopped functioning. As a result, at that moment, the platform stopped processing orders entered by customers prior to the Outage and customers were unable to enter new orders. Robinhood was unable to restore full functionality until Tuesday, March 3, 2020 at 11:54 am. In total, Robinhood's systems were nonfunctional or inaccessible to customers for 26 hours and 21 minutes.

18. At 11:02 am the morning of March 2, Robinhood publicly acknowledged the "downtime" and impact on "all functionalities" of the platform in on Twitter:

---

[1] All times are Eastern Standard Time, unless otherwise indicated.

- 4 -

CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9



10   Twitter, https://twitter.com/AskRobinhood/status/1234509495084240898 (last visited March 17,

11   2020). The Robinhood Help account (@AskRobinhood) is owned or controlled by Robinhood. The

12   blue verified badge means that the account is of public interest and Twitter has verified its authenticity.

13        19.    Around 4:00 pm on the afternoon of March 2, Robinhood emailed its customers directly

14   to repeat the substance of the message posted to Twitter earlier that morning, which was that

15   Robinhood was "experiencing downtime across [its] platform," that the outage was "affecting

16   functionality on Robinhood," and that the outage was affecting customers' "ability to trade":

17                          Update on Robinhood System Status

18        This morning, starting at 9:33 AM ET, we started experiencing
19        downtime across our platform. These issues are affecting functionality
          on Robinhood, including your ability to trade.

20        All of us at Robinhood are working as hard as we can to resume service,
21        and we'll update you as soon as the issue is resolved. We understand the
          impact this is having and we apologize for any trouble this has caused.
22
          Please check our status page at status.robinhood.com. Thank you for
23        being a Robinhood customer.

24        Sincerely,
25        The Robinhood Team
          robinhood.com
26
27
28

CLASS ACTION COMPLAINT

20.     At 4:07 pm on March 2, immediately after emailing its customers, Robinhood posted another message to Twitter publicly confirming that that its platform was "still experiencing system-wide issues" and that it had yet to "resume service":



Twitter,  https://twitter.com/AskRobinhood/status/1234586094395523074  (last  visited  March  17, 2020).

21.     Early on March 3, 2020, at 2:19 am, Robinhood posted two messages to its Twitter account reporting that its systems were "currently back up and running," that customers might still "observe some downtime" as Robinhood prepared for the day, and acknowledging that "issues like this are not acceptable":

CLASS ACTION COMPLAINT

Provided by CourtAlert                                                    www.CourtAlert.com



Twitter, https://twitter.com/AskRobinhood/status/1234740273877405697 (last visited March 17, 2020).

22.     At about 2:45 am the morning of March 3, Robinhood sent another email to customers saying directly to them what it had just said publicly, which was that its systems were "currently back up and running," that the outage was "not acceptable," and that Robinhood realized that it had "let [customers] down":

Robinhood is currently back online

> We're reaching out to let you know that Robinhood is currently back up and running.

> We want to assure you that your funds are safe and personal information was not affected.

> When it comes to your money, issues like this are not acceptable. We realize we let you down, and our team is committed to improving your experience.

23.     At 10:11 am on March 3, Robinhood reported, again through its public-facing Twitter account, that its "systems are currently experiencing downtime" and that "full functionality" of the Robinhood platform remained unavailable to customers:

CLASS ACTION COMPLAINT



Twitter, https://twitter.com/AskRobinhood/status/1234859068763844613 (last accessed March 17, 2020).

24.    At 11:35 am, later the morning of March 3, Robinhood stated on its Twitter account that its service had "been partially restored" and that it was "working toward restoring and maintaining full functionality":



Twitter, https://twitter.com/AskRobinhood/status/1234880124463435776 (last visited March 17, 2020).

25.    At 11:54 am on March 3, Robinhood reported that its systems had been "now fully restored":

CLASS ACTION COMPLAINT



Twitter, https://twitter.com/AskRobinhood/status/1234884989189124096 (last visited March 17, 2020).

26. On March 3, 3030, the co-founds and co-CEOs of Robinhood released a statement on Robinhood's blog, entitled "Under the Hood" and subtitled "The Official Robinhood Blog," explaining that the "outage" was caused by "stress on our infrastructure" and that, while it knows customers "depend on Robinhood for [their] investments," it took "too long" to restore services:

An Update from Robinhood's Founders

When it comes to your money, we know how important it is for you to have answers. The outages you have experienced over the last two days are not acceptable and we want to share an update on the current situation.

Our team has spent the last two days evaluating and addressing this issue. We worked as quickly as possible to restore service, but it took us a while. Too long. We now understand the cause of the outage was stress on our infrastructure—which struggled with unprecedented load. That in turn led to a "thundering herd" effect—triggering a failure of our DNS system.

Multiple factors contributed to the unprecedented load that ultimately led to the outages. The factors included, among others, highly volatile and historic market conditions; record volume; and record account sign-ups.

Our team is continuing to work to improve the resilience of our infrastructure to meet the heightened load we have been experiencing. We're simultaneously working to reduce the interdependencies in our overall infrastructure. We're also investing in additional redundancies in our infrastructure.

After a brief outage this morning, our trading platform was stable for the remainder of the day. As our engineering team works to upgrade our infrastructure, we may

CLASS ACTION COMPLAINT

experience additional brief outages, but we're now better positioned to more quickly resolve them.

We take our responsibility to you and your money seriously. We recognize that many of you have questions, and we're working to respond to them as quickly as possible.

Many of you depend on Robinhood for your investments, and we're personally committed to doing all we can to operate a stable service that's available when you need it the most.

—Baiju and Vlad, Co-Founders and Co-CEOs

Robinhood, *An Update from Robinhood's Founders* https://blog.robinhood.com/news/2020/3/3/ an-update-from-robinhoods-founders (last visited March 17, 2020).

27.     Notwithstanding Robinhood's explanation and apologies, its trading platform crashed again in the week after trading services had been restored.

### PLAINTIFF'S EXPERIENCES

28.     Plaintiff Colin Prendergast is a customer of Robinhood. He accepted the Customer Agreement by opening a Robinhood trading account and the Robinhood Terms and Conditions by using the Robinhood website and app.

29.     On Friday, February 28, 2020, using his Robinhood trading account, Plaintiff purchased five SPY put options with a strike price of $292.00 for $2,980.00. All five puts were monthly contracts expiring on Monday, March 2, 2020, the day of the Outage.

30.     SPY is an exchange traded fund ("ETF") that tracks the performance of the S&P 500. Generally, investing in put options is profitable if the price of the underlying security falls; if the price of the underlying security rises, the investment generally results in a loss. The potential profits and losses are generally proportional to change in value of the underlying security.

31.     Prior to the Outage, Plaintiff saw that the SPY index was generally increasing in value, meaning his investment was generating a loss. In order to limit or mitigate his losses, Plaintiff attempted to sell his option contracts by accessing the Robinhood platform and entering a sell order. However, Plaintiff was unable to do so due to the Outage.

CLASS ACTION COMPLAINT

32.     Without Plaintiff's authorization and on terms not approved by him, Robinhood sold Plaintiff's puts during the outage for $30.00, which was credited to Plaintiff's account.

33.     Plaintiff Prendergast attempted to contact Robinhood multiple times through the Outage to, among other things, notify Robinhood that he was unable to exercise his option contracts or otherwise execute any trades in his account, and to seek assistance in mitigating his losses. Plaintiff received no such support and was unable to mitigate his losses.

## CLASS ACTION ALLEGATIONS

34.     Plaintiff brings claims pursuant to Federal Rule of Civil Procedure 23 on behalf of the following class:

> *All persons within the United States who, on March 2, 2020, held an option contract expiring on that date in a Robinhood trading account.*

Excluded from the class are the Robinhood entities and their current employees, counsel for any of the parties to this litigation, as well as the Court and its personnel presiding over this action.

35.     This action has been brought and may properly be maintained as a class action against Robinhood pursuant to the provisions of Federal Rule of Civil Procedure 23.

36.     Numerosity: The precise number of members of the proposed class is unknown to Plaintiff at this time, but, based on information and belief, class members are so numerous that their individual joinder herein is impracticable. Based on information and belief and publicly available reports, class members number in the thousands. All class members may be notified of the pendency of this action by reference to Robinhood's records, or by other alternative means.

37.     Commonality: Numerous questions of law or fact are common to the claims of Plaintiff and members of the proposed class. These common questions of law and fact exist as to all class members and predominate over questions affecting only individual class members. These common legal and factual questions include, but are not limited to the following:

      a.     Whether Robinhood's technology was inadequate to provide the trading services that were needed to handle reasonable consumer demand.

      b.     Whether Robinhood failed to provide contingencies to customers to execute timely trades in the event of an outage.

c.     Whether Robinhood was in breach of its contracts or the implied covenant of good faith and fair dealing in connection with its failure to provide trading services in a timely manner.

d.     Whether Robinhood was negligent or grossly negligent by failing to provide trading services in a timely manner due to its substandard and inadequate technology platform and lack of timely response to customers requesting to place trades.

e.     Whether Robinhood's conduct was unlawful or unfair within the meaning of Section 17201 of the California Unfair Competition Law.

f.     Whether Plaintiff and the other class members were injured by Robinhood's conduct, and if so, the appropriate classwide measure of damages, restitution, and other appropriate relief, including injunctive relief.

g.     Whether Plaintiff and the other class members are entitled to injunctive and declaratory relief.

38.     Typicality: The claims of the named Plaintiff are typical of the claims of the proposed class in that the named Plaintiff was a customer during the class period and was unable to access his account and place time-sensitive trades and sustained damages as a result of Robinhood's wrongful conduct.

39.     Adequate Representation: Plaintiff will fairly and adequately represent the interests of the class in that he has no conflicts with any other class members. Plaintiff has retained competent counsel experienced in prosecuting complex class actions and will vigorously litigate this class action.

40.     Predominance and Superiority: There is no plain, speedy, or adequate remedy other than by maintenance of this class action. A class action is superior to other available means, if any, for the fair and efficient adjudication of this controversy. Prosecution of separate actions by individual class members would create the risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for the Defendant. Additionally, given the relatively modest damages sustained by most individual class members, few, if any, proposed class members could or would sustain the economic burden of pursuing individual remedies for Robinhood's wrongful

- 12 -

CLASS ACTION COMPLAINT

conduct. Treatment as a class action will achieve substantial economies of time, effort, and expense, and provide comprehensive and uniform supervision by a single court. This class action presents no material difficulties in management.

41.     Class action certification is warranted under Fed. R. Civ P. 23(b)(1)(A) because the prosecution of separate actions by individual members of the proposed class would create a risk of inconsistent or varying adjudications with respect to individual class members, which may produce incompatible standards of conduct for Defendants.

42.     Class action certification is warranted under Fed. R. Civ P. 23(b)(1)(B) because the prosecution of separate actions by individual members of the proposed class would create a risk of adjudications with respect to individual class members which may, as a practical matter, be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

43.     The prerequisites to maintaining a class action for injunctive or equitable relief pursuant to Fed. R. Civ. P. 23(b)(2) are met as Robinhood has acted or refused to act on grounds generally applicable to the class, thereby making final injunctive, declaratory, or equitable relief appropriate with respect to the class as a whole.

44.     Class action certification is also warranted under Fed. R. Civ P. 23(b)(3) because questions of law or fact common to the class members predominate over any questions affecting only individual members, and a class action is superior to other available remedies for the fair and efficient adjudication of this controversy. The amount of damages available to the Plaintiff and individual class members is insufficient to make litigation addressing Robinhood's conduct economically feasible for most in the absence of the class action procedure. Individualized litigation also presents a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system presented by the legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economy of scale, and comprehensive supervision by a single court.

CLASS ACTION COMPLAINT

45.     Class action certification is also warranted under Fed. R. Civ P. 23(c)(4) because questions of law or fact common to the class members may be certified and decided by this Court on a classwide basis.

## CLAIMS FOR RELIEF

### COUNT I
### Breach of Contract

46.     Plaintiff hereby incorporates by reference the factual allegations contained herein.

47.     Customers must enter into the Customer Agreement with Defendants Robinhood Financial and Robinhood Securities to open a Robinhood trading account "for the purchase, sale or carrying of securities or contracts relating thereto . . . which transactions are cleared through Robinhood Securities[.]" Ex. A at 1. The Customer Agreement provides further that "the terms and conditions of this agreement govern all aspects of [the customer's] relationship with Robinhood regarding [the customer's] accounts." *Id*. Finally, the Customer Agreement also states that California law governs "[t]his Agreement and all transactions made in [the customer's] account[.]" *Id.* at 37.

48.     Use of Robinhood's website and app is governed by the Robinhood Terms and Conditions, which "are in addition to any other agreements between [customers] and Robinhood Financial and Robinhood Markets . . . including any customer or account agreements[.]" The Terms and Conditions provide, in relevant part, as follows:

> The Robinhood website and mobile application (collectively, the "Service") may include or make available certain content (the "Content"). Content includes, without limitation: (1) account positions, balances, transactions, confirmations, and order history; (2) general news and information, commentary, research reports, educational material and information and data concerning the financial markets, securities and other subjects; (3) market data such as quotations for securities transactions and/or last sale information for completed securities transactions reported in accordance with federal securities regulations; (4) financial and investment interactive tools, such as alerts or calculators; (5) tax preparation, bill payment and account management tools; (6) company names, logos, product and service names, trade names, trademarks and services marks. . . ; and (7) any other information, content, services, or software.

Ex. B at 1. The Terms and Conditions also state that disputes are governed by California law and must be brought in Santa Clara County, California. *Id.* at 5.

49.     Robinhood breached its Customer Agreement and Terms and Conditions by, among other things, failing to provide adequate technological systems necessary to perform under these contracts; failing to provide trading services when an Outage occurred due to a lack of infrastructure and alternate means for customers to place timely trades; failing to provide access to its trading services in a timely manner; and otherwise permitting the Outage to occur and thereby prohibiting the parties from performing in a timely manner (or at all) under the contracts.

50.     Robinhood's failure to perform and its breaches of the Customer Agreement and Terms and Conditions resulted in damages and losses to Plaintiff and class members, and continues to expose them to harm because Robinhood continues to fail to perform under the contracts. These losses reflect damages to Plaintiff and class members in an amount to be determined at trial or separate proceedings as necessary.

**COUNT II**
**Breach of the Implied Covenant of Good Faith and Fair Dealing**

51.     Plaintiff hereby incorporates by reference the factual allegations contained herein.

52.     Plaintiff and class members entered into the Customer Agreement with Defendants Robinhood Financial and Robinhood Securities to open a Robinhood trading account. Ex. A. They agreed to Defendant Robinhood Financial and Robinhood Markets's Terms and Conditions by using Robinhood's website and app.

53.     Plaintiff and class members fulfilled their obligations under these contracts by adhering to their terms and using Robinhood's trading services through its website and app.

54.     Robinhood was obligated under the Customer Agreement and Robinhood Terms and Conditions to timely provide the trading services required under those contracts at all times, including but not limited to when Plaintiff and class members attempted to use the service during the Outage.

55.     Robinhood unfairly interfered with Plaintiff and class members' rights to receive the benefits of the Customer Agreement by, among other things, failing to provide adequate technological systems necessary to perform under the contract; failing to provide trading services when an Outage occurred due to a lack of infrastructure and alternate means for customers to place timely trades; failing

CLASS ACTION COMPLAINT

to provide access to its trading services in a timely manner; and otherwise permitting the Outage
prohibiting the parties from performing in a timely manner (or at all) under the contracts.

56.    Robinhood's conduct has caused Plaintiff and class members' harm, losses, and
damages and continues to expose them to harm because Robinhood continues to fail to perform under
the Customer Agreement and Robinhood Terms and Conditions. These losses reflect damages to
Plaintiff and class members in an amount to be determined at trial or separate proceedings as
necessary.

**COUNT III**
**Negligence**

57.    Plaintiff hereby incorporates by reference the factual allegations contained herein.

58.    Robinhood had a duty to exercise reasonable care in conducting and facilitating
transactions for its customers.

59.    Robinhood unlawfully breached its duties by, among other things, failing to provide
adequate technological systems necessary to perform under the contract; failing to provide trading
services when an Outage occurred due to a lack of infrastructure and alternate means for customers to
place timely trades; failing to provide access to its trading services in a timely manner; and otherwise
permitting the Outage prohibiting the parties from performing in a timely manner (or at all) under the
contracts.

60.    Robinhood's negligent and wrongful breaches of its duties owed to Plaintiff and class
members proximately caused losses and damages that would not have occurred but for Robinhood's
breach of its duty of due care. These losses reflect damages to Plaintiff and class members in an amount
to be determined at trial or separate proceedings as necessary.

**COUNT IV**
**Gross Negligence**

61.    Plaintiff hereby incorporates by reference the factual allegations contained herein.

62.    Robinhood had a duty to exercise reasonable care in conducting and facilitating
transactions for its customers.

- 16 -

CLASS ACTION COMPLAINT

63.     Robinhood unlawfully breached its duties by, among other things, failing to provide adequate technological systems necessary to perform under the contract; failing to provide trading services when an Outage occurred due to a lack of infrastructure and alternate means for customers to place timely trades; failing to provide access to its trading services in a timely manner; and otherwise permitting the Outage prohibiting the parties from performing in a timely manner (or at all) under the contracts.

64.     Robinhood's conduct as set forth in this Complaint was want of even scant care and its acts and omissions were and continue to be an extreme departure from the ordinary standard of conduct. Indeed, Robinhood essentially abandoned its customers altogether during the Outage, a standard of care so far below what is required for business engaging in time sensitive trading services that it amounts to a complete abandonment of its duties. Essentially no other conduct than that committed by Robinhood could be more grossly negligent than abandoning its customers altogether for substantial periods of times during which they incurred substantial losses and were unable to contact anyone at Robinhood.

65.     Robinhood's grossly negligent and wrongful breaches of its duties owed to Plaintiff and class members proximately caused losses and damages that would not have occurred but for Robinhood's gross breach of its duty of due care. These losses reflect damages to Plaintiff and class members in an amount to be determined at trial or separate proceedings as necessary.

## COUNT V
### Violation of California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.*

66.     Plaintiff hereby incorporates by reference the factual allegations contained herein.

67.     Robinhood has engaged in unfair competition within the meaning of California Business & Professions Code section 17200, et seq., because Robinhood's conduct is unlawful and unfair, as herein alleged.

68.     Plaintiff, the members of the class, and Robinhood are a "person" or "persons," within the meaning of Section 17201 of the California Unfair Competition Law ("UCL").

- 17 -

69.    The UCL prohibits any unlawful or unfair business practices or acts. Robinhood's conduct, as alleged herein, constitutes an unlawful and unfair business practice that occurred in connection with the marketing, advertisement, and sale of its services.

70.    Unlawful prong: Robinhood's conduct, as described within, violated the UCL's unlawful prong because: (1) it constitutes a breach of contract or of the implied covenant of good faith and fair dealing, and (2) constitutes negligence or gross negligence.

71.    Unfair prong: Robinhood's conduct, as described within, violated the UCL's unfair prong because its conduct was and remains immoral, unethical, oppressive, or unscrupulous and has caused injuries to the Plaintiff and the class that outweigh any purported benefit. Robinhood's failure to provide adequate technological systems necessary to perform under its contracts with Plaintiff and class members, to provide trading services when an Outage occurred due to a lack of infrastructure and alternate means for customers to place timely trades, to provide access to its trading services in a timely manner, and to otherwise permit the Outage prohibiting the parties from performing in a timely manner (or at all) under the contracts caused Plaintiff and class to suffer losses. The utility of Robinhood's conduct is far outweighed by the gravity of harm to consumers who have now incurred losses they would not have otherwise.

72.    As a direct and proximate result of Robinhood's conduct, which constitutes unlawful and unfair business practices, Plaintiff and class members have been damaged and suffered ascertainable losses, thereby entitling them to recover restitution and equitable relief, including disgorgement or ill-gotten gains, refunds of moneys, interest, reasonable attorneys' fees, filing fees, and the costs of prosecuting this class action, as well as any and all other relief that may be available at law or equity.

### COUNT VI
### Declaratory Relief

73.    Plaintiff hereby incorporates by reference the factual allegations contained herein.

74.    Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 et seq., this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and grant further

CLASS ACTION COMPLAINT

necessary relief. Furthermore, the Court has broad authority to restrain acts, such as here, which are tortious and which violate the terms of the federal and state statutes described in this Complaint.

75.     An actual controversy has arisen. Plaintiff alleges that Robinhood is not complying with its obligations under the Customer Agreement and Robinhood Terms and Conditions, and does not maintain sufficient infrastructure to provide the trading services it must do so in a complete and timely manner.

76.     Pursuant to its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

a.     Robinhood owed and continues to owe a legal duty to comply with its agreements to maintain adequate infrastructure to handle consumer demand and execute trades in a complete and timely manner.

b.     Robinhood continues to breach this legal duty by failing to employ reasonable measures to prevent Outages and provide alternative means for customers to make timely trades on its platform.

77.     The Court also should issue corresponding injunctive relief requiring Robinhood to employ adequate quality control consistent with industry standards and the parties' contracts.

**<u>PRAYER FOR RELIEF</u>**

WHEREFORE, Plaintiff requests that this Court enter a judgment against Defendants and in favor of Plaintiff and the class and award the following relief:

A.     Certifying the class and naming Plaintiff as representative of the class and Plaintiff's attorneys as Class Counsel to represent the class members;

B.     Declaring the Robinhood's conduct violates the statutes referenced herein;

C.     Finding in favor of Plaintiff and the class on all counts asserted herein;

D.     Granting damages or restitution to Plaintiff and the class;

E.     Granting declaratory and injunctive relief to enjoin Robinhood from engaging in the unlawful practices described in this Complaint;

CLASS ACTION COMPLAINT

F.    Granting compensatory damages, the amount of which is to be determined at trial;

G.    Granting punitive damages;

H.    Granting pre- and post-judgment interest on all amounts awarded;

I.    Granting restitution and all other forms of equitable monetary relief;

J.    Granting injunctive relief as pleaded or as the Court may deem proper;

K.    Awarding Plaintiff and the class reasonable attorneys' fees and expenses and costs of suit; and

L.    Granting further relief as this Court may deem proper.

## <u>JURY DEMAND</u>

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff, individually and on behalf of the class, demands a trial by jury for all issues so triable.


THE RESTIS LAW FIRM, P.C.

Dated: March 17, 2020           /s/ William R. Restis
                                William R. Restis, Esq.
                                william@restislaw.com
                                402 W. Broadway, Suite 1520
                                San Diego, CA 92101
                                Tel: (619) 270-8383

                                LITE DEPALMA GREENBERG, LLC
                                Joseph J. DePalma*
                                jdepalma@litedepalma.com
                                Steven J. Greenfogel*
                                sgreenfogel@litedepalma.com
                                Jeremy Nash*
                                jnash@litedepalma.com
                                570 Broad Street, Suite 1201
                                Newark, NJ 07102
                                Tel: (973) 623-3000
                                Fax: (973) 623-0858

                                *Attorneys for Plaintiff and the Putative Class*

                                * Applications for these attorneys to appear
                                before this Court *pro hac vice* are forthcoming
                                and shall be filed at an appropriate time.

CLASS ACTION COMPLAINT

Provided by CourtAlert
www.CourtAlert.com

# EXHIBIT A

Provided by CourtAlert

**Revised February 5, 2020**

### Robinhood Financial LLC & Robinhood Securities, LLC
### Customer Agreement

In consideration of Robinhood Financial LLC, Robinhood Securities, LLC, and their agents and assigns (collectively, "Robinhood") opening one or more accounts on my behalf ("My Account(s)" or the "Account(s)") for the purchase, sale or carrying of securities or contracts relating thereto and/or the borrowing of funds, which transactions are cleared through Robinhood Securities, I represent and agree with respect to all Accounts, whether margin or cash, to the terms set forth below (the "Agreement"). When used in this Agreement, the words "I", "Me", "My", "We", or "Us" mean the owner(s) of the Account. For purposes of this Agreement, Business Days are Monday through Friday, excluding federal holidays. Any references to "days" found in this Agreement are calendar days unless indicated otherwise.

**I UNDERSTAND THAT THE TERMS AND CONDITIONS OF THIS AGREEMENT GOVERN ALL ASPECTS OF MY RELATIONSHIP WITH ROBINHOOD REGARDING MY ACCOUNTS. I WILL CAREFULLY READ, UNDERSTAND AND ACCEPT THE TERMS AND CONDITIONS OF THIS AGREEMENT BEFORE I CLICK "SUBMIT APPLICATION" OR OTHER SIMILARLY WORDED BUTTON. IF I HAVE ANY QUESTIONS ABOUT ANY OF THE PROVISIONS IN THIS AGREEMENT, I WILL EMAIL HELP@ROBINHOOD.COM. I UNDERSTAND THAT CLICKING "SUBMIT APPLICATION" IS THE LEGAL EQUIVALENT OF MY MANUALLY SIGNING THIS AGREEMENT AND I WILL BE LEGALLY BOUND BY ITS TERMS AND CONDITIONS. BY ENTERING INTO THIS AGREEMENT, I ACKNOWLEDGE RECEIPT OF THE ROBINHOOD PRIVACY POLICY AND PRIVACY AND SECURITY STATEMENT. I UNDERSTAND THAT THIS AGREEMENT MAY BE AMENDED FROM TIME TO TIME BY ROBINHOOD, WITH REVISED TERMS POSTED ON THE ROBINHOOD WEBSITE. I AGREE TO CHECK FOR UPDATES TO THIS AGREEMENT. I UNDERSTAND THAT BY CONTINUING TO MAINTAIN MY SECURITIES BROKERAGE ACCOUNT WITHOUT OBJECTING TO ANY REVISED TERMS OF THIS AGREEMENT, I AM ACCEPTING THE TERMS OF THE REVISED AGREEMENT AND I WILL BE LEGALLY BOUND BY ITS TERMS AND CONDITIONS. IF I REQUEST OTHER SERVICES PROVIDED BY ROBINHOOD THAT REQUIRE ME TO AGREE TO SPECIFIC TERMS AND CONDITIONS ELECTRONICALLY (THROUGH CLICKS OR OTHER ACTIONS) OR OTHERWISE, SUCH TERMS AND CONDITIONS WILL BE DEEMED AN AMENDMENT AND WILL BE INCORPORATED INTO AND MADE PART OF THIS AGREEMENT. I ALSO UNDERSTAND THAT BY CLICKING "SUBMIT APPLICATION" I HAVE ACKNOWLEDGED THAT THIS AGREEMENT CONTAINS A PREDISPUTE ARBITRATION CLAUSE IN SECTION 37 HEREIN.**

1.      **Capacity and Status.** If an individual, I am of legal age under the laws of the state where I reside and authorized to enter into this Agreement. If an entity, I am duly formed, validly existing and in good standing in My state of organization, have full power and authority to enter and perform this Agreement, and the persons signing the account application are fully authorized to act on My behalf. No person, except Myself, has any interest in the Account

opened pursuant to this Agreement. I acknowledge that unless Robinhood receives written objection from Me, Robinhood may provide My name, address, and securities positions to requesting companies in which I hold securities. Except as otherwise disclosed to Robinhood in writing, neither I nor any member of My immediate family is an employee of any exchange, any corporation of which any exchange owns a majority of the capital stock, a member of any exchange or self-regulatory organization, a member of any firm or member corporation registered on any exchange, a bank, trust company, insurance company or any corporation, firm or individual engaged in the business of dealing either as a broker-dealer or as principal in securities. I understand and agree that I am obligated to promptly notify Robinhood in writing if I or a member of My immediate family becomes registered or employed in any of the above-described capacities. Except as otherwise disclosed to Robinhood in writing, I am not a Professional (as defined below). I further agree to promptly notify Robinhood in writing if I am now or if I become a Professional or an officer, director or 10% stockholder of any publicly traded company.

2. **Market Data.** Robinhood may choose to make certain market data available to Me pursuant to the terms and conditions set forth in this Agreement. By executing this Agreement, I agree to comply with those terms and conditions.

A. Definitions.

1) "Market Data" means (a) last sale information and quotation information relating to securities that are admitted to dealings on the New York Stock Exchange ("NYSE"), (b) such bond and other equity last sale and quotation information, and such index and other market information, as United States-registered national securities exchanges and national securities associations (each, an "Authorizing SRO") may make available and as the NYSE may from time to time designate as "Market Data"; and (c) all information that derives from any such information.

2) "Nonprofessional" means any natural person who receives market data solely for his/her personal, non- business use and who is not a "Professional." A "Professional" includes an individual who, if working in the United States, is: (i) registered or qualified with the Securities and Exchange Commission (the "SEC"), the Commodity Futures Trading Commission (the "CFTC"), any state securities agency, any securities exchange or association, or any commodities or futures contract market or association; (ii) engaged as an "investment advisor" as that term is defined in Section 202 (a) (11) of the Investment Advisers Act of 1940 (whether or not registered or qualified under that Act), or (iii) employed by a bank or other organization exempt from registration under federal and/or state securities laws to perform functions that would require him or her to be so registered or qualified if he or she were to perform such functions for an organization not so exempt. A person who works outside of the United States will be considered a "Professional" if he or she performs the same functions as someone who would be considered a "Professional" in the United States.

Provided by CourtAlert                                                                                                    www.CourtAlert.com

B.    <u>Provisions Applicable to All Users</u>.

    1)    <u>Proprietary Nature of Data</u>.  I understand and acknowledge that each Authorizing SRO and Other Data Disseminator (as defined below) has a proprietary interest in the Market Data that originates on or derives from it or its market(s).  I agree not to reproduce, distribute, sell or commercially exploit the Market Data in any manner.

    2)    <u>Enforcement</u>.  I understand and acknowledge that (a) the Authorizing SROs are third-party beneficiaries under this Agreement and (b) the Authorizing SROs or their authorized representative(s) may enforce this Agreement, by legal proceedings or otherwise, against Me or any person that obtains Market Data that is made available pursuant to this Agreement other than as this Agreement contemplates.

    3)    <u>Data Not Guaranteed</u>.  I understand that neither Robinhood nor any Authorizing SRO, other entity whose information is made available over the Authorizing SROs' facilities (an "Other Data Disseminator"), or information processor that assists any Authorizing SRO or Other Data Disseminator in making Market Data available (collectively, the "Disseminating Parties") guarantees the timeliness, sequence, accuracy, completeness, reliability, or content of Market Data or of other market information or messages disseminated to or by any Disseminating Party.  I understand that neither Robinhood Financial nor any Disseminating Party guarantees the timeliness, sequence, accuracy, completeness, reliability or content of market information, or messages disseminated to or by any party. I understand that neither Robinhood Financial nor any Disseminating Party warrants that the service provided by any such entity will be uninterrupted or error-free.  I further understand that Market Data by Xignite provides market data to Robinhood Financial customers. NEITHER ROBINHOOD FINANCIAL, ANY OF ITS AFFILIATES, THEIR RESPECTIVE OFFICERS OR EMPLOYEES, NOR ANY DISSEMINATING PARTY SHALL BE LIABLE IN ANY WAY FOR (A) ANY INACCURACY, ERROR OR DELAY IN, OR OMISSION OF, (I) ANY MARKET DATA, INFORMATION OR MESSAGE, OR (II) THE TRANSMISSION OR DELIVERY OF ANY SUCH DATA, INFORMATION OR MESSAGE; OR (B) ANY LOSS (AS DEFINED IN THIS AGREEMENT) OR DAMAGE ARISING FROM OR OCCASIONED BY (I) ANY SUCH INACCURACY, ERROR, DELAY OR OMISSION, (II) NON-PERFORMANCE OR III) INTERRUPTION IN ANY SUCH MARKET DATA, INFORMATION, OR MESSAGE, WHETHER DUE TO ANY ACT OR OMISSION BY ROBINHOOD FINANCIAL, ANY OF ITS AFFILIATES, THEIR RESPECTIVE OFFICERS OR EMPLOYEES, OR ANY DISSEMINATING PARTY, OR TO ANY "FORCE MAJEURE" (E.G., FLOOD, EXTRAORDINARY WEATHER CONDITIONS, EARTHQUAKE OR OTHER ACT OF GOD, FIRE, WAR, INSURRECTION, RIOT, LABOR DISPUTE, ACCIDENT, ACTION OF

GOVERNMENT, OR COMMUNICATIONS OR POWER FAILURE, EQUIPMENT OR SOFTWARE MALFUNCTION) OR ANY OTHER CAUSE BEYOND THE REASONABLE CONTROL OF ROBINHOOD FINANCIAL, ITS AFFILIATES, THEIR RESPECTIVE OFFICERS AND EMPLOYEES, OR ANY DISSEMINATING PARTY.

4) <u>Permitted Use</u>. I shall not furnish Market Data to any other person or entity. If I receive Market Data other than as a Nonprofessional, I shall use Market Data only for My individual use.

5) <u>Dissemination, Discontinuance, or Modification</u>. I understand and acknowledge that, at any time, the Authorizing SROs may discontinue disseminating any category of Market Data, may change or eliminate any transmission method and may change transmission speeds or other signal characteristics. The Authorizing SROs shall not be liable for any resulting liability, loss or damages that may arise therefrom.

6) <u>Duration; Survival</u>. This Section 2 of this Agreement remains in effect for so long as I have the ability to receive Market Data as contemplated by this Section 2. In addition, Sections 2(B)(1)-(3) and the first two sentences of Section 2(B)(7), survive any termination of this Agreement.

7) <u>Miscellaneous</u>. The laws of the State of New York shall govern this Section 2 and it shall be interpreted in accordance with those laws. This Subsection is subject to the Securities Exchange Act of 1934, the rules promulgated under that act, and the joint-industry plans entered into pursuant to that act.

C. <u>Provisions Applicable to Nonprofessionals</u>.

1) <u>Permitted Receipt</u>. I understand that I may not receive Market Data from Robinhood as a Nonprofessional, and Robinhood may not provide Market Data to Me as a Nonprofessional, unless Robinhood first properly determines that I qualify as a Nonprofessional as defined above and I in fact qualify as a Nonprofessional. I agree that, as a prerequisite to Robinhood Financial qualifying Me as a Nonprofessional, I will provide to Robinhood truthful and accurate information about Me, such as: my occupation, employer, employment position and functions; my use of Market Data; my registration status with any securities agency, exchange, association, or regulatory body, or any commodities or future contract market, association, or regulatory body, whether in the United States or elsewhere; and any compensation of any kind I may receive from any individual or entity for my trading activities, asset management, or investment advice. Except as otherwise declared to Robinhood in writing, by executing this Agreement, I certify that I meet the definition of Nonprofessional as set forth in this Agreement.

2)    Permitted Use.  If I am a Nonprofessional, I agree to receive Market Data solely for my personal, non-business use.

3)    Notification.  I shall notify Robinhood promptly in writing of any change in my circumstances that may cause Me to cease to qualify as a Nonprofessional.

## 3.    NASDAQ OMX Information.

A.    Definitions.

1)    "Information" means certain market data and other data disseminated that has been collected, validated, processed, and recorded by any system NASDAQ OMX has developed for the creation or dissemination of Information or other sources made available for transmission to and receipt from either a distributor such as RHF or from NASDAQ OMX relating to: a) eligible securities or other financial instruments, markets, products, vehicles, indicators, or devices; b) activities of a NASDAQ OMX company; c) other information and data from a NASDAQ OMX company. "Information" also includes any element of Information as used or processed in such a way that the Information can be identified, recalculated or re-engineered from the processed Information or that the processed Information can be used as a substitute for Information.

2)    "NASDAQ OMX" means The NASDAQ OMX Group, Inc., a Delaware limited liability company and its subsidiaries and Affiliates (collectively, "NASDAQ OMX").

B.    Use of Data.  I understand that I may use the Information only for personal use and not for any business purpose.  I may not sell, lease, furnish or otherwise permit or provide access to the Information to any other natural person or entity ("Person") or to any other office or place.  I will not engage in the operation of any illegal business use or permit anyone else to use the Information, or any part thereof, for any illegal purpose or violate any NASDAQ OMX or SEC Rule or any FSA rule or other applicable law, rule or regulation.  I may not present the Information rendered in any unfair, misleading or discriminatory format.  I shall take reasonable security precautions to prevent any Person other than Myself from gaining access to the Information.

C.    Proprietary Data.  I acknowledge and agree that NASDAQ OMX has proprietary rights to the Information that originates on or derives from markets regulated or operated by NASDAQ OMX, and compilation or other rights to Information gathered from other sources.  I further acknowledge and agree that NASDAQ OMX's third-party information providers have exclusive proprietary rights to their respective Information.  In the event of any misappropriation or misuse by Me or anyone who accesses the Information through Me, NASDAQ OMX or its third-

party information providers shall have the right to obtain injunctive relief for its respective materials.

D.  <u>System</u>.  I acknowledge that NASDAQ OMX, in its sole discretion, may from time-to-time make modifications to its system or the Information.  Such modifications may require corresponding changes to be made in Robinhood Financial's service.  Changes or the failure to make timely changes by Me may sever or affect My access to or use of the Information.  I understand that neither NASDAQ OMX nor Robinhood shall be responsible for such effects.

E.  <u>NASDAQ OMX Limitation of Liability</u>.  Except as may otherwise be set forth herein, NASDAQ OMX shall not be liable to Me for indirect, special, punitive, consequential or incidental loss or damage (including, but not limited to, trading losses, lost profits, or other indirect loss or damage) of any nature arising from any cause whatsoever, even if NASDAQ OMX has been advised of the possibility of such damages.  NASDAQ OMX shall not be liable to Me for any unavailability, interruption, delay, incompleteness or inaccuracy of the Information.  This Section shall not relieve NASDAQ OMX or Me from liability for damages that result from their own gross negligence or willful tortious misconduct or from personal injury or wrongful death claims.  I agree that the terms of this Section reflect a reasonable allocation of risk and limitation of liability.

F.  <u>Disclaimers of Warranties</u>.  NASDAQ OMX and its third-party information providers make no warranties of any kind with respect to the Information—express, implied or statutory (including without limitation, timeliness, truthfulness, sequence, completeness, accuracy, freedom from interruption), any implied warranties arising from trade usage, course of dealing, course of performance or the implied warranties of merchantability or fitness for a particular use or purpose or noninfringement.

G.  <u>Termination by NASDAQ OMX</u>.  I acknowledge that NASDAQ OMX, when required to do so in fulfillment of statutory obligations, may by notice to Robinhood unilaterally limit or terminate the right of any or all Persons to receive or use the Information and that Robinhood will comply with any such notice and will terminate or limit the furnishing of the Information.

**4.  Authorization.**  I understand that My Account is self-directed.  Accordingly, I appoint Robinhood Financial as My agent for the purpose of carrying out My directions to Robinhood Financial in accordance with the terms and conditions of this Agreement and any attendant risks with respect to the purchase or sale of securities.  Robinhood Financial is authorized to open or close My Account(s), place and withdraw orders and take such other steps as are reasonable to carry out My directions.  All transactions will be effected only on My order or the order of My authorized delegate, except as described in Section 10.  I understand Robinhood Financial provides trading and brokerage services through the Robinhood website (the "Website") and the Robinhood mobile application (the "App").  I agree to receive and transmit financial information through such electronic means.  My use

or My grant of access to My Account to any third party to access information or place transactions in My Account is solely at My risk.

**5.      Customer Representations and Responsibilities.**

(A)      <u>Self-directed Account</u>.  I understand that My Account is self-directed, and so that I am solely responsible for any and all orders placed in My Account and that all orders entered by Me or on My behalf are unsolicited and based on My own investment decisions or the investment decision of My duly authorized representative or agent.  Accordingly, I agree that neither Robinhood nor any of its employees, agents, principals, or representatives:

      1)      provide investment advice in connection with this Account;
      2)      recommend any security, transaction or order;
      3)      solicit orders;
      4)      act as a market maker in any security;
      5)      make discretionary trades; and
      6)      produce or provide first-party research providing a specific investment strategies such as buy, sell or hold recommendations, first-party ratings and/or price targets.  To the extent research materials or similar information are available through the App or the Website or the websites of any entity controlled by, controlling, or under common control with Robinhood (such entity, an "Affiliate"), I understand that these materials are intended for informational and educational purposes only and they do not constitute a recommendation to enter into any securities transactions or to engage in any investment strategies.

(B)      <u>Information Accuracy</u>.  I:  (i) certify that the information contained in this Agreement, the account application, and any other document that I furnish to Robinhood Financial in connection with My Account(s) is complete, true and correct, and acknowledge that knowingly giving false information for the purpose of inducing Robinhood Financial to extend credit is a federal crime; (ii) authorize Robinhood Financial to contact any individual or firm noted herein or on the documents referred to in subsection (i) of this Section and any other normal sources of debit or credit information; (iii) authorize anyone so contacted to furnish such information to Robinhood Financial as Robinhood may request; and (iv) agree that this Agreement, the account application and any other document I furnish in connection with My Account is Robinhood's property, as the case may be.  I shall promptly advise Robinhood Financial of any changes to the information in such agreements and documents in writing within ten (10) calendar days.  I authorize Robinhood Financial to obtain reports and provide information to others concerning My creditworthiness and business conduct.  Upon My request, Robinhood agrees to provide Me a copy of any report so obtained.  Robinhood may retain this Agreement, the Account application, and all other such documents and their respective records at Its sole discretion, whether or not credit is extended.

Provided by CourtAlert www.CourtAlert.com

(C)     <u>Risks</u>.  I understand that all investments involve risk, that losses may exceed the principal invested, and that the past performance of a security, industry, sector, market, or financial product does not guarantee future results or returns.

(D)     <u>Account Defaults</u>.  I understand that My Account comes with many defaulted service instruction features and preferences.  I further understand that I am not required to use these defaulted options or preferences and that once My Account is approved and opened I have the sole discretion to control and adjust such defaulted service preferences that relate to My account.

(E)     <u>Knowledge of Account</u>.  I understand that I am solely responsible for knowing the rights and terms for all securities purchased, sold and maintained in My Account including mergers, reorganizations, stock splits, name changes or symbol changes, dividends, option symbols, and option deliverables.  I further understand that certain securities may grant Me valuable rights that may expire unless I take specific action.  These securities include bonds, convertible securities, warrants, stock rights and securities subject to exchange offers or tenders.  I am responsible for knowing all expiration dates, redemption dates, and the circumstances under which rights associated with My securities may be called, cancelled, or modified. Robinhood may, but are not obligated to, notify Me of any upcoming expiration or redemption dates, or take any action on My behalf without My specific instructions except as required by law and the rules of regulatory authorities.  I acknowledge that Robinhood may adjust My Account to correct any error.  If My Account has an option position on the last trading day prior to expiration, which is one cent or more in the money, Robinhood Financial will generally exercise the option, on My behalf.  However, Robinhood Financial reserves the right at Its discretion to close any option position prior to expiration date or any position resulting from the exercising/assignment after option expiration.  I will be charged a commission for any such transaction.  Robinhood Financial is not obligated to take any of these actions and Robinhood Financial is not liable for Losses should it not take them.

(F)     <u>Purchases</u>.  All orders for the purchase of securities given for My Account will be authorized by Me and executed in reliance on My promise that an actual purchase is intended.  It is My obligation to pay for purchases immediately or on Robinhood's demand.  I understand Robinhood may at any time, in its sole discretion and without prior notice to Me, prohibit or restrict My ability to trade securities. I further agree not to allow any person to trade for My Account unless a trading authorization for that person has been received and approved by Robinhood.  Robinhood reserve the right to require full payment in cleared funds prior to the acceptance of any order.  In the event that I fail to provide sufficient funds, Robinhood may, at its option and without notice to Me, i) charge a reasonable rate of interest, ii) liquidate the Property subject of the buy order, or iii) sell other Property owned by Me and held in any of My Accounts.  Robinhood may also charge any consequential Loss to My Account.  For purposes of this Agreement, "Property" shall mean all monies, contracts, investments and options, whether for present or future delivery, and all related distributions, proceeds, products and accessions.

(G)     Sales/Short Sales.  I promise to deliver all securities sold in My Account and to provide collateral of a type and amount acceptable to Robinhood Financial for all short sales in My Account.  Robinhood Financial requires that a security be held in My Account prior to the acceptance of a sell order with respect to such security unless the order is specifically designated as a "short sale." If a security is not held in My Account and a sell order is processed, I must promptly deliver such security to Robinhood Financial for receipt in good deliverable form on or before the settlement date.  Any order accepted without negotiable certificates or positions in My Account will be subject, at Robinhood Financial's sole discretion, to cancellation or buy-in.  To ensure this will not occur, I agree to only place sell orders for securities owned by Me and held in My Account at the time My order is placed.

Proceeds of a sale will not be paid to Me or released into My Account until Robinhood Financial has received the security in good deliverable form, whether from a transfer agent or from Me and the settlement of the security is complete.  If the security is not received on or before settlement date, or as market conditions warrant, Robinhood Financial may in its sole discretion purchase the security on the open market for My Account and may liquidate and close out any and all securities in My Account in order to pay for such purchase.  In the event a security is bought in, I will be responsible for all resulting Losses incurred by Robinhood Financial.

I understand that I may execute short sales only in a margin Account and that such execution must comply with applicable short sales rules.

(H)     Assistance by Robinhood.  I understand that when I request assistance from Robinhood or its employees in using the investment tools available on the Website or the App, it will be limited to an explanation of the tool's functionality and, if requested by Me, to the entry by Robinhood or its employees of variables provided by Me, and that such assistance does not constitute investment advice, an opinion with respect to the suitability of any transaction, or solicitation of any orders.

(I)     No Tax or Legal Advice.  I understand that Robinhood does not provide tax or legal advice.

(J)     Discontinuation of Services.  I understand that Robinhood may discontinue My Account and any services related to My Account immediately by providing written notice to Me

(K)     Electronic Access.

1)     I am solely responsible for keeping My Account numbers and PINs confidential and will not share them with third parties.  "PINs" shall mean My username and password.

2)      I agree and accept full responsibility for monitoring and safeguarding My Accounts and access to My Accounts.

3)      I agree to immediately notify Robinhood in writing, delivered via e-mail and a recognized international delivery service, if I become aware of: (i) any loss, theft, or unauthorized use of My PINs or Account numbers; (ii) any failure by Me to receive any communication from Robinhood indicating that an order was received, executed or cancelled, as applicable; (iii) any failure by Me to receive an accurate written confirmation of an order, execution, or cancellation; (iv) any receipt by Me of confirmation of an order, execution or cancellation, which I did not place; (v) any inaccurate information in or relating to My orders, trades, margin status, Account balances, deposits, withdrawals, securities positions or transaction history; or (vi) any other unauthorized use or access of My Account.

4)      Each of the events described in subsections (K)(3)(i)-(vi) shall be deemed a "Potential Fraudulent Event". The use and storage of any information including My Account numbers, PINs, portfolio information, transaction activity, account balances and any other information or orders available on My wireless, web-enabled cellular telephone or similar wireless communications device (collectively, "Mobile Device") or My personal computer is at My own risk and is My sole responsibility. I represent that I am solely responsible for and have authorized any orders or instructions appearing in, originating from, or associated with My Account, My Account number, My username and password, or PINs. I agree to notify Robinhood immediately after I discover any Potential Fraudulent Event, but in no event more than twenty-four (24) hours following discovery. Upon request by Robinhood, I agree to report any Potential Fraudulent Event promptly to legal authorities and provide Robinhood a copy of any report prepared by such legal authorities. I agree to cooperate fully with the legal authorities and Robinhood in any investigation of any Potential Fraudulent Event and I will complete any required affidavits promptly, accurately and thoroughly. I also agree to allow Robinhood access to My Mobile Device, My computer, and My network in connection with Robinhood's investigation of any Potential Fraudulent Event. I understand that if I fail to do any of these things I may encounter delays in regaining access to the funds in My Account. I agree to indemnify and hold Robinhood, its Affiliates, and Robinhood and its Affiliates' respective officers, directors, and employees harmless from and against any Losses arising out of or relating to any Potential Fraudulent Event. I acknowledge that Robinhood does not know when a person entering orders with My username and password is Me.

5)      <u>Trusted Contact Person</u>. I understand that, pursuant to FINRA regulations, Robinhood is authorized to contact the Trusted Contact Person (as defined by FINRA Rule 4512) designated for My Account and to disclose information about My account to address possible financial exploitation, to confirm the specifics of My current contact information, health status, or

the identity of any legal guardian, executor, trustee or holder of a power of attorney, or as otherwise permitted by Rule 2165.

6.   **Clearance of Trades.**  I understand that Robinhood Financial has entered into a clearing agreement with Robinhood Securities whereby Robinhood Financial will introduce My Account to Robinhood Securities, and Robinhood Securities will clear all transactions, on a fully-disclosed basis.  I understand that Robinhood Securities carries My Account(s) and is responsible for the clearing and bookkeeping of transactions, but is not otherwise responsible for the conduct of Robinhood Financial.

Until receipt from Me of written notice to the contrary, Robinhood Securities may accept from Robinhood Financial, without inquiry or investigation, (i) orders for the purchase or sale of securities and other property on margin, if I have elected to have a margin account, or otherwise, and (ii) any other instructions concerning my Accounts.   Robinhood Securities shall look solely to Robinhood Financial unless otherwise directed by Robinhood Financial, and not to Me, with respect to any such orders or instructions; except that I understand that Robinhood Securities will deliver confirmations, statements, and all written or other notices with respect to My Account directly to Me with copies to Robinhood Financial, and that Robinhood Securities will look directly to Me or Robinhood Financial for delivery of margin, payment, or securities.  I agree to hold Robinhood Securities harmless from and against any Losses arising in connection with the delivery or receipt of any such communication(s), provided Robinhood Securities has acted in accordance with the above.  The foregoing shall be effective as to My Account(s) until written notice to the contrary is received from Me by Robinhood Securities or Robinhood Financial.

7.   **Review of Confirmations and Statements.**  I agree that it is My responsibility to review order execution confirmations and statements of My Account(s) promptly upon receipt.  I agree to receive all confirmations and account statements, as well as all tax related documents, in electronic format.  I understand that account statements will evidence all activity in My Account for the stated period, including securities transactions, cash balances, credits to My Account and all fees paid from My Account.  Notwithstanding Section 35.B, confirmations will be considered binding on Me unless I notify Robinhood of any objections within two (2) calendar days from the date confirmations are sent.  Account statements will be considered binding on Me unless I notify you of any objections within ten (10) calendar days after My Account statements are posted online.  Such objection may be oral or in writing, but any oral objection must be immediately confirmed in writing.  In all cases, Robinhood reserves the right to determine the validity of My objection.  If I object to a transaction for any reason, I understand and agree that I am obligated to take action to limit any losses that may result from such transaction or I will bear sole responsibility for any losses relating to the transaction, even if My objection to the transaction is ultimately determined to be valid.  Nothing in this Section 7 shall limit My responsibilities as described in Section 5 of this Agreement.

8.   **Important Information Needed to Open a New Account.**  To help the government better detect the funding of terrorism and money laundering activities, federal law requires all financial institutions to obtain, verify, and record information that identifies each person

who opens an account.  Therefore, I understand that when I open My Account Robinhood will ask for My name, address, date of birth and other identifying information.  Robinhood may also ask copies of My driver's license, passport or other identifying documents.  I understand that Robinhood may take steps to verify the accuracy of the information I provide to Robinhood in My Account application or otherwise, and that Robinhood may restrict My access to My Account pending such verification.  I will provide prompt notification to Robinhood of any changes in the information including My name, address, e-mail address and telephone number.

I further understand that if I attempt to access My Account from a jurisdiction subject to certain U.S. sanctions or I am ordinarily resident in such a jurisdiction, or if you reasonably believe that I am attempting such access or have become a resident in such a jurisdiction, you may restrict My Account, and any pending orders may be cancelled. If this happens, I understand that I should contact help@robinhood.com, and that I may be asked to provide supplemental information as part of this process. I further understand that I must close My Account before establishing residency in any jurisdiction subject to U.S. sanctions.

9. **Telephone Conversations and Electronic Communications.**  I understand and agree that Robinhood may record and monitor any telephone or electronic communications with Me.  Unless otherwise agreed in writing in advance, Robinhood does not consent to the recording of telephone conversations by any third party or Me.  I acknowledge and understand that not all telephone or electronic communications are recorded by Robinhood, and Robinhood does not guarantee that recordings of any particular telephone or electronic communications will be retained or capable of being retrieved.

10. **Oral Authorization.**  I agree that Robinhood shall be entitled to act upon any oral instructions given by Me so long as Robinhood reasonably believes such instruction was actually given by Me or My authorized agent.

11. **Applicable Laws and Regulations.**  All transactions in My Account will be subject to federal securities laws and regulations, the applicable laws and regulations of any state or jurisdiction in which Robinhood Financial is registered, the rules of any applicable self-regulatory organization of which Robinhood Financial is a member and the rules, regulations, customs and usages of the exchange or market, and its clearing house, if any, where the transactions are executed.  In no event will Robinhood Financial be obligated to effect any transaction it believes would violate any federal or state law, rule or regulation or the rules or regulations of any regulatory or self-regulatory organization.

12. **Erroneous Distributions.**  I agree to promptly return to Robinhood any assets erroneously distributed to Me.  In the event that I sell a security prior to its ex-dividend/distribution date, and I receive the related cash/stock dividend or distribution in error, I direct Robinhood on My behalf to pay such dividend/distribution to the entitled purchaser of the securities I sold, and I guarantee to promptly reimburse Robinhood for, or deliver to Robinhood, said dividend or distribution.

13. **Market Volatility; Market Orders; Limit Orders; and Queued Orders.**  I understand that, whether I place a market or limit order, I will receive the price at which My order is

executed in the marketplace, subject to any clarification stated below. Particularly during periods of high volume, illiquidity, fast movement or volatility in the marketplace, the execution price received may differ from the quote provided on entry of an order, and I may receive partial executions of an order at different prices. I understand that Robinhood Financial is not liable for any price fluctuations. I also understand that price quotes generally are for only a small number of shares as specified by the marketplace, and larger orders are relatively more likely to receive executions at prices that vary from the quotes or in multiple lots at different prices.

I understand that Robinhood Financial does not currently support sending traditional market buy orders and that Robinhood Financial collars all market buy orders by using limit orders priced up to 5% above the last trade price. This is not the case for market sell orders. I further understand that when I send a market buy order through Robinhood Financial's trading system, the trading system generates a limit order up to 5% above the last trade price, and then Robinhood Financial sends the order to an executing broker. I understand that Robinhood Financial's implementation of market buy orders may vary depending on prices of instruments, market conditions, and other factors. I further understand that Robinhood Financial uses the following rounding mechanics with respect to buy orders: the last trade price is (i) multiplied by 1.05; (ii) rounded down to two decimal places if the last trade price is over $1.00; otherwise, rounded down to four decimal places; and (iii) for securities included in the SEC's Tick Size Pilot Program, rounded down to the nearest $.05 increment. I understand that securities may open for trading at prices substantially higher or lower than the previous closing price or the anticipated price. If I place a market order (whether during normal market hours or when the market is closed), I agree to pay or receive the prevailing market price at the time My market order is executed, subject to the specific clarification above relating to buy orders. I understand that the price I pay may be significantly higher or lower than anticipated at the time I placed the order. To avoid buying a security at a higher price and possibly exceeding My purchasing power, I understand My option to enter a limit order. I also understand that limit orders may not be executed at any particular time, or at all, if there is not sufficient trading at or better than the limit price I specify, and are only good until the end of the trading day in which they are entered. The Website contains further information regarding order types and limitations, which I agree to read and understand before placing such orders.

As a customer of Robinhood Financial, I understand that after the market has closed for the day, I have the ability to place in a queue order requests to be executed the following day upon the opening of the market ("Queued Order"). I understand that My Queued Order request is prioritized based on the order in which it is received by Robinhood Financial, and that the Queued Order requests are sent out for execution shortly after the market opens on the next day of trading. I further understand that each Queued Order request is sent out per customer and per security as Robinhood Financial market orders (described above), and that they are not aggregated.

A limit order may be "good till cancelled" which means the order remains valid until (A) it is executed; (B) I cancel the order; (C) approximately 90 days from when the order is placed; or (D) the contract to which it relates is closed. I understand that Robinhood will

cancel a "good till cancelled" order at the end of every trading day (on the exchange on which the instrument to which the contract relates is traded) and place such order again at the start of the following trading day. This process will be repeated every day for as long as the "good till cancelled" order remains valid. I further agree that any "good till cancelled" orders I place should be treated as "do not reduce" orders.

14. **Bulletin Board/Pink Sheet Stocks.** Bulletin board, pink sheet and other thinly-traded securities (collectively "bulletin board stocks") present particular trading risks, in part because they are relatively less liquid and more volatile than actively traded securities listed on a major exchange. I understand that bulletin board stocks may be subject to different trading rules and systems than other securities and that I may encounter significant delays in executions, reports of executions, and updating of quotations in trading bulletin board stocks. Robinhood Financial in its sole discretion may require limit orders on certain bulletin board stock transactions.

15. **Research and Internet Links.** News, research, links to outside websites, and other information accessible through the App or Website ("Content") may be prepared by independent external providers not affiliated with Robinhood Financial, including Morningstar, Inc. (all such providers, the "Providers"). I agree not to distribute, reproduce, sell, or otherwise commercially use the Content in any manner. I understand that Robinhood may terminate My access to the Content. I understand that none of the Content is a recommendation by Robinhood to buy or sell any securities or to engage in any investment strategy.

16. **Restrictions on Trading.** I understand that Robinhood may, in its discretion, prohibit or restrict the trading of securities, or the substitution of securities, in any of My Accounts. I understand that Robinhood may execute all orders by Me on any exchange or market, unless I specifically instruct Robinhood to the contrary. In the event of a breach or default by Me under this Agreement, Robinhood shall have all rights and remedies available to a secured creditor under all applicable laws and in addition to the rights and remedies provided herein. I understand that Robinhood may at any time, at its sole discretion and without prior notice to Me: (i) prohibit or restrict My access to the use of the App or the Website or related services and My ability to trade, (ii) refuse to accept any of My transactions, (iii) refuse to execute any of My transactions, or (iv) terminate My Account. The closing of My Account will not affect the rights or obligations of either party incurred prior to the date My Account is closed.

Further, Robinhood will not tolerate any foul or abusive language, physical violence, threatening behavior, or other inappropriate conduct directed toward Robinhood, its Affiliates' officers, employees, contractors or customers. If I engage in any such behavior, as determined by Robinhood in its sole discretion, I agree that Robinhood is authorized to: (i) liquidate any securities, instruments or other property in My Account, (ii) send Me the proceeds, and (iii) close My account. Robinhood will not be responsible for any Losses caused by the liquidation of securities, instruments or other property pursuant to this paragraph, including any tax liabilities.

17. **Waiver; Limitation of Liability; Indemnification.** I agree that My use of the App or the Website or any other service provided by Robinhood Financial or its Affiliates is at My sole risk. The Robinhood Financial service (including the App, the Website, the provision of Market Data, Information, Content, or any other information provided by Robinhood Financial, any of its Affiliates, or any third-party content provider or market data provider) is provided on an "as is," "as available" basis without warranties of any kind, either express or implied, statutory (including without limitation, timeliness, truthfulness, sequence, completeness, accuracy, freedom from interruption), implied warranties arising from trade usage, course of dealing, course of performance, or the implied warranties of merchantability or fitness for a particular purpose or application, other than those warranties which are implied by and incapable of exclusion, restriction or modification under the laws applicable to this Agreement.

Although considerable effort is expended to make the Website, App and other operational and communications channels available around the clock, Robinhood does not warrant that these channels will be available and error free every minute of the day. I agree that Robinhood will not be responsible for temporary interruptions in service due to maintenance, Website or App changes, or failures, nor shall Robinhood be liable for extended interruptions due to failures beyond our control, including but not limited to the failure of interconnecting and operating systems, computer viruses, forces of nature, labor disputes and armed conflicts.

EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THIS AGREEMENT, I UNDERSTAND AND AGREE THAT ROBINHOOD, ITS AFFILIATES, THEIR RESPECTIVE OFFICERS, DIRECTORS, EMPLOYEES AND AGENTS, AND THE PROVIDERS (COLLECTIVELY THE "ROBINHOOD PARTIES") WILL NOT BE LIABLE TO ME OR TO THIRD PARTIES UNDER ANY CIRCUMSTANCES, OR HAVE ANY RESPONSIBILITY WHATSOEVER, FOR ANY SPECIAL, INDIRECT, INCIDENTAL, PUNITIVE OR CONSEQUENTIAL DAMAGES (INCLUDING TRADING LOSSES, DAMAGES, LOSS OF PROFITS, REVENUE, OR GOODWILL) THAT I MAY INCUR IN CONNECTION WITH MY USE OF THE SERVICE PROVIDED BY ROBINHOOD OR ANY OF ITS AFFILIATES UNDER THIS AGREEMENT (INCLUDING MY USE OF THE APP, THE WEBSITE, THE MARKET DATA, THE INFORMATION, OR THE CONTENT), BREACH OF THIS AGREEMENT, OR ANY TERMINATION OF THIS AGREEMENT, WHETHER SUCH LIABILITY IS ASSERTED ON THE BASIS OF CONTRACT, TORT (INCLUDING NEGLIGENCE), OR OTHERWISE, AND WHETHER OR NOT FORESEEABLE, EVEN IF ANY ROBINHOOD PARTY HAS BEEN ADVISED OR WAS AWARE OF THE POSSIBILITY OF SUCH LOSS OR DAMAGES. THE ROBINHOOD PARTIES SHALL NOT BE LIABLE BY REASON OF DELAYS OR INTERRUPTIONS OF THE SERVICE OR TRANSMISSIONS, OR FAILURES OF PERFORMANCE OF THEIR RESPECTIVE SYSTEMS, REGARDLESS OF CAUSE, INCLUDING THOSE CAUSED BY GOVERNMENTAL OR REGULATORY ACTION, THE ACTION OF ANY EXCHANGE OR OTHER SELF REGULATORY ORGANIZATION, OR THOSE CAUSED BY SOFTWARE OR HARDWARE MALFUNCTIONS.

Except as otherwise provided by law, Robinhood or any of its affiliates or respective partners, officers, directors, employees or agents (collectively, "Indemnified Parties") shall not be liable for any expenses, losses, costs, damages, liabilities, demands, debts, obligations, penalties, charges, claims, causes of action, penalties, fines and taxes of any kind or nature (including legal expenses and attorneys' fees) (whether known or unknown, absolute or contingent, liquidated or unliquidated, direct or indirect, due or to become due, accrued or not accrued, asserted or unasserted, related or not related to a third party claim, or otherwise) (collectively, "Losses") by or with respect to any matters pertaining to My Account, except to the extent that such Losses are actual Losses and are determined by a court of competent jurisdiction or an arbitration panel in a final non-appealable judgment or order to have resulted solely from Robinhood's or any of its affiliates' gross negligence or intentional misconduct.  In addition, I agree that the Indemnified Parties shall have no liability for, and I agree to indemnify, defend and hold harmless the Indemnified Parties from all Losses that result from: (i) any noncompliance by Me with any of the terms and conditions of this Agreement; (ii) any third-party actions related to My receipt and use of any Information, Market Data, Content, market analysis, other third-party content, or other such information obtained on the App or Website, whether authorized or unauthorized under this Agreement; (iii) any third-party actions related to My use of the App or the Website; (iv) My or My agent's misrepresentation or alleged misrepresentation, or act or omission; (v) Indemnified Parties following My or My agent's directions or instructions, or failing to follow My or My agent's unlawful or unreasonable directions or instructions; (vi) any activities or services of the Indemnified Parties in connection with My Account (including any technology services, reporting, trading, research or capital introduction services); or (vii) the failure by any person not controlled by the Indemnified Parties and their affiliates to perform any obligations to Me.  Further, if I authorize or allow third parties to gain access to Robinhood's services, including My Accounts, I will indemnify, defend and hold harmless the Indemnified Parties against any Losses arising out of claims or suits by such third parties based upon or relating to such access and use.  Robinhood does not warrant against loss of use or any direct, indirect or consequential damages or Losses to Me caused by My assent, expressed or implied, to a third party accessing My Account or information, including access provided through any other third party systems or sites.

I consent to the use of automated systems or service bureaus by Robinhood and its respective affiliates in conjunction with My Account, including automated order entry and execution, record keeping, reporting and account reconciliation and risk management systems (collectively "Automated Systems").  I understand that the use of Automated Systems entails risks, such as interruption or delays of service, errors or omissions in the information provided, system failure and errors in the design or functioning of such Automated Systems (collectively, a "System Failure") that could cause substantial damage, expense, or liability to Me.  I understand and agree that Indemnified Parties will have no liability whatsoever for any of my Losses arising out of or relating to a System Failure.

I also agree that Indemnified Parties will have no responsibility or liability to Me in connection with the performance or non-performance by any exchange, clearing organization, market data provider, or other third party (including other broker-dealers and clearing firms, and banks) or any of their respective agents or affiliates, of its or their

16

obligations relative to any securities.  I agree that Indemnified Parties will have no liability, to Me or to third parties, or responsibility whatsoever for: (i) any Losses resulting from a cause over which Indemnified Parties do not have direct control, including the failure of mechanical equipment, unauthorized access, theft, operator errors, government restrictions, force majeure (as defined in this Agreement), market data availability or quality, exchange rulings or suspension of trading; and (ii) any special, indirect, incidental, consequential, punitive or exemplary damages (including lost profits, trading losses and damages) that I may incur in connection with My use of the App, the Website, Robinhood's brokerage, and other services provided by Indemnified Parties under this Agreement.

18.    **Mutual Fund Transactions.**  In the event that I purchase or hold a mutual fund, I agree to read and understand the terms of its prospectus.  I understand that certain mutual funds reserve the right to change their purchasing, switching or redemption procedures or suspend or postpone redemptions under certain market conditions.  I further understand that any mutual fund order entered with Robinhood is placed by Robinhood on a best efforts basis as prescribed and recognized by the individual fund, and that Robinhood is not responsible for unexecuted orders due to the failure of any communication system.  I agree to be fully responsible for the information contained within the mutual fund prospectus and to hold Robinhood, its Affiliates, and Robinhood and its Affiliates' respective officers and employees harmless for any deficiencies contained therein.  I authorize Robinhood to act as My agent in the purchase and redemption of fund shares.

19.    **Exchange Traded Funds.**  I understand that I should consider the investment objectives and unique risk profile of Exchange Traded Funds ("ETFs") carefully before investing, and that ETFs are subject to risks similar to those of other diversified portfolios.  I further understand that leveraged and inverse ETFs may not be suitable for all investors and may increase exposure to volatility through the use of leverage, short sales of securities, derivatives, and other complex investment strategies, and that although ETFs are designed to provide investment results that generally correspond to the performance of their respective underlying indices, they may not be able to exactly replicate the performance of the indices because of expenses and other factors.  I further understand that ETFs are required to distribute portfolio gains to shareholders at year end, which may be generated by portfolio rebalancing or the need to meet diversification requirements, and that ETF trading will also generate tax consequences.  I understand that I can obtain prospectuses from issuers or their third party agents who distribute and make prospectuses available for review.  Additional regulatory guidance on ETFs can be found here.

20.    **Effect of Attachment or Sequestration of Accounts.**  Robinhood shall not be liable for refusing to obey any orders given by or for Me with respect to any of My Accounts that has or have been subject to an attachment or sequestration in any legal proceeding against Me, and Robinhood shall be under no obligation to contest the validity of any such attachment or sequestration.

21.    **Event of Death.**  It is agreed that in the event of My death, the representative of My estate or the survivor or survivors shall immediately give Robinhood written notice thereof, and Robinhood may, before or after receiving such notice, take such proceedings, require such papers and inheritance or estate tax waivers, retain such portion of, or restrict transactions

17

in the Account as Robinhood may deem advisable to protect Robinhood against any tax, liability, penalty or loss under any present or future laws or otherwise. Notwithstanding the above, in the event of My death, all open orders shall be canceled, but Robinhood shall not be responsible for any action taken on such orders prior to the actual receipt of notice of death. Further, Robinhood may in Its discretion close out any or all of the Accounts without awaiting the appointment of a personal representative for My estate and without demand upon or notice to any such personal representative. The estate of any of the Account holders who have died shall be liable and each survivor shall continue to be liable, jointly and severally, to Robinhood for any net debit balance or loss in said account in any way resulting from the completion of transactions initiated prior to the receipt by Robinhood of the written notice of the death of the decedent or incurred in the liquidation of the Account or the adjustment of the interests of the respective parties, and for all other obligations pursuant to this Agreement. Such notice shall not affect Robinhood's rights under this Agreement to take any action that Robinhood could have taken if I had not died.

22.    **Tax Reporting; Tax Withholding.**    The proceeds of sale transactions and dividends paid will be reported to the Internal Revenue Service ("IRS") in accordance with applicable law.

A.    <u>U.S. Persons</u>. This subsection is applicable if I am a U.S. person. Under penalties of perjury, I certify that the taxpayer identification number that I have provided or will provide to Robinhood (including any taxpayer identification number on any Form W-9 that I have provided or will provide to Robinhood) is My correct taxpayer identification number. I certify that I am not subject to backup withholding and I am a United States Person (including a U.S. resident alien) as such term is defined in section 7701(a)(30) of the Internal Revenue Code of 1986, as amended ("U.S. Person"). If a correct Taxpayer Identification Number is not provided Robinhood Financial, I understand I may be subject to backup withholding tax at the appropriate rate on all dividends, interest and gross proceeds paid to me. Backup withholding taxes are sent to the IRS and cannot be refunded by Robinhood Financial. I further understand that if I waive tax withholding and fail to pay sufficient estimated taxes to the IRS, I may be subject to tax penalties.

B.    <u>Non-U.S. Persons</u>. This subsection is applicable if I am not a U.S. Person. I certify that I fully understand all the information on any Form W-8BEN that I have submitted or will submit to Robinhood. Under penalties of perjury, I declare that (i) I have examined all the information (including all the information in the English language) on any Form W-8BEN that I have submitted or will submit to Robinhood and (ii) to the best of My knowledge and belief all such information is true, correct, and complete. I authorize Robinhood to provide any such Form W-8BEN to Robinhood Securities or any withholding agent that has control, receipt, or custody of the income of which I am the beneficial owner or any withholding agent that can disburse or make payments of the income of which I am the beneficial owner. I agree that I will submit a new Form W-8BEN to Robinhood within 30 calendar days if any certification made on any previously submitted Form W-8BEN becomes incorrect. I understand that the IRS does not require My consent to any provisions of such Form W-8BEN other than the certifications required to establish My status as a non-U.S. Person and, if applicable, obtain a reduced rate of withholding.

18

23. **Equity Orders and Payment For Order Flow.**  SEC rules require all registered broker-dealers to disclose their policies regarding any "payment for order flow" arrangement in connection with the routing of customer orders.  "Payment for order flow" includes, among other things, any monetary payment, service, property, or other benefit that results in remuneration, compensation, or consideration to a broker-dealer from any broker-dealer in return for directing orders.  I understand that Robinhood transmits customer orders for execution to various exchanges or market centers based on a number of factors.  These include: size of order, trading characteristics of the security, favorable execution prices (including the opportunity for price improvement), access to reliable market data, availability of efficient automated transaction processing and reduced execution costs through price concessions from the market centers.  I further understand that certain of the exchanges or market centers may execute orders at prices superior to the publicly quoted market in accordance with their rules or practices and that while a customer may specify that an order be directed to a particular market center for execution, the order-routing policies, taking into consideration all of the factors listed above, are designed to result in favorable transaction processing for customers.  The nature and source of any payments or credits received by Robinhood in connection with any specific transactions will be furnished upon written request.

24. **Free Credit Balances and Sweep Service.**  If I enroll in Robinhood Financial Cash Management ("Cash Management"), I understand that I am electing to participate in the Insured Network Deposit ("IND") sweep service (the "Sweep Service").  Under the Sweep Service, free credit balances in My Account will be deposited into interest-bearing accounts at one or more banks ("Participating Depository Institutions"), in accordance with the Insured Network Deposit Sweep Program Disclosures ("IND Disclosures") available on the Website and in the App.  By enrolling in Cash Management, I represent and warrant that I have reviewed the IND Disclosures and agree to the terms set forth in the IND Disclosures.  If I am not enrolled in Cash Management, free credit balances in My Account will remain in My Account, will not earn interest and will not be eligible for FDIC insurance, but will be eligible for SIPC protection as described in the IND Disclosures.

25. **Fees and Charges.**  I understand that Robinhood does not charge fees or commissions for executing buy and sell orders.  However, I understand that other fees may apply.  The current fees are included in the fee schedule available in the App and on the Website.  I agree to pay any such fees at the then-prevailing rate.  I acknowledge that the prevailing fees may change and that change may occur without notice.  I agree to be bound by such changes once they are posted in the fee schedule available in the App and on the Website.  I also agree to pay all applicable federal, state, local, and foreign taxes.  I authorize Robinhood Financial to automatically debit My Account for any such fees and taxes.  I also agree to pay such expenses incurred by Robinhood in connection with collection of any unpaid balance due on My Accounts including attorney's fees allowed by law.

26. **ACH Transactions.**

   A.    Debit Transactions.

Robinhood will initiate an ACH debit at My request to debit funds from an account that I own at another financial institution ("External Account") for deposit into My Account. I understand that in order for Robinhood to initiate an ACH debit, the financial institution holding my External Account must participate in the ACH system. I understand that for the ACH transfers to be established, at least one common name must match exactly between My Account and My External Account. I authorize Robinhood to take such steps as it deems appropriate to verify my ownership of External Account, including by telling the bank at which such External Account is held that I have authorized and consented to such bank disclosing to Robinhood any information that Robinhood may request about Me or My External Account. I also agree to cooperate with Robinhood's verification of my ownership of such External Account by promptly providing any identification and/or other documentation that Robinhood may request regarding such External Account. I represent and warrant that there are sufficient funds in My External Account to cover the amount of the deposit to My Account. Robinhood will initiate the ACH debit to My External Account on the Business Day or next Business Day after I request the transfer. A transfer request will be deemed to have been made on a Business Day if it is received by Robinhood by 7:00 p.m. (Eastern Time) on such Business Day; if received after that time, the transfer request will be deemed to have been made on the next Business Day.

Within 60 days of the date of My ACH deposit, My funds may only be withdrawn to the External Account from which such funds were deposited.

I understand that an ACH debit transfer may be reversed or rejected if: (A) there are insufficient funds in My External Account; (B) there is a duplicate transaction; (C) the transaction is denied by the bank holding My External Account; or (D) My External Account does not support ACH transfers. I acknowledge that in the event of an ACH reversal, I will incur a fee. Before initiating making an ACH debit transfer, I agree to check Robinhood Financial's most recent Commissions and Fees Schedule, available at https://brokerage-static.s3.amazonaws.com/assets/robinhood/legal/RHF%20Retail%20Commisions%2 0and%20Fees%20Schedule.pdf. I agree that I am solely liable and responsible for any ACH reversal fees that I incur.

B.     Credit Transactions.

Robinhood will initiate an ACH credit at My request to transfer funds from My Account to a recipient that I designate. I agree that I will have sufficient funds ("Available Funds") in My Account to cover the amount of any ACH credit that I ask Robinhood to initiate. Robinhood will debit the amount of such request from My Account on the Business Day or next Business Day after I request the transfer. A transfer request will be deemed to have been made on a Business Day if it is received by Robinhood by our cut-off time on such Business Day; if received after that time, the transfer request will be deemed to have been made on the next Business Day.

I agree that Robinhood may use any means which Robinhood, in its sole discretion, considers suitable to execute my ACH credit transfers.

**27.     Fractional Shares**

I acknowledge and understand that Robinhood rounds all holdings of fractional shares to the sixth decimal place, the value of fractional shares to the nearest cent, and any dividends paid on fractional shares to the nearest cent.  I further understand that Robinhood will not accept dollar-based purchases or sales of less than $1.00 and that I will receive proceeds from the sale of any whole or fractional shares rounded to the nearest cent.

I understand that a vendor employed by Robinhood will aggregate any proxy votes for fractional shares of Robinhood's customers with all votes reported to the issuer or issuer's designated vote tabulator and that, while Robinhood's vendor will report such proxy votes on fractional shares, the issuer or tabulator may not fully count such votes.

I understand that Robinhood will execute all orders that include fractional shares on a principal basis.  To the extent that Robinhood fulfills my order entirely out of its inventory and without purchasing or selling shares in the market, Robinhood will endeavor to price such shares or fractional shares at a price between the National Best Bid and Offer ("NBBO") at the time of the order for orders made during market hours, or, for such orders made during extended hours trading (9:00-9:30 a.m. and 4:00-6:00 p.m. Eastern), Robinhood will endeavor to price such orders between the best bid and offer at the time of the order, as reported by an external vendor.  Orders made outside market hours and extended hours trading are queued and fulfilled either at or near the beginning of extended hours trading (9:00 a.m. Eastern) or at or near market open (9:30 a.m. Eastern), according to my instructions.   To the extent that I trade fractional shares outside of market hours, these trades are subject to Robinhood's Extended Hours Trading                    Disclosure,                    available                    at: https://cdn.robinhood.com/assets/robinhood/legal/ExtendedHoursTradingDisclosure.pdf

I understand Robinhood only accepts market orders for fractional shares at this time and does not permit limit orders for fractional shares.  I understand that fractional shares within My Account (i) are unrecognized, unmarketable, and illiquid outside the Robinhood platform, (ii) are not transferrable in-kind, and (iii) may only be liquidated and the proceeds transferred out via a wire transfer.  I acknowledge that, subject to applicable requirements, Robinhood may report holdings and transactions in My Account in terms of either U.S. Dollars, shares, or both.

**28.     Dividend Reinvestment Program**

Except as expressly stated otherwise, the provisions of this Section 28 will only apply if I am enrolled in Robinhood's Dividend Reinvestment Program ("DRIP").

Provided by CourtAlert
www.CourtAlert.com

My enrollment in the DRIP will be activated within three business days after I notify Robinhood of my intention to enroll an eligible security through the App. "Eligible security" means all shares available for fractional investing through Robinhood. I understand that in order to be eligible for dividend reinvestment, the securities must be held in My Account.

I may specify individual securities or have all Eligible securities in My Account enrolled for dividend reinvestment. If I choose to reinvest dividends from all Eligible securities, I understand that individual securities could subsequently no longer be Eligible securities at Robinhood's discretion or under applicable law. In those cases, only those securities will be discontinued from the DRIP. If I specify individual securities, I may add additional Eligible securities to the DRIP at any time if I hold a position in those securities. Enrollment with respect to these additional Eligible securities will be effective within three business days after Robinhood receives notification from me through the App. If I maintain open orders for securities I do not already hold, I may not enroll those securities for dividend reinvestment until my open orders are executed. If my entire Account is set up for dividend reinvestment, any eligible securities I purchase in the future will automatically participate in the DRIP.

All eligible cash distributions will be reinvested on all securities I have selected in the DRIP, provided that I owned the securities on the record date for determining shareholders eligible to receive dividends, and continue to hold the securities through payable date. "Eligible cash distributions" means most cash distributions, including regular and optional dividends, cash-in-lieu payments, and capital gains distributions. Special dividends, late ex-date, liquidation, and miscellaneous payments may not be eligible distributions. Optional dividends will be processed in accordance with dividend reinvestment instructions. If I have a margin account, Robinhood is permitted to borrow a dividend paying stock in the normal course of business and, as a result, in such situations instead of a dividend payment I may receive a cash in lieu payment. If I receive a cash in lieu payment, I authorize Robinhood to treat such payment as if it was not "in lieu" and reinvest it accordingly.

Robinhood will credit My Account upon completion of the dividend reinvestment. Robinhood will reinvest dividends on the business day following receipt of funds. In the rare instance in which Robinhood is unable to reinvest all dividends on the business day following receipt, it will reinvest the remaining funds as soon as reasonably possible thereafter, which may take up to five business days. I will not have use of the funds prior to reinvestment.

I understand that my participation in the DRIP is voluntary and that Robinhood has not made any recommendation that I should participate. I further understand that Robinhood is not recommending or offering any advice regarding the purchase of any security included as an Eligible security in the DRIP. I further understand that dividend reinvestment does not assure profits on my investments, nor does it protect against losses in declining markets.

I may terminate my participation in the DRIP, or the enrollment of individual securities in the DRIP, at any time by giving notice through the App. Termination will take effect prior to the next Eligible cash distribution provided my notice to terminate was received at least three business days prior to the record date of that distribution. I understand that my notice to terminate my participation in the DRIP will not affect any obligations that may result from transactions initiated prior to Robinhood's receipt and processing of my notice.

If I participate in the DRIP, I understand Robinhood will reinvest the dividends of a particular stock at or near the opening price on the trading day following receipt of the dividend. Robinhood will combine Eligible cash distributions from My Account with those from other Robinhood clients requesting dividend reinvestment in the same security and use these combined funds to purchase securities on my behalf and on behalf of these other clients. If the combined reinvested funds do not total the purchase price of at least one share, the distribution will be invested in fractional shares. On that same day, Robinhood will credit My Account with that number of shares, including fractional shares, equal to my Eligible cash distribution divided by the purchase price per share. Robinhood does not intend to charge a fee for transactions executed pursuant to the DRIP.

Dividend reinvestment may result in my owning interests in fractional shares of a security. I will be entitled to receive future dividend payments on my fractional shares, although other corporate actions may result in allocation of only whole shares and cash in lieu of fractions as determined by the issuer. In mandatory corporate reorganizations, my partial interest will be handled according to the specific terms of the reorganization. In voluntary corporate reorganizations, Robinhood will act on my instructions with respect only to my whole shares.

Because fractional share positions cannot be transferred, reorganized, or issued in certificate form, my partial interest will be liquidated, without commission charges to me, at prevailing market prices in the event My Account is transferred or closed, the stock is reorganized, or stock certificates are ordered out of My Account. The timing of such liquidations will be at the discretion of Robinhood.

Reinvestment of dividends may result in my owning a fractional share position in securities that are callable in part. In the event of a call, fractional shares to be called will be determined through a random selection process. The probability of my fractional share holdings being called will be proportional to the holdings of all Robinhood clients who own a fractional share position in that security. Prior to the publication date of such a call, I have the right to withdraw from My Account cash in lieu of my uncalled, fully paid partial holdings. Once a call is announced, however, all shares, whether registered or held in street name, participate in the random selection process. If my fractional shares are selected and I no longer hold the shares that I held on the publication date of the call, I will be responsible for covering those shares.

**29.    Cash Management Services.**

23

Provided by CourtAlert
www.CourtAlert.com

Except as expressly stated otherwise, the provisions of this Section 29 will only apply if I am enrolled in Cash Management.

A.    General.

I understand and agree that by enrolling in Cash Management, I am applying for a Robinhood-branded debit card issued by the bank identified in My Robinhood Debit Card Agreement ("Card"). I further understand and agree that by using My Card or exercising My electronic fund transfer ("EFT") privileges offered in connection with My Account, I authorize Robinhood to debit My Account immediately whenever an electronic draft or Card transaction is presented for payment on My behalf, when an EFT transaction is effected, or when any fee or charge is due (collectively "Payments"). I further understand and agree that when I request a Payment or withdrawal or instruct Robinhood to make a purchase of securities from My Account, Robinhood is authorized to place a block on the amount of the transaction ("Blocked Amounts") prior to the settlement date of the Payment, withdrawal or trade, and that the Blocked Amounts will not be available for use for additional Payments or the purchase of securities. I agree to maintain Available Funds sufficient to pay for EFT transactions, Card transactions and withdrawals made by Me or any Authorized Card User (as defined below) and to pay for any securities trades and for interest on any margin loans and other transaction fees. For this purpose, "Available Funds" in My Account will fluctuate daily and means the sum of (i) free credit balances, (ii) deposits to Participating Depository Institutions through the Sweep Service, and (iii) available margin loan value if My Account has margin privileges, minus (x) uncleared funds, (y) Blocked Amounts, and (z) deposits subject to a hold. The loan value of eligible securities for the purpose of margin is subject to regulatory requirements and Robinhood credit policies then in effect.

B.    Payments and Withdrawals.

I agree that any Payments that I make from My Account will be lawful. I agree that Payments will be deducted from the Available Funds in My Account in the following order: first, from free credit balances; second, by withdrawal of funds deposited to Participating Depository Institutions as part of the Sweep Service; and third, if My Account has margin privileges, from margin loans on the eligible securities in My margin Account. Robinhood will debit My Account only up to an amount equal to the Available Funds. I understand and agree that (i) if there are insufficient Available Funds in My Account to cover Payments when they become due, Robinhood has no obligation to make such Payments, and (ii) Robinhood has no obligation to make partial Payments. Robinhood will not charge a fee with respect to any declined Payment for which there were insufficient Available Funds. I acknowledge and agree, however, that Robinhood will not be responsible for any costs or losses that I may incur (including fees, costs, charges, attorneys' fees, investment losses, claims, demands, or liability resulting from any litigation or other actions) as a result of Robinhood's decision to decline any Payment or

24

withdrawal or other transaction because My Account has insufficient Available Funds.

I understand that if a Payment is funded by a margin loan, I will incur interest until the margin loan is repaid.

I agree that if my Available Funds at any time falls below zero, Robinhood may suspend Card and EFT privileges and terminate My Card. If this occurs, I agree to immediately pay all amounts owed to Robinhood, including any purchases on My Card which will be immediately charged to My Account.

I acknowledge and agree that Robinhood reserves the right to decline any purchase or cancel My Card, and EFT privileges at any time for any reason with or without notice to Me. If Robinhood decides to take such action, I understand and agree that I am responsible for any pending debits, which will be processed and deducted from My Account.

I understand that transactions will post to My Account in any order determined by Robinhood and that Robinhood may change that order without prior notice to Me. Robinhood will comply with requirements of applicable law regarding the order of posting transactions.

C.      Limitation of Liability.

I agree that, subject to any limitations imposed by applicable law, and except as otherwise set forth in this Agreement or in the disclosures contained in the Robinhood Debit Card Agreement, which has been provided to Me or made available to me in connection with the opening of My Account, neither Robinhood, any processing bank, nor the Card issuer will be liable for any loss I incur in connection with My Account, Card transactions, EFT transactions, or other features of My Account unless Robinhood is grossly negligent in fulfilling this Agreement. In no event will Robinhood, any processing bank, or the Card issuer be liable for consequential, special or indirect damages or losses unless applicable law requires otherwise. I also agree that liability regarding online services or use of the App is further limited by the Robinhood Terms and Conditions, available at https://about.robinhood.com/legal/. To the extent I utilize online services or the App I acknowledge that I am bound by such Robinhood Terms and Conditions.

D.      Debit Cards.

I understand and agree that My use of the Card is subject to the terms, conditions and disclosures set forth in the Robinhood Debit Card Agreement, which has been provided to Me in connection with the opening of My Account and which I may access on the Website.

I understand and agree that I cannot request a Card for another person to use. I agree, however, that if I permit another person to have access to use My Card or

Provided by CourtAlert www.CourtAlert.com

Card number (an "Authorized Card User"), I am authorizing all Card transactions by such person and I agree that there are no limits to my authorization. I accept all liability with respect to the Card transactions effected by Me and any Authorized Card Users. I further agree that I may I may terminate the authority of an Authorized Card User only by contacting help@robinhood.com to cancel my Card. I agree that the cancellation of My Card is effective only after Robinhood has a reasonable period to act on My notice.

If My Card is cancelled, I agree to destroy, or if requested by Robinhood, return the Card to Robinhood. I acknowledge that I will be responsible for any Card transactions that are processed because of My failure to destroy or return the Card following cancellation.

If My Account includes margin privileges, I agree that transactions that exceed My free credit balances and deposits in the Sweep Service may result in margin credit being extended to My Account, for which I will be charged interest. I agree to review the Margin Disclosure Statement, which is available at https://about.robinhood.com/legal/.

E.      Deposits.

The provisions in this Section 29.E shall apply to My Account whether or not I am enrolled in Cash Management.

General; Holds. I understand that I may deposit funds to My Account by ACH, direct deposit or EFT (including deposits using the MoneySend service offered by Mastercard). I acknowledge and agree that funds that I deposit may be subject to one or more hold periods, which are described in the RHF Funds Availability schedule available at https://about.robinhood.com/legal/. I understand and agree that Robinhood reserves the right to modify the RHF Funds Availability schedule at any time by posting an updated schedule at https://about.robinhood.com/legal/, or otherwise providing notice to me. During the applicable hold period, My funds will not be available for ACH transfers, Card transactions, withdrawal, or the settling of securities transactions, in each case as described in the RHF Funds Availability schedule. I further understand and agree that Robinhood reserves the right to further delay making deposited funds available for periods longer than the hold periods specified in the RHF Funds Availability schedule to the extent Robinhood determines that additional time is needed to verify information about the item deposited or the sender or if Robinhood otherwise believes there is a risk of fraud or other unlawful activity with respect to My Account.

Mistaken Deposits. If funds are deposited or transferred into My Account by mistake or otherwise, I agree that Robinhood may correct the situation and deduct any interest paid by Participating Depository Institutions, if applicable, without prior notice to Me.

Provided by CourtAlert                                                                                                    www.CourtAlert.com

Returned Items.  I acknowledge and agree that I am responsible for returned transactions.  If I have funds transferred into My Account and that transfer is returned for any reason, Robinhood may charge the transfer and interest paid by Participating Depository Institutions, if applicable, against My Account, without prior notice to Me.  Robinhood may send the returned transfer back for collection a second time without notifying Me, and I waive notice of dishonor and protest.

F.      Electronic Fund Transfers.

The provisions in this Section 29.F relating to EFTs other than Card transactions shall apply to My Account whether or not I am enrolled in Cash Management.

I understand that My Account may be eligible for a variety of EFTs, which may be subject to separate agreements, terms and conditions.  These services may include use of the Card, and the "Move Money" functionality of the App.  I understand that I may be required to agree to separate terms and conditions governing the particular service I use to initiate EFTs.  In addition, I understand and agree that my use of EFT services are subject to the disclosures set forth in Appendix A (Electronic Fund Transfer Disclosures), and acknowledge that I have received and reviewed such disclosures.

G.      Security.

I agree to protect My Card, and My PINs, from access by anyone not authorized by Me to use them.  I acknowledge that I will be liable for all Card and online transactions conducted by anyone to whom I have given access or who has obtained access even if not authorized by Me, up to applicable legal limits.  I understand that I am responsible for reviewing My Account statement promptly to discover and report unauthorized activity, including use of My Card, Card number or PIN.  I agree to notify Robinhood as provided in Appendix A (Electronic Fund Transfer Disclosures) if I believe or have reason to believe that there has been unauthorized activity in My Account or that My Card, Card number or PIN has been lost, stolen or may be used by an unauthorized person.  Unless limited by law or as otherwise set forth in this Agreement or in the disclosures contained in Robinhood Debit Card Agreement, which is provided to Me as part of the Account opening process and is available on the Website, I agree that I will be responsible for losses that arise from My failure to (i) safeguard My Card and PINs, (ii) review My monthly statement for possible unauthorized activity and (iii) report any unauthorized activity to Robinhood as provided herein or in the Robinhood Debit Card Agreement.

H.      Disclosure of Information.

I agree and understand that all disclosures of My non-public personal information shall be made in accordance with the terms of this Agreement or the Robinhood Privacy Policy (available on the Website at https://about.robinhood.com/legal/), as applicable.  I agree that My consent to sharing non-public personal information will

remain in effect until I revoke such consent by updating My settings and visibility, which I may do at any time through the App.

In addition, I understand and agree that Robinhood may disclose information about My Account and My related activities to third parties under the following circumstances:

- As necessary to complete My Payment transactions;

- To investigate any complaint, disputed transaction, transaction inquiry or request I make or as necessary to investigate potential fraud or misuse related to My Account;

- To respond to requests from credit bureaus, creditors or other third parties for account-related information, to the extent such inquiries are necessary for processing My transactions or are usual and customary in the course of servicing similar products or accounts;

- As necessary to comply with any applicable law, government or court order or subpoena; or

- In accordance with My written permission or as otherwise permitted under the Robinhood Privacy Policy.

I.      Termination.

I understand that Robinhood may terminate my participation in Cash Management or in specific features of Cash Management for any reason, upon notice to me.

**30.     Consent to Redeem Shares.**

I understand and agree that whenever it is necessary for Robinhood's protection or to satisfy a margin call, deficiency, debit or other obligation owed to Robinhood, Robinhood may (but is not required to) sell, assign and deliver all or any part of the securities in My Account, or close any or all transactions in My Account. I understand that Robinhood may, but is not obligated to, attempt to contact Me before taking any such action. I understand and agree that Robinhood reserves the right to take any such action without prior notice or demand for additional collateral, and free of any right of redemption, and that any prior demand, call or notice will not be considered a waiver of our right to sell or buy without demand, call or notice.

I further understand that Robinhood may choose which securities to buy or sell, which transactions to close, and the sequence and timing of liquidation, and may take such actions on whatever exchange or market and in whatever manner (including public auction or private sale) that Robinhood chooses in the exercise of

its business judgment. I agree not to hold Robinhood liable for the choice of which securities to buy or sell or of which transactions to close or for the timing or manner of the liquidation. I also agree not to hold Robinhood liable for taking such action.

I understand and agree that Robinhood is entitled to exercise the rights described in this section in its sole discretion, including, but not limited to, whenever any of the following occurs:

- The equity level in My Account falls below required minimums;

- Sufficient funds or securities are not deposited to pay for transactions in My Account;

- I reverse any ACH debit transfer to My Account;

- A petition of bankruptcy or for the appointment of a receiver is filed by or against Me;

- An attachment is levied against My Account;

- I die or become incapacitated or incompetent; or

- My Account is closed.

31. **Electronic Delivery of Trade and Account Information; Notice.** All communications, notices, legal disclosures, and other materials related to My Account or this Agreement, including account statements, trade confirmations, margin calls, notices, disclosures, regulatory communications and other information, documents, data and records regarding My Account (the "Communications"), or an alert that any such Communication has been posted to the secure section of the Website or the App, and is available for viewing, may be sent to Me at the mailing address for My Account or the e-mail address that I have given to Robinhood in My account application  or at such other address as I may hereafter give Robinhood in writing or by e-mail at least ten (10) calendar days prior to delivery, and all communications so sent, whether in writing or otherwise, shall be deemed given to Me personally, whether actually received or not.

32. **API.**

A.    <u>Overview; Definitions</u>.  Robinhood may, in Robinhood's sole discretion, provide third parties with an application programming interface and other materials in accordance with any accompanying documentation (collectively, the "API Package") (such third parties, "API Licensees"), to make available certain features and functionality of Robinhood's mobile applications, websites, or technology platform via the API Licensees' products (such products, the "Licensee Products"). The API Package and the Licensee Products are collectively referred to as the "API Products".  "Personal Information" means My personally identifiable information

(including username, logon password, financial information, trade data, and other financial information) and all data exchanged between Robinhood and the API Products.

B.    Access to My Personal Information.  Through My use of any API Products, I may be providing API Licensees with access to My Account and Personal Information. By using any API Products, I acknowledge that such API Products may employ security, policies, procedures and systems of API Licensees which may or may not be less stringent and secure than Robinhood's policies, procedures and systems.  I agree that My use of any API Products shall be subject to the terms and conditions of this Agreement, in addition to any other agreements which I executed with respect to any such API Products.   I understand and agree that any end user agreement that I executed with any API Licensee is concluded between Me and such API Licensee only, and not with Robinhood; and such API Licensee, not Robinhood, is solely responsible for such Licensee Product and the content thereof. I understand and agree that the API Products may deliver Personal Information to Robinhood, and that Robinhood is authorized to receive and store such Personal Information consistent with Robinhood's then-in-effect policies and procedures. Further, I agree that the API Products may request Personal Information stored by Robinhood, and I consent to Robinhood's disclosure of such Personal Information to the API Products.

C.    No Recommendations.  To the extent the Licensee Products or API Licensees express opinions or make recommendations, I understand that such opinions and recommendations are expressed solely by API Licensees and are not the opinions or recommendations of Robinhood.   The existence of the API Products and Robinhood's consent to any connectivity between any Licensee Products and Robinhood's technology, the App, the Website, or trading platform(s) does not constitute (i) any recommendation by Robinhood to invest in any security or utilize any investment strategy; or (ii) any representation, warranty, or other guarantee by Robinhood as to the present or future value or suitability of any sale, trade, or other transaction involving any particular security or any other investments.   The existence of any and all information, tools and services provided by API Licensees or by the Licensee Products shall not constitute Robinhood's endorsement of API Licensees or the Licensee Products.

D.    Data Provided by Robinhood to API.  From time to time, and subject to then-in-effect agreements between Robinhood and API Licensees, Robinhood may, in its own discretion, make market data feeds received from third parties available via the API Products.  Robinhood does not make any guarantees in regard to such market data feeds.  Furthermore, API Licensees or Licensee Products may make available to Me market data feeds independent of Robinhood.  I am aware that from time to time that there may be discrepancy between the market data presented on the App or Website and information provided by any API Products due to a variety of reasons, including the time to update and transmit such data to a mobile application or website and latency caused by such API Product's or My local environment (such as computer set up, connection speed, etc.).  Robinhood is not

responsible for the accuracy of any market data displayed on any API Products or otherwise made available by API Licensees.

E.    Risks; No Liability.  I acknowledge that there may be latency between the time an order (or other Personal Information) is submitted from the API Products and the time such order or Personal Information is received by Robinhood.  Latency may also affect order modification and order cancellation requests.  The time an order or a request is actually received by Robinhood (including for execution) will be the official time, including for the purposes of routing the order to the market for execution.  In addition, all orders submitted to Robinhood are subject to order vetting by Robinhood.  Orders created and submitted through any API Products are not vetted until they are received by Robinhood.  It is possible that Robinhood may reject an order placed through any API Products.  Robinhood cannot guarantee that any order will be accepted when such order is routed to the market for execution, and Robinhood cannot guarantee that notifications and Personal Information provided to Me by Robinhood will be successfully delivered to or displayed by any API Products.

Without limiting the generality of any other terms in this Agreement, I agree that:

(i)     Robinhood or its Affiliates shall not be liable for any Losses as a result of any issues addressed in this Section 32 of this Agreement, nor shall Robinhood or its Affiliates be liable for any Losses realized for technical issues involving any API Products or API Licensee technology or product offerings (including system outages or downtime).

(ii)    Robinhood or its Affiliates shall not be responsible for any investment research provided by any API Licensee or any Licensee Products.

(iii)   Robinhood or its Affiliates makes no representations, warranties or other guarantees as to the accuracy, timeliness or efficacy of any market data, information, or other functionality made available by any API Licensee or any API Products.

F.    Intellectual Property.  My use of any API Products will not confer to Me any title, ownership interest or intellectual property rights that otherwise belongs to Robinhood or any of its affiliates.  The API Package, including content, is protected under U.S. patent, copyright laws, international treaties or conventions, and other laws and will remain Robinhood's exclusive property, as applicable.  Names, logos, and all related product and service names, design marks, and slogans displayed by or relating to Robinhood or any of its Affiliates or API Licensees in the context of the API Products shall remain the property of the respective owner, and use of such property by Robinhood or any API Licensee in marketing or provision of any API Products does not grant ownership of or entitle Me to use any such name or mark in any manner.

G.    User's Representations and Warranties.  I represent and warrant that:

(i)    By virtue of utilizing any API Products, I consent to and accept any risk associated with Robinhood's sharing of Personal Information with any API Licensee and shall not hold Robinhood, its Affiliates, or their respective officers, directors, or employees responsible for any Losses resulting from the sharing of such Personal Information.

(ii)    I agree that My use of any API Products or API Licensee's content, information, technology, or functionality is at My own risk.

(iii)    I agree that Robinhood may revoke any API Licensee or API Products' authorization at any time, for any reason, with or without cause and without prior notice to Me.

33.    **Electronic Signatures; Modifications to the Agreement.**  I agree to transact business with Robinhood electronically.  By electronically signing an application for an Account, I acknowledge and agree that such electronic signature is valid evidence of My consent to be legally bound by this Agreement and such subsequent terms as may govern the use of Robinhood's services.  The use of an electronic version of any document fully satisfies any requirement that the document be provided to Me in writing.  I accept notice by electronic means as reasonable and proper notice, for the purpose of any and all laws, rules and regulations.  I acknowledge and agree that Robinhood Financial may modify this Agreement from time to time and I agree to consult the Website from time to time for the most up-to-date Agreement.  The electronically stored copy of this Agreement is considered to be the true, complete, valid, authentic and enforceable record of the Agreement, admissible in judicial or administrative proceedings to the same extent as if the documents and records were originally generated and maintained in printed form.  I agree to not contest the admissibility or enforceability of Robinhood Financial's electronically stored copy of the Agreement.

34.    **Margin Accounts.**

A.    <u>Election</u>.  This numbered section applies to my account to the extent I elect and am approved for a Robinhood Gold margin account.

B.    <u>Margin Trading</u>.  I understand that margin trading involves interest charges and risks, including the potential to lose more than deposited or the need to deposit additional collateral in a falling market.  Before using margin, customers must determine whether this type of trading strategy is right for them given their specific investment objectives, experience, risk tolerance, and financial situation.  If I have elected to have a margin Account, I represent that I have read the <u>Margin Disclosure Statement</u>, <u>Day Trading Risk Disclosure</u>, and <u>FINRA Investor Information</u>.  These disclosures contain information on Robinhood's lending policies, interest charges, and the risks associated with margin accounts.

C.    <u>Hypothecation</u>.  Within the limitations imposed by applicable laws, rules and regulations, all securities now or hereafter held by Robinhood, or carried by Robinhood in any account for Me (either individually or jointly with others), or

deposited to secure same, may from time to time, without any notice, be carried in your general loans and may be pledged, repledged, hypothecated or re-hypothecated, separately or in common with other securities for the sum due to you thereon or for a greater sum and without retaining in your possession or control for delivery a like amount of similar securities. The IRS requires Broker Dealers to treat dividend payments on loaned securities positions as payments received in lieu of dividends for 1099 tax reporting purposes. Taxation of substitute dividend payments may be greater than ordinary on qualified dividends. It is understood, however, that you agree to deliver to Me upon My demand and upon payment of the full amount due thereon, all securities in such accounts, but without obligation to deliver the same certificates or securities deposited by Me originally. Any securities in My margin or short account may be borrowed by you, or lent to others.

D.     Interest.    Debit balances in My Accounts shall be charged with interest in accordance with your established custom, as disclosed to Me in the Customer Information Brochure pursuant to the provisions of the Securities Exchange Act.

E.     Margin.  I agree to maintain in all accounts with Robinhood such positions and margins as required by all applicable statutes, rules, regulations, procedures and custom, or as you deem necessary or advisable. I agree to promptly satisfy all margin and maintenance calls.

F.     Sales.  I agree to specifically designate any order to sell a security, which I do not own as a short sale, and understands that Robinhood will mark such order as a short sale. I agree that any order which is not specifically designated as a short sale is a sale of securities owned by me, and that I will deliver the securities on or before settlement date, if not already in the account. If I should fail to make such delivery in the time required, Robinhood is authorized to borrow such securities as necessary to make delivery for the sale, and I agree to be responsible for any loss you may thereby sustain, or which you may sustain as a result of your inability to borrow such securities.

## 35.     Consent to Electronic Delivery of Documents.

A.     Consent.  **By agreeing to electronic delivery, I am giving My informed consent to electronic delivery of all Account Documents, as defined below, other than those I have specifically requested to be delivered in paper form**. "Account Documents" include notices, disclosures, current and future account statements, regulatory communications (such as prospectuses, proxy solicitations, and privacy notices), trade confirmations, tax-related documents, and any other information, documents, data, and records regarding My Account, this Agreement (including amendments to this Agreement), and the agreements and disclosures governing the services delivered or provided to Me by Robinhood Financial, the issuers of the securities or other property in which I invest, and any other parties. I agree that I can access, view, download, save, and print any Account Documents I receive via electronic delivery for My records.

B.    Electronic Delivery System. I acknowledge that Robinhood's primary methods of communication with Me include (A) posting information on the Website, (B) providing information via the App, (C) sending email(s) to My email address of record, and, to the extent required by law, (D) providing Me with notice(s) that will direct Me to the App or the Website where I can read and print such information. Unless otherwise required by law, Robinhood reserves the right to post Account Documents on the Website without providing notice to Me.  Further, Robinhood reserves the right to send Account Documents to My postal or email address of record, or via the App or Website.  I agree that all Account Documents provided to Me in any of the foregoing manner is considered delivered to Me personally when sent or posted by Robinhood, whether I receive it or not.

All e-mail notifications regarding Account Documents will be sent to My e-mail address of record.  I agree to maintain the e-mail address that I have provided Robinhood until I provide Robinhood with a new one.  I understand that e-mail messages may fail to transmit promptly or properly, including being delivered to SPAM folders.  I further understand that it is My sole responsibility to ensure that any emails from Robinhood or its Affiliates are not marked as SPAM.  Regardless of whether or not I receive an e-mail notification, I agree to check the Website regularly to avoid missing any information, including time-sensitive or otherwise important communication. If I authorize someone else to access the e-mail account I have provided Robinhood, I agree to tell them to share the Account Documents with Me promptly, and I accept the risk that they will see My sensitive information. I understand that if I use a work e-mail address or computing or communications device, My employer or other employees may have access to the Account Documents.

Additionally, I acknowledge that the Internet is not a secure network and agree that I will not send any confidential information, including Account numbers or passwords, in any unencrypted e-mails.  I also understand that communications transmitted over the Internet may be accessed by unauthorized or unintended third parties and agree to hold Robinhood, its Affiliates, and Robinhood and its Affiliates' respective officers and employees harmless for any such access regardless of the cause.

I agree to promptly and carefully review all Account Documents when they are delivered and notify Robinhood Financial in writing within five (5) calendar days of delivery if I object to the information provided (or other such time specified herein).  If I fail to object in writing within such time, Robinhood Financial is entitled to treat such information as accurate and conclusive.  I will contact Robinhood to report any problems with accessing the Account Documents.

C.    Costs.  Potential costs associated with electronic delivery of Account Documents may include charges from Internet access providers and telephone companies, and I agree to bear these costs.  Robinhood Financial will not charge Me additional online access fees for receiving electronic delivery of Account Documents.

D.    Archival.  Upon My request, I may obtain copies of up to six (6) prior years of account statements, and three (3) prior years of trade confirmations.

E.    Revocation of Consent.  Subject to the terms of this Agreement, I may revoke or restrict My consent to electronic delivery of Account Documents at any time by notifying Robinhood Financial in writing of My intention to do so.  I also understand that I have the right to request paper delivery of any Account Document that the law requires Robinhood Financial to provide Me in paper form.  Robinhood Financial will not treat My request for paper copies as a withdrawal of My consent to electronic delivery of Account Documents.  I understand that if I revoke or restrict My consent to electronic delivery of Account Documents or request paper delivery of same, Robinhood Financial, in its sole discretion, may charge Me a reasonable service fee for the delivery of any Account Document that would otherwise be delivered to Me electronically, restrict or close My account, or terminate My access to Robinhood Financial's services.  I understand that neither My revocation or restriction of consent, My request for paper delivery, nor Robinhood Financial's delivery of paper copies of Account Documents will affect the legal effectiveness or validity of any electronic communication provided while My consent was in effect.

F.    Duration of Consent.  My consent to receive electronic delivery of Account Documents will be effective immediately and will remain in effect unless and until either I or Robinhood Financial revokes it.  I understand that it may take up to three (3) Business Days to process a revocation of consent to electronic delivery, and that I may receive electronic notifications until such consent is processed.

G.    Hardware and Software Requirements.  I understand that in order to receive electronic deliveries, I must have access to a computer or Mobile Device with Internet access, a valid e-mail address, and the ability to download such applications as Robinhood Financial may specify and to which I have access.  I also understand that if I wish to download, print, or save any information I wish to retain, I must have access to a printer or other device in order to do so.

H.    Consent and Representations.  I hereby agree that I have carefully read the above information regarding informed consent to electronic delivery and fully understand the implications thereof.  Additionally, I hereby agree to all conditions outlined above with respect to electronic delivery of any Account Document.  I will maintain a valid e-mail address and continue to have access to the Internet.  If My e-mail address changes, I agree to immediately notify Robinhood Financial of My new e-mail address in writing.

36.    **Miscellaneous Provisions.**  The following provisions shall also govern this Agreement:

A.    Contact Information.  Robinhood Customer Service may be contacted by visiting support.robinhood.com or by email at help@robinhood.com.

B.    <u>Interpretation</u>.  The heading of each provision hereof is for descriptive purposes only and shall not be (1) deemed to modify or qualify any of the rights or obligations set forth herein or (2) used to construe or interpret any of the provisions hereunder. When a reference is made in this Agreement to a Section, such reference shall be to a Section of this Agreement unless otherwise indicated.  Whenever the words "include," "includes" or "including" are used in this Agreement, they shall be deemed to be followed by the words "without limitation." The word "or," when used in this Agreement, has the inclusive meaning represented by the phrase "and/or." Unless the context of this Agreement otherwise requires: (i) words using the singular or plural number also include the plural or singular number, respectively; and (ii) the terms "hereof," "herein," "hereunder" and derivative or similar words refer to this entire Agreement.  References to any law shall be deemed to refer to such law as amended from time to time and to any rules or regulations promulgated thereunder.

C.    <u>Binding Effect; Assignment</u>.  This Agreement shall bind My heirs, assigns, executors, successors, conservators and administrators.  I may not assign this Agreement or any rights or obligations under this Agreement without first obtaining Robinhood's prior written consent.  Robinhood may assign, sell, or transfer My Account and this Agreement, or any portion thereof, at any time, without My prior consent.

D.    <u>Severability</u>.  If any provisions or conditions of this Agreement are or become inconsistent with any present or future law, rule, or regulation of any applicable government, regulatory or self-regulatory agency or body, or are deemed invalid or unenforceable by any court of competent jurisdiction, such provisions shall be deemed rescinded or modified, to the extent permitted by applicable law, to make this Agreement in compliance with such law, rule or regulation, or to be valid and enforceable, but in all other respects, this Agreement shall continue in full force and effect.

E.    <u>Website Postings</u>.  I agree and understand that Robinhood Financial may post other specific agreements, disclosures, policies, procedures, terms, and conditions that apply to My use of the App, the Website, or My Account on the Website ("Website Postings").  I understand that it is My continuing obligation to understand the terms of the Website Postings, and I agree to be bound by the Web Postings as are in effect at the time of My use.

F.    <u>Entirety of Agreement</u>.  This Agreement, any attachments hereto, other agreements and policies referred to in this Agreement (including the Website Postings), and the terms and conditions contained in My Account statements and confirmations, contain the entire agreement between Robinhood and Me and supersede all prior or contemporaneous communications and proposals, whether electronic, oral, or written, between Robinhood and Me, provided, however, that any and all other agreements between Robinhood and Me, not inconsistent with this Agreement, will remain in full force and effect.

Provided by CourtAlert www.CourtAlert.com

G.    <u>Amendment</u>.  Robinhood may at any time amend this Agreement without prior notice to Me.  The current version of the Agreement will be posted on the Website and My continued Account activity after such amendment constitutes My agreement to be bound by all then-in-effect amendments to the Agreement, regardless of whether I have actually reviewed them.  Continued use of the App, the Website or any other Robinhood Financial services after such posting will constitute My acknowledgment and acceptance of such amendment.  I agree to regularly consult the Website for up-to-date information about Robinhood Financial services and any modifications to this Agreement.  Robinhood is not bound by any verbal statements that seek to amend the Agreement.

H.    <u>Termination</u>.  Robinhood may terminate this Agreement, or close, deactivate, or block access to My Account at any time in its sole discretion.  I will remain liable to Robinhood for all obligations incurred in My Account, pursuant to this Agreement, or otherwise, whether arising before or after termination.  I may terminate this Agreement after paying any obligations owed upon written notice.  This Agreement survives termination of My Account.

I.    <u>No Waiver; Cumulative Nature of Rights and Remedies</u>.  I understand that Robinhood's failure to insist at any time upon strict compliance with any term contained in this Agreement, or any delay or failure on Robinhood's part to exercise any power or right given to Robinhood in this Agreement, or a continued course of such conduct on Robinhood's part, shall at no time operate as a waiver of such power or right, nor shall any single or partial exercise preclude any other further exercise.  All rights and remedies given to Robinhood in this Agreement are cumulative and not exclusive of any other rights or remedies to which Robinhood is entitled.

J.    <u>International Customers</u>.  The products and services described on the Website are offered only in jurisdictions where they may be legally offered.  Neither the Website nor the App shall be considered a solicitation for or offering of any investment product or service to any person in any jurisdiction where such solicitation or offering would be illegal.  I understand that Robinhood, in its sole discretion, may accept unsolicited accounts from non-U.S. residents, depending on the country of residence and other factors.  I understand that Robinhood is based in the United States and that Robinhood accepts only U.S. currency in Robinhood's customer accounts.

K.    <u>Governing Law</u>.  This Agreement and all transactions made in My Account shall be governed by the laws of the State of California (regardless of the choice of law rules thereof), except to the extent governed by the federal securities laws, FINRA Rules, and the regulations, customs and usage of the exchanges or market (and its clearing house) on which transactions are executed.

37.    **Arbitration.**

> **A.    This Agreement contains a pre-dispute arbitration clause.  By signing an arbitration agreement, the parties agree as follows:**
>
> **(1)    All parties to this Agreement are giving up the right to sue each other in court, including the right to a trial by jury, except as provided by the rules of the arbitration forum in which a claim is filed.**
>
> **(2)    Arbitration awards are generally final and binding; a party's ability to have a court reverse or modify an arbitration award is very limited.**
>
> **(3)    The ability of the parties to obtain documents, witness statements and other discovery is generally more limited in arbitration than in court proceedings.**
>
> **(4)    The arbitrators do not have to explain the reason(s) for their award unless, in an eligible case, a joint request for an explained decision has been submitted by all parties to the panel at least 20 days prior to the first scheduled hearing date.**
>
> **(5)    The panel of arbitrators will typically include a minority of arbitrators who were or are affiliated with the securities industry.**
>
> **(6)    The rules of some arbitration forums may impose time limits for bringing a claim in arbitration.  In some cases, a claim that is ineligible for arbitration may be brought in court.**
>
> **(7)    The rules of the arbitration forum in which the claim is filed, and any amendments thereto, shall be incorporated into this Agreement.**
>
> **B.    Any controversy or claim arising out of or relating to this Agreement, any other agreement between Me and Robinhood, any Account(s) established hereunder, any transaction therein, shall be settled by arbitration in accordance with the rules of FINRA Dispute Resolution, Inc. ("FINRA DR").  I agree to arbitrate any controversy or claim before FINRA DR in the State of California.**
>
> **C.    This agreement to arbitrate constitutes a waiver of the right to seek a judicial forum unless such a waiver would be void under the federal securities laws. If I am a foreign national, non-resident alien, or if I do not reside in the United States, I agree to waive My right to file an action against Robinhood in any foreign venue.**
>
> **D.    No person shall bring a putative or certified class action to arbitration, nor seek to enforce any pre-dispute arbitration agreement against any person who has initiated in court a putative class action; or who is a member of a putative class who has not opted out of the class with respect to any claims encompassed by the putative class action until:**
>
> **(1)    the class certification is denied; or (2) the class is decertified; or (3) the customer is excluded from the class by the court.  Such forbearance to enforce an agreement to arbitrate shall not constitute a waiver of any rights under this Agreement except to the extent stated herein.**

ACCEPTED AND AGREED:  I acknowledge that I have read the preceding terms and conditions of this Agreement, that I understand them and that I hereby manifest my assent to, and my

Provided by CourtAlert                                                                    www.CourtAlert.com

agreement to comply with, those terms and conditions by accepting this agreement. **I ALSO UNDERSTAND THAT BY ACCEPTING THIS AGREEMENT I HAVE ACKNOWLEDGED THAT THIS AGREEMENT CONTAINS A PREDISPUTE ARBITRATION CLAUSE IN SECTION 37 HEREIN. I ALSO AGREE (1) THAT ANY OF MY MARGIN ACCOUNT SECURITIES MAY BE BORROWED BY ROBINHOOD OR LOANED TO OTHERS; (2) I HAVE RECEIVED OF A COPY OF THIS AGREEMENT AND (3) I HAVE REVIEWED A COPY OF THE MARGIN DISCLOSURE STATEMENT.**

**Appendix A**

**Electronic Fund Transfer Services Disclosures**

The following disclosures apply to the use of any EFT services offered by Robinhood, including the Card, ACH transactions and the Move Money functionality of the App.

Solely for purposes of these disclosures:  (i) references to the Bank shall include any financial institution that issues the Card or provides services in connection with ACH, Move Money or other EFT transactions; (ii) "you" and "your" mean the owner of the Account; and (iii) "we" and "us" means Robinhood and the Bank collectively.

1.      Your Liability.

Contact Robinhood Customer Service AT ONCE if you believe your Card or PIN has been lost or stolen or if you believe that an electronic fund transfer has been made without your permission. Telephoning is the best way of keeping your losses down.  You could lose all the Available Funds in your Account (plus your maximum overdraft line of credit).  If you tell Robinhood within 2 business days after you learn of the loss or theft of your Card or PIN, you can lose no more than $50 if someone used your Card or PIN without your permission.

If you do NOT tell Robinhood within 2 business days after you learn of the loss or theft of your Card or PIN, and Robinhood can prove that it could have stopped someone from using your Card or PIN without your permission if you had told Robinhood, you could lose as much as $500.

Also, if your statement shows transfers that you did not make, including those made by Card or using your PIN, tell Robinhood at once.  If you do not tell Robinhood within sixty (60) days after the statement was mailed to you, or otherwise made available to you, you may not get back any money you lost after the sixty (60) days if Robinhood can prove that Robinhood could have stopped someone from taking the money if you had told Robinhood in time.  If a good reason (such as a long trip or a hospital stay) kept you from telling Robinhood, Robinhood will extend the time periods.

2.      Contact in event of unauthorized transfer.

If you believe your Card or PIN has been lost or stolen, contact Robinhood by emailing help@robinhood.com.

3.      Business Days.

Business Days are Monday through Friday, excluding federal holidays.

4.      Transfer Types and Limitations.

You may use your Card to make purchases at any merchant that accepts Mastercard debit cards or debit cards of other networks in which the Bank participates, and to make ATM withdrawals, in each case subject to the Available Funds in your Account, the transaction limits described below, and the other terms and conditions of this Agreement.  You acknowledge and agree that the value

40

available to you for use with the Card is limited to the Available Funds in your Account. So long as you do not exceed the Available Funds in your Account, you may use the Card to purchase goods or services wherever the Card is honored, and to obtain cash by initiating cash withdrawal transactions through the Card from any financial institution or ATM that accepts the Card. Each time you use the Card, you authorize Robinhood to reduce the Available Funds in your Account by the amount of the purchase or withdrawal and any applicable fees, costs, or holdings. Nevertheless, if you exceed the Available Funds in your Account you shall remain fully liable to Robinhood for the amount of the transactions and any applicable fees and charges.

You may also make ACH withdrawals from your Account, either originated through Robinhood or originated by a third party (a "non-originated" withdrawal), subject to the Available Funds in your Account, the transaction limits described below, and the other terms and conditions of this Agreement. You also may make ACH deposits to your Account, either originated through Robinhood or originated by a third party (a "non-originated" deposit), subject to the transaction limits described below.

There are limits on the dollar amount of transactions you can make with your Card each day and each month, and limits on the amount of ACH withdrawals and deposits you can make each day. The following lists the limits for each type of transaction:

| Transaction Type | Daily Limit | Weekly Limit | Monthly Limit |
|---|---|---|---|
| Originated ACH Withdrawals | $50,000.00 | N/A | N/A |
| Originated ACH Deposits | $50,000.00 | N/A | N/A |
| Non-Originated ACH Withdrawals | $250,000.00 | N/A | N/A |
| Non-Originated ACH Deposits | $250,000.00 | N/A | N/A |
| Point of Sale Purchases with the Card | $5,000.00 | N/A | $15,000.00 |
| ATM Withdrawals | $510.00 | | $5,000.00 |
| MoneySend Deposits | N/A, subject to the Weekly Limit | $2,999 | N/A |

5.      Fees.

41

We will not charge you any fees for use of ATMs that are part of the AllPoint or MoneyPass ATM networks, or for point of sale transactions using the Card, or for initiating other EFTs on your behalf. If you withdraw funds from ATMs outside of the AllPoint or MoneyPass ATM networks, you may be separately assessed fees by those ATM owners or operators.

6.    Confidentiality.

We may disclose information to third parties about you, your Card, or the transactions you make using any of the EFT services we provide:

(1)    Where it is necessary or helpful for completing or correcting transactions and resolving claims regarding transactions;

(2)    In order to verify the existence and condition of your Card or your Account for a third party, such as a merchant;

(3)    In order to comply with a valid request by a government agency, a court order, or other legal or administrative reporting requirements;

(4)    If you consent by giving us your written permission;

(5)    To our employees, auditors, affiliates, service providers, or attorneys as needed;

(6)    In order to prevent, investigate or report possible illegal activity;

(7)    In order to issue authorizations for transactions on the Card;

(8)    As permitted by applicable law; or

(9)    Otherwise as necessary to fulfill our obligations under this Agreement and the terms applicable to the EFT service you are using.

Please see Robinhood's privacy policy, available at about.robinhood.com/legal, and the applicable Bank's privacy policy, available at https://www.suttonbank.com/_/kcms-doc/85/49033/WK-Privacy-Disclosure-1218.pdf, for further details. (The Robinhood privacy policy and the applicable Bank's privacy policy are referred to collectively as the "Privacy Policies"). You hereby agree to Robinhood's and the Bank's collection, use and sharing of information about you and the Card as provided in the Privacy Policies, which are made a part of this Agreement. The Privacy Policies also tell you how you can (i) limit the ways in which Bank and Robinhood share information about you, or (ii) request corrections to the information that Bank or Robinhood maintain about you. You agree that information you provide in connection with your Card or other EFT services you use is being provided directly to both Robinhood as the holder of the Account associated with the service and the Bank as the Card issuer or provider of the EFT service, as applicable.

7. <u>Documentation</u>.

*Terminal Transfers.*  You can get a receipt at the time you make any transfer to or from your Account using an ATM from the AllPoint or MoneyPass ATM networks or at the point of sale.

*Preauthorized Credits.*  If you have arranged to have direct deposits made to your Account at least once every 60 days from the same person or company, the person or company making the deposit will tell you every time they send us the money.  You can also check your Account online to see if a deposit has been received.

*Periodic Statements.*  You will get a monthly Account statement, unless there are no transfers in a particular month.  In any case you will get the statement at least quarterly.  You may obtain information about the Available Funds in your Account and a history of your Cash Management transactions on the App.

8. <u>Preauthorized Payments/Stop Payment Procedure and Notice of Varying Amounts</u>.

You do not have the right to request that Robinhood in advance make regular payments out of your Account, although you may ask third parties to initiate regular payments out of your Account.

a. *Right to stop payment*: If you have automatic recurring payments taken out of your Account, you can stop any of these payments by contacting us at help@robinhood.com.  You must contact us in time for us to receive your request at least three business days before the payment is scheduled to be made.

b. *Notice of varying amounts*: If these regular payments vary in amount, the party you are going to pay will tell you, 10 days before each payment, when the payment will be made and how much it will be.  (The party you are going to pay may allow you to choose to get this notice only when the payment would differ by more than a certain amount from the previous payment, or when the amount would fall outside certain limits that you set.)

c. *Liability for failure to stop payment of preauthorized transfer*: If you order us to stop a payment at least three business days before the transfer is scheduled and we do not do so, we will be liable for your losses or damages.

9. <u>Our Liability</u>.

If we do not complete a transaction to or from your Account on time or in the correct amount according to our Agreement with you, we will be liable for your losses or damages. However, there are some exceptions. We will not be liable, for instance:

(1)     If through no fault of Robinhood or the Bank, you do not have enough Available Funds in your Account to complete the transaction;

(2)     If a merchant refuses to accept your Card;

(3)     If an electronic terminal where you are making a transaction does not operate properly, and you knew about the problem when you initiated the transaction;

(4)     If access to your Card has been blocked after you reported your Card lost or stolen;

(5)     If there is a hold or your funds are subject to legal or administrative process or other encumbrance restricting their use;

(6)     If Robinhood or the Bank have reason to believe the requested transaction is unauthorized;

(7)     If circumstances beyond the control of Robinhood or the Bank (such as fire, flood, or computer or communication failure) prevent the completion of the transaction, despite reasonable precautions that Robinhood or the Bank have taken; or

(8)     For any other exception stated in this Agreement with you or by applicable law.

10.     Errors or Questions About Electronic Transfers.

In case of errors or questions about your electronic transfers, including your Card transactions, or if you think your statement or receipt is wrong or if you need more information about a transaction listed on the statement or receipt, contact Robinhood by emailing help@robinhood.com. Robinhood must hear from you no later than sixty (60) days after you were sent the FIRST statement on which the problem or error appeared.

(a) Tell Robinhood your name and account number.

(b) Describe the error or the transfer you are unsure about, and explain as clearly as you can why you believe it is an error or why you need more information.

(c) Tell Robinhood the dollar amount of the suspected error.

Robinhood will determine whether an error occurred within ten (10) business days after Robinhood hears from you and will correct any error promptly.  If Robinhood needs more time, however, it may take up to forty-five (45) days to investigate your complaint or question.  If Robinhood decides to do this, Robinhood will credit your Account within ten (10) business days for the amount you think is in error, so that you will have the use of the money during the time it takes Robinhood to complete our investigation.

For errors involving new accounts, point of sale, or foreign initiated transactions, Robinhood may take up to ninety (90) days to investigate your complaint or question.  For new accounts, Robinhood may take up to twenty (20) business days to credit your Account for the amount you think is in error.

Robinhood will tell you the results of our investigation within three (3) business days after completing the investigation. If Robinhood decides that there was no error, Robinhood will send you a written explanation. You may ask for copies of the documents that Robinhood used in our investigation.

Provided by CourtAlert www.CourtAlert.com

# EXHIBIT B

# Robinhood
# Terms & Conditions

Robinhood Financial LLC ("Robinhood Financial"), a wholly-owned subsidiary of Robinhood Markets, Inc. ("Robinhood Markets"), is a registered broker-dealer and member of FINRA and SIPC that provides online and mobile application-based discount stock brokerage services to self-directed investors.

These Terms and Conditions are in addition to any other agreements between you and Robinhood Financial and Robinhood Markets (collectively, "Robinhood"), including any customer or account agreements and any other agreements that govern your use of software, products, goods, services, content, tools, and information provided by Robinhood.

### General

The Robinhood website and mobile application (collectively, the "Service") may include or make available certain content (the "Content"). Content includes, without limitation: (1) account positions, balances, transactions, confirmations, and order history; (2) general news and information, commentary, research reports, educational material and information and data concerning the financial markets, securities and other subjects; (3) market data[1] such as quotations for securities transactions and/or last sale information for completed securities transactions reported in accordance with federal securities regulations; (4) financial and investment interactive tools, such as alerts or calculators; (5) tax preparation, bill payment and account management tools; (6) company names, logos, product and service names, trade names, trademarks and services marks (collectively, "Marks") owned by Robinhood, and Marks owned by Third Party Providers (defined below); and (7) any other information, content, services, or software. Certain Content is furnished by third parties (each, a "Third-Party Provider" and collectively, the "Third-Party Providers"). Such Content ("Third Party Content") includes, without limitation, any information, content, service or software made available by or through social media websites, blogs, wikis, online conferences, telecasts, podcasts, and other forums (collectively, the "Forums"). Third Party Content may be available through framed areas or through hyperlinks to the Third-Party Providers' websites.

### Acceptance of Terms and Conditions

By using the Service and the Content, you agree to follow and be bound by these Terms and Conditions, including the policies referenced herein. Customers of Robinhood are granted additional levels of access to the website and their relationship with Robinhood is governed by additional agreements and terms of use, such as the Customer Agreement.

### Disclaimer and Limitations of Liability

**The Content and the Service are provided on an "as is" and "as available" basis. To the fullest extent permitted under applicable law, Robinhood and the Third Party Providers expressly disclaim all warranties of any kind with respect to the Content and the Service, whether express or implied, including, but not limited to, the implied warranties of merchantability, fitness for a particular purpose and non-infringement. Neither Robinhood nor Third Party Providers guarantee the accuracy, timeliness, completeness or usefulness of any Content. You agree to use the Content and the Service only at your own risk.**

**Neither Robinhood nor the Third Party Providers explicitly or implicitly endorse or approve any Third Party Content. Third Party Content is provided for informational purposes only.**

---

[1] Market Data by Xignite provides market data to Robinhood customers.

Provided by CourtAlert
www.CourtAlert.com

**The Content is not intended to provide financial, legal, tax or investment advice or recommendations. You are solely responsible for determining whether any investment, investment strategy or related transaction is appropriate for you based on your personal investment objectives, financial circumstances and risk tolerance. You should consult your legal or tax professional regarding your specific situation.**

**ROBINHOOD AND THE THIRD PARTY PROVIDERS WILL NOT BE LIABLE FOR ANY DIRECT, INDIRECT, INCIDENTAL, SPECIAL, CONSEQUENTIAL OR EXEMPLARY DAMAGES, INCLUDING, BUT NOT LIMITED TO, DAMAGES FOR LOSS OF PROFITS, REVENUE, INCOME, GOODWILL, USE, DATA OR OTHER INTANGIBLE LOSSES (EVEN IF ROBINHOOD OR ANY THIRD PARTY PROVIDER HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES), RESULTING FROM: (1) THE USE OF OR THE INABILITY TO USE THE CONTENT OR THE SERVICE; (2) THE COST OF PROCUREMENT OF SUBSTITUTE GOODS AND SERVICES RESULTING FROM ANY GOODS, DATA, INFORMATION OR SERVICES PURCHASED OR OBTAINED OR MESSAGES RECEIVED OR TRANSACTIONS ENTERED INTO, THROUGH OR FROM THE SERVICE; (3) ACCESS TO OR ALTERATION OF YOUR ACCOUNT, TRANSMISSIONS OR DATA DUE TO YOUR CONDUCT, INACTION OR NEGLIGENCE; OR (4) ANY OTHER MATTER RELATING TO THE CONTENT OR THE SERVICE.**

<u>**No Recommendations or Investment Advice**</u>

Robinhood Financial provides self-directed investors with discount brokerage services, and does not make recommendations or offer investment advice of any kind. You are solely responsible for evaluating the merits and risks associated with the use of any Content provided through the Service before making any decisions based on such Content. You agree not to hold Robinhood or any Third-Party Provider liable for any possible claim for damages arising from any decision you make based on the Content or other information made available to you through the Service or any Third-Party Provider websites. Past performance data should not be construed as indicative of future results.

<u>**U.S. Residents Only**</u>

The Content and the Service are intended for United States residents only. They shall not be considered a solicitation to any person in any jurisdiction where such solicitation would be illegal.

<u>**Content**</u>

Content posted on the Service is published as of its stated date or, if no date is stated, the date of first posting. Neither Robinhood nor the Third-Party Providers have undertaken any duty to update any such information.

Robinhood does not prepare, edit, or endorse Third Party Content. Robinhood does not guarantee the accuracy, timeliness, completeness or usefulness of Third Party Content, and is not responsible or liable for any content, advertising, products, or other materials on or available from third party sites.

You will not hold Robinhood and/or any Third-Party Provider liable in any way for (a) any inaccuracy of, error or delay in, or omission of the Content; or (b) any loss or damage arising from or occasioned by i) any error or delay in the transmission of such Content; ii) interruption in any such Content due either to any negligent act or omission by any party to any "force majeure" (e.g., flood, extraordinary weather conditions, earthquake or other act of God, fire, war, insurrection, riot, labor dispute, accident, action of government, communications or power failure, equipment or software malfunction), or iii) to any other cause beyond the reasonable control of Robinhood and/or Third-Party Provider, or iv) non-performance.

Rhfv1.420160108

Provided by CourtAlert www.CourtAlert.com

Any price quotes may be delayed 20 minutes or longer, according to the rules and regulations applicable to exchanges and Third Party Providers. Neither Robinhood nor the Third-Party Providers make any representations, warranties or other guarantees as to the accuracy or timeliness of any price quotes. Neither Robinhood nor the Third-Party Providers make any representations, warranties or other guarantees as to the present or future value or suitability of any sale, trade or other transaction involving any particular security or any other investment.

Content is provided exclusively for personal and noncommercial access and use. No part of the Service or Content may be copied, reproduced, republished, uploaded, posted, publicly displayed, encoded, translated, transmitted or distributed in any way (including "mirroring") to any other computer, server, web site or other medium for publication or distribution or for any commercial enterprise, without Robinhood's express prior written consent.

You acknowledge that Robinhood is the sole owner of Robinhood Marks and that other Marks are the property of their respective owners. You agree that you will not use any Marks for any purpose without the prior express written consent of the respective owners.

**Termination; Modification**

You agree that, without notice, Robinhood may terminate these Terms and Conditions, or suspend your access to the Service or the Content, with or without cause at any time and effective immediately. These Terms and Conditions will terminate immediately without notice from Robinhood if you, in Robinhood's sole discretion, fail to comply with any provision of these Terms and Conditions. Robinhood shall not be liable to you or any third party for the termination or suspension of the Service or the Content, or any claims related to such termination or suspension.

Robinhood and/or the Third-Party Providers may discontinue or modify the Content, or any portion thereof, at any time. You release and agree to indemnify and hold harmless Robinhood, and the Third-Party Providers, for any loss or damages arising from or relating to such discontinuation or modification.

**Communications**

By using the Service or the Content, you consent to any form of recording and retention of any communication, information and data exchanged between you and Robinhood or its representatives or agents.

All communications made at or through the Forums are public. Neither Robinhood nor the Third-Party Providers screen, review, approve or endorse any Third Party Content available on or through the Forums. Reliance on any Third Party Content available on or through the Forums is at your own risk. When discussing a particular company, stock or security in the Forums, you agree to reveal any ownership interest in such company, stock or security. Without limitation, you agree not to do any of the following:

a)  upload, post, transmit or otherwise make available any Content that is unlawful, harmful, threatening, abusive, harassing, tortuous, defamatory, vulgar, obscene, libelous, invasive of another's privacy (including, but not limited to, any address, email, phone number, or any other contact information without the written consent of the owner of such information), hateful, or racially, ethnically or otherwise objectionable;
b)  harm minors in any way;
c)  impersonate any person or entity, including, but not limited to, (i) a Robinhood or Third-Party Provider manager, employee, agent, or representative or (ii) forum leader, guide or host;
d)  falsely state or otherwise misrepresent your affiliation with any person or entity;
e)  forge headers or otherwise manipulate identifiers in order to disguise the origin of any material;
f)  upload, post or otherwise transmit any material that you do not have a right to transmit under any law or under contractual or fiduciary relationships (such as inside information, proprietary and

confidential information learned or disclosed as part of employment relationships or under nondisclosure agreements);

g) upload, post or otherwise transmit any material that infringes any patent, trademark, trade secret, copyright, rights of privacy or publicity, or other proprietary rights of any party;

h) upload, post, or transmit unsolicited commercial email or "SPAM," including, but not limited to, unethical marketing, advertising, or any other practice that is in any way connected with SPAM, such as: (1) sending mass email to recipients who haven't requested email from you or with a fake return address; (2) promoting a site with inappropriate links, titles, or descriptions; or (3) promoting any site by posting multiple submissions in forums that are identical;

i) upload, post or otherwise transmit any material that contains software viruses or any other computer code, files or programs designed to interrupt, destroy or limit the functionality of any computer software or hardware or telecommunications equipment;

j) interfere with or disrupt the Service or servers or networks connected to the Service, or disobey any requirements, procedures, policies or regulations of networks connected to the Service;

k) intentionally or unintentionally violate any applicable local, state, national or international law, including, but not limited to, regulations promulgated by the U.S. Securities and Exchange Commission, any rules of any national or other securities exchange, and any regulations having the force of law;

l) "stalk" or otherwise harass another;

m) collect or store personal data about other users of the Service;

n) promote or provide instructional information about illegal activities, promote physical harm or injury against any group or individual, or promote any act of cruelty;

o) promote, offer for sale or sell any security or item, good or service that i) violates any applicable federal, state, or local law or regulation, ii) you do not have full power and authority under all relevant laws and regulations to offer and sell, including all necessary licenses and authorizations, or iii) Robinhood or the Third-Party Providers determine, in their sole discretion, is inappropriate for sale;

p) use the Forums as a forwarding service to another website; or

q) access or otherwise use the Forums in any unlawful manner, for any unlawful purpose or in violation of these Terms and Conditions.

**External Links**

Robinhood and/or the Third-Party Providers may provide links to other websites or resources. Because neither Robinhood or the Third-Party Providers have any control over such sites and resources, you acknowledge and agree that neither Robinhood nor the Third Party Providers are responsible for the availability of such external sites or resources. Robinhood and the Third Party Providers do not endorse and are not liable for any content, advertising, products, or other materials on or available through such sites or resources. You further acknowledge and agree that neither Robinhood nor the Third Party Providers shall be responsible or liable, directly or indirectly, for any damage or loss caused or alleged to be caused by or in connection with use of or reliance on any such content, goods or services available on or through any such site or resource.

**Applicable Policies**

In addition to these Terms and Conditions, your access to and use of the Content and the Service is subject to Robinhood's then-current policies relating to the Content and the Service, including, without limitation, the Robinhood Privacy Policy available on the Service. You agree to be bound by these policies and all other Robinhood policies applicable to the access and use of the Content and the Service.

By using the Service, you are consenting to have your personal data transferred to and processed by Robinhood and its affiliates. As part of providing you the Service, Robinhood may need to provide you with certain communications, such as service announcements and administrative messages. These communications are considered part of the Service, which you may not be able to opt-out from receiving.

Provided by CourtAlert www.CourtAlert.com

**Indemnification**

You will indemnify and hold harmless Robinhood and the Third Party Providers, and the officers, directors, agents, partners, employees, licensors, distributors, and representatives of Robinhood and the Third Party Providers, from and against any and all claims, demands, actions, causes of action, suits, proceedings, losses, damages, costs, and expenses, including reasonable attorneys' fees, arising from or relating to your access and/or use of, or interaction with the Content (including, without limitation, Third Party Content), or any act, error, or omission of your use of your account or any user of your account, in connection therewith, including, but not limited to, matters relating to incorrect, incomplete, or misleading information; libel; invasion of privacy; infringement of a copyright, trade name, trademark, service mark, or other intellectual property; any defective product or any injury or damage to person or property caused by any products sold or otherwise distributed through or in connection with the Service; or violation of any applicable law.

**Revisions**

Robinhood may at any time revise these Terms and Conditions by updating this document. You agree to be bound by subsequent revisions and agree to review these Terms and Conditions periodically for changes. The most updated version of this document will be available for your review under the "Robinhood Terms and Conditions" link that appears on the Robinhood website and mobile application.

**Applicable Law and Venue; Severability**

You agree that these Terms and Conditions shall be governed by and interpreted in accordance with the laws of the State of California, without giving effect to principles of conflicts of law. Any legal action or proceeding arising under these Terms and Conditions will be brought exclusively in courts located in Santa Clara County, California, and you hereby irrevocably consent to the personal jurisdiction and venue therein. If any provision of these Terms and Conditions is deemed unlawful, void or for any reason unenforceable, then that provision will be deemed severable from these Terms and Conditions and will not affect the validity and enforceability of the remaining provisions.

# Exhibit 5

Provided by CourtAlert                                                    www.CourtAlert.com

**CARLSON LYNCH LLP**
Todd D. Carpenter (CA Bar No. 234464)
(Eddie) Jae K. Kim (CA Bar No. 236805)
1350 Columbia St., Ste. 603
San Diego, CA 92101
Telephone:    619-762-1900
Facsimile:     619-756-6991
tcarpenter@carlsonlynch.com
ekim@carlsonlynch.com

*Attorney for Plaintiffs*

[Additional counsel on signature page.]

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERIC JOHANN and LEILA KURI, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ROBINHOOD FINANCIAL, LLC, ROBINHOOD SECURITIES, LLC, and ROBINHOOD MARKETS, INC.,<br><br>Defendants. | Case No.: _____<br><br>**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL** |

Provided by CourtAlert www.CourtAlert.com

Plaintiffs Eric Johann and Leila Kuri (collectively, "Plaintiffs") bring this action on behalf of themselves and all others similarly situated (the "Class") against Defendants Robinhood Financial, LLC ("Robinhood Financial"), Robinhood Securities, LLC ("Robinhood Securities"), and Robinhood Markets, Inc. ("Robinhood Markets") (collectively, "Robinhood" or "Defendants"). Plaintiffs complain upon knowledge as to themselves and their own actions and upon information and belief as to all other matters, as follows:

## SUMMARY OF ALLEGATIONS

1. This action arises from Defendants' actions and inactions during the applicable statutes of limitations (the "Class Period") in violation of the California Unfair Competition Law, Cal. Bus. & Prof. Code §17200 ("UCL"), and in breach of contract which injured Plaintiffs and the Class.

2. Robinhood was launched in 2013 as an online financial services company offering financial market services via a mobile app and website. Customers use the app and website to invest in stocks, options, and other investment vehicles. Robinhood distinguishes itself from other online investment firms by offering its services free of commissions, calling itself a "pioneer in commission-free investing."[1]

3. On March 2, 2020, Robinhood's platforms suffered a near-total outage on a trading day which saw the largest single-day gain in the history of the Dow Jones Industrial Average. Robinhood's systems were completely inaccessible to Plaintiffs and the Class for the entire trading day.[2] Robinhood customers were unable to make any trades by app, website, or otherwise. Despite assurances that Robinhood had identified the problem and was working on a solution, the system stayed down well into the trading day on March 3, 2020.[3]

4. On March 9, 2020, despite this utter and extended failure, and despite further assurances from Robinhood that it had detected and addressed the underlying issue, Robinhood saw

---

[1] Robinhood homepage, https://robinhood.com/us/en/ (last visited March 17, 2020).

[2] Bloomberg, "Robinhood users miss stock rally as the trading platform seizes up," *Los Angeles Times*, March 2, 2020.

[3] Nathaniel Popper and Tara Siegel Bernard, "High-Flying Trading App Robinhood Goes Down at the Wrong Time," *The New York Times*, March 3, 2020.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

1  a third complete outage of service. Services were completely unavailable at the start of the trading

2  day and not fully restored until more than five hours later.[4]

3      5.     As of December 2019, Robinhood claimed to have more than 10 million accounts.[5]

4  Many of these account holders would not have opened Robinhood accounts if they had known of

5  Robinhood's susceptibility to complete and repeated outages.

6      6.     More evidence supporting the allegations in this complaint will be uncovered after a

7  reasonable opportunity for discovery.

8                                **JURISDICTION AND VENUE**

9      7.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C

10  §1332(d), because the amount in controversy for the Classes exceeds $5,000,000 exclusive of

11  interest and costs, there are more than 100 putative class members defined below and minimal

12  diversity exists because the majority of putative class members are citizens of a state different than

13  Defendants.

14      8.     This Court has general personal jurisdiction over Robinhood Markets and Robinhood

15  Financial because their principal places of business are in California. Additionally, each Defendant

16  is subject to specific personal jurisdiction in this State because a substantial part of the events and

17  conduct giving rise to Plaintiffs' claims occurred in this State.

18      9.     Venue is proper in this District pursuant to 28 U.S.C. §1391(b) because a substantial

19  portion of the conduct described in this complaint was carried out in this District. In addition,

20  Defendants Robinhood Markets and Robinhood Financial are headquartered in this District and

21  subject to personal jurisdiction in this District. Furthermore, the Robinhood Terms and Conditions

22  require any relevant legal action be brought exclusively in courts located in Santa Clara County,

23  such as this Court.

24

25

26

---

27    4     Jay Peters, "Robinhood experienced its third outage in a week as US stocks have plummeted," *The Verge*, March 9, 2020.

28    5     Donna Fuscaldo, "Mobile-Trading App Robinhood Now Has More Than 10 Million Accounts," *Forbes*, December 4, 2019.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

**PARTIES**

**A.     Plaintiffs**

10.     Plaintiff Eric Johann is a natural person and citizen of New York.  As discussed below, Plaintiff Johann is, and has been a Robinhood account holder since June 2018.

11.     Plaintiff Leila Kuri is a natural person and citizen of North Carolina.  As discussed below Plaintiff Kuri is, and has been a Robinhood account holder.

**B.     Defendants**

12.     Defendant Robinhood Markets, Inc. is a Delaware corporation with its principal place of business at 85 Willow Road, Menlo Park, California 94025.  Robinhood Markets is the parent of Defendants Robinhood Financial and Robinhood Securities.  According to its website, "Robinhood means Robinhood Markets and its in-application and web experiences with its family of wholly owned subsidiaries which includes Robinhood Financial, Robinhood Securities, Robinhood Crypto, and Robinhood International."

13.     Defendant Robinhood Financial, LLC is a Delaware limited-liability company with its principal place of business at 85 Willow Road, Menlo Park, California 94025.  It is a wholly-owned subsidiary of Defendant Robinhood Markets.  Robinhood Financial is registered as a broker-dealer with the U.S. Securities & Exchange Commission ("SEC").  Robinhood Financial is a member of the Financial Industry Regulatory Authority ("FINRA").  Robinhood Financial is a member of the Securities Investor Protection Corporation ("SIPC").

14.     Defendant Robinhood Securities, LLC is a Delaware limited-liability company with its principal place of business at 500 Colonial Center Parkway, Suite 100, Lake Mary, Florida 32746. It is a wholly-owned subsidiary of Defendant Robinhood Markets. Defendant Robinhood Securities is registered as a broker-dealer with the SEC.

**SUBSTANTIVE ALLEGATIONS**

**I.     ROBINHOOD SUFFERS REPEATED PARALYSIS OF ITS ENTIRE PLATFORM, LOCKING MILLIONS OF USERS OUT OF THEIR ACCOUNTS**

15.     Robinhood was launched in 2013 as an online financial services company offering financial market services via a mobile app and website.  Customers use the app and website to invest

in stocks, options, and other investment vehicles. Robinhood distinguishes itself from other online investment firms by offering its services free of commissions, calling itself a "pioneer in commission-free investing."[6]  As of December 2019, Robinhood claimed to have more than 10 million accounts.[7]

16.  On March 2, 2020, Robinhood's platforms suffered a near-total outage on a trading day which saw the largest single-day gain in the history of the Dow Jones Industrial Average. Robinhood's systems were completely inaccessible to Plaintiffs and the Class for the entire trading day.[8]  Robinhood customers were unable to make any trades by app, website, or otherwise. Robinhood announced the outage and provided updates via a series of tweets from its @AskRobinhood account:

> Our system is experiencing downtime issues that are affecting all functionalities on our platform.  We are aware of the issue and are working to have all systems up and running as soon as we can.  We're so sorry this is happening!

> We are still experiencing system-wide issues.  Our team is continuing to work to resolve this and we'll provide updates as they become available.  We apologize again for the trouble this has caused and appreciate your patience with us as we work to resume service.

> Robinhood is currently back up and running.  We're testing through the night, and you may observe some downtime as we prepare for tomorrow.[9]

17.  Despite assurances that Robinhood had identified the problem and was working on a solution, the system stayed down well into the trading day on March 3, 2020.[10]  Robinhood again addressed the developing situation via its Twitter support account:

> Our systems are currently experiencing downtime.  We're determined to restore full functionality as soon as possible.  We'll be sharing updates here and on http://status.robinhood.com.

---

[6]    Robinhood homepage, https://robinhood.com/us/en/ (last visited March 17, 2020).

[7]    Donna Fuscaldo, "Mobile-Trading App Robinhood Now Has More Than 10 Million Accounts," *Forbes*, December 4, 2019.

[8]    Bloomberg, "Robinhood users miss stock rally as the trading platform seizes up," *Los Angeles Times*, March 2, 2020.

[9]    Https://twitter.com (@AskRobinhood) (last visited March 17, 2020).

[10]    Nathaniel Popper and Tara Siegel Bernard, "High-Flying Trading App Robinhood Goes Down at the Wrong Time," *The New York Times*, March 3, 2020.

Service has been partially restored on Robinhood and we're working toward restoring and maintaining full functionality. We'll continue to share updates here and on http://status.robinhood.com.

Robinhood is now fully restored. We know this has been frustrating and we will work diligently to provide the level of service you deserve[11]

18.  Addressing the outage in a blog post on the Robinhood website, the founders of the company stated as follows:

Our team has spent the last two days evaluating and addressing this issue. We worked as quickly as possible to restore service, but it took us a while. Too long. We now understand the cause of the outage was stress on our infrastructure – which struggled with unprecedented load. That in turn led to a "thundering herd" effect – triggering a failure of our DNS system.

Multiple factors contributed to the unprecedented load that ultimately led to the outages. The factors included, among others, highly volatile and historic market conditions; record volume; and record account sign-ups.

Our team is continuing to work to improve the resilience of our infrastructure to meet the heightened load we have been experiencing. We're simultaneously working to reduce the interdependencies in our overall infrastructure. We're also investing in additional redundancies in our infrastructure.

After a brief outage this morning, our trading platform was stable for the remainder of the day. As our engineering team works to upgrade our infrastructure, we may experience additional brief outages, but we're now better positioned to more quickly resolve them.[12]

19.  On March 9, 2020, despite the utter failures of the previous week, and despite further assurances from Robinhood that it had detected and addressed the underlying issue, Robinhood saw a third complete outage of service. Services were completely unavailable at the start of the trading day and not fully restored until more than five hours later.[13] Robinhood again commented on the situation via Twitter:

Trading is currently down on Robinhood and we're investigating the issue. We're focused on getting back up and running as soon as possible and we'll update the status page with the latest https://status.robinhood.com.

---

[11]  Https://twitter.com (@AskRobinhood) (last visited March 17, 2020).

[12]  "An Update from Robinhood's Founders," March 3, 2020, https://blog.robinhood.com (last visited March 17, 2020).

[13]  Jay Peters, "Robinhood experienced its third outage in a week as US stocks have plummeted," *The Verge*, March 9, 2020.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Provided by CourtAlert                                    www.CourtAlert.com

Trading has been partially restored on Robinhood and our team is working to get our platform fully back up and running.  We'll update the status page with the latest: https://status.robinhood.com.

Trading on Robinhood has been functional for new orders with the exception of fractional equities since at least 10:25 AM ET.  We'll continue to update our status page with the latest status.robinhood.com.

Trading has been restored and Robinhood is back up and running again.  Thank you.[14]

20.     Federal and state laws and regulations and FINRA regulations impose certain duties on broker-dealers such as Robinhood.  These include the duties to execute orders promptly and to disclose material information.[15]  Robinhood violated these requirements by preventing its customers from accessing their accounts and executing trades during the platform outages.

21.     FINRA Rule 5310.01 requires that broker-dealers like Robinhood "must make every effort to execute a marketable customer order that it receives promptly and fully."  Robinhood violated that requirement by repeatedly and completely preventing its customers from executing trades during the system outages.

22.     The Robinhood Customer Agreement entered into by Plaintiffs and each Class member provides in part that "All transactions in My Account will be subject to federal securities laws and regulations, the applicable laws and regulations of any state or jurisdiction in which Robinhood Financial is registered, the rules of any applicable self-regulatory organization of which Robinhood Financial is a member and the rules, regulations, customs and usages of the exchange or market, and its clearing house, if any, where the transactions are executed."  By violating the above rules and duties, Robinhood is in breach of the Customer Agreement with Plaintiffs and each Class member.

## II.     PLAINTIFFS WERE UNABLE TO EXECUTE TRADES DURING THE OUTAGES

23.     Plaintiff Johann has been a Robinhood account holder since June 2018.  On March 2, 2020, Plaintiff Johann attempted to close a call option position he had for a particular stock.  He was able to sign into his account but was unable to enter any orders.  He received error messages, including "unexpected server error" and "something went wrong."  Plaintiff Johann attempted to

---

[14]     Https://twitter.com (@AskRobinhood) (last visited March 17, 2020).

[15]     SEC, Division of Trading and Markets, "Guide to Broker-Dealer Registration," April 2008.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

enter orders on March 3, 2020 as well, but was unable to do so.  He attempted communication with Robinhood tech support in a variety of ways, but only received boilerplate responses, usually a day or two after his initial contact.  By not being able to close his options, Plaintiff Johann lost an estimated $15,000 in anticipated profits.

24.    In addition, on the evening of March 8, 2020, Plaintiff Johann entered an order to close his remaining option positions upon the opening of the market on March 9, 2020.  Before the market opened on March 9, he attempted to cancel his order.   Plaintiff Johann was unable to enter orders on his Robinhood account throughout the morning of March 9, 2020.  He tried for several hours to cancel the order, but Robinhood ultimately fulfilled the order around noon, against his wishes and his attempted cancellations.

25.    Plaintiff Kuri is a Robinhood account holder.  During the outage, she attempted to close one of her open option positions, but received a response indicating that her order was cancelled, against her instructions.  In addition, she attempted to contact Robinhood's customer support regarding her inability to execute trades, but received only unhelpful boilerplate responses.

26.    After encountering Robinhood's inability to execute her orders, Plaintiff Kuri then attempted to withdraw her funds from her Robinhood account, but was unable to do so for several days.

## CLASS ACTION ALLEGATIONS

27.    Plaintiffs bring this action pursuant to Federal Rule of Civil Procedure 23 individually and on behalf of the following Class:

> All Robinhood customers within the United States.  Within the Class is a Subclass of all Robinhood customers within the United States who attempted unsuccessfully to execute or modify trades from March 2, 2020 through the present.[16]

28.    Excluded from each Class are:  (1) any Judge or Magistrate presiding over this action and any members of their families; (2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which Defendants or their parents have a controlling interest and their current or former employees, officers, and directors; (3) persons who properly execute and file

---

[16]    Plaintiffs have defined the Class based on currently available information and reserve the right to amend the definition of the Class, including, without limitation, the Class Period.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiffs' counsel and Defendants' counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

29.     **Ascertainability:**  Membership of the Class is defined based on objective criteria, and individual members will be identifiable from Defendants' records.

30.     **Numerosity:**   The exact number of members of the Class is unknown and unavailable to Plaintiffs at this time, but individual joinder in this case is impracticable.  The Class likely consists of millions of individuals, and the members can be identified through Defendants' records.

31.     **Predominant Common Questions:**  The Class's claims present common questions of law and fact, and those questions predominate over any questions that may affect individual Class members.  Common questions for the Class include, but are not limited to, the following:

        a.     whether Robinhood lacked the operational capability to provide the services promised in its Customer Agreement and Terms and Conditions;

        b.     whether Robinhood violated federal and state law and regulatory requirements by failing to provide adequate operational capacity;

        c.     whether Robinhood is in breach of its contracts with Plaintiffs and other members of the Class;

        d.     whether Plaintiffs and the other Class members were injured by Robinhood's conduct, and if so, the appropriate class-wide measure of damages, restitution, and other appropriate relief, including injunctive relief; and

        e.     whether Plaintiffs and the other Class members are entitled to injunctive and declaratory relief.

32.     **Typicality:**  Plaintiffs' claims are typical of the claims of the other members of the proposed Class.  Plaintiffs and Class members suffered an impairment to their account access as a result of Defendants' wrongful conduct that is uniform across the Class.

33.     **Adequate Representation:**   Plaintiffs have and will continue to fairly and adequately represent and protect the interests of the Class.  They have retained counsel competent

1   and experienced in complex litigation and class actions, including privacy violations. Plaintiffs have

2   no interest that is antagonistic to those of the Class, and Defendants have no defenses unique to

3   Plaintiffs. Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf

4   of the members of the Class, and they have the resources to do so. Neither Plaintiffs nor their

5   counsel have any interest adverse to those of the other members of the Class.

6        34.    **Substantial Benefits:** This class action is appropriate for certification because class

7   proceedings are superior to other available methods for the fair and efficient adjudication of this

8   controversy and joinder of all members of the Class is impracticable. This proposed class action

9   presents fewer management difficulties than individual litigation, and provides the benefits of single

10  adjudication, economies of scale, and comprehensive supervision by a single court. Class treatment

11  will create economies of time, effort, and expense and promote uniform decision-making.

12       35.    Plaintiffs reserve the right to revise the foregoing class allegations and definitions

13  based on facts learned and legal developments following additional investigation, discovery, or

14  otherwise.

15             **CALIFORNIA LAW APPLIES TO THE ENTIRE CLASS**

16       36.    California's substantive laws apply to every member of the Class, regardless of

17  where in the United States the Class member resides. Robinhood's Customer Agreement states:

18       **36.K. Governing Law**. This Agreement and all transactions made in My Account
         shall be governed by the laws of the State of California (regardless of the choice of
19       law rules thereof), except to the extent governed by the federal securities laws,
         FINRA Rules, and the regulations, customs and usage of the exchanges or market
20       (and its clearing house) on which transactions are executed.[17]

21       37.    By choosing California law for the resolution of disputes in the agreement,

22  Robinhood concedes that it is appropriate for this Court to apply California law to the instant dispute.

23       38.    Further, California's substantive laws may be constitutionally applied to the claims

24  of Plaintiffs and the Class under the Due Process Clause, 14th Amend. §1, and the Full Faith and

25  Credit Clause, Art. IV §1 of the U.S. Constitution. California has significant contact, or significant

26

27  ─────────────────────

28  [17]    *See* Robinhood Financial LLC & Robinhood Securities, LLC Customer Agreement,
         https://cdn.robinhood.com/assets/robinhood/legal/RHF-RHS%20User%20Agreement. pdf (last
         visited March 17, 2020).

                                          9

aggregation of contacts, to the claims asserted by Plaintiffs and all Class members, thereby creating state interests that ensure that the choice of California state law is not arbitrary or unfair.

39.     The headquarters and principal place of business of Defendants Robinhood Markets and Robinhood Financial are located in California.  Defendants also own property and conduct substantial business in California, and therefore California has an interest in regulating Defendants' conduct under its laws.  Defendants' decision to reside in California and avail themselves of California's laws, and to engage in the challenged conduct from and emanating out of California, renders the application of California law to the claims herein constitutionally permissible.

40.     California is also the state from which Defendants' alleged misconduct emanated. This conduct similarly injured and affected Plaintiffs and all other Class members.

41.     The application of California laws to the Class is also appropriate under California's choice of law rules because California has significant contacts to the claims of Plaintiffs and the proposed Class, and California has a greater interest in applying its laws here than any other interested state.

## CLAIMS FOR RELIEF

## FIRST CLAIM FOR RELIEF

**Violation of the California Unfair Competition Law
Cal. Business & Professions Code §17200
(On Behalf of Plaintiffs and the Class)**

42.     Plaintiffs re-allege and incorporate the preceding allegations of this complaint with the same force and effect as if fully restated herein.

43.     The UCL prohibits unfair competition, which includes an "unlawful, unfair or fraudulent" act or practice.  Cal. Bus. & Prof. Code §17200.

44.     Under the UCL, any business act or practice that is unethical, oppressive, unscrupulous, and/or substantially injurious to consumers, or that violates a legislatively declared policy, constitutes an unfair business act or practice.

45.     The violation of any law constitutes an unlawful business practice under the UCL.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

46.     Robinhood engaged in business acts and practices deemed "unlawful" under the UCL, because, as alleged above, Robinhood breached its contracts with Plaintiffs and the Class, and violated FINRA rules and regulations.

47.     Robinhood also engaged in business acts or practices deemed "unfair" under the UCL because, as alleged above, Robinhood failed to maintain sufficient operational capacity, and failed to disclose its lack of capacity to Plaintiffs and the Class.  These acts and practices constituted immoral, unethical, oppressive, and unscrupulous activity, caused substantial injury to consumers and businesses, and provided no benefit to consumers or competition.

48.     By failing to maintain adequate operational capability, by failing to disclose its true capability, and by failing to promptly execute customer orders, Robinhood engaged in "unlawful, [and] unfair . . . business acts or practices" in violation of Cal. Bus. & Prof. Code §17200.  These unfair and unlawful practices occurred repeatedly in connection with Robinhood's trade or business.

49.     Robinhood willfully engaged in the unfair and unlawful acts and practices described above and knew or should have known that those acts and practices were unfair and unlawful in violation of the UCL.

50.     As a direct and proximate result of Robinhood's unfair and unlawful practices and violation of UCL, Plaintiffs and the Class have suffered and will continue to suffer substantial injury and ascertainable loss and are entitled to equitable and such other relief as this Court considers necessary and proper.

51.     Plaintiffs, individually and on behalf of the Class, seek restitution and injunctive relief.

**SECOND CLAIM FOR RELIEF**

**Breach of Contract**
**(On Behalf of Plaintiffs and the Class)**

52.     Plaintiffs re-allege and incorporate the preceding allegations of this complaint with the same force and effect as if fully restated herein.

53.     Robinhood, Plaintiff, and all Class members agreed to and were bound by the terms of the Robinhood Customer Agreement and the Robinhood Terms and Conditions in order to use

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Robinhood's services. The Customer Agreement and Terms and Conditions are found on Robinhood's website.

54.     Robinhood breached its Customer Agreement and Terms and Conditions by failing to disclose that its platform lacked adequate operational capability to meet customer demand; by failing to execute, modify, or cancel customer trades promptly during the platform outages; and by failing to comply with all applicable legal and regulatory requirements in the performance of its obligations under the Customer Agreement and Terms and Conditions.

55.     Robinhood also violated the covenant of good faith and fair dealing in exercising a discretion in such a way that deprives Plaintiffs and the Class members the intended benefits of the contract.

56.     Meanwhile, Plaintiffs and Class members have met their responsibilities under the agreement.

57.     Plaintiffs and Class members suffered damages as a result of Robinhood's breaches of contract.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs on behalf of themselves and the proposed Class respectfully request that the Court enter an order:

A.     Certifying this case as a class action on behalf of the Class defined above, appointing Plaintiffs as representatives of the Class, and appointing their counsel as class counsel;

B.     Declaring that Robinhood's actions, as set out above, violate federal, state, and regulatory laws and rules;

C.     Declaring that Robinhood's actions, as set out above, constitute breach of contract;

D.     Awarding damages, including nominal, statutory, and punitive damages where applicable, to Plaintiffs and the Class in the amount to be determined at trial;

E.     Awarding Plaintiffs and the Class restitution;

F.     Awarding Plaintiffs and the Class their costs of suit, including reasonable attorneys' and experts' fees and expenses, pursuant to the customer agreement, California Code of Civil Procedure §1021.5, and other relevant laws;

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

G.    Awarding Plaintiffs and the Class pre-and post-judgment interest, to the extent allowable;

H.    Awarding such other further injunctive and declaratory relief as is necessary to protect the interests of Plaintiffs and the Class; and

I.    Awarding such other and further relief as the Court deems reasonable and just.

## **DEMAND FOR JURY TRIAL**

Plaintiffs demand a trial by jury for all issues so triable.

Dated: March 18, 2020

**CARLSON LYNCH LLP**

By:  */s/Todd D. Carpenter*

Todd D. Carpenter (CA Bar No. 234464)
(Eddie) Jae K. Kim (CA Bar No. 236805)
1350 Columbia St., Ste. 603
San Diego, CA 92101
Telephone:  619-762-1900
Facsimile:  619-756-6991
tcarpenter@carlsonlynch.com
ekim@carlsonlynch.com

Gary F. Lynch (to be admitted *pro hac vice*)
Jamisen A. Etzel (to be admitted *pro hac vice*)
**CARLSON LYNCH LLP**
1133 Penn Ave., 5th Floor
Pittsburgh, PA 15222
Telephone   412-322-9243
Facsimile   412-231-0246
glynch@carlsonlynch.com
jetzel@carlsonlynch.com

Joseph P. Guglielmo
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
The Helmsley Building
230 Park Ave., 17th Floor
New York, NY 10169
Telephone:  212-223-6444
Facsimile:   212-223-6334
jguglielmo@scott-scott.com

Erin Green Comite
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
156 South Main Street
P.O. Box 192
Colchester, CT 06415
Telephone   860-537-5537
Facsimile:  860-537-4432
ecomite@scott-scott.com

*Attorneys for Plaintiffs*

13

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

# Exhibit 6

Eric H. Gibbs (SBN 178658)
David K. Stein (SBN 257465)
Kyla J. Gibboney (SBN 301441)
**GIBBS LAW GROUP LLP**
505 14th Street, Suite 1110
Oakland, California 94612
Telephone: (510) 350-9700
Facsimile: (510) 350-9701
ehg@classlawgroup.com
ds@classlawgroup.com
kjg@classlawgroup.com

Scott Silver (*pro hac vice* to be submitted)
**SILVER LAW GROUP**
11780 W. Sample Road
Coral Springs, FL 33065
Telephone: (954) 755-4799
Facsimile: (954) 755-4684
ssilver@silverlaw.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRUCE QUEEN, individually and on behalf of all others similarly situated,<br><br>          Plaintiff,<br><br>v.<br><br>ROBINHOOD FINANCIAL LLC, ROBINHOOD SECURITIES, LLC, and ROBINHOOD MARKETS, INC.,<br><br>          Defendants. | Case No. _____<br><br>**CLASS ACTION COMPLAINT**<br><br>**<u>DEMAND FOR JURY TRIAL</u>** |

Provided by CourtAlert www.CourtAlert.com

## INTRODUCTION

1. The Defendant Robinhood entities (collectively, "Robinhood") are an online brokerage firm founded in 2013 that provide users with the ability to trade stocks, funds, and options commission-free. Robinhood's customers "trade in real time" through the firm's website, app or call-in center.

2. On March 2, 2020, March 3, 2020, and March 9, 2020, Robinhood experienced total outages of its operating systems, preventing customers from making securities trades through its website, app, or call center. Consequently, customers could not place trade orders during the outages.

3. The outages occurred during the then-biggest one-day point gain in Dow history—but also during the advent of the recent stock market crash of March 2020.

4. Plaintiff Bruce Queen and other Robinhood customers suffered financial losses because they could not execute transactions through the Robinhood trading platform during this time.

5. Plaintiff thus brings this putative class action on behalf of all persons or entities who were unable to transact with their Robinhood accounts, including (among other things) to exercise or hedge expiring options, short positions, or limit orders, during the period of March 2, 2020 through March 9, 2020, for class-wide damages and other equitable relief (among other relief).

## JURISDICTION & VENUE

6. This Court has subject-matter jurisdiction under 28 U.S.C. § 1332(d)(2) because the aggregate claims of all proposed class members are in excess of $5 million, exclusive of interest and costs, and there are more than 100 proposed class members, many of whom are citizens of a state different from Defendants.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391, because Robinhood resides in this District, transacts business in this District, and its principal place of business is located in this District. Additionally, a substantial part of the events, omissions, and acts giving rise to the claims herein occurred in this District.  Robinhood's Terms & Conditions

CLASS ACTION COMPLAINT

also select courts located in Santa Clara County as a venue for legal disputes.

8.    This Court has personal jurisdiction over Robinhood because it is headquartered in this District and conducted substantial business in this District.

## INTRADISTRICT ASSIGNMENT

9.    Assignment is proper to the San Francisco or Oakland divisions of this District under Civil Local Rule 3-2(c)-(d) because a substantial part of the events or omissions which give rise to this claim occurred in San Mateo County.

## PARTIES

10.    Plaintiff Bruce Queen is a citizen of Virginia.

11.    Defendant Robinhood Financial LLC is a Delaware corporation with its principal place of business at 85 Willow Road, Menlo Park, California 94025. It is a wholly-owned subsidiary of Robinhood Markets. Robinhood Financial is registered as a broker-dealer with the U.S. Securities & Exchange Commission. Defendant Robinhood Financial acts as an introducing broker and has a clearing arrangement with its affiliate, Defendant Robinhood Securities.

12.    Defendant Robinhood Securities, LLC is a Delaware corporation with its principal place of business at 85 Willow Road, Menlo Park, California 94025. It is a wholly owned subsidiary of Defendant Robinhood Markets. Defendant Robinhood Securities is registered as a broker-dealer with the SEC. Defendant Robinhood Securities acts as a clearing broker and clears trades introduced by its affiliate Defendant Robinhood Financial.

13.    Defendant Robinhood Markets, Inc. is a Delaware corporation with its principal place of business at 85 Willow Road, Menlo Park, California 94025. Defendant Robinhood Markets is the corporate parent of Defendants Robinhood Financial and Robinhood Securities.

## FACTUAL ALLEGATIONS

14.    Robinhood has grown substantially since its start in 2013. The firm raised $323 million in funding in 2019 at a $7.6 billion valuation. With its marketing geared primarily towards younger investors, Robinhood now claims over 10 million users of its trading app.

15.    Robinhood markets itself as being "reliable by building our systems from the

CLASS ACTION COMPLAINT

Provided by CourtAlert

ground up." Investors rely upon this technology to allow them to "trade in real time" as advertised by Robinhood.

16.     On Monday, March 2, 2020, Robinhood's platform began experiencing technical problems, causing many users to miss out on the then-biggest one-day point gain in Dow history. Plaintiff and others customers were unable to trade the securities in their accounts for a period of over sixteen hours.

17.     On Tuesday, March 3, 2020, a Robinhood spokesperson admitted that the cause of the March 2 outage was "instability in a part of our infrastructure that allows our systems to communicate with each other."

18.     Robinhood's system was again offline on March 3, 2020, for approximately 3 hours.

19.     Later, in a post on Robinhood's website titled "An Update from Robinhood's Founders," Robinhood's founders and co-CEOs stated that the cause of the March 3 outage was "stress on our infrastructure— which struggled with unprecedented load," caused by, among other things, "record volume" of trades.

20.     The next week, on March 9, 2020, Robinhood experienced yet another major outage, with customers unable to buy or sell their securities on the public markets. This coincided with a dismal day for stocks, as the Dow Jones Industrial Average tanked 2,000 points, and the Nasdaq Composite fell 7.3%.

21.     Federal and state securities laws state, securities industry rules require, and industry best practices demand, that brokerage firms with online trading services provide customers with best execution of trades, as well as adequate operational capability to handle customer trading volume.

22.     In particular, the Financial Industry Regulatory Authority ("FINRA"), which governs brokers like Robinhood, requires that brokers "must make every effort to execute a marketable customer order that it receives fully and promptly."

23.     Robinhood breached these obligations and caused its customers substantial losses due to its own negligence and failure to maintain adequate infrastructure when it failed

CLASS ACTION COMPLAINT

Provided by CourtAlert                                                                    www.CourtAlert.com

1    to respond adequately—or at all— to trading.

2        24.    This latest misconduct appears to be part of a pattern of a failure to meet such

3    obligations to customers.

4        25.    In fact, for many years, Robinhood has promoted its ability to trade as a benefit

5    to customers that sets it apart from the vast majority of introducing firms, which rely on third-

6    party clearing firms to process trades.  According to Robinhood Securities, its business model

7    allows the firm to "cut more fees and made Robinhood faster and more reliable by rebuilding

8    our systems from the ground up."

9        26.    But Robinhood has been found to be unreliable.

10       27.    For example, in December 2018, customers trading in options faced similar

11   outages and incurred significant trading losses. After the December 2018 outage, Robinhood

12   offered access to its premium service free for three months to affected customers.

13       28.    More recently, on December 19, 2019, FINRA announced that it had fined

14   Robinhood $1.25 million for best-execution violations related to its customers' equity orders

15   and related supervisory failures that spanned from October 2016 to November 2017. The

16   settlement requires Robinhood to retain an independent consultant to review stock trading

17   procedures and mechanisms.

18       29.    Plaintiff Queen entered into a Customer Agreement in order to use Robinhood's

19   online trading systems.

20       30.    Plaintiff Queen bought put contracts through Robinhood's platform on Friday,

21   February 28, 2020, and submitted a sell order for these contracts on Monday, March 2.

22   However, he was unable to access the sell order throughout the day, and the transaction was

23   cancelled by Robinhood the morning of March 3, forcing Plaintiff to sell his contracts at a

24   lower price on March 3.

25       31.    No proceeds of these transactions entered Plaintiff Queen's account. Instead, he

26   incurred a monetary loss.

27       32.    Plaintiff Queen relied on Robinhood to perform pursuant to its Customer

28   Agreement and provide the contracted for financial services.

33.     As a result of the outages, Plaintiff was unable to mitigate losses in his Robinhood account and suffered significant losses.

## CLASS ACTION ALLEGATIONS

34.     Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of himself and the following proposed class, within which the term "Outages" is defined to include Robinhood's total outages on March 2, 2020, March 3, 2020, and March 9, 2020:

> *All Robinhood customers within the United States who were not able to execute trades on securities or change limit orders during the Outages and incurred financial losses.*

35.     Excluded from the proposed class are Defendants; any affiliate, parent, or subsidiary of Defendants; any entity in which any Defendant has a controlling interest; any officer, director, or employee of Defendants; any successor or assign of any Defendant; anyone employed by counsel in this action; any judge to whom this case is assigned and his or her spouse; and members of the judge's staff.

36.     **Numerosity.** Robinhood has millions of customers.  Although the precise number of proposed class members is presently unknown to Plaintiff, there are likely thousands of proposed class members based on publicly available news reports.  Proposed class members are thus too numerous to practically join in a single action.  Class members may be notified of the pendency of this action by reference to Robinhood's records, or by other alternative means.

37.     **Commonality and Predominance.** Common questions of law and fact exist as to all proposed class members and predominate over questions affecting only individual class members.  These common questions include:

> a.     Whether Robinhood's technology was inadequate to handle reasonable consumer demand;
>
> b.     Whether Robinhood failed to provide contingencies to customers to execute timely trades in the event of an outage;
>
> c.     Whether Robinhood violated FINRA Rules 4370 and 5310;

CLASS ACTION COMPLAINT

Provided by CourtAlert                                                      www.CourtAlert.com

d.   Whether Robinhood violated state consumer protection laws in failing to disclose that its technology-based financial services were inadequate and unable to perform for substantial periods of time;

e.   Whether Robinhood was in breach of its legal, regulatory, and licensing requirements by failing to provide adequate access to financial services in a timely manner;

f.   Whether Robinhood was in breach of its contracts and/or the implied covenant of good faith and fair dealing in connection with its failure to provide financial services in a timely manner;

g.   Whether Robinhood was negligent or grossly negligent by failing to provide financial services in a timely manner due to its substandard and inadequate technology platform;

h.   Whether Robinhood breached its fiduciary duties to customers by failing to provide adequate access to financial services in a timely manner;

i.   Whether Robinhood was unjustly enriched by its conduct; and

j.   Whether Plaintiff and the other proposed class members were injured by Robinhood's conduct, and if so, the appropriate class-wide measure of damages, restitution, and other appropriate relief, including injunctive relief.

38.   **Typicality.** Plaintiff's claims are typical of those of the claims of the proposed class because Plaintiff and proposed class members all sustained damages from the Defendants' wrongful conduct in a substantially identical manner, giving rise to substantially the same claims.

39.   **Adequacy.** Plaintiff is an adequate representative of the proposed class because his interests do not conflict with the interests of the members of the class he proposes to represent.  Plaintiff has retained counsel experienced in class action securities litigation, and who will prosecute this action vigorously on class members' behalf..

40.   **Superiority.** A class action is superior to other available means for the fair and

CLASS ACTION COMPLAINT

Case 3:20-cv-02345-DMS Document 112 Filed 03/25/22 PageID.811 Page 213 of 304

efficient adjudication of this dispute.  The injury suffered by each class member, while meaningful on an individual basis, is not of such magnitude as to make the prosecution of individual actions against Robinhood economically feasible.  Even if class members themselves could afford such individualized litigation, the court system could not.  In addition to the burden and expense of managing many actions arising from the defect, individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties and the court system presented by the legal and factual issues of the case.  By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

41.    Additionally, the proposed class may be certified because:

    a.    The prosecution of separate actions by the individual members of the proposed class would create a risk of inconsistent adjudications, which could establish incompatible standards of conduct for Robinhood;

    b.    The prosecution of individual actions could result in adjudications, which as a practical matter, would be dispositive of the interests of nonparty class members or which would substantially impair their ability to protect their interests; and

    c.    Robinhood has acted or refused to act on grounds generally applicable to the proposed class, thereby making appropriate final and injunctive relief with respect to members of the proposed class as a whole.

**FIRST CAUSE OF ACTION**

**Breach of Contract**

42.    Plaintiff incorporates the above allegations by reference.

43.    As set forth above, Plaintiff and proposed class members entered into binding and enforceable contracts with Robinhood.

44.    Plaintiff and proposed class members gave consideration that was fair and reasonable, and performed all conditions, covenants, and promises required under their

CLASS ACTION COMPLAINT

Provided by CourtAlert

agreements with Robinhood.

45.     Robinhood materially breached the terms of these contracts with Plaintiff and proposed class members by, among other things:

  a.    Failing to disclose that its financial services platform was not adequately built or maintained such that it could not reliably provide financial services;

  b.    Failing to provide financial services during the outages because it lacked infrastructure and systems to ensure that it could perform pursuant to its contracts with Plaintiff and proposed class members;

  c.    Failing to provide an alternate means for customers to place timely trades in the event its platform was not reliably providing financial services;

  d.    Failing to execute trades and other requested customer actions promptly and fully (as also required by FINRA Rule 5310); and

  e.    Failing to comply with all applicable legal, regulatory, and licensing requirements.

46.     As a result of Robinhood's breach of contract, Plaintiff and proposed class members suffered actual damages and did not receive the full benefit of their bargain.

47.     Accordingly, Plaintiff and proposed class members are entitled to damages and/or restitution in an amount to be proven at trial.

## SECOND CAUSE OF ACTION

### Breach of the Implied Covenant of Good Faith and Fair Dealing

48.     Plaintiff incorporates the above allegations by reference.

49.     As set forth above, Plaintiff and proposed class members entered into binding and enforceable contracts with Robinhood.

50.     Under common law, a covenant of good faith and fair dealing is implied into every contract requiring all parties to act in good faith, make reasonable efforts to perform their contractual obligations (both explicit and fairly implied), and not impair the rights of the other parties to receive their rights, benefits, and reasonable expectations under the contract.

CLASS ACTION COMPLAINT

Provided by CourtAlert                                                                                      www.CourtAlert.com

51. Robinhood violated the covenant of good faith and fair dealing implied in its contracts with Plaintiff and proposed class members by:

    a.    Failing to disclose that its financial services platform was not adequately built or maintained such that it could not reliably provide financial services;

    b.    Failing to provide financial services during the outages because it lacked infrastructure and systems to ensure that it could perform pursuant to its contracts with Plaintiff and proposed class members;

    c.    Failing to provide an alternate means for customers to place timely trades in the event its platform was not reliably providing financial services;

    d.    Failing to execute trades and other requested customer actions promptly and fully (as also required by FINRA Rule 5310); and

    e.    Failing to comply with all applicable legal, regulatory, and licensing requirements.

52. Plaintiff and proposed class members gave consideration that was fair and reasonable, and performed all conditions, covenants, and promises required under their agreements with Robinhood.

53. As a result of Robinhood's breach of the implied covenant of good faith and fair dealing, Plaintiff and proposed class members are entitled to damages and/or restitution in an amount to be proven at trial.

**THIRD CAUSE OF ACTION**

**Breach of Fiduciary Duty**

54. Plaintiff incorporates the above allegations by reference.

55. As a licensed provider of financial services, Robinhood at all times relevant herein was a fiduciary to Plaintiff and proposed class members and owed them the highest good faith and integrity in performing its financial services on their behalf.

56. Robinhood breached its fiduciary duties to Plaintiff and proposed class members by:

CLASS ACTION COMPLAINT

Provided by CourtAlert                                                                                       www.CourtAlert.com

a.   Failing to disclose that its financial services platform was not adequately built or maintained such that it could not reliably provide financial services;

b.   Failing to provide financial services during the outages because it lacked infrastructure and systems to ensure that it could perform pursuant to its contracts with Plaintiff and proposed class members;

c.   Failing to provide an alternate means for customers to place timely trades in the event its platform was not reliably providing financial services;

d.   Failing to execute trades and other requested customer actions promptly and fully (as also required by FINRA Rule 5310); and

e.   Failing to comply with all applicable legal, regulatory, and licensing requirements.

57.   Robinhood's conduct has caused Plaintiff and proposed class members harm, losses, and damages and continues to expose them to harm because Robinhood continues to breach its fiduciary duties. These losses reflect damages to Plaintiff and proposed class members in an amount to be determined at trial or separate proceedings as necessary.

## FOURTH CAUSE OF ACTION

### Negligence

58.   Plaintiff incorporates the above allegations by reference.

59.   Robinhood owed Plaintiff and proposed class members a duty to exercise reasonable care in executing trades and other requested customer actions in a full and prompt manner.

60.   Robinhood breached this duty by:

a.   Failing to disclose that its financial services platform was not adequately built or maintained such that it could not reliably provide financial services;

b.   Failing to provide financial services during the outages because it lacked infrastructure and systems to ensure that it could perform pursuant to its

CLASS ACTION COMPLAINT

contracts with Plaintiff and proposed class members;

    c.    Failing to provide an alternate means for customers to place timely trades in the event its platform was not reliably providing financial services;

    d.    Failing to execute trades and other requested customer actions promptly and fully (as also required by FINRA Rule 5310); and

    e.    Failing to comply with all applicable legal, regulatory, and licensing requirements.

61. As a direct, reasonably foreseeable, and proximate result of Robinhood's failure to exercise reasonable care, Plaintiff and proposed class members have suffered damages that they could not have prevented through the exercise of reasonable diligence.

62. Plaintiff and proposed class members seek monetary damages for these harms and other recovery as allowed by law.

## FIFTH CAUSE OF ACTION

### Gross Negligence

63. Plaintiff incorporates the above allegations by reference.

64. Robinhood owed Plaintiff and proposed class members a duty to exercise reasonable care in executing trades and other requested customer actions in a complete and timely manner.

65. Robinhood breached this duty by:

    a.    Failing to disclose that its financial services platform was not adequately built or maintained such that it could not reliably provide financial services;

    b.    Failing to provide financial services during the outages because it lacked infrastructure and systems to ensure that it could perform pursuant to its contracts with Plaintiff and proposed class members;

    c.    Failing to provide an alternate means for customers to place timely trades in the event its platform was not reliably providing financial services;

    d.    Failing to execute trades and other requested customer actions promptly

CLASS ACTION COMPLAINT

Provided by CourtAlert                                                                    www.CourtAlert.com

and fully (as also required by FINRA Rule 5310); and

e.    Failing to comply with all applicable legal, regulatory, and licensing requirements.

66.    Robinhood's breaches of its duties of care to Plaintiff and proposed class members constitutes gross negligence because it constitutes an extreme departure from what a reasonably careful entity in the same situation would do to prevent foreseeable harm to Plaintiff and proposed class members.  Robinhood acted willfully, wantonly, and with conscious and reckless disregard for the rights and interests of Plaintiff and proposed class members.  Its acts and omissions had a great probability of causing considerable harm, and in fact did.

67.    As a direct, reasonably foreseeable, and proximate result of Robinhood's failure to exercise reasonable care, Plaintiff and proposed class members have suffered damages that they could not have prevented through the exercise of reasonable diligence.

68.    Plaintiff and proposed class members seek monetary damages for these harms, including punitive damages, and other recovery as allowed by law.

## SIXTH CAUSE OF ACTION

### Violation of California's Consumers Legal Remedies Act,

### Cal. Civ. Code §§ 1750, *et seq.*

69.    Plaintiff incorporates the above allegations by reference.

70.    Robinhood is a "person" within the meaning of Civil Code §§ 1761 and 1770, and it has provided "goods" or "services" within the meaning of Civil Code §§ 1761 and 1770.

71.    Plaintiff and members of the proposed class are "consumers" within the meaning of Civil Code §§ 1761 and 1770, and have engaged in a "transaction" within the meaning of Civil Code §§ 1761 and 1770.

72.    Robinhood's acts and practices in connection with its deficient financial services violate § 1770 of the Consumers Legal Remedies Act for at least the following reasons:

a.    Robinhood represents that its goods or services have characteristics, uses, or benefits that they do not have;

CLASS ACTION COMPLAINT

b.       Robinhood advertises its goods or services with intent not to sell them as advertised;

c.       Robinhood represents that its goods or services are of a particular standard, quality, or grade when they are not;

d.       Robinhood represents that a transaction conferred or involved rights, remedies, or obligations which they do not; and

e.       Robinhood represents that its goods or services have been supplied in accordance with a previous representation when they have not.

73.       As described above, Robinhood knowingly concealed and failed to disclose that its platform was not adequately built or maintained to handle reasonable consumer demand such that it failed to execute trades and other actions requested by customers in a full and prompt manner.  As Robinhood knew, had it disclosed these facts, Plaintiff, proposed class members, and reasonable consumers would not have used Robinhood's services, and thus Robinhood concealed these facts with the intent to profit from its nondisclosure.

74.       Had Robinhood not concealed and instead adequately disclosed these issues, Plaintiff, members of the proposed class, and reasonable consumers would not have purchased or would have paid less for Robinhood's financial services.

75.       Pursuant to the provisions of Cal. Civ. Code § 1782(a), Plaintiff will send a notice letter to Robinhood to provide it with the opportunity to correct its business practices.  Should Robinhood decline to reform its conduct in response to the demand and this complaint, Plaintiff will amend this complaint to add a demand for damages.

76.       Pursuant to Cal. Civ. Code § 1780, Plaintiff seeks an order enjoining Robinhood from the unlawful practices described above, a declaration that Robinhood's conduct violates the Consumers Legal Remedies Act, and reasonable attorney's fees and costs of litigation.

**SEVENTH CAUSE OF ACTION**

**Violation of California's Unfair Competition Law,**

**Cal. Bus. & Prof. Code §§ 17200, *et seq*.**

77.       Plaintiff incorporates the above allegations by reference.

78.    Robinhood has violated and continues to violate California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.*, which prohibits unlawful, unfair, and fraudulent business acts or practices.

79.    Robinhood's acts and practices, as alleged in this complaint, constitute unlawful, unfair, and fraudulent business practices under the Unfair Competition Law.  In particular, Robinhood knowingly failed to disclose that its platform was not adequately built or maintained to handle reasonable consumer demand, failed to provide an alternative means for customers to execute trades, and failed to execute trades and other actions requested by customers in a full and prompt manner.

80.    Robinhood's business acts and practices are unlawful in that they violate the Consumers Legal Remedies Act, Cal. Civil Code § 1750, *et seq.* and FINRA Rule 5310 (which requires execution of orders fully and promptly).

81.    Robinhood's acts and practices also constitute fraudulent practices in that they are likely to deceive a reasonable consumer.  As described above, Robinhood knowingly concealed and failed to disclose that its platform was not adequately built or maintained to handle reasonable consumer demand such that it failed to exercise trades and other actions requested by customers in a complete and timely manner.  As Robinhood knew, had it disclosed these facts, Plaintiff, proposed class members, and reasonable consumers would not have used Robinhood's services, and thus Robinhood concealed these facts with the intent to profit from its nondisclosure.

82.    Robinhood's conduct also constitutes an unfair practice within the meaning of the Unfair Competition Law because:

a.    The gravity of harm to Plaintiff and proposed class members from Robinhood's acts and practices far outweighs any legitimate utility of that conduct;

b.    Robinhood's conduct is immoral, unethical, oppressive, unscrupulous, or substantially injurious to Plaintiff and members of the proposed class; and

CLASS ACTION COMPLAINT

Provided by CourtAlert                                                                    www.CourtAlert.com

c.     Robinhood's conduct undermines or violates the stated policies underlying the Consumers Legal Remedies Act, FINRA regulations, and established public policies intended to regulate the fair and ethical sale of goods and services, including protecting consumers against unfair and sharp business practices and promoting a basic level of honesty and reliability in the marketplace.

83.    As a direct and proximate result of Robinhood's business practices, Plaintiff and proposed class members suffered injury in fact and lost money or property.

84.    Plaintiff and proposed class members are entitled to restitution, injunctive relief, and reasonable attorney's fees and costs.

## EIGHTH CAUSE OF ACTION

### Unjust Enrichment

85.    Plaintiff incorporates the above allegations by reference.

86.    Robinhood has obtained unjust benefits from Plaintiff and proposed class members resulting in inequity.

87.    Robinhood engaged in unfair, fraudulent, and unjust conduct, including:

a.    Failing to disclose that its financial services platform was not adequately built or maintained such that it could not reliably provide financial services;

b.    Failing to provide financial services during the outages because it lacked infrastructure and systems to ensure that it could perform pursuant to its contracts with Plaintiff and proposed class members;

c.    Failing to provide an alternate means for customers to place timely trades in the event its platform was not reliably providing financial services;

d.    Failing to execute trades and other requested customer actions promptly and fully (as also required by FINRA Rule 5310); and

e.    Failing to comply with all applicable legal, regulatory, and licensing requirements.

CLASS ACTION COMPLAINT

88.     By its deceptive, misleading, and improper conduct alleged above, Robinhood obtained money from and was unjustly enriched at the expense of Plaintiff and proposed class members.

89.     It would be inequitable and unconscionable for Robinhood to retain the profits, benefits, and other compensation obtained through its deceptive, misleading, and improper conduct.

90.     Plaintiff and proposed class members are entitled to restitution or disgorgement of, or the imposition of a construction trust upon, all profits, benefits and other compensation obtained by Robinhood through its deceptive, misleading, and improper conduct.

## PRAYER FOR RELIEF

Plaintiff requests that the Court enter a judgment awarding the following relief:

a.     An order certifying the proposed class and appointing Plaintiff's counsel to represent the class;

b.     An order awarding Plaintiff and proposed class members their actual damages, punitive damages, and any other form of monetary relief provided by law, except that no monetary relief is presently sought for violations of the Consumers Legal Remedies Act;

c.     An order awarding Plaintiff and proposed class members restitution, disgorgement, or other equitable relief as the Court deems proper, except that no monetary restitution is presently sought for violations of the Consumers Legal Remedies Act;

d.     An order awarding Plaintiff and proposed class members pre-judgment and post-judgment interest as allowed under the law;

e.     An order awarding Plaintiff and proposed class members reasonable attorney's fees and costs of suit, including expert witness fees; and

f.     An order awarding such other and further relief as this Court may deem just and proper.

CLASS ACTION COMPLAINT

**JURY DEMAND**

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff hereby demands a trial by jury for all issues so triable under the law.

DATED: March 25, 2020                    Respectfully submitted,

                                         **GIBBS LAW GROUP LLP**


                                         By:    */s/ Eric H. Gibbs*

                                         Eric H. Gibbs
                                         David K. Stein
                                         Kyla J. Gibboney
                                         505 14th Street, Suite 1110
                                         Oakland, California 94612
                                         Telephone: (510) 350-9700
                                         Facsimile: (510) 350-9701
                                         ehg@classlawgroup.com
                                         ds@classlawgroup.com
                                         kjg@classlawgroup.com

                                         Scott Silver (*pro hac vice* to be submitted)
                                         **SILVER LAW GROUP**
                                         11780 W. Sample Road
                                         Coral Springs, FL 33065
                                         Telephone: (954) 755-4799
                                         Facsimile: (954) 755-4684
                                         ssilver@silverlaw.com

                                         *Attorneys for Plaintiff*

CLASS ACTION COMPLAINT

# Exhibit 7

1  Eric H. Gibbs (SBN 178658)
2  Andre Mura (SBN 298541)
   Steve Lopez (SBN 300540)
3  **GIBBS LAW GROUP LLP**
   505 14th Street, Suite 1110
4  Oakland, California 94612
5  Telephone: (510) 350-9700
   Facsimile: (510) 350-9701
6  ehg@classlawgroup.com
7  amm@classlawgroup.com
   sal@classlawgroup.com
8
9  Scott Silver (*pro hac vice* to be submitted)
   **SILVER LAW GROUP**
10 11780 W. Sample Road
   Coral Springs, FL 33065
11 Telephone: (954) 755-4799
12 Facsimile: (954) 755-4684
   ssilver@silverlaw.com
13
14 *Attorneys for Plaintiff*

15          **UNITED STATES DISTRICT COURT**
16          **NORTHERN DISTRICT OF CALIFORNIA**

17 BRYAN METZLER, individually and on      Case No. _____
   behalf of all others similarly situated,
18                                          **CLASS ACTION COMPLAINT**
19          Plaintiff,
                                            **DEMAND FOR JURY TRIAL**
20 v.
21
   ROBINHOOD FINANCIAL LLC,
22 ROBINHOOD SECURITIES, LLC, and
   ROBINHOOD MARKETS, INC.,
23
24          Defendants.
25
26
27
28

                    CLASS ACTION COMPLAINT

## INTRODUCTION

1.      The Defendant Robinhood entities (collectively, "Robinhood") are an online brokerage firm founded in 2013 that provide users with the ability to trade stocks, funds, and options commission-free. Robinhood's customers "trade in real time" through the firm's website, app or call-in center.

2.      On March 2, 2020, March 3, 2020, and March 9, 2020, Robinhood experienced total outages of its operating systems, preventing customers from making securities trades through its website, app, or call center. Consequently, customers could not place trade orders during the outages.

3.      The outages occurred during the then-biggest one-day point gain in Dow history—but also during the advent of the recent stock market crash of March 2020.

4.      Plaintiff Bryan Metzler and other Robinhood customers suffered financial losses because they could not execute transactions through the Robinhood trading platform during this time.

5.      Plaintiff thus brings this putative class action on behalf of all persons or entities who were unable to transact with their Robinhood accounts, including (among other things) to exercise or hedge expiring options, short positions, or limit orders, during the period of March 2, 2020 through March 9, 2020, for class-wide damages and other equitable relief (among other relief).

## JURISDICTION & VENUE

6.      This Court has subject-matter jurisdiction under 28 U.S.C. § 1332(d)(2) because the aggregate claims of all proposed class members are in excess of $5 million, exclusive of interest and costs, and there are more than 100 proposed class members, many of whom are citizens of a state different from Defendants.

7.      Venue is proper in this District pursuant to 28 U.S.C. § 1391, because Robinhood resides in this District, transacts business in this District, and its principal place of business is located in this District. Additionally, a substantial part of the events, omissions, and acts giving rise to the claims herein occurred in this District.  Robinhood's Terms & Conditions

CLASS ACTION COMPLAINT

also select courts located in Santa Clara County as a venue for legal disputes.

8.     This Court has personal jurisdiction over Robinhood because it is headquartered in this District and conducted substantial business in this District.

## INTRADISTRICT ASSIGNMENT

9.     Assignment is proper to the San Francisco or Oakland divisions of this District under Civil Local Rule 3-2(c)-(d) because a substantial part of the events or omissions which give rise to this claim occurred in San Mateo County.

## PARTIES

10.     Plaintiff Bryan Metzler is a citizen and resident of Riverton, Utah.

11.     Defendant Robinhood Financial LLC is a Delaware corporation with its principal place of business at 85 Willow Road, Menlo Park, California 94025. It is a wholly-owned subsidiary of Robinhood Markets. Robinhood Financial is registered as a broker-dealer with the U.S. Securities & Exchange Commission. Defendant Robinhood Financial acts as an introducing broker and has a clearing arrangement with its affiliate, Defendant Robinhood Securities.

12.     Defendant Robinhood Securities, LLC is a Delaware corporation with its principal place of business at 85 Willow Road, Menlo Park, California 94025. It is a wholly owned subsidiary of Defendant Robinhood Markets. Defendant Robinhood Securities is registered as a broker-dealer with the SEC. Defendant Robinhood Securities acts as a clearing broker and clears trades introduced by its affiliate Defendant Robinhood Financial.

13.     Defendant Robinhood Markets, Inc. is a Delaware corporation with its principal place of business at 85 Willow Road, Menlo Park, California 94025. Defendant Robinhood Markets is the corporate parent of Defendants Robinhood Financial and Robinhood Securities.

## FACTUAL ALLEGATIONS

14.     Robinhood has grown substantially since its start in 2013. The firm raised $323 million in funding in 2019 at a $7.6 billion valuation. With its marketing geared primarily towards younger investors, Robinhood now claims over 10 million users of its trading app.

15.     Robinhood markets itself as being "reliable by building our systems from the

CLASS ACTION COMPLAINT

ground up." Investors rely upon this technology to allow them to "trade in real time" as advertised by Robinhood.

16.    On Monday, March 2, 2020, Robinhood's platform began experiencing technical problems, causing many users to miss out on the then-biggest one-day point gain in Dow history. Plaintiff and others customers were unable to trade the securities in their accounts for a period of over sixteen hours.

17.    On Tuesday, March 3, 2020, a Robinhood spokesperson admitted that the cause of the March 2 outage was "instability in a part of our infrastructure that allows our systems to communicate with each other."

18.    Robinhood's system was again offline on March 3, 2020, for approximately 3 hours.

19.    Later, in a post on Robinhood's website titled "An Update from Robinhood's Founders," Robinhood's founders and co-CEOs stated that the cause of the March 3 outage was "stress on our infrastructure— which struggled with unprecedented load," caused by, among other things, "record volume" of trades.

20.    The next week, on March 9, 2020, Robinhood experienced yet another major outage, with customers unable to buy or sell their securities on the public markets. This coincided with a dismal day for stocks, as the Dow Jones Industrial Average tanked 2,000 points, and the Nasdaq Composite fell 7.3%.

21.    Federal and state securities laws state, securities industry rules require, and industry best practices demand, that brokerage firms with online trading services provide customers with best execution of trades, as well as adequate operational capability to handle customer trading volume.

22.    In particular, the Financial Industry Regulatory Authority ("FINRA"), which governs brokers like Robinhood, requires that brokers "must make every effort to execute a marketable customer order that it receives fully and promptly."

23.    Robinhood breached these obligations and caused its customers substantial losses due to its own negligence and failure to maintain adequate infrastructure when it failed

CLASS ACTION COMPLAINT

Provided by CourtAlert                                                                    www.CourtAlert.com

1    to respond adequately—or at all— to trading.

2          24.    This latest misconduct appears to be part of a pattern of a failure to meet such

3    obligations to customers.

4          25.    In fact, for many years, Robinhood has promoted its ability to trade as a benefit

5    to customers that sets it apart from the vast majority of introducing firms, which rely on third-

6    party clearing firms to process trades.  According to Robinhood Securities, its business model

7    allows the firm to "cut more fees and made Robinhood faster and more reliable by rebuilding

8    our systems from the ground up."

9          26.    But Robinhood has been found to be unreliable.

10         27.    For example, in December 2018, customers trading in options faced similar

11   outages and incurred significant trading losses. After the December 2018 outage, Robinhood

12   offered access to its premium service free for three months to affected customers.

13         28.    More recently, on December 19, 2019, FINRA announced that it had fined

14   Robinhood $1.25 million for best-execution violations related to its customers' equity orders

15   and related supervisory failures that spanned from October 2016 to November 2017. The

16   settlement requires Robinhood to retain an independent consultant to review stock trading

17   procedures and mechanisms.

18         29.    Plaintiff Metzler entered into a Customer Agreement in order to use

19   Robinhood's online trading systems.

20         30.    Plaintiff Metzler bought put contracts through Robinhood's platform.  He

21   submitted sell orders for these contracts on Monday, March 2.  However, he was unable to

22   access the sell orders throughout the day, and the transactions were ultimately cancelled by

23   Robinhood, forcing Plaintiff to sell his contracts at a lower price.  As a result, Plaintiff Metzler

24   earned significantly less than he would have made had the transactions not been cancelled.

25         31.    Additionally, Plaintiff Metzler had a put option order that he attempted to

26   cancel.  However, Robinhood's platform would not allow him to do so.  As a result, the order

27   became effective, causing him to incur a monetary loss on the transaction.

28         32.    Plaintiff Metzler relied on Robinhood to perform pursuant to its Customer

CLASS ACTION COMPLAINT

Agreement and provide the contracted for financial services.

33. As a result of the outages, Plaintiff suffered significant losses.

<b><u>CLASS ACTION ALLEGATIONS</u></b>

34. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of himself and the following proposed class, within which the term "Outages" is defined to include Robinhood's total outages on March 2, 2020, March 3, 2020, and March 9, 2020:

> *All Robinhood customers within the United States who were not able to execute trades on securities or change limit orders during the Outages and incurred financial losses.*

35. Excluded from the proposed class are Defendants; any affiliate, parent, or subsidiary of Defendants; any entity in which any Defendant has a controlling interest; any officer, director, or employee of Defendants; any successor or assign of any Defendant; anyone employed by counsel in this action; any judge to whom this case is assigned and his or her spouse; and members of the judge's staff.

36. **Numerosity.** Robinhood has millions of customers.  Although the precise number of proposed class members is presently unknown to Plaintiff, there are likely thousands of proposed class members based on publicly available news reports.  Proposed class members are thus too numerous to practically join in a single action.  Class members may be notified of the pendency of this action by reference to Robinhood's records, or by other alternative means.

37. **Commonality and Predominance.** Common questions of law and fact exist as to all proposed class members and predominate over questions affecting only individual class members.  These common questions include:

  a. Whether Robinhood's technology was inadequate to handle reasonable consumer demand;

  b. Whether Robinhood failed to provide contingencies to customers to execute timely trades in the event of an outage;

  c. Whether Robinhood violated FINRA Rules 4370 and 5310;

5

CLASS ACTION COMPLAINT

d.   Whether Robinhood violated state consumer protection laws in failing to disclose that its technology-based financial services were inadequate and unable to perform for substantial periods of time;

e.   Whether Robinhood was in breach of its legal, regulatory, and licensing requirements by failing to provide adequate access to financial services in a timely manner;

f.   Whether Robinhood was in breach of its contracts and/or the implied covenant of good faith and fair dealing in connection with its failure to provide financial services in a timely manner;

g.   Whether Robinhood was negligent or grossly negligent by failing to provide financial services in a timely manner due to its substandard and inadequate technology platform;

h.   Whether Robinhood breached its fiduciary duties to customers by failing to provide adequate access to financial services in a timely manner;

i.   Whether Robinhood was unjustly enriched by its conduct; and

j.   Whether Plaintiff and the other proposed class members were injured by Robinhood's conduct, and if so, the appropriate class-wide measure of damages, restitution, and other appropriate relief, including injunctive relief.

38.   **Typicality.** Plaintiff's claims are typical of those of the claims of the proposed class because Plaintiff and proposed class members all sustained damages from the Defendants' wrongful conduct in a substantially identical manner, giving rise to substantially the same claims.

39.   **Adequacy.** Plaintiff is an adequate representative of the proposed class because his interests do not conflict with the interests of the members of the class he proposes to represent.  Plaintiff has retained counsel experienced in class action securities litigation, and who will prosecute this action vigorously on class members' behalf..

40.   **Superiority.** A class action is superior to other available means for the fair and

CLASS ACTION COMPLAINT

Provided by CourtAlert                                                                                          www.CourtAlert.com

1  efficient adjudication of this dispute.  The injury suffered by each class member, while

2  meaningful on an individual basis, is not of such magnitude as to make the prosecution of

3  individual actions against Robinhood economically feasible.  Even if class members

4  themselves could afford such individualized litigation, the court system could not.  In

5  addition to the burden and expense of managing many actions arising from the defect,

6  individualized litigation presents a potential for inconsistent or contradictory judgments.

7  Individualized litigation increases the delay and expense to all parties and the court system

8  presented by the legal and factual issues of the case.  By contrast, a class action presents far

9  fewer management difficulties and provides the benefits of single adjudication, economy of

10  scale, and comprehensive supervision by a single court.

11         41.    Additionally, the proposed class may be certified because:

12            a.    The prosecution of separate actions by the individual members of the

13                  proposed class would create a risk of inconsistent adjudications, which

14                  could establish incompatible standards of conduct for Robinhood;

15            b.    The prosecution of individual actions could result in adjudications, which

16                  as a practical matter, would be dispositive of the interests of nonparty

17                  class members or which would substantially impair their ability to

18                  protect their interests; and

19            c.    Robinhood has acted or refused to act on grounds generally applicable to

20                  the proposed class, thereby making appropriate final and injunctive relief

21                  with respect to members of the proposed class as a whole.

22                                    **FIRST CAUSE OF ACTION**

23                                      **Breach of Contract**

24         42.    Plaintiff incorporates the above allegations by reference.

25         43.    As set forth above, Plaintiff and proposed class members entered into binding

26  and enforceable contracts with Robinhood.

27         44.    Plaintiff and proposed class members gave consideration that was fair and

28  reasonable, and performed all conditions, covenants, and promises required under their

CLASS ACTION COMPLAINT

1    agreements with Robinhood.

2        45.    Robinhood materially breached the terms of these contracts with Plaintiff and

3    proposed class members by, among other things:

4            a.    Failing to disclose that its financial services platform was not adequately

5                  built or maintained such that it could not reliably provide financial

6                  services;

7            b.    Failing to provide financial services during the outages because it lacked

8                  infrastructure and systems to ensure that it could perform pursuant to its

9                  contracts with Plaintiff and proposed class members;

10           c.    Failing to provide an alternate means for customers to place timely trades

11                 in the event its platform was not reliably providing financial services;

12           d.    Failing to execute trades and other requested customer actions promptly

13                 and fully (as also required by FINRA Rule 5310); and

14           e.    Failing to comply with all applicable legal, regulatory, and licensing

15                 requirements.

16       46.    As a result of Robinhood's breach of contract, Plaintiff and proposed class

17   members suffered actual damages and did not receive the full benefit of their bargain.

18       47.    Accordingly, Plaintiff and proposed class members are entitled to damages

19   and/or restitution in an amount to be proven at trial.

20                              **SECOND CAUSE OF ACTION**

21              **Breach of the Implied Covenant of Good Faith and Fair Dealing**

22       48.    Plaintiff incorporates the above allegations by reference.

23       49.    As set forth above, Plaintiff and proposed class members entered into binding

24   and enforceable contracts with Robinhood.

25       50.    Under common law, a covenant of good faith and fair dealing is implied into

26   every contract requiring all parties to act in good faith, make reasonable efforts to perform

27   their contractual obligations (both explicit and fairly implied), and not impair the rights of the

28   other parties to receive their rights, benefits, and reasonable expectations under the contract.

CLASS ACTION COMPLAINT

Provided by CourtAlert                                                www.CourtAlert.com

51.     Robinhood violated the covenant of good faith and fair dealing implied in its contracts with Plaintiff and proposed class members by:

      a.     Failing to disclose that its financial services platform was not adequately built or maintained such that it could not reliably provide financial services;

      b.     Failing to provide financial services during the outages because it lacked infrastructure and systems to ensure that it could perform pursuant to its contracts with Plaintiff and proposed class members;

      c.     Failing to provide an alternate means for customers to place timely trades in the event its platform was not reliably providing financial services;

      d.     Failing to execute trades and other requested customer actions promptly and fully (as also required by FINRA Rule 5310); and

      e.     Failing to comply with all applicable legal, regulatory, and licensing requirements.

52.     Plaintiff and proposed class members gave consideration that was fair and reasonable, and performed all conditions, covenants, and promises required under their agreements with Robinhood.

53.     As a result of Robinhood's breach of the implied covenant of good faith and fair dealing, Plaintiff and proposed class members are entitled to damages and/or restitution in an amount to be proven at trial.

**THIRD CAUSE OF ACTION**

**Breach of Fiduciary Duty**

54.     Plaintiff incorporates the above allegations by reference.

55.     As a licensed provider of financial services, Robinhood at all times relevant herein was a fiduciary to Plaintiff and proposed class members and owed them the highest good faith and integrity in performing its financial services on their behalf.

56.     Robinhood breached its fiduciary duties to Plaintiff and proposed class members by:

CLASS ACTION COMPLAINT

a. Failing to disclose that its financial services platform was not adequately built or maintained such that it could not reliably provide financial services;

b. Failing to provide financial services during the outages because it lacked infrastructure and systems to ensure that it could perform pursuant to its contracts with Plaintiff and proposed class members;

c. Failing to provide an alternate means for customers to place timely trades in the event its platform was not reliably providing financial services;

d. Failing to execute trades and other requested customer actions promptly and fully (as also required by FINRA Rule 5310); and

e. Failing to comply with all applicable legal, regulatory, and licensing requirements.

57.     Robinhood's conduct has caused Plaintiff and proposed class members harm, losses, and damages and continues to expose them to harm because Robinhood continues to breach its fiduciary duties. These losses reflect damages to Plaintiff and proposed class members in an amount to be determined at trial or separate proceedings as necessary.

**FOURTH CAUSE OF ACTION**

**Negligence**

58.     Plaintiff incorporates the above allegations by reference.

59.     Robinhood owed Plaintiff and proposed class members a duty to exercise reasonable care in executing trades and other requested customer actions in a full and prompt manner.

60.     Robinhood breached this duty by:

a. Failing to disclose that its financial services platform was not adequately built or maintained such that it could not reliably provide financial services;

b. Failing to provide financial services during the outages because it lacked infrastructure and systems to ensure that it could perform pursuant to its

CLASS ACTION COMPLAINT

Provided by CourtAlert                                                                    www.CourtAlert.com

contracts with Plaintiff and proposed class members;

    c.    Failing to provide an alternate means for customers to place timely trades in the event its platform was not reliably providing financial services;

    d.    Failing to execute trades and other requested customer actions promptly and fully (as also required by FINRA Rule 5310); and

    e.    Failing to comply with all applicable legal, regulatory, and licensing requirements.

61.    As a direct, reasonably foreseeable, and proximate result of Robinhood's failure to exercise reasonable care, Plaintiff and proposed class members have suffered damages that they could not have prevented through the exercise of reasonable diligence.

62.    Plaintiff and proposed class members seek monetary damages for these harms and other recovery as allowed by law.

**FIFTH CAUSE OF ACTION**

**Gross Negligence**

63.    Plaintiff incorporates the above allegations by reference.

64.    Robinhood owed Plaintiff and proposed class members a duty to exercise reasonable care in executing trades and other requested customer actions in a complete and timely manner.

65.    Robinhood breached this duty by:

    a.    Failing to disclose that its financial services platform was not adequately built or maintained such that it could not reliably provide financial services;

    b.    Failing to provide financial services during the outages because it lacked infrastructure and systems to ensure that it could perform pursuant to its contracts with Plaintiff and proposed class members;

    c.    Failing to provide an alternate means for customers to place timely trades in the event its platform was not reliably providing financial services;

    d.    Failing to execute trades and other requested customer actions promptly

11

CLASS ACTION COMPLAINT

Provided by CourtAlert                                                                                                    www.CourtAlert.com

and fully (as also required by FINRA Rule 5310); and

e.     Failing to comply with all applicable legal, regulatory, and licensing requirements.

66.     Robinhood's breaches of its duties of care to Plaintiff and proposed class members constitutes gross negligence because it constitutes an extreme departure from what a reasonably careful entity in the same situation would do to prevent foreseeable harm to Plaintiff and proposed class members. Robinhood acted willfully, wantonly, and with conscious and reckless disregard for the rights and interests of Plaintiff and proposed class members. Its acts and omissions had a great probability of causing considerable harm, and in fact did.

67.     As a direct, reasonably foreseeable, and proximate result of Robinhood's failure to exercise reasonable care, Plaintiff and proposed class members have suffered damages that they could not have prevented through the exercise of reasonable diligence.

68.     Plaintiff and proposed class members seek monetary damages for these harms, including punitive damages, and other recovery as allowed by law.

**SIXTH CAUSE OF ACTION**

**Violation of California's Consumers Legal Remedies Act,**

**Cal. Civ. Code §§ 1750,** *et seq.*

69.     Plaintiff incorporates the above allegations by reference.

70.     Robinhood is a "person" within the meaning of Civil Code §§ 1761 and 1770, and it has provided "goods" or "services" within the meaning of Civil Code §§ 1761 and 1770.

71.     Plaintiff and members of the proposed class are "consumers" within the meaning of Civil Code §§ 1761 and 1770, and have engaged in a "transaction" within the meaning of Civil Code §§ 1761 and 1770.

72.     Robinhood's acts and practices in connection with its deficient financial services violate § 1770 of the Consumers Legal Remedies Act for at least the following reasons:

a.     Robinhood represents that its goods or services have characteristics, uses, or benefits that they do not have;

12

CLASS ACTION COMPLAINT

Provided by CourtAlert                                                                                                    www.CourtAlert.com

b.      Robinhood advertises its goods or services with intent not to sell them as advertised;

c.      Robinhood represents that its goods or services are of a particular standard, quality, or grade when they are not;

d.      Robinhood represents that a transaction conferred or involved rights, remedies, or obligations which they do not; and

e.      Robinhood represents that its goods or services have been supplied in accordance with a previous representation when they have not.

73.     As described above, Robinhood knowingly concealed and failed to disclose that its platform was not adequately built or maintained to handle reasonable consumer demand such that it failed to execute trades and other actions requested by customers in a full and prompt manner.  As Robinhood knew, had it disclosed these facts, Plaintiff, proposed class members, and reasonable consumers would not have used Robinhood's services, and thus Robinhood concealed these facts with the intent to profit from its nondisclosure.

74.     Had Robinhood not concealed and instead adequately disclosed these issues, Plaintiff, members of the proposed class, and reasonable consumers would not have purchased or would have paid less for Robinhood's financial services.

75.     Pursuant to the provisions of Cal. Civ. Code § 1782(a), Plaintiff will send a notice letter to Robinhood to provide it with the opportunity to correct its business practices.  Should Robinhood decline to reform its conduct in response to the demand and this complaint, Plaintiff will amend this complaint to add a demand for damages.

76.     Pursuant to Cal. Civ. Code § 1780, Plaintiff seeks an order enjoining Robinhood from the unlawful practices described above, a declaration that Robinhood's conduct violates the Consumers Legal Remedies Act, and reasonable attorney's fees and costs of litigation.

## SEVENTH CAUSE OF ACTION

### Violation of California's Unfair Competition Law,

### Cal. Bus. & Prof. Code §§ 17200, *et seq.*

77.     Plaintiff incorporates the above allegations by reference.

CLASS ACTION COMPLAINT

Provided by CourtAlert                                                                                    www.CourtAlert.com

78.     Robinhood has violated and continues to violate California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.*, which prohibits unlawful, unfair, and fraudulent business acts or practices.

79.     Robinhood's acts and practices, as alleged in this complaint, constitute unlawful, unfair, and fraudulent business practices under the Unfair Competition Law.  In particular, Robinhood knowingly failed to disclose that its platform was not adequately built or maintained to handle reasonable consumer demand, failed to provide an alternative means for customers to execute trades, and failed to execute trades and other actions requested by customers in a full and prompt manner.

80.     Robinhood's business acts and practices are unlawful in that they violate the Consumers Legal Remedies Act, Cal. Civil Code § 1750, *et seq.* and FINRA Rule 5310 (which requires execution of orders fully and promptly).

81.     Robinhood's acts and practices also constitute fraudulent practices in that they are likely to deceive a reasonable consumer.  As described above, Robinhood knowingly concealed and failed to disclose that its platform was not adequately built or maintained to handle reasonable consumer demand such that it failed to exercise trades and other actions requested by customers in a complete and timely manner.  As Robinhood knew, had it disclosed these facts, Plaintiff, proposed class members, and reasonable consumers would not have used Robinhood's services, and thus Robinhood concealed these facts with the intent to profit from its nondisclosure.

82.     Robinhood's conduct also constitutes an unfair practice within the meaning of the Unfair Competition Law because:

>     a.     The gravity of harm to Plaintiff and proposed class members from Robinhood's acts and practices far outweighs any legitimate utility of that conduct;

>     b.     Robinhood's conduct is immoral, unethical, oppressive, unscrupulous, or substantially injurious to Plaintiff and members of the proposed class; and

CLASS ACTION COMPLAINT

Provided by CourtAlert                                                    www.CourtAlert.com

c.      Robinhood's conduct undermines or violates the stated policies underlying the Consumers Legal Remedies Act, FINRA regulations, and established public policies intended to regulate the fair and ethical sale of goods and services, including protecting consumers against unfair and sharp business practices and promoting a basic level of honesty and reliability in the marketplace.

83.     As a direct and proximate result of Robinhood's business practices, Plaintiff and proposed class members suffered injury in fact and lost money or property.

84.     Plaintiff and proposed class members are entitled to restitution, injunctive relief, and reasonable attorney's fees and costs.

## EIGHTH CAUSE OF ACTION

### Unjust Enrichment

85.     Plaintiff incorporates the above allegations by reference.

86.     Robinhood has obtained unjust benefits from Plaintiff and proposed class members resulting in inequity.

87.     Robinhood engaged in unfair, fraudulent, and unjust conduct, including:

a.      Failing to disclose that its financial services platform was not adequately built or maintained such that it could not reliably provide financial services;

b.      Failing to provide financial services during the outages because it lacked infrastructure and systems to ensure that it could perform pursuant to its contracts with Plaintiff and proposed class members;

c.      Failing to provide an alternate means for customers to place timely trades in the event its platform was not reliably providing financial services;

d.      Failing to execute trades and other requested customer actions promptly and fully (as also required by FINRA Rule 5310); and

e.      Failing to comply with all applicable legal, regulatory, and licensing requirements.

CLASS ACTION COMPLAINT

88. By its deceptive, misleading, and improper conduct alleged above, Robinhood obtained money from and was unjustly enriched at the expense of Plaintiff and proposed class members.

89. It would be inequitable and unconscionable for Robinhood to retain the profits, benefits, and other compensation obtained through its deceptive, misleading, and improper conduct.

90. Plaintiff and proposed class members are entitled to restitution or disgorgement of, or the imposition of a construction trust upon, all profits, benefits and other compensation obtained by Robinhood through its deceptive, misleading, and improper conduct.

## PRAYER FOR RELIEF

Plaintiff requests that the Court enter a judgment awarding the following relief:

a. An order certifying the proposed class and appointing Plaintiff's counsel to represent the class;

b. An order awarding Plaintiff and proposed class members their actual damages, punitive damages, and any other form of monetary relief provided by law, except that no monetary relief is presently sought for violations of the Consumers Legal Remedies Act;

c. An order awarding Plaintiff and proposed class members restitution, disgorgement, or other equitable relief as the Court deems proper, except that no monetary restitution is presently sought for violations of the Consumers Legal Remedies Act;

d. An order awarding Plaintiff and proposed class members pre-judgment and post-judgment interest as allowed under the law;

e. An order awarding Plaintiff and proposed class members reasonable attorney's fees and costs of suit, including expert witness fees; and

f. An order awarding such other and further relief as this Court may deem just and proper.

# JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff hereby demands a trial by jury for all issues so triable under the law.

DATED: April 3, 2020                    Respectfully submitted,

                                        **GIBBS LAW GROUP LLP**


                                        By:    _/s/ Eric H. Gibbs_

                                        Eric H. Gibbs
                                        Andre Mura
                                        Steve Lopez
                                        **GIBBS LAW GROUP LLP**
                                        505 14th Street, Suite 1110
                                        Oakland, California 94612
                                        Telephone: (510) 350-9700
                                        Facsimile: (510) 350-9701
                                        ehg@classlawgroup.com
                                        amm@classlawgroup.com
                                        sal@classlawgroup.com

                                        Scott Silver (*pro hac vice* to be submitted)
                                        **SILVER LAW GROUP**
                                        11780 W. Sample Road
                                        Coral Springs, FL 33065
                                        Telephone: (954) 755-4799
                                        Facsimile: (954) 755-4684
                                        ssilver@silverlaw.com

                                        *Attorneys for Plaintiff*

CLASS ACTION COMPLAINT

# Exhibit 8

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA TAMPA DIVISION
### Civil Action No. _____

| | | |
|---|---|---|
| _____ **X** | | |
| | **:** | |
| **TRAVIS TAAFFE,** | **:** | **CLASS ACTION COMPLAINT** |
| | **:** | |
| **Plaintiff,** | **:** | **DEMAND FOR JURY TRIAL** |
| | **:** | |
| **vs.** | **:** | |
| | **:** | |
| | **:** | |
| **ROBINHOOD MARKETS, INC.,** | **:** | |
| **ROBINHOOD FINANCIAL LLC, and** | **:** | |
| **ROBINHOOD SECURITIES, LLC,** | **:** | |
| | **:** | |
| | **:** | |
| **Defendants.** | **:** | |
| | **:** | |
| _____**X** | | |

COME NOW Plaintiff, TRAVIS TAAFFE on behalf of himself and the Class of others similarly situated as defined herein, and hereby files this Class Action Complaint against Defendants Robinhood Markets, Inc., Robinhood Financial LLC and Robinhood Securities, LLC, (collectively "Robinhood") and states as follows:

### JURY DEMAND

Plaintiff hereby demands a trial by jury.

### I. PARTIES

1.      Plaintiff Travis Taaffe is an adult citizen of Florida and resides in Sarasota County, Florida.

2.      At all times material hereto, Plaintiff Travis Taaffe acquired the Robinhood mobile phone application and utilized the same to acquire, trade and hold securities in Florida.

3.      Defendant Robinhood Markets, Inc. is a financial services holding company incorporated in Delaware, whose subsidiaries provide financial and investment services via an internet/cloud-based platform that is also available on mobile phones. Its subsidiary, Defendant Robinhood Financial LLC, is a full service securities firm engaged in the retail sale of securities and various other financial products. Its subsidiary, Defendant Robinhood Securities, LLC, is a full service securities firm engaged in the retail sale of securities and various other financial products.  Defendants Robinhood Markets, Inc., Robinhood Financial LLC, and Defendant Robinhood Securities, LLC, provide internet and mobile phone based securities sales and services to approximately 10 million customers and/or users.

4.      On Monday March 2, 2020, the Dow Jones Industrial Average rose over 1,294 points, the S&P 500 rose 136 points, and the Nasdaq rose 384 points in what was the biggest ever point gain in a single day.

5.      On this same day, Robinhood's entire trading platform was completely inaccessible and unavailable to all of its customers and/or users. Thus, customers and/or users were not even able to access their cash, securities and/or other property kept on the Robinhood platform, let alone use Robinhood's services to buy, sell or trade securities.

## II. JURISDICTION AND VENUE

6.      This Court has original jurisdiction over this matter under the Class Action Fairness Act and 28 U.S.C. §1332.  This is a putative class action in which: (1) there are 1 million or more members in the Class; 2) at least some members of the proposed class have different citizenship from at least one Defendant and the claims of the proposed class members exceed $5,000,000.00 in the aggregate.

7.      Venue is appropriate as: Robinhood Securities, LLC, has a headquarters in this district; Defendants conduct business in this district; a substantial part of the events and omissions that give rise to the claims alleged herein occurred in this district; and brokerage records related to sale of securities and its books and records are maintained and administered in this district.

### III. FACTUAL ALLEGATIONS

**A.      Robinhood's Securities Brokerage Services Were Unavailable To
All Customers And/Or Users On March 2, 2020**

8.      Robinhood provides "commission-free" trades in stocks, funds and options using an internet/cloud-based platform for individual customers and/or users.

9.      It offers these services to its customers and/or users through its mobile phone based application as an alternative to the traditional financial services provided in person, over the telephone or on the internet.

10.      On Monday March 2, 2020, the Dow Jones Industrial Average rose over 1,294 points, the S&P 500 rose 136 points, and the Nasdaq rose 384 points in what was the biggest ever point gain in a single day for all three stock market indices.

11.      In a March 2, 2020 email to its customers and/or users Robinhood stated, "This morning, starting at 9:33 AM ET, we started experiencing downtime across our platform. These issues are affecting functionality on Robinhood, including your ability to trade."

12.      It was not until 2:19 am on March 3, 2020 that Robinhood announced publically on its Twitter account that, "Robinhood is currently back up and running.  We're testing through the night, and you may observe some downtime as we prepare for tomorrow."

13.      Robinhood's customers and/or users were not able to access Robinhood's platform to engage in any trading activity, to access their funds kept on the platform, to transfer

funds onto the system or to transfer funds off the system for all but 3 minutes of New York Stock Exchange trading hours, 9:30am until 4:00pm on March 2. There were additional outages of Robinhood's platform on March 3, 2020.

14.     On March 3, 2020, in a blog post on Robinhood's website, Robinhood's Co-CEOs admitted liability and that it was Robinhood itself which was solely responsible for their complete failure; "We now understand the cause of the outage was stress on our infrastructure—which struggled with unprecedented load. That in turn led to a "thundering herd" effect—triggering a failure of our DNS system."  As such, Robinhood admits that the platform outages were due to its own failures and expressly waive any defense related to failures of the platform being out Robinhood's control.

## IV. CLASS ACTION ALLEGATIONS

15.     Plaintiff brings this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the following Class:

> Customers and/or users of Robinhood in the United States who lost the ability to access their Robinhood brokerage accounts to effectuate any transaction therein on March 2, 2020.

16.     Plaintiff is a member of the Class he seeks to represent.  Plaintiff acquired the Robinhood mobile phone application and utilized the same to acquire, trade and hold securities. Plaintiff was unable to access the mobile phone application to take any action, engage in any trading activity, to access his funds kept on the platform, to transfer funds onto the system or to transfer funds off the system for all but 3 minutes of New York Stock Exchange trading hours, 9:30am until 4:00pm on March 2.

17.     The proposed Class is so numerous that joinder of all members is impracticable. There are approximately 10 million customers and/or users of Robinhood, all of which are potential members of the Class.

18.     There are questions of law and fact common to the Class, and those questions predominate over individual questions.  All customers and/or users of Robinhood were affected by the March 2, 2020 platform outage.

19.     The claims alleged by Plaintiff are typical of the claims of the Class.

20.     Plaintiff will fairly and adequately represent and protect the interests of the Class.

21.     The questions of law and fact common to the members of the Class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

## V. CAUSES OF ACTION

### COUNT I
### BREACH OF CONTRACT

22.     Plaintiff and class members adopt and incorporate paragraphs 1 through 21 in full.

23.     Defendants forced Plaintiff and class members to consent to the Robinhood Financial LLC & Robinhood Securities, LLC Customer Agreement[1] in order to gain access to the Defendants' trading platform.  *Attached as* **Exhibit A.**

24.     Defendants breached their contractual duties to Plaintiff and class members by failing to provide a functioning platform for Plaintiff and class members to access their personal funds, securities and/or other property.

---

[1] Plaintiff does not have access to an executed copy of same nor is he aware of the existence of one.  Exhibit A is all that is available and provided to Plaintiff.

25.     Defendants' breach also prevented Plaintiff and class members from executing market securities transactions on March 2 and March 3, 2020. This breach caused Plaintiff and class members to miss out on some of the highest single-day market gains in recorded history.

26.     Plaintiff and class members have all been damaged in a similar manner due to Defendants breach of contract.

27.     Plaintiff requests relief as hereinafter described.

**COUNT II**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**

28.     Plaintiff and class members adopt and incorporate paragraphs 1 through 21 in full.

29.     Defendants breached their implied warranty of merchantability by failing to provide a trading platform that is acceptable and reasonably fit for the ordinary purposes for which it was being contracted, in this case, for including but not limited to: the purchase and sale of securities, transferring funds into Robinhood or transferring funds out of Robinhood.

30.      Defendants are merchants with respect to the kind of goods at issue, as Defendants are broker-dealers engaging in the securities markets.

31.     Plaintiff and class members have all been damaged in a similar manner due to Defendants breach of implied warranty of merchantability.

32.      Plaintiff requests relief as hereinafter described.

**COUNT III**
**NEGLIGENCE**

33.     Plaintiff and class members adopt and incorporate paragraphs 1 through 21 in full.

34.     Defendants owed a duty to Plaintiff and class members to exercise reasonable care in maintaining and supporting Defendants' internet/cloud-based trading platform so that Plaintiff and class members would not be adversely affected by extended system

failures/outages. This duty includes, *inter alia*, designing, maintaining, and testing Defendants' trading platform to ensure that the platform is adequately secured and protected from upticks in customer trading volume and user engagement. Defendants had a duty to provide a system and platform robust enough to handle all possible reasonable volumes of trading of securities by customers and users and have a redundant/backup system to handle outages. Defendants' duty further includes providing Plaintiff and class members with alternative forms of trading when Defendants' mobile trading application was inaccessible; for instance, providing its customers with a phone number to call in order to execute various trades or to have funds transferred.

35.     Defendants breached their duty to exercise reasonable care in safeguarding and protecting Plaintiff's and other class members' assets from the extended system failures experienced on March 2, 2020 and March 3, 2020. Defendants further breached their duty by failing to provide adequate support to the trading platform to ensure that it could continue to function during an uptick in trading volume and user engagement.

36.     Plaintiff and class members have all been damaged in a similar manner due to Defendants' negligence.

37.     Defendants' negligence was the direct and proximate cause of the damages suffered by Plaintiff and the other class members.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court find in favor of them and the Class of similarly situated individuals and against Defendants as follows:

a.     Certify this case as a class action;

b.     Designate Plaintiff as Class Representative;

c.     Designate Plaintiffs' counsel of record as Class Counsel;

d.     Order appropriate equitable relief to remedy the inappropriate conduct;

e.     Award Plaintiff and all others similarly situated the full value of all damages sustained now or in the futures as a result of Defendants' conduct;

f.     Award Plaintiff and all others similarly situated all damages, interest and attorneys' fees recoverable under applicable laws;

g.     Award Plaintiff and all others similarly situated punitive damages, compensatory and other damages;

h.     Order injunctive relief including but not limited to an Order requiring that Defendants' systems are capable of handling its customers' and/or users' securities transactions even in a time of heavy trading volume, as well as requiring Defendants to implement adequate redundancy or backup processes to ensure that should a system outage occur there is another avenue for customers and/or users to access, control and trade their cash, securities and/or other property.

i.     Award Plaintiff and all others similarly situated any and all other relief as this Court deems just and proper; and

j.     That this matter be tried by a jury.


Dated:  March 4, 2020                    Respectfully submitted,


                                        By:  _/s/Michael S. Taaffe____
                                        Michael S. Taaffe
                                        Florida State Bar No. 490318
                                        Michael D. Bressan
                                        Florida State Bar No. 0011092
                                        Jarrod J. Malone
                                        Florida State Bar No. 0010595
                                        Shumaker, Loop & Kendrick, LLP
                                        240 South Pineapple Ave., 10th Floor
                                        Sarasota, Florida 34236

Telephone:  (941) 366-6660
Facsimile:  (941) 366-3999
E-Mail:  mtaaffe@shumaker.com
E-Mail:  mbressan@shumaker.com
E-Mail:  jmalone@shumaker.com
*Attorneys for Plaintiff*

**Revised February 5, 2020**

## Robinhood Financial LLC & Robinhood Securities, LLC
### Customer Agreement

In consideration of Robinhood Financial LLC, Robinhood Securities, LLC, and their agents and assigns (collectively, "Robinhood") opening one or more accounts on my behalf ("My Account(s)" or the "Account(s)") for the purchase, sale or carrying of securities or contracts relating thereto and/or the borrowing of funds, which transactions are cleared through Robinhood Securities, I represent and agree with respect to all Accounts, whether margin or cash, to the terms set forth below (the "Agreement"). When used in this Agreement, the words "I", "Me", "My", "We", or "Us" mean the owner(s) of the Account. For purposes of this Agreement, Business Days are Monday through Friday, excluding federal holidays. Any references to "days" found in this Agreement are calendar days unless indicated otherwise.

**I UNDERSTAND THAT THE TERMS AND CONDITIONS OF THIS AGREEMENT GOVERN ALL ASPECTS OF MY RELATIONSHIP WITH ROBINHOOD REGARDING MY ACCOUNTS. I WILL CAREFULLY READ, UNDERSTAND AND ACCEPT THE TERMS AND CONDITIONS OF THIS AGREEMENT BEFORE I CLICK "SUBMIT APPLICATION" OR OTHER SIMILARLY WORDED BUTTON. IF I HAVE ANY QUESTIONS ABOUT ANY OF THE PROVISIONS IN THIS AGREEMENT, I WILL EMAIL HELP@ROBINHOOD.COM. I UNDERSTAND THAT CLICKING "SUBMIT APPLICATION" IS THE LEGAL EQUIVALENT OF MY MANUALLY SIGNING THIS AGREEMENT AND I WILL BE LEGALLY BOUND BY ITS TERMS AND CONDITIONS. BY ENTERING INTO THIS AGREEMENT, I ACKNOWLEDGE RECEIPT OF THE ROBINHOOD PRIVACY POLICY AND PRIVACY AND SECURITY STATEMENT. I UNDERSTAND THAT THIS AGREEMENT MAY BE AMENDED FROM TIME TO TIME BY ROBINHOOD, WITH REVISED TERMS POSTED ON THE ROBINHOOD WEBSITE. I AGREE TO CHECK FOR UPDATES TO THIS AGREEMENT. I UNDERSTAND THAT BY CONTINUING TO MAINTAIN MY SECURITIES BROKERAGE ACCOUNT WITHOUT OBJECTING TO ANY REVISED TERMS OF THIS AGREEMENT, I AM ACCEPTING THE TERMS OF THE REVISED AGREEMENT AND I WILL BE LEGALLY BOUND BY ITS TERMS AND CONDITIONS. IF I REQUEST OTHER SERVICES PROVIDED BY ROBINHOOD THAT REQUIRE ME TO AGREE TO SPECIFIC TERMS AND CONDITIONS ELECTRONICALLY (THROUGH CLICKS OR OTHER ACTIONS) OR OTHERWISE, SUCH TERMS AND CONDITIONS WILL BE DEEMED AN AMENDMENT AND WILL BE INCORPORATED INTO AND MADE PART OF THIS AGREEMENT. I ALSO UNDERSTAND THAT BY CLICKING "SUBMIT APPLICATION" I HAVE ACKNOWLEDGED THAT THIS AGREEMENT CONTAINS A PREDISPUTE ARBITRATION CLAUSE IN SECTION 37 HEREIN.**

1. **Capacity and Status.** If an individual, I am of legal age under the laws of the state where I reside and authorized to enter into this Agreement. If an entity, I am duly formed, validly existing and in good standing in My state of organization, have full power and authority to enter and perform this Agreement, and the persons signing the account application are fully authorized to act on My behalf. No person, except Myself, has any interest in the Account

1

opened pursuant to this Agreement. I acknowledge that unless Robinhood receives written objection from Me, Robinhood may provide My name, address, and securities positions to requesting companies in which I hold securities. Except as otherwise disclosed to Robinhood in writing, neither I nor any member of My immediate family is an employee of any exchange, any corporation of which any exchange owns a majority of the capital stock, a member of any exchange or self-regulatory organization, a member of any firm or member corporation registered on any exchange, a bank, trust company, insurance company or any corporation, firm or individual engaged in the business of dealing either as a broker-dealer or as principal in securities. I understand and agree that I am obligated to promptly notify Robinhood in writing if I or a member of My immediate family becomes registered or employed in any of the above-described capacities. Except as otherwise disclosed to Robinhood in writing, I am not a Professional (as defined below). I further agree to promptly notify Robinhood in writing if I am now or if I become a Professional or an officer, director or 10% stockholder of any publicly traded company.

2. **Market Data.** Robinhood may choose to make certain market data available to Me pursuant to the terms and conditions set forth in this Agreement. By executing this Agreement, I agree to comply with those terms and conditions.

A. Definitions.

1) "Market Data" means (a) last sale information and quotation information relating to securities that are admitted to dealings on the New York Stock Exchange ("NYSE"), (b) such bond and other equity last sale and quotation information, and such index and other market information, as United States-registered national securities exchanges and national securities associations (each, an "Authorizing SRO") may make available and as the NYSE may from time to time designate as "Market Data"; and (c) all information that derives from any such information.

2) "Nonprofessional" means any natural person who receives market data solely for his/her personal, non- business use and who is not a "Professional." A "Professional" includes an individual who, if working in the United States, is: (i) registered or qualified with the Securities and Exchange Commission (the "SEC"), the Commodity Futures Trading Commission (the "CFTC"), any state securities agency, any securities exchange or association, or any commodities or futures contract market or association; (ii) engaged as an "investment advisor" as that term is defined in Section 202 (a) (11) of the Investment Advisers Act of 1940 (whether or not registered or qualified under that Act), or (iii) employed by a bank or other organization exempt from registration under federal and/or state securities laws to perform functions that would require him or her to be so registered or qualified if he or she were to perform such functions for an organization not so exempt. A person who works outside of the United States will be considered a "Professional" if he or she performs the same functions as someone who would be considered a "Professional" in the United States.

2

B. <u>Provisions Applicable to All Users</u>.

1) <u>Proprietary Nature of Data</u>. I understand and acknowledge that each Authorizing SRO and Other Data Disseminator (as defined below) has a proprietary interest in the Market Data that originates on or derives from it or its market(s). I agree not to reproduce, distribute, sell or commercially exploit the Market Data in any manner.

2) <u>Enforcement</u>. I understand and acknowledge that (a) the Authorizing SROs are third-party beneficiaries under this Agreement and (b) the Authorizing SROs or their authorized representative(s) may enforce this Agreement, by legal proceedings or otherwise, against Me or any person that obtains Market Data that is made available pursuant to this Agreement other than as this Agreement contemplates.

3) <u>Data Not Guaranteed</u>. I understand that neither Robinhood nor any Authorizing SRO, other entity whose information is made available over the Authorizing SROs' facilities (an "Other Data Disseminator"), or information processor that assists any Authorizing SRO or Other Data Disseminator in making Market Data available (collectively, the "Disseminating Parties") guarantees the timeliness, sequence, accuracy, completeness, reliability, or content of Market Data or of other market information or messages disseminated to or by any Disseminating Party. I understand that neither Robinhood Financial nor any Disseminating Party guarantees the timeliness, sequence, accuracy, completeness, reliability or content of market information, or messages disseminated to or by any party. I understand that neither Robinhood Financial nor any Disseminating Party warrants that the service provided by any such entity will be uninterrupted or error-free. I further understand that Market Data by Xignite provides market data to Robinhood Financial customers. NEITHER ROBINHOOD FINANCIAL, ANY OF ITS AFFILIATES, THEIR RESPECTIVE OFFICERS OR EMPLOYEES, NOR ANY DISSEMINATING PARTY SHALL BE LIABLE IN ANY WAY FOR (A) ANY INACCURACY, ERROR OR DELAY IN, OR OMISSION OF, (I) ANY MARKET DATA, INFORMATION OR MESSAGE, OR (II) THE TRANSMISSION OR DELIVERY OF ANY SUCH DATA, INFORMATION OR MESSAGE; OR (B) ANY LOSS (AS DEFINED IN THIS AGREEMENT) OR DAMAGE ARISING FROM OR OCCASIONED BY (I) ANY SUCH INACCURACY, ERROR, DELAY OR OMISSION, (II) NON-PERFORMANCE OR III) INTERRUPTION IN ANY SUCH MARKET DATA, INFORMATION, OR MESSAGE, WHETHER DUE TO ANY ACT OR OMISSION BY ROBINHOOD FINANCIAL, ANY OF ITS AFFILIATES, THEIR RESPECTIVE OFFICERS OR EMPLOYEES, OR ANY DISSEMINATING PARTY, OR TO ANY "FORCE MAJEURE" (E.G., FLOOD, EXTRAORDINARY WEATHER CONDITIONS, EARTHQUAKE OR OTHER ACT OF GOD, FIRE, WAR, INSURRECTION, RIOT, LABOR DISPUTE, ACCIDENT, ACTION OF

GOVERNMENT, OR COMMUNICATIONS OR POWER FAILURE, EQUIPMENT OR SOFTWARE MALFUNCTION) OR ANY OTHER CAUSE BEYOND THE REASONABLE CONTROL OF ROBINHOOD FINANCIAL, ITS AFFILIATES, THEIR RESPECTIVE OFFICERS AND EMPLOYEES, OR ANY DISSEMINATING PARTY.

4) <u>Permitted Use</u>. I shall not furnish Market Data to any other person or entity. If I receive Market Data other than as a Nonprofessional, I shall use Market Data only for My individual use.

5) <u>Dissemination, Discontinuance, or Modification</u>. I understand and acknowledge that, at any time, the Authorizing SROs may discontinue disseminating any category of Market Data, may change or eliminate any transmission method and may change transmission speeds or other signal characteristics. The Authorizing SROs shall not be liable for any resulting liability, loss or damages that may arise therefrom.

6) <u>Duration; Survival</u>. This Section 2 of this Agreement remains in effect for so long as I have the ability to receive Market Data as contemplated by this Section 2. In addition, Sections 2(B)(1)-(3) and the first two sentences of Section 2(B)(7), survive any termination of this Agreement.

7) <u>Miscellaneous</u>. The laws of the State of New York shall govern this Section 2 and it shall be interpreted in accordance with those laws. This Subsection is subject to the Securities Exchange Act of 1934, the rules promulgated under that act, and the joint-industry plans entered into pursuant to that act.

C. <u>Provisions Applicable to Nonprofessionals</u>.

1) <u>Permitted Receipt</u>. I understand that I may not receive Market Data from Robinhood as a Nonprofessional, and Robinhood may not provide Market Data to Me as a Nonprofessional, unless Robinhood first properly determines that I qualify as a Nonprofessional as defined above and I in fact qualify as a Nonprofessional. I agree that, as a prerequisite to Robinhood Financial qualifying Me as a Nonprofessional, I will provide to Robinhood truthful and accurate information about Me, such as: my occupation, employer, employment position and functions; my use of Market Data; my registration status with any securities agency, exchange, association, or regulatory body, or any commodities or future contract market, association, or regulatory body, whether in the United States or elsewhere; and any compensation of any kind I may receive from any individual or entity for my trading activities, asset management, or investment advice. Except as otherwise declared to Robinhood in writing, by executing this Agreement, I certify that I meet the definition of Nonprofessional as set forth in this Agreement.

EXHIBIT A

2)   <u>Permitted Use</u>.  If I am a Nonprofessional, I agree to receive Market Data solely for my personal, non-business use.

3)   <u>Notification</u>.  I shall notify Robinhood promptly in writing of any change in my circumstances that may cause Me to cease to qualify as a Nonprofessional.

**3.   NASDAQ OMX Information.**

A.   <u>Definitions</u>.

1)   "Information" means certain market data and other data disseminated that has been collected, validated, processed, and recorded by any system NASDAQ OMX has developed for the creation or dissemination of Information or other sources made available for transmission to and receipt from either a distributor such as RHF or from NASDAQ OMX relating to: a) eligible securities or other financial instruments, markets, products, vehicles, indicators, or devices; b) activities of a NASDAQ OMX company; c) other information and data from a NASDAQ OMX company. "Information" also includes any element of Information as used or processed in such a way that the Information can be identified, recalculated or re-engineered from the processed Information or that the processed Information can be used as a substitute for Information.

2)   "NASDAQ OMX" means The NASDAQ OMX Group, Inc., a Delaware limited liability company and its subsidiaries and Affiliates (collectively, "NASDAQ OMX").

B.   <u>Use of Data</u>.  I understand that I may use the Information only for personal use and not for any business purpose.  I may not sell, lease, furnish or otherwise permit or provide access to the Information to any other natural person or entity ("Person") or to any other office or place.  I will not engage in the operation of any illegal business use or permit anyone else to use the Information, or any part thereof, for any illegal purpose or violate any NASDAQ OMX or SEC Rule or any FSA rule or other applicable law, rule or regulation.  I may not present the Information rendered in any unfair, misleading or discriminatory format.  I shall take reasonable security precautions to prevent any Person other than Myself from gaining access to the Information.

C.   <u>Proprietary Data</u>.  I acknowledge and agree that NASDAQ OMX has proprietary rights to the Information that originates on or derives from markets regulated or operated by NASDAQ OMX, and compilation or other rights to Information gathered from other sources.  I further acknowledge and agree that NASDAQ OMX's third-party information providers have exclusive proprietary rights to their respective Information.  In the event of any misappropriation or misuse by Me or anyone who accesses the Information through Me, NASDAQ OMX or its third-

5

party information providers shall have the right to obtain injunctive relief for its respective materials.

D. <u>System</u>. I acknowledge that NASDAQ OMX, in its sole discretion, may from time-to-time make modifications to its system or the Information. Such modifications may require corresponding changes to be made in Robinhood Financial's service. Changes or the failure to make timely changes by Me may sever or affect My access to or use of the Information. I understand that neither NASDAQ OMX nor Robinhood shall be responsible for such effects.

E. <u>NASDAQ OMX Limitation of Liability</u>. Except as may otherwise be set forth herein, NASDAQ OMX shall not be liable to Me for indirect, special, punitive, consequential or incidental loss or damage (including, but not limited to, trading losses, lost profits, or other indirect loss or damage) of any nature arising from any cause whatsoever, even if NASDAQ OMX has been advised of the possibility of such damages. NASDAQ OMX shall not be liable to Me for any unavailability, interruption, delay, incompleteness or inaccuracy of the Information. This Section shall not relieve NASDAQ OMX or Me from liability for damages that result from their own gross negligence or willful tortious misconduct or from personal injury or wrongful death claims. I agree that the terms of this Section reflect a reasonable allocation of risk and limitation of liability.

F. <u>Disclaimers of Warranties</u>. NASDAQ OMX and its third-party information providers make no warranties of any kind with respect to the Information—express, implied or statutory (including without limitation, timeliness, truthfulness, sequence, completeness, accuracy, freedom from interruption), any implied warranties arising from trade usage, course of dealing, course of performance or the implied warranties of merchantability or fitness for a particular use or purpose or noninfringement.

G. <u>Termination by NASDAQ OMX</u>. I acknowledge that NASDAQ OMX, when required to do so in fulfillment of statutory obligations, may by notice to Robinhood unilaterally limit or terminate the right of any or all Persons to receive or use the Information and that Robinhood will comply with any such notice and will terminate or limit the furnishing of the Information.

4. **Authorization.** I understand that My Account is self-directed. Accordingly, I appoint Robinhood Financial as My agent for the purpose of carrying out My directions to Robinhood Financial in accordance with the terms and conditions of this Agreement and any attendant risks with respect to the purchase or sale of securities. Robinhood Financial is authorized to open or close My Account(s), place and withdraw orders and take such other steps as are reasonable to carry out My directions. All transactions will be effected only on My order or the order of My authorized delegate, except as described in Section 10. I understand Robinhood Financial provides trading and brokerage services through the Robinhood website (the "Website") and the Robinhood mobile application (the "App"). I agree to receive and transmit financial information through such electronic means. My use

or My grant of access to My Account to any third party to access information or place transactions in My Account is solely at My risk.

**5.    Customer Representations and Responsibilities.**

(A)    <u>Self-directed Account</u>.  I understand that My Account is self-directed, and so that I am solely responsible for any and all orders placed in My Account and that all orders entered by Me or on My behalf are unsolicited and based on My own investment decisions or the investment decision of My duly authorized representative or agent.  Accordingly, I agree that neither Robinhood nor any of its employees, agents, principals, or representatives:

1)    provide investment advice in connection with this Account;
2)    recommend any security, transaction or order;
3)    solicit orders;
4)    act as a market maker in any security;
5)    make discretionary trades; and
6)    produce or provide first-party research providing a specific investment strategies such as buy, sell or hold recommendations, first-party ratings and/or price targets.  To the extent research materials or similar information are available through the App or the Website or the websites of any entity controlled by, controlling, or under common control with Robinhood (such entity, an "Affiliate"), I understand that these materials are intended for informational and educational purposes only and they do not constitute a recommendation to enter into any securities transactions or to engage in any investment strategies.

(B)    <u>Information Accuracy</u>.  I:   (i) certify that the information contained in this Agreement, the account application, and any other document that I furnish to Robinhood Financial in connection with My Account(s) is complete, true and correct, and acknowledge that knowingly giving false information for the purpose of inducing Robinhood Financial to extend credit is a federal crime; (ii) authorize Robinhood Financial to contact any individual or firm noted herein or on the documents referred to in subsection (i) of this Section and any other normal sources of debit or credit information; (iii) authorize anyone so contacted to furnish such information to Robinhood Financial as Robinhood may request; and (iv) agree that this Agreement, the account application and any other document I furnish in connection with My Account is Robinhood's property, as the case may be.  I shall promptly advise Robinhood Financial of any changes to the information in such agreements and documents in writing within ten (10) calendar days.  I authorize Robinhood Financial to obtain reports and provide information to others concerning My creditworthiness and business conduct.  Upon My request, Robinhood agrees to provide Me a copy of any report so obtained.  Robinhood may retain this Agreement, the Account application, and all other such documents and their respective records at Its sole discretion, whether or not credit is extended.

(C)     Risks.  I understand that all investments involve risk, that losses may exceed the principal invested, and that the past performance of a security, industry, sector, market, or financial product does not guarantee future results or returns.

(D)     Account Defaults.  I understand that My Account comes with many defaulted service instruction features and preferences.  I further understand that I am not required to use these defaulted options or preferences and that once My Account is approved and opened I have the sole discretion to control and adjust such defaulted service preferences that relate to My account.

(E)     Knowledge of Account.  I understand that I am solely responsible for knowing the rights and terms for all securities purchased, sold and maintained in My Account including mergers, reorganizations, stock splits, name changes or symbol changes, dividends, option symbols, and option deliverables.  I further understand that certain securities may grant Me valuable rights that may expire unless I take specific action.  These securities include bonds, convertible securities, warrants, stock rights and securities subject to exchange offers or tenders.  I am responsible for knowing all expiration dates, redemption dates, and the circumstances under which rights associated with My securities may be called, cancelled, or modified.  Robinhood may, but are not obligated to, notify Me of any upcoming expiration or redemption dates, or take any action on My behalf without My specific instructions except as required by law and the rules of regulatory authorities.  I acknowledge that Robinhood may adjust My Account to correct any error.  If My Account has an option position on the last trading day prior to expiration, which is one cent or more in the money, Robinhood Financial will generally exercise the option, on My behalf.  However, Robinhood Financial reserves the right at Its discretion to close any option position prior to expiration date or any position resulting from the exercising/assignment after option expiration.  I will be charged a commission for any such transaction.  Robinhood Financial is not obligated to take any of these actions and Robinhood Financial is not liable for Losses should it not take them.

(F)     Purchases.  All orders for the purchase of securities given for My Account will be authorized by Me and executed in reliance on My promise that an actual purchase is intended.  It is My obligation to pay for purchases immediately or on Robinhood's demand.  I understand Robinhood may at any time, in its sole discretion and without prior notice to Me, prohibit or restrict My ability to trade securities.  I further agree not to allow any person to trade for My Account unless a trading authorization for that person has been received and approved by Robinhood.  Robinhood reserve the right to require full payment in cleared funds prior to the acceptance of any order.  In the event that I fail to provide sufficient funds, Robinhood may, at its option and without notice to Me, i) charge a reasonable rate of interest, ii) liquidate the Property subject of the buy order, or iii) sell other Property owned by Me and held in any of My Accounts.  Robinhood may also charge any consequential Loss to My Account.  For purposes of this Agreement, "Property" shall mean all monies, contracts, investments and options, whether for present or future delivery, and all related distributions, proceeds, products and accessions.

8

EXHIBIT A

(G) <u>Sales/Short Sales</u>.  I promise to deliver all securities sold in My Account and to provide collateral of a type and amount acceptable to Robinhood Financial for all short sales in My Account.  Robinhood Financial requires that a security be held in My Account prior to the acceptance of a sell order with respect to such security unless the order is specifically designated as a "short sale." If a security is not held in My Account and a sell order is processed, I must promptly deliver such security to Robinhood Financial for receipt in good deliverable form on or before the settlement date.  Any order accepted without negotiable certificates or positions in My Account will be subject, at Robinhood Financial's sole discretion, to cancellation or buy-in.  To ensure this will not occur, I agree to only place sell orders for securities owned by Me and held in My Account at the time My order is placed.

Proceeds of a sale will not be paid to Me or released into My Account until Robinhood Financial has received the security in good deliverable form, whether from a transfer agent or from Me and the settlement of the security is complete.  If the security is not received on or before settlement date, or as market conditions warrant, Robinhood Financial may in its sole discretion purchase the security on the open market for My Account and may liquidate and close out any and all securities in My Account in order to pay for such purchase.  In the event a security is bought in, I will be responsible for all resulting Losses incurred by Robinhood Financial.

I understand that I may execute short sales only in a margin Account and that such execution must comply with applicable short sales rules.

(H) <u>Assistance by Robinhood</u>.  I understand that when I request assistance from Robinhood or its employees in using the investment tools available on the Website or the App, it will be limited to an explanation of the tool's functionality and, if requested by Me, to the entry by Robinhood or its employees of variables provided by Me, and that such assistance does not constitute investment advice, an opinion with respect to the suitability of any transaction, or solicitation of any orders.

(I) <u>No Tax or Legal Advice</u>.  I understand that Robinhood does not provide tax or legal advice.

(J) <u>Discontinuation of Services</u>.  I understand that Robinhood may discontinue My Account and any services related to My Account immediately by providing written notice to Me

(K) <u>Electronic Access</u>.

1) I am solely responsible for keeping My Account numbers and PINs confidential and will not share them with third parties.  "PINs" shall mean My username and password.

9

EXHIBIT A

2)  I agree and accept full responsibility for monitoring and safeguarding My Accounts and access to My Accounts.

3)  I agree to immediately notify Robinhood in writing, delivered via e-mail and a recognized international delivery service, if I become aware of: (i) any loss, theft, or unauthorized use of My PINs or Account numbers; (ii) any failure by Me to receive any communication from Robinhood indicating that an order was received, executed or cancelled, as applicable; (iii) any failure by Me to receive an accurate written confirmation of an order, execution, or cancellation; (iv) any receipt by Me of confirmation of an order, execution or cancellation, which I did not place; (v) any inaccurate information in or relating to My orders, trades, margin status, Account balances, deposits, withdrawals, securities positions or transaction history; or (vi) any other unauthorized use or access of My Account.

4)  Each of the events described in subsections (K)(3)(i)-(vi) shall be deemed a "Potential Fraudulent Event".  The use and storage of any information including My Account numbers, PINs, portfolio information, transaction activity, account balances and any other information or orders available on My wireless, web-enabled cellular telephone or similar wireless communications device (collectively, "Mobile Device") or My personal computer is at My own risk and is My sole responsibility.  I represent that I am solely responsible for and have authorized any orders or instructions appearing in, originating from, or associated with My Account, My Account number, My username and password, or PINs.  I agree to notify Robinhood immediately after I discover any Potential Fraudulent Event, but in no event more than twenty-four (24) hours following discovery.  Upon request by Robinhood, I agree to report any Potential Fraudulent Event promptly to legal authorities and provide Robinhood a copy of any report prepared by such legal authorities.  I agree to cooperate fully with the legal authorities and Robinhood in any investigation of any Potential Fraudulent Event and I will complete any required affidavits promptly, accurately and thoroughly. I also agree to allow Robinhood access to My Mobile Device, My computer, and My network in connection with Robinhood's investigation of any Potential Fraudulent Event.  I understand that if I fail to do any of these things I may encounter delays in regaining access to the funds in My Account.  I agree to indemnify and hold Robinhood, its Affiliates, and Robinhood and its Affiliates' respective officers, directors, and employees harmless from and against any Losses arising out of or relating to any Potential Fraudulent Event.  I acknowledge that Robinhood does not know when a person entering orders with My username and password is Me.

5)  Trusted Contact Person.  I understand that, pursuant to FINRA regulations, Robinhood is authorized to contact the Trusted Contact Person (as defined by FINRA Rule 4512) designated for My Account and to disclose information about My account to address possible financial exploitation, to confirm the specifics of My current contact information, health status, or

10

EXHIBIT A

the identity of any legal guardian, executor, trustee or holder of a power of attorney, or as otherwise permitted by Rule 2165.

6. **Clearance of Trades.** I understand that Robinhood Financial has entered into a clearing agreement with Robinhood Securities whereby Robinhood Financial will introduce My Account to Robinhood Securities, and Robinhood Securities will clear all transactions, on a fully-disclosed basis. I understand that Robinhood Securities carries My Account(s) and is responsible for the clearing and bookkeeping of transactions, but is not otherwise responsible for the conduct of Robinhood Financial.

Until receipt from Me of written notice to the contrary, Robinhood Securities may accept from Robinhood Financial, without inquiry or investigation, (i) orders for the purchase or sale of securities and other property on margin, if I have elected to have a margin account, or otherwise, and (ii) any other instructions concerning my Accounts. Robinhood Securities shall look solely to Robinhood Financial unless otherwise directed by Robinhood Financial, and not to Me, with respect to any such orders or instructions; except that I understand that Robinhood Securities will deliver confirmations, statements, and all written or other notices with respect to My Account directly to Me with copies to Robinhood Financial, and that Robinhood Securities will look directly to Me or Robinhood Financial for delivery of margin, payment, or securities. I agree to hold Robinhood Securities harmless from and against any Losses arising in connection with the delivery or receipt of any such communication(s), provided Robinhood Securities has acted in accordance with the above. The foregoing shall be effective as to My Account(s) until written notice to the contrary is received from Me by Robinhood Securities or Robinhood Financial.

7. **Review of Confirmations and Statements.** I agree that it is My responsibility to review order execution confirmations and statements of My Account(s) promptly upon receipt. I agree to receive all confirmations and account statements, as well as all tax related documents, in electronic format. I understand that account statements will evidence all activity in My Account for the stated period, including securities transactions, cash balances, credits to My Account and all fees paid from My Account. Notwithstanding Section 35.B, confirmations will be considered binding on Me unless I notify Robinhood of any objections within two (2) calendar days from the date confirmations are sent. Account statements will be considered binding on Me unless I notify you of any objections within ten (10) calendar days after My Account statements are posted online. Such objection may be oral or in writing, but any oral objection must be immediately confirmed in writing. In all cases, Robinhood reserves the right to determine the validity of My objection. If I object to a transaction for any reason, I understand and agree that I am obligated to take action to limit any losses that may result from such transaction or I will bear sole responsibility for any losses relating to the transaction, even if My objection to the transaction is ultimately determined to be valid. Nothing in this Section 7 shall limit My responsibilities as described in Section 5 of this Agreement.

8. **Important Information Needed to Open a New Account.** To help the government better detect the funding of terrorism and money laundering activities, federal law requires all financial institutions to obtain, verify, and record information that identifies each person

who opens an account. Therefore, I understand that when I open My Account Robinhood will ask for My name, address, date of birth and other identifying information. Robinhood may also ask copies of My driver's license, passport or other identifying documents. I understand that Robinhood may take steps to verify the accuracy of the information I provide to Robinhood in My Account application or otherwise, and that Robinhood may restrict My access to My Account pending such verification. I will provide prompt notification to Robinhood of any changes in the information including My name, address, e-mail address and telephone number.

I further understand that if I attempt to access My Account from a jurisdiction subject to certain U.S. sanctions or I am ordinarily resident in such a jurisdiction, or if you reasonably believe that I am attempting such access or have become a resident in such a jurisdiction, you may restrict My Account, and any pending orders may be cancelled. If this happens, I understand that I should contact help@robinhood.com, and that I may be asked to provide supplemental information as part of this process. I further understand that I must close My Account before establishing residency in any jurisdiction subject to U.S. sanctions.

9.  **Telephone Conversations and Electronic Communications.** I understand and agree that Robinhood may record and monitor any telephone or electronic communications with Me. Unless otherwise agreed in writing in advance, Robinhood does not consent to the recording of telephone conversations by any third party or Me. I acknowledge and understand that not all telephone or electronic communications are recorded by Robinhood, and Robinhood does not guarantee that recordings of any particular telephone or electronic communications will be retained or capable of being retrieved.

10. **Oral Authorization.** I agree that Robinhood shall be entitled to act upon any oral instructions given by Me so long as Robinhood reasonably believes such instruction was actually given by Me or My authorized agent.

11. **Applicable Laws and Regulations.** All transactions in My Account will be subject to federal securities laws and regulations, the applicable laws and regulations of any state or jurisdiction in which Robinhood Financial is registered, the rules of any applicable self-regulatory organization of which Robinhood Financial is a member and the rules, regulations, customs and usages of the exchange or market, and its clearing house, if any, where the transactions are executed. In no event will Robinhood Financial be obligated to effect any transaction it believes would violate any federal or state law, rule or regulation or the rules or regulations of any regulatory or self-regulatory organization.

12. **Erroneous Distributions.** I agree to promptly return to Robinhood any assets erroneously distributed to Me. In the event that I sell a security prior to its ex-dividend/distribution date, and I receive the related cash/stock dividend or distribution in error, I direct Robinhood on My behalf to pay such dividend/distribution to the entitled purchaser of the securities I sold, and I guarantee to promptly reimburse Robinhood for, or deliver to Robinhood, said dividend or distribution.

13. **Market Volatility; Market Orders; Limit Orders; and Queued Orders.** I understand that, whether I place a market or limit order, I will receive the price at which My order is

12

executed in the marketplace, subject to any clarification stated below. Particularly during periods of high volume, illiquidity, fast movement or volatility in the marketplace, the execution price received may differ from the quote provided on entry of an order, and I may receive partial executions of an order at different prices. I understand that Robinhood Financial is not liable for any price fluctuations. I also understand that price quotes generally are for only a small number of shares as specified by the marketplace, and larger orders are relatively more likely to receive executions at prices that vary from the quotes or in multiple lots at different prices.

I understand that Robinhood Financial does not currently support sending traditional market buy orders and that Robinhood Financial collars all market buy orders by using limit orders priced up to 5% above the last trade price. This is not the case for market sell orders. I further understand that when I send a market buy order through Robinhood Financial's trading system, the trading system generates a limit order up to 5% above the last trade price, and then Robinhood Financial sends the order to an executing broker. I understand that Robinhood Financial's implementation of market buy orders may vary depending on prices of instruments, market conditions, and other factors. I further understand that Robinhood Financial uses the following rounding mechanics with respect to buy orders: the last trade price is (i) multiplied by 1.05; (ii) rounded down to two decimal places if the last trade price is over $1.00; otherwise, rounded down to four decimal places; and (iii) for securities included in the SEC's Tick Size Pilot Program, rounded down to the nearest $.05 increment. I understand that securities may open for trading at prices substantially higher or lower than the previous closing price or the anticipated price. If I place a market order (whether during normal market hours or when the market is closed), I agree to pay or receive the prevailing market price at the time My market order is executed, subject to the specific clarification above relating to buy orders. I understand that the price I pay may be significantly higher or lower than anticipated at the time I placed the order. To avoid buying a security at a higher price and possibly exceeding My purchasing power, I understand My option to enter a limit order. I also understand that limit orders may not be executed at any particular time, or at all, if there is not sufficient trading at or better than the limit price I specify, and are only good until the end of the trading day in which they are entered. The Website contains further information regarding order types and limitations, which I agree to read and understand before placing such orders.

As a customer of Robinhood Financial, I understand that after the market has closed for the day, I have the ability to place in a queue order requests to be executed the following day upon the opening of the market ("Queued Order"). I understand that My Queued Order request is prioritized based on the order in which it is received by Robinhood Financial, and that the Queued Order requests are sent out for execution shortly after the market opens on the next day of trading. I further understand that each Queued Order request is sent out per customer and per security as Robinhood Financial market orders (described above), and that they are not aggregated.

A limit order may be "good till cancelled" which means the order remains valid until (A) it is executed; (B) I cancel the order; (C) approximately 90 days from when the order is placed; or (D) the contract to which it relates is closed. I understand that Robinhood will

13

EXHIBIT A

cancel a "good till cancelled" order at the end of every trading day (on the exchange on which the instrument to which the contract relates is traded) and place such order again at the start of the following trading day.  This process will be repeated every day for as long as the "good till cancelled" order remains valid.  I further agree that any "good till cancelled" orders I place should be treated as "do not reduce" orders.

14.     **Bulletin Board/Pink Sheet Stocks.**  Bulletin board, pink sheet and other thinly-traded securities (collectively "bulletin board stocks") present particular trading risks, in part because they are relatively less liquid and more volatile than actively traded securities listed on a major exchange.  I understand that bulletin board stocks may be subject to different trading rules and systems than other securities and that I may encounter significant delays in executions, reports of executions, and updating of quotations in trading bulletin board stocks.  Robinhood Financial in its sole discretion may require limit orders on certain bulletin board stock transactions.

15.     **Research and Internet Links.**  News, research, links to outside websites, and other information accessible through the App or Website ("Content") may be prepared by independent external providers not affiliated with Robinhood Financial, including Morningstar, Inc. (all such providers, the "Providers").  I agree not to distribute, reproduce, sell, or otherwise commercially use the Content in any manner.  I understand that Robinhood may terminate My access to the Content.  I understand that none of the Content is a recommendation by Robinhood to buy or sell any securities or to engage in any investment strategy.

16.     **Restrictions on Trading.**  I understand that Robinhood may, in its discretion, prohibit or restrict the trading of securities, or the substitution of securities, in any of My Accounts.  I understand that Robinhood may execute all orders by Me on any exchange or market, unless I specifically instruct Robinhood to the contrary.  In the event of a breach or default by Me under this Agreement, Robinhood shall have all rights and remedies available to a secured creditor under all applicable laws and in addition to the rights and remedies provided herein.  I understand that Robinhood may at any time, at its sole discretion and without prior notice to Me: (i) prohibit or restrict My access to the use of the App or the Website or related services and My ability to trade, (ii) refuse to accept any of My transactions, (iii) refuse to execute any of My transactions, or (iv) terminate My Account. The closing of My Account will not affect the rights or obligations of either party incurred prior to the date My Account is closed.

Further, Robinhood will not tolerate any foul or abusive language, physical violence, threatening behavior, or other inappropriate conduct directed toward Robinhood, its Affiliates' officers, employees, contractors or customers.  If I engage in any such behavior, as determined by Robinhood in its sole discretion, I agree that Robinhood is authorized to: (i) liquidate any securities, instruments or other property in My Account, (ii) send Me the proceeds, and (iii) close My account.  Robinhood will not be responsible for any Losses caused by the liquidation of securities, instruments or other property pursuant to this paragraph, including any tax liabilities.

EXHIBIT A

17. **Waiver; Limitation of Liability; Indemnification.** I agree that My use of the App or the Website or any other service provided by Robinhood Financial or its Affiliates is at My sole risk. The Robinhood Financial service (including the App, the Website, the provision of Market Data, Information, Content, or any other information provided by Robinhood Financial, any of its Affiliates, or any third-party content provider or market data provider) is provided on an "as is," "as available" basis without warranties of any kind, either express or implied, statutory (including without limitation, timeliness, truthfulness, sequence, completeness, accuracy, freedom from interruption), implied warranties arising from trade usage, course of dealing, course of performance, or the implied warranties of merchantability or fitness for a particular purpose or application, other than those warranties which are implied by and incapable of exclusion, restriction or modification under the laws applicable to this Agreement.

Although considerable effort is expended to make the Website, App and other operational and communications channels available around the clock, Robinhood does not warrant that these channels will be available and error free every minute of the day. I agree that Robinhood will not be responsible for temporary interruptions in service due to maintenance, Website or App changes, or failures, nor shall Robinhood be liable for extended interruptions due to failures beyond our control, including but not limited to the failure of interconnecting and operating systems, computer viruses, forces of nature, labor disputes and armed conflicts.

EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THIS AGREEMENT, I UNDERSTAND AND AGREE THAT ROBINHOOD, ITS AFFILIATES, THEIR RESPECTIVE OFFICERS, DIRECTORS, EMPLOYEES AND AGENTS, AND THE PROVIDERS (COLLECTIVELY THE "ROBINHOOD PARTIES") WILL NOT BE LIABLE TO ME OR TO THIRD PARTIES UNDER ANY CIRCUMSTANCES, OR HAVE ANY RESPONSIBILITY WHATSOEVER, FOR ANY SPECIAL, INDIRECT, INCIDENTAL, PUNITIVE OR CONSEQUENTIAL DAMAGES (INCLUDING TRADING LOSSES, DAMAGES, LOSS OF PROFITS, REVENUE, OR GOODWILL) THAT I MAY INCUR IN CONNECTION WITH MY USE OF THE SERVICE PROVIDED BY ROBINHOOD OR ANY OF ITS AFFILIATES UNDER THIS AGREEMENT (INCLUDING MY USE OF THE APP, THE WEBSITE, THE MARKET DATA, THE INFORMATION, OR THE CONTENT), BREACH OF THIS AGREEMENT, OR ANY TERMINATION OF THIS AGREEMENT, WHETHER SUCH LIABILITY IS ASSERTED ON THE BASIS OF CONTRACT, TORT (INCLUDING NEGLIGENCE), OR OTHERWISE, AND WHETHER OR NOT FORESEEABLE, EVEN IF ANY ROBINHOOD PARTY HAS BEEN ADVISED OR WAS AWARE OF THE POSSIBILITY OF SUCH LOSS OR DAMAGES. THE ROBINHOOD PARTIES SHALL NOT BE LIABLE BY REASON OF DELAYS OR INTERRUPTIONS OF THE SERVICE OR TRANSMISSIONS, OR FAILURES OF PERFORMANCE OF THEIR RESPECTIVE SYSTEMS, REGARDLESS OF CAUSE, INCLUDING THOSE CAUSED BY GOVERNMENTAL OR REGULATORY ACTION, THE ACTION OF ANY EXCHANGE OR OTHER SELF REGULATORY ORGANIZATION, OR THOSE CAUSED BY SOFTWARE OR HARDWARE MALFUNCTIONS.

Except as otherwise provided by law, Robinhood or any of its affiliates or respective partners, officers, directors, employees or agents (collectively, "Indemnified Parties") shall not be liable for any expenses, losses, costs, damages, liabilities, demands, debts, obligations, penalties, charges, claims, causes of action, penalties, fines and taxes of any kind or nature (including legal expenses and attorneys' fees) (whether known or unknown, absolute or contingent, liquidated or unliquidated, direct or indirect, due or to become due, accrued or not accrued, asserted or unasserted, related or not related to a third party claim, or otherwise) (collectively, "Losses") by or with respect to any matters pertaining to My Account, except to the extent that such Losses are actual Losses and are determined by a court of competent jurisdiction or an arbitration panel in a final non-appealable judgment or order to have resulted solely from Robinhood's or any of its affiliates' gross negligence or intentional misconduct.  In addition, I agree that the Indemnified Parties shall have no liability for, and I agree to indemnify, defend and hold harmless the Indemnified Parties from all Losses that result from: (i) any noncompliance by Me with any of the terms and conditions of this Agreement; (ii) any third-party actions related to My receipt and use of any Information, Market Data, Content, market analysis, other third-party content, or other such information obtained on the App or Website, whether authorized or unauthorized under this Agreement; (iii) any third-party actions related to My use of the App or the Website; (iv) My or My agent's misrepresentation or alleged misrepresentation, or act or omission; (v) Indemnified Parties following My or My agent's directions or instructions, or failing to follow My or My agent's unlawful or unreasonable directions or instructions; (vi) any activities or services of the Indemnified Parties in connection with My Account (including any technology services, reporting, trading, research or capital introduction services); or (vii) the failure by any person not controlled by the Indemnified Parties and their affiliates to perform any obligations to Me.  Further, if I authorize or allow third parties to gain access to Robinhood's services, including My Accounts, I will indemnify, defend and hold harmless the Indemnified Parties against any Losses arising out of claims or suits by such third parties based upon or relating to such access and use.  Robinhood does not warrant against loss of use or any direct, indirect or consequential damages or Losses to Me caused by My assent, expressed or implied, to a third party accessing My Account or information, including access provided through any other third party systems or sites.

I consent to the use of automated systems or service bureaus by Robinhood and its respective affiliates in conjunction with My Account, including automated order entry and execution, record keeping, reporting and account reconciliation and risk management systems (collectively "Automated Systems").  I understand that the use of Automated Systems entails risks, such as interruption or delays of service, errors or omissions in the information provided, system failure and errors in the design or functioning of such Automated Systems (collectively, a "System Failure") that could cause substantial damage, expense, or liability to Me.  I understand and agree that Indemnified Parties will have no liability whatsoever for any of my Losses arising out of or relating to a System Failure.

I also agree that Indemnified Parties will have no responsibility or liability to Me in connection with the performance or non-performance by any exchange, clearing organization, market data provider, or other third party (including other broker-dealers and clearing firms, and banks) or any of their respective agents or affiliates, of its or their

16

obligations relative to any securities.  I agree that Indemnified Parties will have no liability, to Me or to third parties, or responsibility whatsoever for: (i) any Losses resulting from a cause over which Indemnified Parties do not have direct control, including the failure of mechanical equipment, unauthorized access, theft, operator errors, government restrictions, force majeure (as defined in this Agreement), market data availability or quality, exchange rulings or suspension of trading; and (ii) any special, indirect, incidental, consequential, punitive or exemplary damages (including lost profits, trading losses and damages) that I may incur in connection with My use of the App, the Website, Robinhood's brokerage, and other services provided by Indemnified Parties under this Agreement.

18.  **Mutual Fund Transactions.**  In the event that I purchase or hold a mutual fund, I agree to read and understand the terms of its prospectus.  I understand that certain mutual funds reserve the right to change their purchasing, switching or redemption procedures or suspend or postpone redemptions under certain market conditions.  I further understand that any mutual fund order entered with Robinhood is placed by Robinhood on a best efforts basis as prescribed and recognized by the individual fund, and that Robinhood is not responsible for unexecuted orders due to the failure of any communication system.  I agree to be fully responsible for the information contained within the mutual fund prospectus and to hold Robinhood, its Affiliates, and Robinhood and its Affiliates' respective officers and employees harmless for any deficiencies contained therein.  I authorize Robinhood to act as My agent in the purchase and redemption of fund shares.

19.  **Exchange Traded Funds.**  I understand that I should consider the investment objectives and unique risk profile of Exchange Traded Funds ("ETFs") carefully before investing, and that ETFs are subject to risks similar to those of other diversified portfolios.  I further understand that leveraged and inverse ETFs may not be suitable for all investors and may increase exposure to volatility through the use of leverage, short sales of securities, derivatives, and other complex investment strategies, and that although ETFs are designed to provide investment results that generally correspond to the performance of their respective underlying indices, they may not be able to exactly replicate the performance of the indices because of expenses and other factors.  I further understand that ETFs are required to distribute portfolio gains to shareholders at year end, which may be generated by portfolio rebalancing or the need to meet diversification requirements, and that ETF trading will also generate tax consequences.  I understand that I can obtain prospectuses from issuers or their third party agents who distribute and make prospectuses available for review.  Additional regulatory guidance on ETFs can be found here.

20.  **Effect of Attachment or Sequestration of Accounts.**  Robinhood shall not be liable for refusing to obey any orders given by or for Me with respect to any of My Accounts that has or have been subject to an attachment or sequestration in any legal proceeding against Me, and Robinhood shall be under no obligation to contest the validity of any such attachment or sequestration.

21.  **Event of Death.**  It is agreed that in the event of My death, the representative of My estate or the survivor or survivors shall immediately give Robinhood written notice thereof, and Robinhood may, before or after receiving such notice, take such proceedings, require such papers and inheritance or estate tax waivers, retain such portion of, or restrict transactions

17

in the Account as Robinhood may deem advisable to protect Robinhood against any tax, liability, penalty or loss under any present or future laws or otherwise. Notwithstanding the above, in the event of My death, all open orders shall be canceled, but Robinhood shall not be responsible for any action taken on such orders prior to the actual receipt of notice of death. Further, Robinhood may in Its discretion close out any or all of the Accounts without awaiting the appointment of a personal representative for My estate and without demand upon or notice to any such personal representative. The estate of any of the Account holders who have died shall be liable and each survivor shall continue to be liable, jointly and severally, to Robinhood for any net debit balance or loss in said account in any way resulting from the completion of transactions initiated prior to the receipt by Robinhood of the written notice of the death of the decedent or incurred in the liquidation of the Account or the adjustment of the interests of the respective parties, and for all other obligations pursuant to this Agreement. Such notice shall not affect Robinhood's rights under this Agreement to take any action that Robinhood could have taken if I had not died.

22. **Tax Reporting; Tax Withholding.** The proceeds of sale transactions and dividends paid will be reported to the Internal Revenue Service ("IRS") in accordance with applicable law.

A. <u>U.S. Persons</u>. This subsection is applicable if I am a U.S. person. Under penalties of perjury, I certify that the taxpayer identification number that I have provided or will provide to Robinhood (including any taxpayer identification number on any Form W-9 that I have provided or will provide to Robinhood) is My correct taxpayer identification number. I certify that I am not subject to backup withholding and I am a United States Person (including a U.S. resident alien) as such term is defined in section 7701(a)(30) of the Internal Revenue Code of 1986, as amended ("U.S. Person"). If a correct Taxpayer Identification Number is not provided Robinhood Financial, I understand I may be subject to backup withholding tax at the appropriate rate on all dividends, interest and gross proceeds paid to me. Backup withholding taxes are sent to the IRS and cannot be refunded by Robinhood Financial. I further understand that if I waive tax withholding and fail to pay sufficient estimated taxes to the IRS, I may be subject to tax penalties.

B. <u>Non-U.S. Persons</u>. This subsection is applicable if I am not a U.S. Person. I certify that I fully understand all the information on any Form W-8BEN that I have submitted or will submit to Robinhood. Under penalties of perjury, I declare that (i) I have examined all the information (including all the information in the English language) on any Form W-8BEN that I have submitted or will submit to Robinhood and (ii) to the best of My knowledge and belief all such information is true, correct, and complete. I authorize Robinhood to provide any such Form W-8BEN to Robinhood Securities or any withholding agent that has control, receipt, or custody of the income of which I am the beneficial owner or any withholding agent that can disburse or make payments of the income of which I am the beneficial owner. I agree that I will submit a new Form W-8BEN to Robinhood within 30 calendar days if any certification made on any previously submitted Form W-8BEN becomes incorrect. I understand that the IRS does not require My consent to any provisions of such Form W-8BEN other than the certifications required to establish My status as a non-U.S. Person and, if applicable, obtain a reduced rate of withholding.

18

23.    **Equity Orders and Payment For Order Flow.**  SEC rules require all registered broker-dealers to disclose their policies regarding any "payment for order flow" arrangement in connection with the routing of customer orders.  "Payment for order flow" includes, among other things, any monetary payment, service, property, or other benefit that results in remuneration, compensation, or consideration to a broker-dealer from any broker-dealer in return for directing orders.  I understand that Robinhood transmits customer orders for execution to various exchanges or market centers based on a number of factors.  These include: size of order, trading characteristics of the security, favorable execution prices (including the opportunity for price improvement), access to reliable market data, availability of efficient automated transaction processing and reduced execution costs through price concessions from the market centers.  I further understand that certain of the exchanges or market centers may execute orders at prices superior to the publicly quoted market in accordance with their rules or practices and that while a customer may specify that an order be directed to a particular market center for execution, the order-routing policies, taking into consideration all of the factors listed above, are designed to result in favorable transaction processing for customers.  The nature and source of any payments or credits received by Robinhood in connection with any specific transactions will be furnished upon written request.

24.    **Free Credit Balances and Sweep Service.**  If I enroll in Robinhood Financial Cash Management ("Cash Management"), I understand that I am electing to participate in the Insured Network Deposit ("IND") sweep service (the "Sweep Service").  Under the Sweep Service, free credit balances in My Account will be deposited into interest-bearing accounts at one or more banks ("Participating Depository Institutions"), in accordance with the Insured Network Deposit Sweep Program Disclosures ("IND Disclosures") available on the Website and in the App.  By enrolling in Cash Management, I represent and warrant that I have reviewed the IND Disclosures and agree to the terms set forth in the IND Disclosures.  If I am not enrolled in Cash Management, free credit balances in My Account will remain in My Account, will not earn interest and will not be eligible for FDIC insurance, but will be eligible for SIPC protection as described in the IND Disclosures.

25.    **Fees and Charges.**  I understand that Robinhood does not charge fees or commissions for executing buy and sell orders.  However, I understand that other fees may apply.  The current fees are included in the fee schedule available in the App and on the Website.  I agree to pay any such fees at the then-prevailing rate.  I acknowledge that the prevailing fees may change and that change may occur without notice.  I agree to be bound by such changes once they are posted in the fee schedule available in the App and on the Website. I also agree to pay all applicable federal, state, local, and foreign taxes.  I authorize Robinhood Financial to automatically debit My Account for any such fees and taxes.  I also agree to pay such expenses incurred by Robinhood in connection with collection of any unpaid balance due on My Accounts including attorney's fees allowed by law.

26.    **ACH Transactions.**

    A.    <u>Debit Transactions.</u>

19

Robinhood will initiate an ACH debit at My request to debit funds from an account that I own at another financial institution ("External Account") for deposit into My Account. I understand that in order for Robinhood to initiate an ACH debit, the financial institution holding my External Account must participate in the ACH system. I understand that for the ACH transfers to be established, at least one common name must match exactly between My Account and My External Account. I authorize Robinhood to take such steps as it deems appropriate to verify my ownership of External Account, including by telling the bank at which such External Account is held that I have authorized and consented to such bank disclosing to Robinhood any information that Robinhood may request about Me or My External Account. I also agree to cooperate with Robinhood's verification of my ownership of such External Account by promptly providing any identification and/or other documentation that Robinhood may request regarding such External Account. I represent and warrant that there are sufficient funds in My External Account to cover the amount of the deposit to My Account. Robinhood will initiate the ACH debit to My External Account on the Business Day or next Business Day after I request the transfer. A transfer request will be deemed to have been made on a Business Day if it is received by Robinhood by 7:00 p.m. (Eastern Time) on such Business Day; if received after that time, the transfer request will be deemed to have been made on the next Business Day.

Within 60 days of the date of My ACH deposit, My funds may only be withdrawn to the External Account from which such funds were deposited.

I understand that an ACH debit transfer may be reversed or rejected if: (A) there are insufficient funds in My External Account; (B) there is a duplicate transaction; (C) the transaction is denied by the bank holding My External Account; or (D) My External Account does not support ACH transfers. I acknowledge that in the event of an ACH reversal, I will incur a fee. Before initiating making an ACH debit transfer, I agree to check Robinhood Financial's most recent Commissions and Fees Schedule, available at https://brokerage-static.s3.amazonaws.com/assets/robinhood/legal/RHF%20Retail%20Commisions%2 0and%20Fees%20Schedule.pdf. I agree that I am solely liable and responsible for any ACH reversal fees that I incur.

B.      Credit Transactions.

Robinhood will initiate an ACH credit at My request to transfer funds from My Account to a recipient that I designate. I agree that I will have sufficient funds ("Available Funds") in My Account to cover the amount of any ACH credit that I ask Robinhood to initiate. Robinhood will debit the amount of such request from My Account on the Business Day or next Business Day after I request the transfer. A transfer request will be deemed to have been made on a Business Day if it is received by Robinhood by our cut-off time on such Business Day; if received after that time, the transfer request will be deemed to have been made on the next Business Day.

EXHIBIT A

I agree that Robinhood may use any means which Robinhood, in its sole discretion, considers suitable to execute my ACH credit transfers.

## 27. Fractional Shares

I acknowledge and understand that Robinhood rounds all holdings of fractional shares to the sixth decimal place, the value of fractional shares to the nearest cent, and any dividends paid on fractional shares to the nearest cent. I further understand that Robinhood will not accept dollar-based purchases or sales of less than $1.00 and that I will receive proceeds from the sale of any whole or fractional shares rounded to the nearest cent.

I understand that a vendor employed by Robinhood will aggregate any proxy votes for fractional shares of Robinhood's customers with all votes reported to the issuer or issuer's designated vote tabulator and that, while Robinhood's vendor will report such proxy votes on fractional shares, the issuer or tabulator may not fully count such votes.

I understand that Robinhood will execute all orders that include fractional shares on a principal basis. To the extent that Robinhood fulfills my order entirely out of its inventory and without purchasing or selling shares in the market, Robinhood will endeavor to price such shares or fractional shares at a price between the National Best Bid and Offer ("NBBO") at the time of the order for orders made during market hours, or, for such orders made during extended hours trading (9:00-9:30 a.m. and 4:00-6:00 p.m. Eastern), Robinhood will endeavor to price such orders between the best bid and offer at the time of the order, as reported by an external vendor. Orders made outside market hours and extended hours trading are queued and fulfilled either at or near the beginning of extended hours trading (9:00 a.m. Eastern) or at or near market open (9:30 a.m. Eastern), according to my instructions. To the extent that I trade fractional shares outside of market hours, these trades are subject to Robinhood's Extended Hours Trading Disclosure, available at: https://cdn.robinhood.com/assets/robinhood/legal/ExtendedHoursTradingDisclosure.pdf

I understand Robinhood only accepts market orders for fractional shares at this time and does not permit limit orders for fractional shares. I understand that fractional shares within My Account (i) are unrecognized, unmarketable, and illiquid outside the Robinhood platform, (ii) are not transferrable in-kind, and (iii) may only be liquidated and the proceeds transferred out via a wire transfer. I acknowledge that, subject to applicable requirements, Robinhood may report holdings and transactions in My Account in terms of either U.S. Dollars, shares, or both.

## 28. Dividend Reinvestment Program

Except as expressly stated otherwise, the provisions of this Section 28 will only apply if I am enrolled in Robinhood's Dividend Reinvestment Program ("DRIP").

EXHIBIT A

My enrollment in the DRIP will be activated within three business days after I notify Robinhood of my intention to enroll an eligible security through the App. "Eligible security" means all shares available for fractional investing through Robinhood. I understand that in order to be eligible for dividend reinvestment, the securities must be held in My Account.

I may specify individual securities or have all Eligible securities in My Account enrolled for dividend reinvestment. If I choose to reinvest dividends from all Eligible securities, I understand that individual securities could subsequently no longer be Eligible securities at Robinhood's discretion or under applicable law. In those cases, only those securities will be discontinued from the DRIP. If I specify individual securities, I may add additional Eligible securities to the DRIP at any time if I hold a position in those securities. Enrollment with respect to these additional Eligible securities will be effective within three business days after Robinhood receives notification from me through the App. If I maintain open orders for securities I do not already hold, I may not enroll those securities for dividend reinvestment until my open orders are executed. If my entire Account is set up for dividend reinvestment, any eligible securities I purchase in the future will automatically participate in the DRIP.

All eligible cash distributions will be reinvested on all securities I have selected in the DRIP, provided that I owned the securities on the record date for determining shareholders eligible to receive dividends, and continue to hold the securities through payable date. "Eligible cash distributions" means most cash distributions, including regular and optional dividends, cash-in-lieu payments, and capital gains distributions. Special dividends, late ex-date, liquidation, and miscellaneous payments may not be eligible distributions. Optional dividends will be processed in accordance with dividend reinvestment instructions. If I have a margin account, Robinhood is permitted to borrow a dividend paying stock in the normal course of business and, as a result, in such situations instead of a dividend payment I may receive a cash in lieu payment. If I receive a cash in lieu payment, I authorize Robinhood to treat such payment as if it was not "in lieu" and reinvest it accordingly.

Robinhood will credit My Account upon completion of the dividend reinvestment. Robinhood will reinvest dividends on the business day following receipt of funds. In the rare instance in which Robinhood is unable to reinvest all dividends on the business day following receipt, it will reinvest the remaining funds as soon as reasonably possible thereafter, which may take up to five business days. I will not have use of the funds prior to reinvestment.

I understand that my participation in the DRIP is voluntary and that Robinhood has not made any recommendation that I should participate. I further understand that Robinhood is not recommending or offering any advice regarding the purchase of any security included as an Eligible security in the DRIP. I further understand that dividend reinvestment does not assure profits on my investments, nor does it protect against losses in declining markets.

EXHIBIT A

I may terminate my participation in the DRIP, or the enrollment of individual securities in the DRIP, at any time by giving notice through the App. Termination will take effect prior to the next Eligible cash distribution provided my notice to terminate was received at least three business days prior to the record date of that distribution. I understand that my notice to terminate my participation in the DRIP will not affect any obligations that may result from transactions initiated prior to Robinhood's receipt and processing of my notice.

If I participate in the DRIP, I understand Robinhood will reinvest the dividends of a particular stock at or near the opening price on the trading day following receipt of the dividend. Robinhood will combine Eligible cash distributions from My Account with those from other Robinhood clients requesting dividend reinvestment in the same security and use these combined funds to purchase securities on my behalf and on behalf of these other clients. If the combined reinvested funds do not total the purchase price of at least one share, the distribution will be invested in fractional shares. On that same day, Robinhood will credit My Account with that number of shares, including fractional shares, equal to my Eligible cash distribution divided by the purchase price per share. Robinhood does not intend to charge a fee for transactions executed pursuant to the DRIP.

Dividend reinvestment may result in my owning interests in fractional shares of a security. I will be entitled to receive future dividend payments on my fractional shares, although other corporate actions may result in allocation of only whole shares and cash in lieu of fractions as determined by the issuer. In mandatory corporate reorganizations, my partial interest will be handled according to the specific terms of the reorganization. In voluntary corporate reorganizations, Robinhood will act on my instructions with respect only to my whole shares.

Because fractional share positions cannot be transferred, reorganized, or issued in certificate form, my partial interest will be liquidated, without commission charges to me, at prevailing market prices in the event My Account is transferred or closed, the stock is reorganized, or stock certificates are ordered out of My Account. The timing of such liquidations will be at the discretion of Robinhood.

Reinvestment of dividends may result in my owning a fractional share position in securities that are callable in part. In the event of a call, fractional shares to be called will be determined through a random selection process. The probability of my fractional share holdings being called will be proportional to the holdings of all Robinhood clients who own a fractional share position in that security. Prior to the publication date of such a call, I have the right to withdraw from My Account cash in lieu of my uncalled, fully paid partial holdings. Once a call is announced, however, all shares, whether registered or held in street name, participate in the random selection process. If my fractional shares are selected and I no longer hold the shares that I held on the publication date of the call, I will be responsible for covering those shares.

**29.  Cash Management Services.**

23

Except as expressly stated otherwise, the provisions of this Section 29 will only apply if I am enrolled in Cash Management.

A.    <u>General</u>.

    I understand and agree that by enrolling in Cash Management, I am applying for a Robinhood-branded debit card issued by the bank identified in My Robinhood Debit Card Agreement ("Card"). I further understand and agree that by using My Card or exercising My electronic fund transfer ("EFT") privileges offered in connection with My Account, I authorize Robinhood to debit My Account immediately whenever an electronic draft or Card transaction is presented for payment on My behalf, when an EFT transaction is effected, or when any fee or charge is due (collectively "Payments"). I further understand and agree that when I request a Payment or withdrawal or instruct Robinhood to make a purchase of securities from My Account, Robinhood is authorized to place a block on the amount of the transaction ("Blocked Amounts") prior to the settlement date of the Payment, withdrawal or trade, and that the Blocked Amounts will not be available for use for additional Payments or the purchase of securities. I agree to maintain Available Funds sufficient to pay for EFT transactions, Card transactions and withdrawals made by Me or any Authorized Card User (as defined below) and to pay for any securities trades and for interest on any margin loans and other transaction fees. For this purpose, "Available Funds" in My Account will fluctuate daily and means the sum of (i) free credit balances, (ii) deposits to Participating Depository Institutions through the Sweep Service, and (iii) available margin loan value if My Account has margin privileges, minus (x) uncleared funds, (y) Blocked Amounts, and (z) deposits subject to a hold. The loan value of eligible securities for the purpose of margin is subject to regulatory requirements and Robinhood credit policies then in effect.

B.    <u>Payments and Withdrawals</u>.

    I agree that any Payments that I make from My Account will be lawful. I agree that Payments will be deducted from the Available Funds in My Account in the following order: first, from free credit balances; second, by withdrawal of funds deposited to Participating Depository Institutions as part of the Sweep Service; and third, if My Account has margin privileges, from margin loans on the eligible securities in My margin Account. Robinhood will debit My Account only up to an amount equal to the Available Funds. I understand and agree that (i) if there are insufficient Available Funds in My Account to cover Payments when they become due, Robinhood has no obligation to make such Payments, and (ii) Robinhood has no obligation to make partial Payments. Robinhood will not charge a fee with respect to any declined Payment for which there were insufficient Available Funds. I acknowledge and agree, however, that Robinhood will not be responsible for any costs or losses that I may incur (including fees, costs, charges, attorneys' fees, investment losses, claims, demands, or liability resulting from any litigation or other actions) as a result of Robinhood's decision to decline any Payment or

24

EXHIBIT A

withdrawal or other transaction because My Account has insufficient Available Funds.

I understand that if a Payment is funded by a margin loan, I will incur interest until the margin loan is repaid.

I agree that if my Available Funds at any time falls below zero, Robinhood may suspend Card and EFT privileges and terminate My Card. If this occurs, I agree to immediately pay all amounts owed to Robinhood, including any purchases on My Card which will be immediately charged to My Account.

I acknowledge and agree that Robinhood reserves the right to decline any purchase or cancel My Card, and EFT privileges at any time for any reason with or without notice to Me. If Robinhood decides to take such action, I understand and agree that I am responsible for any pending debits, which will be processed and deducted from My Account.

I understand that transactions will post to My Account in any order determined by Robinhood and that Robinhood may change that order without prior notice to Me. Robinhood will comply with requirements of applicable law regarding the order of posting transactions.

C.  Limitation of Liability.

I agree that, subject to any limitations imposed by applicable law, and except as otherwise set forth in this Agreement or in the disclosures contained in the Robinhood Debit Card Agreement, which has been provided to Me or made available to me in connection with the opening of My Account, neither Robinhood, any processing bank, nor the Card issuer will be liable for any loss I incur in connection with My Account, Card transactions, EFT transactions, or other features of My Account unless Robinhood is grossly negligent in fulfilling this Agreement. In no event will Robinhood, any processing bank, or the Card issuer be liable for consequential, special or indirect damages or losses unless applicable law requires otherwise. I also agree that liability regarding online services or use of the App is further limited by the Robinhood Terms and Conditions, available at https://about.robinhood.com/legal/. To the extent I utilize online services or the App I acknowledge that I am bound by such Robinhood Terms and Conditions.

D.  Debit Cards.

I understand and agree that My use of the Card is subject to the terms, conditions and disclosures set forth in the Robinhood Debit Card Agreement, which has been provided to Me in connection with the opening of My Account and which I may access on the Website.

I understand and agree that I cannot request a Card for another person to use. I agree, however, that if I permit another person to have access to use My Card or

EXHIBIT A

Card number (an "Authorized Card User"), I am authorizing all Card transactions by such person and I agree that there are no limits to my authorization. I accept all liability with respect to the Card transactions effected by Me and any Authorized Card Users. I further agree that I may I may terminate the authority of an Authorized Card User only by contacting help@robinhood.com to cancel my Card. I agree that the cancellation of My Card is effective only after Robinhood has a reasonable period to act on My notice.

If My Card is cancelled, I agree to destroy, or if requested by Robinhood, return the Card to Robinhood. I acknowledge that I will be responsible for any Card transactions that are processed because of My failure to destroy or return the Card following cancellation.

If My Account includes margin privileges, I agree that transactions that exceed My free credit balances and deposits in the Sweep Service may result in margin credit being extended to My Account, for which I will be charged interest. I agree to review the Margin Disclosure Statement, which is available at https://about.robinhood.com/legal/.

E.      Deposits.

The provisions in this Section 29.E shall apply to My Account whether or not I am enrolled in Cash Management.

General; Holds. I understand that I may deposit funds to My Account by ACH, direct deposit or EFT (including deposits using the MoneySend service offered by Mastercard). I acknowledge and agree that funds that I deposit may be subject to one or more hold periods, which are described in the RHF Funds Availability schedule available at https://about.robinhood.com/legal/. I understand and agree that Robinhood reserves the right to modify the RHF Funds Availability schedule at any time by posting an updated schedule at https://about.robinhood.com/legal/, or otherwise providing notice to me. During the applicable hold period, My funds will not be available for ACH transfers, Card transactions, withdrawal, or the settling of securities transactions, in each case as described in the RHF Funds Availability schedule. I further understand and agree that Robinhood reserves the right to further delay making deposited funds available for periods longer than the hold periods specified in the RHF Funds Availability schedule to the extent Robinhood determines that additional time is needed to verify information about the item deposited or the sender or if Robinhood otherwise believes there is a risk of fraud or other unlawful activity with respect to My Account.

Mistaken Deposits. If funds are deposited or transferred into My Account by mistake or otherwise, I agree that Robinhood may correct the situation and deduct any interest paid by Participating Depository Institutions, if applicable, without prior notice to Me.

26

EXHIBIT A

<u>Returned Items</u>. I acknowledge and agree that I am responsible for returned transactions. If I have funds transferred into My Account and that transfer is returned for any reason, Robinhood may charge the transfer and interest paid by Participating Depository Institutions, if applicable, against My Account, without prior notice to Me. Robinhood may send the returned transfer back for collection a second time without notifying Me, and I waive notice of dishonor and protest.

F.    <u>Electronic Fund Transfers</u>.

The provisions in this Section 29.F relating to EFTs other than Card transactions shall apply to My Account whether or not I am enrolled in Cash Management.

I understand that My Account may be eligible for a variety of EFTs, which may be subject to separate agreements, terms and conditions. These services may include use of the Card, and the "Move Money" functionality of the App. I understand that I may be required to agree to separate terms and conditions governing the particular service I use to initiate EFTs. In addition, I understand and agree that my use of EFT services are subject to the disclosures set forth in Appendix A (Electronic Fund Transfer Disclosures), and acknowledge that I have received and reviewed such disclosures.

G.    <u>Security</u>.

I agree to protect My Card, and My PINs, from access by anyone not authorized by Me to use them. I acknowledge that I will be liable for all Card and online transactions conducted by anyone to whom I have given access or who has obtained access even if not authorized by Me, up to applicable legal limits. I understand that I am responsible for reviewing My Account statement promptly to discover and report unauthorized activity, including use of My Card, Card number or PIN. I agree to notify Robinhood as provided in Appendix A (Electronic Fund Transfer Disclosures) if I believe or have reason to believe that there has been unauthorized activity in My Account or that My Card, Card number or PIN has been lost, stolen or may be used by an unauthorized person. Unless limited by law or as otherwise set forth in this Agreement or in the disclosures contained in Robinhood Debit Card Agreement, which is provided to Me as part of the Account opening process and is available on the Website, I agree that I will be responsible for losses that arise from My failure to (i) safeguard My Card and PINs, (ii) review My monthly statement for possible unauthorized activity and (iii) report any unauthorized activity to Robinhood as provided herein or in the Robinhood Debit Card Agreement.

H.    <u>Disclosure of Information</u>.

I agree and understand that all disclosures of My non-public personal information shall be made in accordance with the terms of this Agreement or the Robinhood Privacy Policy (available on the Website at https://about.robinhood.com/legal/), as applicable. I agree that My consent to sharing non-public personal information will

remain in effect until I revoke such consent by updating My settings and visibility, which I may do at any time through the App.

In addition, I understand and agree that Robinhood may disclose information about My Account and My related activities to third parties under the following circumstances:

- As necessary to complete My Payment transactions;

- To investigate any complaint, disputed transaction, transaction inquiry or request I make or as necessary to investigate potential fraud or misuse related to My Account;

- To respond to requests from credit bureaus, creditors or other third parties for account-related information, to the extent such inquiries are necessary for processing My transactions or are usual and customary in the course of servicing similar products or accounts;

- As necessary to comply with any applicable law, government or court order or subpoena; or

- In accordance with My written permission or as otherwise permitted under the Robinhood Privacy Policy.

I.    Termination.

I understand that Robinhood may terminate my participation in Cash Management or in specific features of Cash Management for any reason, upon notice to me.

**30.    Consent to Redeem Shares.**

I understand and agree that whenever it is necessary for Robinhood's protection or to satisfy a margin call, deficiency, debit or other obligation owed to Robinhood, Robinhood may (but is not required to) sell, assign and deliver all or any part of the securities in My Account, or close any or all transactions in My Account.  I understand that Robinhood may, but is not obligated to, attempt to contact Me before taking any such action.  I understand and agree that Robinhood reserves the right to take any such action without prior notice or demand for additional collateral, and free of any right of redemption, and that any prior demand, call or notice will not be considered a waiver of our right to sell or buy without demand, call or notice.

I further understand that Robinhood may choose which securities to buy or sell, which transactions to close, and the sequence and timing of liquidation, and may take such actions on whatever exchange or market and in whatever manner (including public auction or private sale) that Robinhood chooses in the exercise of

28

its business judgment. I agree not to hold Robinhood liable for the choice of which securities to buy or sell or of which transactions to close or for the timing or manner of the liquidation. I also agree not to hold Robinhood liable for taking such action.

I understand and agree that Robinhood is entitled to exercise the rights described in this section in its sole discretion, including, but not limited to, whenever any of the following occurs:

- The equity level in My Account falls below required minimums;

- Sufficient funds or securities are not deposited to pay for transactions in My Account;

- I reverse any ACH debit transfer to My Account;

- A petition of bankruptcy or for the appointment of a receiver is filed by or against Me;

- An attachment is levied against My Account;

- I die or become incapacitated or incompetent; or

- My Account is closed.

31. **Electronic Delivery of Trade and Account Information; Notice.** All communications, notices, legal disclosures, and other materials related to My Account or this Agreement, including account statements, trade confirmations, margin calls, notices, disclosures, regulatory communications and other information, documents, data and records regarding My Account (the "Communications"), or an alert that any such Communication has been posted to the secure section of the Website or the App, and is available for viewing, may be sent to Me at the mailing address for My Account or the e-mail address that I have given to Robinhood in My account application or at such other address as I may hereafter give Robinhood in writing or by e-mail at least ten (10) calendar days prior to delivery, and all communications so sent, whether in writing or otherwise, shall be deemed given to Me personally, whether actually received or not.

32. **API.**

A. <u>Overview; Definitions</u>. Robinhood may, in Robinhood's sole discretion, provide third parties with an application programming interface and other materials in accordance with any accompanying documentation (collectively, the "API Package") (such third parties, "API Licensees"), to make available certain features and functionality of Robinhood's mobile applications, websites, or technology platform via the API Licensees' products (such products, the "Licensee Products"). The API Package and the Licensee Products are collectively referred to as the "API Products". "Personal Information" means My personally identifiable information

29

(including username, logon password, financial information, trade data, and other financial information) and all data exchanged between Robinhood and the API Products.

B.    <u>Access to My Personal Information</u>.  Through My use of any API Products, I may be providing API Licensees with access to My Account and Personal Information.  By using any API Products, I acknowledge that such API Products may employ security, policies, procedures and systems of API Licensees which may or may not be less stringent and secure than Robinhood's policies, procedures and systems.  I agree that My use of any API Products shall be subject to the terms and conditions of this Agreement, in addition to any other agreements which I executed with respect to any such API Products.  I understand and agree that any end user agreement that I executed with any API Licensee is concluded between Me and such API Licensee only, and not with Robinhood; and such API Licensee, not Robinhood, is solely responsible for such Licensee Product and the content thereof.  I understand and agree that the API Products may deliver Personal Information to Robinhood, and that Robinhood is authorized to receive and store such Personal Information consistent with Robinhood's then-in-effect policies and procedures.  Further, I agree that the API Products may request Personal Information stored by Robinhood, and I consent to Robinhood's disclosure of such Personal Information to the API Products.

C.    <u>No Recommendations</u>.  To the extent the Licensee Products or API Licensees express opinions or make recommendations, I understand that such opinions and recommendations are expressed solely by API Licensees and are not the opinions or recommendations of Robinhood.  The existence of the API Products and Robinhood's consent to any connectivity between any Licensee Products and Robinhood's technology, the App, the Website, or trading platform(s) does not constitute (i) any recommendation by Robinhood to invest in any security or utilize any investment strategy; or (ii) any representation, warranty, or other guarantee by Robinhood as to the present or future value or suitability of any sale, trade, or other transaction involving any particular security or any other investments.  The existence of any and all information, tools and services provided by API Licensees or by the Licensee Products shall not constitute Robinhood's endorsement of API Licensees or the Licensee Products.

D.    <u>Data Provided by Robinhood to API</u>.  From time to time, and subject to then-in-effect agreements between Robinhood and API Licensees, Robinhood may, in its own discretion, make market data feeds received from third parties available via the API Products.  Robinhood does not make any guarantees in regard to such market data feeds.  Furthermore, API Licensees or Licensee Products may make available to Me market data feeds independent of Robinhood.  I am aware that from time to time that there may be discrepancy between the market data presented on the App or Website and information provided by any API Products due to a variety of reasons, including the time to update and transmit such data to a mobile application or website and latency caused by such API Product's or My local environment (such as computer set up, connection speed, etc.).  Robinhood is not

EXHIBIT A

responsible for the accuracy of any market data displayed on any API Products or otherwise made available by API Licensees.

E.    <u>Risks; No Liability</u>.  I acknowledge that there may be latency between the time an order (or other Personal Information) is submitted from the API Products and the time such order or Personal Information is received by Robinhood.  Latency may also affect order modification and order cancellation requests.  The time an order or a request is actually received by Robinhood (including for execution) will be the official time, including for the purposes of routing the order to the market for execution.  In addition, all orders submitted to Robinhood are subject to order vetting by Robinhood.  Orders created and submitted through any API Products are not vetted until they are received by Robinhood.  It is possible that Robinhood may reject an order placed through any API Products.  Robinhood cannot guarantee that any order will be accepted when such order is routed to the market for execution, and Robinhood cannot guarantee that notifications and Personal Information provided to Me by Robinhood will be successfully delivered to or displayed by any API Products.

Without limiting the generality of any other terms in this Agreement, I agree that:

(i)      Robinhood or its Affiliates shall not be liable for any Losses as a result of any issues addressed in this Section 32 of this Agreement, nor shall Robinhood or its Affiliates be liable for any Losses realized for technical issues involving any API Products or API Licensee technology or product offerings (including system outages or downtime).

(ii)      Robinhood or its Affiliates shall not be responsible for any investment research provided by any API Licensee or any Licensee Products.

(iii)      Robinhood or its Affiliates makes no representations, warranties or other guarantees as to the accuracy, timeliness or efficacy of any market data, information, or other functionality made available by any API Licensee or any API Products.

F.    <u>Intellectual Property</u>.  My use of any API Products will not confer to Me any title, ownership interest or intellectual property rights that otherwise belongs to Robinhood or any of its affiliates.  The API Package, including content, is protected under U.S. patent, copyright laws, international treaties or conventions, and other laws and will remain Robinhood's exclusive property, as applicable.  Names, logos, and all related product and service names, design marks, and slogans displayed by or relating to Robinhood or any of its Affiliates or API Licensees in the context of the API Products shall remain the property of the respective owner, and use of such property by Robinhood or any API Licensee in marketing or provision of any API Products does not grant ownership of or entitle Me to use any such name or mark in any manner.

G.    <u>User's Representations and Warranties</u>.  I represent and warrant that:

31

EXHIBIT A

(i)      By virtue of utilizing any API Products, I consent to and accept any risk associated with Robinhood's sharing of Personal Information with any API Licensee and shall not hold Robinhood, its Affiliates, or their respective officers, directors, or employees responsible for any Losses resulting from the sharing of such Personal Information.

(ii)     I agree that My use of any API Products or API Licensee's content, information, technology, or functionality is at My own risk.

(iii)    I agree that Robinhood may revoke any API Licensee or API Products' authorization at any time, for any reason, with or without cause and without prior notice to Me.

33.    **Electronic Signatures; Modifications to the Agreement.**  I agree to transact business with Robinhood electronically.  By electronically signing an application for an Account, I acknowledge and agree that such electronic signature is valid evidence of My consent to be legally bound by this Agreement and such subsequent terms as may govern the use of Robinhood's services.  The use of an electronic version of any document fully satisfies any requirement that the document be provided to Me in writing.  I accept notice by electronic means as reasonable and proper notice, for the purpose of any and all laws, rules and regulations.  I acknowledge and agree that Robinhood Financial may modify this Agreement from time to time and I agree to consult the Website from time to time for the most up-to-date Agreement.  The electronically stored copy of this Agreement is considered to be the true, complete, valid, authentic and enforceable record of the Agreement, admissible in judicial or administrative proceedings to the same extent as if the documents and records were originally generated and maintained in printed form.  I agree to not contest the admissibility or enforceability of Robinhood Financial's electronically stored copy of the Agreement.

34.    **Margin Accounts.**

A.    <u>Election</u>.  This numbered section applies to my account to the extent I elect and am approved for a Robinhood Gold margin account.

B.    <u>Margin Trading</u>.  I understand that margin trading involves interest charges and risks, including the potential to lose more than deposited or the need to deposit additional collateral in a falling market.  Before using margin, customers must determine whether this type of trading strategy is right for them given their specific investment objectives, experience, risk tolerance, and financial situation.  If I have elected to have a margin Account, I represent that I have read the <u>Margin Disclosure Statement</u>, <u>Day Trading Risk Disclosure</u>, and <u>FINRA Investor Information</u>.  These disclosures contain information on Robinhood's lending policies, interest charges, and the risks associated with margin accounts.

C.    <u>Hypothecation</u>.  Within the limitations imposed by applicable laws, rules and regulations, all securities now or hereafter held by Robinhood, or carried by Robinhood in any account for Me (either individually or jointly with others), or

deposited to secure same, may from time to time, without any notice, be carried in your general loans and may be pledged, repledged, hypothecated or re-hypothecated, separately or in common with other securities for the sum due to you thereon or for a greater sum and without retaining in your possession or control for delivery a like amount of similar securities. The IRS requires Broker Dealers to treat dividend payments on loaned securities positions as payments received in lieu of dividends for 1099 tax reporting purposes. Taxation of substitute dividend payments may be greater than ordinary on qualified dividends. It is understood, however, that you agree to deliver to Me upon My demand and upon payment of the full amount due thereon, all securities in such accounts, but without obligation to deliver the same certificates or securities deposited by Me originally. Any securities in My margin or short account may be borrowed by you, or lent to others.

D.      Interest.  Debit balances in My Accounts shall be charged with interest in accordance with your established custom, as disclosed to Me in the Customer Information Brochure pursuant to the provisions of the Securities Exchange Act.

E.      Margin.  I agree to maintain in all accounts with Robinhood such positions and margins as required by all applicable statutes, rules, regulations, procedures and custom, or as you deem necessary or advisable. I agree to promptly satisfy all margin and maintenance calls.

F.      Sales.  I agree to specifically designate any order to sell a security, which I do not own as a short sale, and understands that Robinhood will mark such order as a short sale. I agree that any order which is not specifically designated as a short sale is a sale of securities owned by me, and that I will deliver the securities on or before settlement date, if not already in the account. If I should fail to make such delivery in the time required, Robinhood is authorized to borrow such securities as necessary to make delivery for the sale, and I agree to be responsible for any loss you may thereby sustain, or which you may sustain as a result of your inability to borrow such securities.

## 35.    Consent to Electronic Delivery of Documents.

A.      Consent.  **By agreeing to electronic delivery, I am giving My informed consent to electronic delivery of all Account Documents, as defined below, other than those I have specifically requested to be delivered in paper form**. "Account Documents" include notices, disclosures, current and future account statements, regulatory communications (such as prospectuses, proxy solicitations, and privacy notices), trade confirmations, tax-related documents, and any other information, documents, data, and records regarding My Account, this Agreement (including amendments to this Agreement), and the agreements and disclosures governing the services delivered or provided to Me by Robinhood Financial, the issuers of the securities or other property in which I invest, and any other parties. I agree that I can access, view, download, save, and print any Account Documents I receive via electronic delivery for My records.

EXHIBIT A

B.    Electronic Delivery System.  I acknowledge that Robinhood's primary methods of communication with Me include (A) posting information on the Website, (B) providing information via the App, (C) sending email(s) to My email address of record, and, to the extent required by law, (D) providing Me with notice(s) that will direct Me to the App or the Website where I can read and print such information. Unless otherwise required by law, Robinhood reserves the right to post Account Documents on the Website without providing notice to Me.  Further, Robinhood reserves the right to send Account Documents to My postal or email address of record, or via the App or Website.  I agree that all Account Documents provided to Me in any of the foregoing manner is considered delivered to Me personally when sent or posted by Robinhood, whether I receive it or not.

All e-mail notifications regarding Account Documents will be sent to My e-mail address of record.  I agree to maintain the e-mail address that I have provided Robinhood until I provide Robinhood with a new one.  I understand that e-mail messages may fail to transmit promptly or properly, including being delivered to SPAM folders.  I further understand that it is My sole responsibility to ensure that any emails from Robinhood or its Affiliates are not marked as SPAM.  Regardless of whether or not I receive an e-mail notification, I agree to check the Website regularly to avoid missing any information, including time-sensitive or otherwise important communication.  If I authorize someone else to access the e-mail account I have provided Robinhood, I agree to tell them to share the Account Documents with Me promptly, and I accept the risk that they will see My sensitive information. I understand that if I use a work e-mail address or computing or communications device, My employer or other employees may have access to the Account Documents.

Additionally, I acknowledge that the Internet is not a secure network and agree that I will not send any confidential information, including Account numbers or passwords, in any unencrypted e-mails.  I also understand that communications transmitted over the Internet may be accessed by unauthorized or unintended third parties and agree to hold Robinhood, its Affiliates, and Robinhood and its Affiliates' respective officers and employees harmless for any such access regardless of the cause.

I agree to promptly and carefully review all Account Documents when they are delivered and notify Robinhood Financial in writing within five (5) calendar days of delivery if I object to the information provided (or other such time specified herein).  If I fail to object in writing within such time, Robinhood Financial is entitled to treat such information as accurate and conclusive.  I will contact Robinhood to report any problems with accessing the Account Documents.

C.    Costs.  Potential costs associated with electronic delivery of Account Documents may include charges from Internet access providers and telephone companies, and I agree to bear these costs.  Robinhood Financial will not charge Me additional online access fees for receiving electronic delivery of Account Documents.

34

EXHIBIT A

D.   <u>Archival</u>.  Upon My request, I may obtain copies of up to six (6) prior years of account statements, and three (3) prior years of trade confirmations.

E.   <u>Revocation of Consent</u>.  Subject to the terms of this Agreement, I may revoke or restrict My consent to electronic delivery of Account Documents at any time by notifying Robinhood Financial in writing of My intention to do so.  I also understand that I have the right to request paper delivery of any Account Document that the law requires Robinhood Financial to provide Me in paper form.  Robinhood Financial will not treat My request for paper copies as a withdrawal of My consent to electronic delivery of Account Documents.  I understand that if I revoke or restrict My consent to electronic delivery of Account Documents or request paper delivery of same, Robinhood Financial, in its sole discretion, may charge Me a reasonable service fee for the delivery of any Account Document that would otherwise be delivered to Me electronically, restrict or close My account, or terminate My access to Robinhood Financial's services.  I understand that neither My revocation or restriction of consent, My request for paper delivery, nor Robinhood Financial's delivery of paper copies of Account Documents will affect the legal effectiveness or validity of any electronic communication provided while My consent was in effect.

F.   <u>Duration of Consent</u>.  My consent to receive electronic delivery of Account Documents will be effective immediately and will remain in effect unless and until either I or Robinhood Financial revokes it.  I understand that it may take up to three (3) Business Days to process a revocation of consent to electronic delivery, and that I may receive electronic notifications until such consent is processed.

G.   <u>Hardware and Software Requirements</u>.  I understand that in order to receive electronic deliveries, I must have access to a computer or Mobile Device with Internet access, a valid e-mail address, and the ability to download such applications as Robinhood Financial may specify and to which I have access.  I also understand that if I wish to download, print, or save any information I wish to retain, I must have access to a printer or other device in order to do so.

H.   <u>Consent and Representations</u>.  I hereby agree that I have carefully read the above information regarding informed consent to electronic delivery and fully understand the implications thereof.  Additionally, I hereby agree to all conditions outlined above with respect to electronic delivery of any Account Document.  I will maintain a valid e-mail address and continue to have access to the Internet.  If My e-mail address changes, I agree to immediately notify Robinhood Financial of My new e-mail address in writing.

**36.**   **Miscellaneous Provisions.**  The following provisions shall also govern this Agreement:

A.   <u>Contact Information</u>.  Robinhood Customer Service may be contacted by visiting support.robinhood.com or by email at help@robinhood.com.

35

EXHIBIT A

B.    Interpretation.  The heading of each provision hereof is for descriptive purposes only and shall not be (1) deemed to modify or qualify any of the rights or obligations set forth herein or (2) used to construe or interpret any of the provisions hereunder. When a reference is made in this Agreement to a Section, such reference shall be to a Section of this Agreement unless otherwise indicated.  Whenever the words "include," "includes" or "including" are used in this Agreement, they shall be deemed to be followed by the words "without limitation." The word "or," when used in this Agreement, has the inclusive meaning represented by the phrase "and/or." Unless the context of this Agreement otherwise requires: (i) words using the singular or plural number also include the plural or singular number, respectively; and (ii) the terms "hereof," "herein," "hereunder" and derivative or similar words refer to this entire Agreement.  References to any law shall be deemed to refer to such law as amended from time to time and to any rules or regulations promulgated thereunder.

C.    Binding Effect; Assignment.  This Agreement shall bind My heirs, assigns, executors, successors, conservators and administrators.  I may not assign this Agreement or any rights or obligations under this Agreement without first obtaining Robinhood's prior written consent.  Robinhood may assign, sell, or transfer My Account and this Agreement, or any portion thereof, at any time, without My prior consent.

D.    Severability.  If any provisions or conditions of this Agreement are or become inconsistent with any present or future law, rule, or regulation of any applicable government, regulatory or self-regulatory agency or body, or are deemed invalid or unenforceable by any court of competent jurisdiction, such provisions shall be deemed rescinded or modified, to the extent permitted by applicable law, to make this Agreement in compliance with such law, rule or regulation, or to be valid and enforceable, but in all other respects, this Agreement shall continue in full force and effect.

E.    Website Postings.  I agree and understand that Robinhood Financial may post other specific agreements, disclosures, policies, procedures, terms, and conditions that apply to My use of the App, the Website, or My Account on the Website ("Website Postings").  I understand that it is My continuing obligation to understand the terms of the Website Postings, and I agree to be bound by the Web Postings as are in effect at the time of My use.

F.    Entirety of Agreement.  This Agreement, any attachments hereto, other agreements and policies referred to in this Agreement (including the Website Postings), and the terms and conditions contained in My Account statements and confirmations, contain the entire agreement between Robinhood and Me and supersede all prior or contemporaneous communications and proposals, whether electronic, oral, or written, between Robinhood and Me, provided, however, that any and all other agreements between Robinhood and Me, not inconsistent with this Agreement, will remain in full force and effect.

36

EXHIBIT A

G.    Amendment.  Robinhood may at any time amend this Agreement without prior notice to Me.  The current version of the Agreement will be posted on the Website and My continued Account activity after such amendment constitutes My agreement to be bound by all then-in-effect amendments to the Agreement, regardless of whether I have actually reviewed them.  Continued use of the App, the Website or any other Robinhood Financial services after such posting will constitute My acknowledgment and acceptance of such amendment.  I agree to regularly consult the Website for up-to-date information about Robinhood Financial services and any modifications to this Agreement.  Robinhood is not bound by any verbal statements that seek to amend the Agreement.

H.    Termination.  Robinhood may terminate this Agreement, or close, deactivate, or block access to My Account at any time in its sole discretion.  I will remain liable to Robinhood for all obligations incurred in My Account, pursuant to this Agreement, or otherwise, whether arising before or after termination.  I may terminate this Agreement after paying any obligations owed upon written notice.  This Agreement survives termination of My Account.

I.    No Waiver; Cumulative Nature of Rights and Remedies.  I understand that Robinhood's failure to insist at any time upon strict compliance with any term contained in this Agreement, or any delay or failure on Robinhood's part to exercise any power or right given to Robinhood in this Agreement, or a continued course of such conduct on Robinhood's part, shall at no time operate as a waiver of such power or right, nor shall any single or partial exercise preclude any other further exercise.  All rights and remedies given to Robinhood in this Agreement are cumulative and not exclusive of any other rights or remedies to which Robinhood is entitled.

J.    International Customers.  The products and services described on the Website are offered only in jurisdictions where they may be legally offered.  Neither the Website nor the App shall be considered a solicitation for or offering of any investment product or service to any person in any jurisdiction where such solicitation or offering would be illegal.  I understand that Robinhood, in its sole discretion, may accept unsolicited accounts from non-U.S. residents, depending on the country of residence and other factors.  I understand that Robinhood is based in the United States and that Robinhood accepts only U.S. currency in Robinhood's customer accounts.

K.    Governing Law.  This Agreement and all transactions made in My Account shall be governed by the laws of the State of California (regardless of the choice of law rules thereof), except to the extent governed by the federal securities laws, FINRA Rules, and the regulations, customs and usage of the exchanges or market (and its clearing house) on which transactions are executed.

EXHIBIT A

37. **Arbitration.**

> **A.** **This Agreement contains a pre-dispute arbitration clause. By signing an arbitration agreement, the parties agree as follows:**
>
> **(1)** **All parties to this Agreement are giving up the right to sue each other in court, including the right to a trial by jury, except as provided by the rules of the arbitration forum in which a claim is filed.**
>
> **(2)** **Arbitration awards are generally final and binding; a party's ability to have a court reverse or modify an arbitration award is very limited.**
>
> **(3)** **The ability of the parties to obtain documents, witness statements and other discovery is generally more limited in arbitration than in court proceedings.**
>
> **(4)** **The arbitrators do not have to explain the reason(s) for their award unless, in an eligible case, a joint request for an explained decision has been submitted by all parties to the panel at least 20 days prior to the first scheduled hearing date.**
>
> **(5)** **The panel of arbitrators will typically include a minority of arbitrators who were or are affiliated with the securities industry.**
>
> **(6)** **The rules of some arbitration forums may impose time limits for bringing a claim in arbitration. In some cases, a claim that is ineligible for arbitration may be brought in court.**
>
> **(7)** **The rules of the arbitration forum in which the claim is filed, and any amendments thereto, shall be incorporated into this Agreement.**
>
> **B.** **Any controversy or claim arising out of or relating to this Agreement, any other agreement between Me and Robinhood, any Account(s) established hereunder, any transaction therein, shall be settled by arbitration in accordance with the rules of FINRA Dispute Resolution, Inc. ("FINRA DR"). I agree to arbitrate any controversy or claim before FINRA DR in the State of California.**
>
> **C.** **This agreement to arbitrate constitutes a waiver of the right to seek a judicial forum unless such a waiver would be void under the federal securities laws. If I am a foreign national, non-resident alien, or if I do not reside in the United States, I agree to waive My right to file an action against Robinhood in any foreign venue.**
>
> **D.** **No person shall bring a putative or certified class action to arbitration, nor seek to enforce any pre-dispute arbitration agreement against any person who has initiated in court a putative class action; or who is a member of a putative class who has not opted out of the class with respect to any claims encompassed by the putative class action until:**
>
> **(1)** **the class certification is denied; or (2) the class is decertified; or (3) the customer is excluded from the class by the court. Such forbearance to enforce an agreement to arbitrate shall not constitute a waiver of any rights under this Agreement except to the extent stated herein.**

ACCEPTED AND AGREED: I acknowledge that I have read the preceding terms and conditions of this Agreement, that I understand them and that I hereby manifest my assent to, and my

EXHIBIT A

agreement to comply with, those terms and conditions by accepting this agreement.  **I ALSO UNDERSTAND THAT BY ACCEPTING THIS AGREEMENT I HAVE ACKNOWLEDGED THAT THIS AGREEMENT CONTAINS A PREDISPUTE ARBITRATION CLAUSE IN SECTION 37 HEREIN.  I ALSO AGREE (1) THAT ANY OF MY MARGIN ACCOUNT SECURITIES MAY BE BORROWED BY ROBINHOOD OR LOANED TO OTHERS; (2) I HAVE RECEIVED OF A COPY OF THIS AGREEMENT AND (3) I HAVE REVIEWED A COPY OF THE MARGIN DISCLOSURE STATEMENT.**

EXHIBIT A

## Appendix A

## Electronic Fund Transfer Services Disclosures

The following disclosures apply to the use of any EFT services offered by Robinhood, including the Card, ACH transactions and the Move Money functionality of the App.

Solely for purposes of these disclosures:  (i) references to the Bank shall include any financial institution that issues the Card or provides services in connection with ACH, Move Money or other EFT transactions; (ii) "you" and "your" mean the owner of the Account; and (iii) "we" and "us" means Robinhood and the Bank collectively.

1.      Your Liability.

Contact Robinhood Customer Service AT ONCE if you believe your Card or PIN has been lost or stolen or if you believe that an electronic fund transfer has been made without your permission. Telephoning is the best way of keeping your losses down.  You could lose all the Available Funds in your Account (plus your maximum overdraft line of credit).  If you tell Robinhood within 2 business days after you learn of the loss or theft of your Card or PIN, you can lose no more than $50 if someone used your Card or PIN without your permission.

If you do NOT tell Robinhood within 2 business days after you learn of the loss or theft of your Card or PIN, and Robinhood can prove that it could have stopped someone from using your Card or PIN without your permission if you had told Robinhood, you could lose as much as $500.

Also, if your statement shows transfers that you did not make, including those made by Card or using your PIN, tell Robinhood at once.  If you do not tell Robinhood within sixty (60) days after the statement was mailed to you, or otherwise made available to you, you may not get back any money you lost after the sixty (60) days if Robinhood can prove that Robinhood could have stopped someone from taking the money if you had told Robinhood in time.  If a good reason (such as a long trip or a hospital stay) kept you from telling Robinhood, Robinhood will extend the time periods.

2.      Contact in event of unauthorized transfer.

If you believe your Card or PIN has been lost or stolen, contact Robinhood by emailing help@robinhood.com.

3.      Business Days.

Business Days are Monday through Friday, excluding federal holidays.

4.      Transfer Types and Limitations.

You may use your Card to make purchases at any merchant that accepts Mastercard debit cards or debit cards of other networks in which the Bank participates, and to make ATM withdrawals, in each case subject to the Available Funds in your Account, the transaction limits described below, and the other terms and conditions of this Agreement.  You acknowledge and agree that the value

40

EXHIBIT A

available to you for use with the Card is limited to the Available Funds in your Account. So long as you do not exceed the Available Funds in your Account, you may use the Card to purchase goods or services wherever the Card is honored, and to obtain cash by initiating cash withdrawal transactions through the Card from any financial institution or ATM that accepts the Card.  Each time you use the Card, you authorize Robinhood to reduce the Available Funds in your Account by the amount of the purchase or withdrawal and any applicable fees, costs, or holdings. Nevertheless, if you exceed the Available Funds in your Account you shall remain fully liable to Robinhood for the amount of the transactions and any applicable fees and charges.

You may also make ACH withdrawals from your Account, either originated through Robinhood or originated by a third party (a "non-originated" withdrawal), subject to the Available Funds in your Account, the transaction limits described below, and the other terms and conditions of this Agreement.  You also may make ACH deposits to your Account, either originated through Robinhood or originated by a third party (a "non-originated" deposit), subject to the transaction limits described below.

There are limits on the dollar amount of transactions you can make with your Card each day and each month, and limits on the amount of ACH withdrawals and deposits you can make each day. The following lists the limits for each type of transaction:

| Transaction Type | Daily Limit | Weekly Limit | Monthly Limit |
|---|---|---|---|
| Originated ACH Withdrawals | $50,000.00 | N/A | N/A |
| Originated ACH Deposits | $50,000.00 | N/A | N/A |
| Non-Originated ACH Withdrawals | $250,000.00 | N/A | N/A |
| Non-Originated ACH Deposits | $250,000.00 | N/A | N/A |
| Point of Sale Purchases with the Card | $5,000.00 | N/A | $15,000.00 |
| ATM Withdrawals | $510.00 | | $5,000.00 |
| MoneySend Deposits | N/A, subject to the Weekly Limit | $2,999 | N/A |

5.      Fees.

41

We will not charge you any fees for use of ATMs that are part of the AllPoint or MoneyPass ATM networks, or for point of sale transactions using the Card, or for initiating other EFTs on your behalf. If you withdraw funds from ATMs outside of the AllPoint or MoneyPass ATM networks, you may be separately assessed fees by those ATM owners or operators.

6.    <u>Confidentiality</u>.

We may disclose information to third parties about you, your Card, or the transactions you make using any of the EFT services we provide:

(1)    Where it is necessary or helpful for completing or correcting transactions and resolving claims regarding transactions;

(2)    In order to verify the existence and condition of your Card or your Account for a third party, such as a merchant;

(3)    In order to comply with a valid request by a government agency, a court order, or other legal or administrative reporting requirements;

(4)    If you consent by giving us your written permission;

(5)    To our employees, auditors, affiliates, service providers, or attorneys as needed;

(6)    In order to prevent, investigate or report possible illegal activity;

(7)    In order to issue authorizations for transactions on the Card;

(8)    As permitted by applicable law; or

(9)    Otherwise as necessary to fulfill our obligations under this Agreement and the terms applicable to the EFT service you are using.

Please see Robinhood's privacy policy, available at about.robinhood.com/legal, and the applicable Bank's privacy policy, available at https://www.suttonbank.com/_/kcms-doc/85/49033/WK-Privacy-Disclosure-1218.pdf, for further details. (The Robinhood privacy policy and the applicable Bank's privacy policy are referred to collectively as the "Privacy Policies"). You hereby agree to Robinhood's and the Bank's collection, use and sharing of information about you and the Card as provided in the Privacy Policies, which are made a part of this Agreement. The Privacy Policies also tell you how you can (i) limit the ways in which Bank and Robinhood share information about you, or (ii) request corrections to the information that Bank or Robinhood maintain about you. You agree that information you provide in connection with your Card or other EFT services you use is being provided directly to both Robinhood as the holder of the Account associated with the service and the Bank as the Card issuer or provider of the EFT service, as applicable.

EXHIBIT A

7. <u>Documentation</u>.

*Terminal Transfers.* You can get a receipt at the time you make any transfer to or from your Account using an ATM from the AllPoint or MoneyPass ATM networks or at the point of sale.

*Preauthorized Credits.* If you have arranged to have direct deposits made to your Account at least once every 60 days from the same person or company, the person or company making the deposit will tell you every time they send us the money. You can also check your Account online to see if a deposit has been received.

*Periodic Statements.* You will get a monthly Account statement, unless there are no transfers in a particular month. In any case you will get the statement at least quarterly. You may obtain information about the Available Funds in your Account and a history of your Cash Management transactions on the App.

8. <u>Preauthorized Payments/Stop Payment Procedure and Notice of Varying Amounts</u>.

You do not have the right to request that Robinhood in advance make regular payments out of your Account, although you may ask third parties to initiate regular payments out of your Account.

a. *Right to stop payment*: If you have automatic recurring payments taken out of your Account, you can stop any of these payments by contacting us at help@robinhood.com. You must contact us in time for us to receive your request at least three business days before the payment is scheduled to be made.

b. *Notice of varying amounts*: If these regular payments vary in amount, the party you are going to pay will tell you, 10 days before each payment, when the payment will be made and how much it will be. (The party you are going to pay may allow you to choose to get this notice only when the payment would differ by more than a certain amount from the previous payment, or when the amount would fall outside certain limits that you set.)

c. *Liability for failure to stop payment of preauthorized transfer*: If you order us to stop a payment at least three business days before the transfer is scheduled and we do not do so, we will be liable for your losses or damages.

9. <u>Our Liability</u>.

If we do not complete a transaction to or from your Account on time or in the correct amount according to our Agreement with you, we will be liable for your losses or damages. However, there are some exceptions. We will not be liable, for instance:

    (1)    If through no fault of Robinhood or the Bank, you do not have enough Available Funds in your Account to complete the transaction;

    (2)    If a merchant refuses to accept your Card;

    (3)    If an electronic terminal where you are making a transaction does not operate properly, and you knew about the problem when you initiated the transaction;

EXHIBIT A

(4)     If access to your Card has been blocked after you reported your Card lost or stolen;

(5)     If there is a hold or your funds are subject to legal or administrative process or other encumbrance restricting their use;

(6)     If Robinhood or the Bank have reason to believe the requested transaction is unauthorized;

(7)     If circumstances beyond the control of Robinhood or the Bank (such as fire, flood, or computer or communication failure) prevent the completion of the transaction, despite reasonable precautions that Robinhood or the Bank have taken; or

(8)     For any other exception stated in this Agreement with you or by applicable law.

10.     Errors or Questions About Electronic Transfers.

In case of errors or questions about your electronic transfers, including your Card transactions, or if you think your statement or receipt is wrong or if you need more information about a transaction listed on the statement or receipt, contact Robinhood by emailing help@robinhood.com. Robinhood must hear from you no later than sixty (60) days after you were sent the FIRST statement on which the problem or error appeared.

(a) Tell Robinhood your name and account number.

(b) Describe the error or the transfer you are unsure about, and explain as clearly as you can why you believe it is an error or why you need more information.

(c) Tell Robinhood the dollar amount of the suspected error.

Robinhood will determine whether an error occurred within ten (10) business days after Robinhood hears from you and will correct any error promptly.  If Robinhood needs more time, however, it may take up to forty-five (45) days to investigate your complaint or question.  If Robinhood decides to do this, Robinhood will credit your Account within ten (10) business days for the amount you think is in error, so that you will have the use of the money during the time it takes Robinhood to complete our investigation.

For errors involving new accounts, point of sale, or foreign initiated transactions, Robinhood may take up to ninety (90) days to investigate your complaint or question.  For new accounts, Robinhood may take up to twenty (20) business days to credit your Account for the amount you think is in error.

Robinhood will tell you the results of our investigation within three (3) business days after completing the investigation. If Robinhood decides that there was no error, Robinhood will send you a written explanation. You may ask for copies of the documents that Robinhood used in our investigation.

44

EXHIBIT A

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Travis Taaffe

**DEFENDANTS**

Robinhood Markets, Inc.; Robinhood Financial LLC; Robinhood Securities, LLC.

**(b)** County of Residence of First Listed Plaintiff    Sarasota County
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    KENT COUNTY, DE
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Michael S. Taaffe, Esq., Shumaker, Loop & Kendrick, LLP
240 S Pineapple Ave., 10th fl, Sarasota, FL 34236, (941) 366-6660

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1  U.S. Government Plaintiff
- ☐ 3  Federal Question *(U.S. Government Not a Party)*
- ☐ 2  U.S. Government Defendant
- ☒ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & | **PERSONAL INJURY** | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | Slander | ☐ 365 Personal Injury - Product Liability | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Liability | ☐ 367 Health Care/ Pharmaceutical | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans | ☐ 340 Marine | Personal Injury Product Liability | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| (Excludes Veterans) | ☐ 345 Marine Product Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | **PERSONAL PROPERTY** | **LABOR** | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 490 Cable/Sat TV |
| ☒ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | **IMMIGRATION** | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | |
| | | ☐ 550 Civil Rights | ☐ 465 Other Immigration Actions | |
| | | ☐ 555 Prison Condition | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | |

**SOCIAL SECURITY**
☐ 861 HIA (1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g))
☐ 864 SSID Title XVI
☐ 865 RSI (405(g))

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C.A. § 1332

Brief description of cause:
Breach of Customer Agreement; Breach of Warranty; Negligence

## VII. REQUESTED IN COMPLAINT:

☒ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $**

CHECK YES only if demanded in complaint:
JURY DEMAND:    ☒ Yes    ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*    JUDGE _____    DOCKET NUMBER _____

DATE _____    SIGNATURE OF ATTORNEY OF RECORD _____

**FOR OFFICE USE ONLY**

RECEIPT # _____    AMOUNT _____    APPLYING IFP _____    JUDGE _____    MAG. JUDGE _____

| Print | Save As... | Reset |

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed.  The attorney filing a case should complete the form as follows:

**I.(a)**  **Plaintiffs-Defendants.**  Enter names (last, first, middle initial) of plaintiff and defendant.  If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations.  If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

   **(b)**  **County of Residence.**  For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing.  In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing.  (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

   **(c)**  **Attorneys.**  Enter the firm name, address, telephone number, and attorney of record.  If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.**  **Jurisdiction.**  The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings.  Place an "X" in one of the boxes.  If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff.  (1) Jurisdiction based on 28 U.S.C. 1345 and 1348.  Suits by agencies and officers of the United States are included here.
United States defendant.  (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question.  (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States.  In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship.  (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states.  When Box 4 is checked, the citizenship of the different parties must be checked**.**  (See Section III below**; NOTE: federal question actions take precedence over diversity cases.**)

**III.**  **Residence (citizenship) of Principal Parties.**  This section of the JS 44 is to be completed if diversity of citizenship was indicated above.  Mark this section for each principal party.

**IV.**  **Nature of Suit.**  Place an "X" in the appropriate box.  If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable.  Click here for: Nature of Suit Code Descriptions.

**V.**  **Origin.**  Place an "X" in one of the seven boxes.
Original Proceedings.  (1) Cases which originate in the United States district courts.
Removed from State Court.  (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court.  (3) Check this box for cases remanded to the district court for further action.  Use the date of remand as the filing date.
Reinstated or Reopened.  (4) Check this box for cases reinstated or reopened in the district court.  Use the reopening date as the filing date.
Transferred from Another District.  (5) For cases transferred under Title 28 U.S.C. Section 1404(a).  Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer.  (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File.  (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.**  Origin Code 7 was used for historical records and is no longer relevant due to changes in statue.

**VI.**  **Cause of Action.**  Report the civil statute directly related to the cause of action and give a brief description of the cause.  **Do not cite jurisdictional statutes unless diversity.**  Example: U.S. Civil Statute: 47 USC 553  Brief Description: Unauthorized reception of cable service

**VII.**  **Requested in Complaint.**  Class Action.  Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand.  In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand.  Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.**  **Related Cases.**  This section of the JS 44 is used to reference related pending cases, if any.  If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.**  Date and sign the civil cover sheet.

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Middle District of Florida

| | | |
|---|---|---|
| TRAVIS TAAFFE<br>on behalf of himself and all similarly-situated<br>individuals<br><br>_Plaintiff(s)_<br>v.<br>ROBINHOOD MARKETS, INC.,<br>ROBINHOOD FINANCIAL, LLC, and<br>ROBINHOOD SECURITIES, LLC,<br><br>_Defendant(s)_ | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. |

## SUMMONS IN A CIVIL ACTION

To: _(Defendant's name and address)_

> ROBINHOOD MARKETS, INC.
> Incorporating Services, Ltd. (Registered Agent)
> 3500 S. Dupont Highway
> Dover, DE 19901
> 302-531-0855

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

> MICHAEL S. TAAFFE, Esq.
> Shumaker, Loop & Kendrick, LLP
> 240 S. Pineapple Ave.
> Sarasota, FL 34236

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

_CLERK OF COURT_

Date: _____                    _____

_Signature of Clerk or Deputy Clerk_

AO 440 (Rev. 06/12) Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____.

❏ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❏ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❏ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❏ I returned the summons unexecuted because _____ ; or

❏ Other *(specify):*


My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .


I declare under penalty of perjury that this information is true.


Date: _____                     _____
                                                              *Server's signature*

                                         _____
                                                              *Printed name and title*

                                         _____
                                                              *Server's address*

Additional information regarding attempted service, etc:

Print       Save As...                                    Reset

# UNITED STATES DISTRICT COURT

for the

Middle District of Florida

| | |
|---|---|
| TRAVIS TAAFFE<br>on behalf of himself and all similarly-situated<br>individuals<br>_____<br>*Plaintiff(s)*<br>v.<br>ROBINHOOD MARKETS, INC.,<br>ROBINHOOD FINANCIAL LLC, and<br>ROBINHOOD SECURITIES, LLC,<br>_____<br>*Defendant(s)* | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>  Civil Action No. |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*

ROBINHOOD FINANCIAL LLC
Incorporating Services, Ltd. (Registered Agent)
3500 S. Dupont Highway
Dover, DE 19901
302-531-0855

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

MICHAEL S. TAAFFE, Esq.
Shumaker, Loop & Kendrick, LLP
240 S. Pineapple Ave.
Sarasota, FL 34236

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____          _____

*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❒ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❒ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❒ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❒ I returned the summons unexecuted because _____ ; or

❒ Other *(specify):*


My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.


Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

# UNITED STATES DISTRICT COURT

for the

Middle District of Florida

| | | |
|---|---|---|
| TRAVIS TAAFFE<br>on behalf of himself and all similarly-situated<br>individuals | ) ) ) ) | |
| _____<br>*Plaintiff(s)* | ) ) | Civil Action No. |
| v. | ) | |
| ROBINHOOD MARKETS, INC.,<br>ROBINHOOD FINANCIAL, LLC, and<br>ROBINHOOD SECURITIES, LLC, | ) ) ) | |
| _____<br>*Defendant(s)* | ) ) | |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*

ROBINHOOD SECURITIES, LLC
Incorporating Services, Ltd. (Registered Agent)
3500 S. Dupont Highway
Dover, DE 19901
302-531-0855

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

MICHAEL S. TAAFFE, Esq.
Shumaker, Loop & Kendrick, LLP
240 S. Pineapple Ave.
Sarasota, FL 34236

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____        _____
                                                                                 *Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

&#10063; I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

&#10063; I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

&#10063; I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

&#10063; I returned the summons unexecuted because _____ ; or

&#10063; Other *(specify):*


My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.


Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

**Print**    **Save As...**    **Reset**